U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed June 1, 2005                                                                  United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| MIRANT CORPORATION, et al., | § § | CASE NO. 03-46590-DML-11 |
| | § | (Jointly Administered) |
| DEBTORS. | § | |

**MEMORANDUM OPINION**

Before the court are motions (the "Motions") filed by the Official Committee of Unsecured Creditors of Mirant Corporation (the "Committee") seeking orders of the court directing Goldman Sachs Group, Inc., ("GSG") and Morgan Stanley & Co. Incorporated ("MS&C" and, with GSG, "Respondents") to expeditiously produce documents pursuant to Fed. R. Bankr. P. 2004. The court heard argument on the Motions on May 25, 2005, at which time Debtors and the other official committees in these chapter 11 cases supported the Committee in asking for relief under the Motions.

The Motions relate principally to investigations of The Southern Company's ("TSC") relationship with Debtors. Debtors were owned by TSC until it divested itself of

Debtors through a public offering in late 2000 and a spin-off in April 2001. A number of ties between Debtors and TSC remain, including some of Debtors' directors being related to TSC and reliance by some managers and directors of Debtors in certain class action suits on D&O insurance owned by TSC.

GSG and MS&C acted as investment bankers in connection with TSC's divestiture of Debtors. Respondents have filed claims in these chapter 11 cases and have, from time to time, participated in the cases.[1] It appears one of Respondents has even participated in a financing proposal to Debtors. Transcript of Proceedings, May 25, 2005, page 47.

At the May 25 hearing, Respondents urged that the Motions should be denied because, *inter alia*, the Committee could not show cause for special relief (i.e., expeditions production), the information sought is to be used in litigation which is sure to be filed against TSC, and, finally, in order to compel production, a subpoena must be issued[2] (which had not occurred). The day following the hearing, Respondents (without request to or leave of the court) filed supplementary responses in which they argued that only a New York court could issue an enforceable subpoena directed to them. The court will deal with each of these concerns below.

First, there is clearly a need for expedition. The two year statute of limitations of Bankruptcy Code (the "Code")[3] sections 108(a) and 546(a) expires on July 13 or 14 of

---

[1] Respondents filed proofs of claim identified as claim numbers 6265 and 6266 (the "Proofs of Claim") on December 15, 2003 against Mirant Corporation. Debtors filed an objection to the Proofs of Claim on October 18, 2004. Debtors filed a motion for summary judgment regarding the Proofs of Claim on December 30, 2004 and Respondents filed their opposition to Debtors' motion for summary judgment on January 20, 2005. (anything else?)

[2] *See* Rule 2004(c).

[3] 11 U.S.C. §§ 101-1330.

this year for most of Debtors.[4]  It was the imminence of limitations that led this court to refer to the Honorable Steven A. Felsenthal the question of whether a party other than Debtors should pursue the litigation against TSC.  Though it may be argued that the slippage of time against limitations is the fault of Debtors (something the court does not now find), it is the *estate* that will suffer if causes of action are lost because of a dilatory investigation.  Moreover, it is critical that the relationship between TSC and Debtors be fully explored.  Mirant has, as of February 25, 2005, 405,468,084 shares of common stock outstanding.  This stock is held by thousands of persons.  *See* Mirant Corporation Form 10-K filed March 15, 2005, available online at www.mirant.com.  Mirant and its affiliates have issued billions of dollars in public bonds.  Yet, little more than two years after TSC's divestiture, Debtors were forced to seek relief under chapter 11.  While it may well be that TSC engaged in no actionable – let along wrongful – conduct, it is in the public interest that this be shown through a proper investigation.  Such an investigation – not only of possible litigation against TSC, but of possible claims against Respondents – will only be sufficient for that purpose if it is fully pursued before limitations run.

As to Respondents' argument that the production ought not to occur under Rule 2004 when it is to aid litigation which is sure to be filed, this requires reliance on case-made law.  *See 2435 Plainfield Ave., Inc. v. Township of Scotch Plains* (*In re 2435 Plainfield Ave., Inc.*), 223 B.R. 440, 456 (Bankr. D.N.J. 1998); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996).  Rule 2004 contains no

---

[4] Beginning the evening of July 14, 2003 and continuing into the following morning, Mirant Corporation ("Mirant") and 74 of its affiliates filed chapter 11 petitions in this court.  Since then eight additional affiliates not likely to be named plaintiffs in any suit filed against TSC or Respondents have filed chapter 11 petitions.

exceptions.[5] Generally, when construing a bankruptcy rule, the court should look to its plain language. *Zer-Ilan v. Frankford* (*In re CPDC Inc.*), 221 F.3d 693, 699 (5th Cir. 2000); *Klesalek v. Klesalek* (*In re Klesalek*), 307 B.R. 648, 652 (B.A.P. 8th Cir. 2004) ("It is a settled principle that unless there is some ambiguity in the language of a Bankruptcy Rule, a court's analysis must end with the Rule's plain meaning."). That language is not limited to exclude instances where litigation is, or may soon be, pending, though the drafters of the rule might easily have so provided.

Additionally, some courts have allowed discovery under Rule 2004 even when it is in aid of *pending* litigation. *See In re Sun Med. Mgmt., Inc.*, 104 B.R. 522 (Bankr. M.D. Ga. 1989) (granting request for Rule 2004 examinations where adversary proceeding had been filed, but answers were not yet due); *In re Analytical Sys., Inc.*, 71 B.R. 408, 413 (Bankr. N.D. Ga. 1987) ("The fact that there is pending litigation between the parties is not relevant to a decision to allow a Rule 2004 examination."). This court is most reluctant to invoke a court-made exception to the plain language of Rule 2004 on the basis that a suit will be filed in the future.

Further, at this time discovery may *only* be had under Rule 2004. Until an adversary proceeding (or contested matter) is actually commenced, Part VII of the Rules of Bankruptcy Procedure does not apply, and discovery under Rule 7026 *et seq.* cannot occur. Discovery now, not later, may be critical to ensure that no viable cause of action

---

[5] Rule 2004(a) states:

> Examination on motion. On motion of any party in interest, the court may order the examination of any entity.

FED. R. BANKR. P. 2004(a).

is lost, for while it may be certain suit will be filed against TSC, that does not mean all possible claims, some of which might soon be lost, have been identified.

As to the need for a subpoena and this court's jurisdiction to compel Respondents to comply with its orders, the court rejects Respondents' arguments. First, during the May 25 hearing, counsel for Respondents agreed that the court's oral direction could serve in lieu of a subpoena.[6] Second, as to jurisdiction over Respondents, while a true third party target of a subpoena may be entitled to require subpoenas from local courts, Respondents are parties in interest in these cases. They are creditors who have participated in these chapter 11 cases. They are potential defendants in litigation which may be brought. The court would be surprised if their affiliates are not actively trading in securities of Debtors (though the court does not rely on this supposition in its decision). Respondents are entities that operate nationally. It would be anomalous to permit them to evade this court's reach and the necessity of cooperating in a time-sensitive investigation.

For the foregoing reasons, the Motions will be, and hereby are, GRANTED.

It is so ORDERED.

### End of Order ###

---

[6] Respondents' supplemental responses are not consistent with counsel's statements. FED. R. BANKR. P. 9016, incorporating F. R. CIV. P. 45, arguably requires issuance of any subpoena by the court in which the production is to occur (Rule 45(a)(2)). The court, however, did not understand counsel to dispute this court's order as serving the same functions as a subpoena issued on behalf of the court where the production will occur.