## Schedule 12

## Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases

| Mirant Entity | Assignee or Transferee Mirant Entity | Counterparty | Contract Name/Description | POR Cure Amount |
|---|---|---|---|---|
| 1199 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Southern Connecticut Gas Company | Base Contract for Gas Purchase/Sale dated 11/1/1997 | $ 0.00 |
| 1200 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Southern Connecticut Gas Company | Gas Exchange/Capacity Release Deal Confirmation dated 3/12/2002 | $ 0.00 |
| 1201 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Southern Indiana Gas & Electric Co. | Base Contract for Gas Purchase/Sale dated 4/1/1997 | $ 0.00 |
| 1202 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Southern Indiana Gas & Electric Co. | Edison Electric Institute (EEI) Master Power Purchase and Sale Agreement dated 2/14/2001 | $ 0.00 |
| 1203 Shady Hills Power Company, LLC ... | | Southern Waste Services, Inc. | Environmental Waste Removal | $ 0.00 |
| 1204 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | SouthStar Energy Services LLC | Base Contract for Gas Purchase/Sale dated 9/1/1999 | $ 0.00 |
| 1205 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | SouthStar Energy Services LLC | Master Monthly Netting/Close-Out Netting Agreement dated 9/1/1999 | $ 0.00 |
| 1206 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | SouthStar Energy Services, LLC | Confidentiality Agreement | $ 0.00 |
| 1207 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Southwest Power Pool, Inc. | Transmission Service Agreement (Non-Firm) dated 1/15/2002 | $ 0.00 |
| 1208 Mirant Canal, LLC ... | | Southwestern Bell Mobile Systems, Inc., d/b/a Cellular One | Site Lease Agreement (Cell Tower) | $ 0.00 |
| 1209 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Southwestern Energy Company | Incoming Unlimited Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), Southwestern Energy Services Company (Counterparty), and Southwestern Energy Company (Guarantor) effective 3/8/1999 | $ 0.00 |
| 1210 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Sprague Energy Corporation | Base Contract for Gas Purchase/Sale dated 12/1/1997 | $ 0.00 |
| 1211 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Sprague Energy Corporation | Confidentiality Agreement | $ 0.00 |
| 1212 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Sprague Energy Corporation | EEI Master Power Purchase and Sale Agreement dated 3/1/2002 | $ 0.00 |
| 1213 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Sprague Energy Corporation | ISDA & Financial Agreement dated 1/15/2000 | $ 0.00 |
| 1214 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Sprague Energy Corporation | Master Monthly Netting/Close-Out Netting Agreement dated 11/20/1998 | $ 0.00 |
| 1215 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | St. Lawrence Gas Company, Inc. | Base Contract for Gas Purchase/Sale dated 7/1/1998 | $ 0.00 |
| 1216 Mirant Corporation... | New Mirant | St. Paul Fire & Marine c/o McGriff, Siebels & Williams, Inc. | Crime Insurance Policy | $ 0.00 |
| 1217 Mirant Corporation and Subsidiaries ... | New Mirant | St. Paul Fire & Marine c/o McGriff, Siebels & Williams, Inc. | Crime Insurance Policy No. 468CF0494 for Coverage Period 12/17/2002-12/17/2003 | $ 0.00 |
| 1218 Mirant Corporation... | New Mirant | St. Paul Mercury Insurance Company c/o McGriff, Siebels & Williams, Inc. | Directors & Officers Liability Insurance Policy No. 568CM0933 for Coverage Period 4/2/2001-8/1/2002 | $ 0.00 |
| 1219 Mirant Corporation... | New Mirant | St. Paul Mercury Insurance Company c/o McGriff, Siebels & Williams, Inc. | Directors & Officers Liability Insurance Policy No. 568CM0933 for Coverage Period 8/1/2002-8/1/2003 | $ 0.00 |
| 1220 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Star Natural Gas Company | Base Contract for Gas Purchase/Sale dated 1/1/1999 | $ 0.00 |
| 1221 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Star Natural Gas Company | Master Monthly Netting/Close-Out Netting Agreement dated 1/1/1999 | $ 0.00 |
| 1222 Mirant Delta, LLC ... | | State Building and Construction Trades Council of California | Maintenance Agreement for the Southern Energy Delta Power Plant Contra Costa County, California | $ 0.00 |
| 1223 Mirant Delta, LLC ... | | State Building and Construction Trades Council of California | Project Labor Agreement (Contra Costa Power Plant Unit 8 Power Project Contra Costa County, California) | $ 0.00 |

## Schedule 12

### Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases

| Mirant Entity | Assignee or Transferee Mirant Entity | Counterparty | Contract Name/Description | POR Cure Amount |
|---|---|---|---|---|
| 1224 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | State of New York Department of Public Safety | Base Contract for Gas Purchase/Sale dated 10/31/2001 | $ 0.00 |
| 1225 Mirant Services, LLC… | | State of Washington Department of Labor & Industries Policy Management Services | Workers' Compensation Insurance (State of Washington Monopolistic State Fund) Policy No. UBI 602 157 283, Account 021,103-02 for Coverage Period Until Cancelled | $ 0.00 |
| 1226 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Statoil Energy Trading, Inc. | Base Contract for Gas Purchase and Sale dated 5/1/1997 | $ 0.00 |
| 1227 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Statoil Energy Trading, Inc. | Master Monthly Netting/Close-Out Netting Agreement dated 7/1/1998 | $ 0.00 |
| 1228 Mirant Americas, Inc. (MAI) …………… | Mirant Energy Trading, LLC (MET) | STEAG Power LLC | Confidentiality Agreement | $ 0.00 |
| 1229 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Steuben Gas Storage Co., c/o Arlington Storage Corp. | Base Contract for Gas Purchase/Sale dated 10/8/2002 | $ 0.00 |
| 1230 Mirant Delta, LLC…………………… | | Stone & Webster Engineering & Constructors, Inc. | Engineering Procurement and Construction Support Agreement | $ 0.00 |
| 1231 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Strategic Energy, LLC. | Confidentiality Agreement | $ 0.00 |
| 1232 Mirant Corporation……………………… | Mirant Services, LLC | Strategic Power Systems Inc. | Master Consulting Agreement | $ 0.00 |
| 1233 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Structure Consulting Group LLC (SCG) | Master Software License and Services Agreement dated 1/27/1999 | $ 0.00 |
| 1234 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | SUEZ Energy Marketing NA, Inc. (formerly Tractebel Energy Marketing, Inc.) | Assignment and Novation dated 10/17/2002 | $ 0.00 |
| 1235 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | SUEZ Energy Marketing NA, Inc. (formerly Tractebel Energy Marketing, Inc.) | Assignment and Novation dated 10/24/2002 | $ 0.00 |
| 1236 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | SUEZ Energy Marketing NA, Inc. (formerly Tractebel Energy Marketing, Inc.) | Incoming Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), SUEZ Energy Marketing N.A. Inc. (Counterparty), and SUEZ Energy North America, Inc. (Guarantor) in the amount of $2,000,000 effective 4/1/2005 | $ 0.00 |
| 1237 Mirant Services, LLC ………………… | | Sun Microsystems, Inc. | Master Maintenance Agreement | $ 0.00 |
| 1238 Mirant Services, LLC ………………… | | Sun Microsystems, Inc. | Master Software Agreement | $ 0.00 |
| 1239 Mirant Services, LLC ………………… | | SunGard Corbel Inc., an operating group of Sungard Data Systems Inc. | Master Software Agreement | $ 0.00 |
| 1240 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Services, LLC | SunGard Data Management Solutions (formerly, FAME® Energy Data Service) | Master Software Agreement | $ 0.00 |
| 1241 Mirant Americas, Inc. (MAI) ……………… | | SunGard Data Systems (formerly, Altra Software Services, Inc.) | Confidentiality Agreement dated 1/31/2001 | $ 0.00 |
| 1242 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Services, LLC | SunGard Data Systems Inc. (formerly, Caminus Corporation) | Master Software Agreement | $ 0.00 |
| 1243 Mirant Services, LLC ………………… | | SunGard Treasury Systems, an operating group of Sungard Data Systems Inc. | Master Software Agreement | $ 0.00 |
| 1244 Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Sunoco Partners Marketing & Terminals L.P. | Confidentiality Agreement | $ 0.00 |
| 1245 Mirant Corporation……………………… | Mirant Energy Trading, LLC (MET) | Support Terminals Operating Partnership, LP d/b/a ST Services | Storage and Product Handling Agreement Number 45-02-11-928 | $ 213,961.29 |
| 1246 Mirant Piney Point, LLC…………………… | | Support Terminals Operating Partnership, LP, d/b/a ST Services | Storage and Product Handling Agreement Number 46-01-03-770 | $ 106,882.08 |

## Schedule 12

### Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases

| Mirant Entity | Counterparty | Assignee or Transferee Mirant Entity | Contract Name/Description | POR Cure Amount |
|---|---|---|---|---|
| 1247 Mirant Americas Energy Marketing, LP (MAEM)... | Swiss Re Financial Products Corporation | Mirant Energy Trading, LLC (MET) | Incoming Unlimited Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), Swiss Re Financial Products Corporation (Counterparty), and Swiss Reinsurance Company (Guarantor) effective 3/4/1999 | $ 0.00 |
| 1248 Mirant Corporation and Subsidiaries | Swiss Re International Business Insurance Company, Certain London Syndicates & Associated Electric & Gas Insurance Services c/o McGriff, Siebels & Williams, Inc. | New Mirant | Forced Outage Insurance Policy No. 507J.L3PU073 for Coverage Period 5/24/2003-5/24/2004 | $ 0.00 |
| 1249 Mirant Corporation and Subsidiaries | Swiss Re International Business Insurance Company, Certain London Syndicates & Associated Electric & Gas Insurance Services c/o McGriff, Siebels & Williams, Inc. | New Mirant | Forced Outage Insurance Policy Nos. 507J.L1PU031, 507J.L1PU032, GL003-09-39-01 for Coverage Period 5/1/2001-5/1/2002 | $ 0.00 |
| 1250 Mirant Corporation and Subsidiaries | Swiss Re International Business Insurance Company, Certain London Syndicates & Associated Electric & Gas Insurance Services c/o McGriff, Siebels & Williams, Inc. | New Mirant | Forced Outage Insurance Policy Nos. 507J.L2PU072, 507J.L2PU084 for Coverage Period 5/1/2003-5/1/2003 | $ 0.00 |
| 1251 Mirant Services, LLC | Sybase, Inc. | | Master Software Agreement | $ 0.00 |
| 1252 Mirant Services, LLC | Symantec Corporation | | Master Software Agreement | $ 0.00 |
| 1253 Mirant Americas Energy Marketing, LP (MAEM)... | Tampa Electric Company | Mirant Energy Trading, LLC (MET) | Transmission Service Agreement (Non-Firm) dated 7/29/1997 | $ 0.00 |
| 1254 Mirant Americas Energy Marketing, LP (MAEM)... | Taunton Municipal Lighting Plant | Mirant Energy Trading, LLC (MET) | Edison Electric Institute (EEI) Master Power Purchase and Sale Agreement dated 3/19/2001 | $ 0.00 |
| 1255 Mirant Americas Energy Marketing, LP (MAEM)... | Taunton Municipal Lighting Plant | Mirant Energy Trading, LLC (MET) | International Swap Dealers Association (ISDA) and Financial Agreement dated 10/20/2000 | $ 0.00 |
| 1256 Mirant Kendall, LLC... | Team Industrial Services, Inc. | Mirant Energy Trading, LLC (MET) | Agreement for Continuing Services | $ 14,655.60 |
| 1257 Mirant Americas Energy Marketing, LP (MAEM)... | Teco Gas Services, Inc. | Mirant Energy Trading, LLC (MET) | Close-Out Netting dated 4/1/1998 | 0.00 |
| 1258 Mirant Kendall, LLC... | Teledyne Monitor Labs, Inc. (TML) | Mirant Energy Trading, LLC (MET) | Agreement for Continuing Services | $ 3,721.96 |
| 1259 Mirant Americas Energy Marketing, LP (MAEM)... | Tenaska Energy, Inc. Tenaska Energy Holdings, LLC | Mirant Energy Trading, LLC (MET) | Incoming Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), Tenaska Marketing Ventures, Tenaska Marketing Canada, Tenaska Gas Storage LLC (Counterparty), and Tenaska Energy Inc./Tenaska Energy Holdings, LLC (Guarantor) | 0.00 |
| 1260 Mirant Americas Energy Marketing, LP (MAEM)... | Tenaska Marketing Ventures | Mirant Energy Trading, LLC (MET) | Confidentiality Agreement | $ 0.00 |
| 1261 Mirant Americas Energy Marketing, LP (MAEM)... | Tenaska Marketing Ventures | Mirant Energy Trading, LLC (MET) | Master Gas Purchase/Sale Contract dated 10/1/1995 | 0.00 |
| 1262 Mirant Americas Energy Marketing, LP (MAEM)... | Tenaska Power Services Co. | Mirant Energy Trading, LLC (MET) | Master Power Sales Agreement dated 10/8/1996 | 0.00 |
| 1263 Mirant Americas Energy Marketing, LP (MAEM)... | Tenaska Power Services Company | Mirant Energy Trading, LLC (MET) | Incoming Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), Tenaska Power Services Company (Counterparty), and Tenaska Energy Inc./Tenaska Energy Holdings, LLC (Guarantor) in the amount of $2,000,000 effective 9/3/2003 | 0.00 |
| 1264 Mirant Americas, Inc. (MAI) | Tenaska, Inc. | Mirant Energy Trading, LLC (MET) | Confidentiality Agreement | $ 0.00 |
| 1265 Mirant Americas, Inc. (MAI) | Tenaska, Inc. | Mirant Energy Trading, LLC (MET) | Confidentiality Agreement | 0.00 |
| 1266 Mirant Americas Energy Marketing, LP (MAEM)... | Tennessee Gas Pipeline Company | Mirant Energy Trading, LLC (MET) | Interruptible Storage Service Agreement | 0.00 |
| 1267 Mirant Americas Energy Marketing, LP (MAEM)... | Tennessee Gas Pipeline Company | Mirant Energy Trading, LLC (MET) | Interruptible Transport Agreement (MDQ 75,000 dth.) | 0.00 |
| 1268 Mirant Americas Energy Marketing, LP (MAEM)... | Tennessee Valley Authority | Mirant Energy Trading, LLC (MET) | Base Contract for Gas Purchase/Sale dated 4/1/1999 | $ 0.00 |

## Schedule 12

### Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases

| | Mirant Entity | Assignee or Transferee Mirant Entity | Counterparty | Contract Name/Description | POR Cure Amount |
|---|---|---|---|---|---|
| 1269 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Tennessee Valley Authority | Service Agreement for Non-Firm Point-To-Point Transmission dated 1/11/1998 | $ 3,180.80 |
| 1270 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Tennessee Valley Authority | Service Agreement for Short-Term Firm Point-To-Point dated 1/1/1998 | $ 0.00 |
| 1271 | Mirant Kendall, LLC... | | Terminix International Company LP, The | Agreement for Continuing Services | $ 655.48 |
| 1272 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texaco Natural Gas Inc. | Confidentiality Agreement | $ 0.00 |
| 1273 | Mirant Wichita Falls, LP... | | Texas Australia Power, Inc. | Confidentiality Agreement | $ 0.00 |
| 1274 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Eastern Transmission, LP | Service Agreement (LINK System) dated 4/1/1997 | $ 0.00 |
| 1275 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Electronic Bulletin Board Agreement dated 11/10/1997 | $ 0.00 |
| 1276 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Electronic Bulletin Board Agreement dated 2/17/1997 | $ 0.00 |
| 1277 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Gas Transportation Agreement dated 10/30/97 | $ 0.00 |
| 1278 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Gas Transportation Agreement dated 3/7/1997 | $ 0.00 |
| 1279 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Loan Service Agreement dated 2/1/2000 | $ 0.00 |
| 1280 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Parking Service Agreement (Exhibit A) dated 06/30/02 | $ 0.00 |
| 1281 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Parking Service Agreement dated 10/31/97 | $ 0.00 |
| 1282 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Transportation Aggregation Pooling Service Transportation Agreement dated 10/30/1997 | $ 0.00 |
| 1283 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Transportation Aggregation Pooling Service Transportation Agreement dated 10/30/1997 | $ 0.00 |
| 1284 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Transportation Aggregation Pooling Service Transportation Agreement dated 10/30/1997 | $ 0.00 |
| 1285 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Transportation Aggregation Pooling Service Transportation Agreement dated 10/30/1997 | $ 0.00 |
| 1286 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Texas Gas Transmission Corporation | Umbrella Firm Transportation Agreement dated 10/31/1997 | $ 0.00 |
| 1287 | Mirant Wichita Falls, LP... | | Texas Utilities Electric Company | Interconnection Agreement | $ 0.00 |
| 1288 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | The Energy East Companies | Confidentiality Agreement | $ 0.00 |
| 1289 | Mirant Kendall, LLC... | | Thermal Engineering International (USA) Inc. (TEi), a subsidiary of Babcock Power Inc. (BPI), | Agreement for Continuing Services | $ 0.00 |
| 1290 | West Georgia Generating Company, L.L.C. | | Thomaston-Upson County Industrial Development Authority | Bond Purchase Agreement | $ 0.00 |
| 1291 | West Georgia Generating Company, L.L.C. | | Thomaston-Upson County Industrial Development Authority | Bond Purchase Agreement, Securing $225,000,000 Principal Amount dated 11/1/1999 | $ 0.00 |
| 1292 | West Georgia Generating Company, L.L.C. | | Thomaston-Upson County Industrial Development Authority | Guaranty Agreement dated 11/1/1999 | $ 0.00 |
| 1293 | West Georgia Generating Company, L.L.C. | | Thomaston-Upson County Industrial Development Authority | Lease Agreement dated 11/1/1999 | $ 0.00 |
| 1294 | West Georgia Generating Company, L.L.C. | | Thomaston-Upson County Industrial Development Authority | Letter Agreement | $ 0.00 |
| 1295 | Mirant Corporation... | Mirant Services, LLC | TIBCO Software, Inc. | Master Software Agreement | $ 0.00 |
| 1296 | Mirant Services, LLC | | Timberline Software Corporation, a Best Software company | Master Software Agreement | $ 0.00 |
| 1297 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Tiverton Power Associates, Ltd. | Base Contract for Gas Purchase/Sale dated 5/1/2000 | $ 0.00 |
| 1298 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Torch-CoEnergy L.L.C. | Master Monthly Netting/Close-Out Netting Agreement dated 10/12/1998 | $ 0.00 |
| 1299 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Torch-CoEnergy LLC | ISDA Multi-Commodity Agreement dated 1/1/1997 | $ 0.00 |
| 1300 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Total Gas & Electric, Inc. | Base Contract for Gas Purchase/Sale dated 9/1/2000 | $ 0.00 |

## Schedule 12

## Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases

| Mirant Entity | Assignee or Transferee Mirant Entity | Counterparty | Contract Name/Description | POR Cure Amount |
|---|---|---|---|---|
| 1301 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Total Gas & Electric, Inc. | First Amendment to GISBR-Insurance dated 9/15/2000 | $ 0.00 |
| 1302 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Total Gas & Electric, Inc. | Master Monthly Netting/Close-Out Netting Agreement dated 9/1/2000 | $ 0.00 |
| 1303 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | TotalFinaElf Gas & Power North America, Inc. | Base Contract for Sale and Purchase of Natural Gas dated 2/11/2003 | $ 0.00 |
| 1304 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Town of Blacksburg, SC | Base Contract for Gas Purchase/Sale dated 10/1/1999 | $ 0.00 |
| 1305 Mirant Canal, LLC ......... | | Town Of Sandwich | Confidentiality Agreement | $ 0.00 |
| 1306 Mirant Canal, LLC | | Town of Sandwich | Confined Space Rescue Agreement | $ 0.00 |
| 1307 Mirant Canal, LLC | | Town of Sandwich Fire Department, The | Agreement for Continuing Services Contractor | $ 0.00 |
| 1308 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Tracted Energy Marketing, Inc. | Confidentiality Agreement | $ 0.00 |
| 1309 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | TradeSpark, L.P. | Electronic Trading System Agreement dated 9/19/2001 | $ 0.00 |
| 1310 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Trans Texas Gas Corporation | Interruptible Gas Purchase Contract dated 10/1/1995 | $ 0.00 |
| 1311 Mirant Americas, Inc. (MAI) | | TransAlta USA Development Corporation | Confidentiality Agreement | $ 0.00 |
| 1312 Mirant Americas, Inc. (MAI) | | TransAlta USA Inc. | Confidentiality Agreement | $ 0.00 |
| 1313 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | TransCanada Energy Ltd. | Confidentiality Agreement | $ 0.00 |
| 1314 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | TransCanada Power Marketing, Ltd. | Edison Electric Institute (EEI) Master Agreement dated 6/30/2000 | $ 0.00 |
| 1315 Mirant Corporation. | | Transcentric, Inc. (formerly, Corporate Management Solutions) | Master Maintenance Agreement | $ 0.00 |
| 1316 Mirant Services, LLC ........ | | Transcentric, Inc. (formerly, Corporate Management Solutions) | Master Software Agreement | $ 0.00 |
| 1317 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Transco Energy Marketing Company | Master Gas Purchase/Sale Contract dated 9/1/1997 | $ 0.00 |
| 1318 Mirant Americas, Inc (MAI) | | TransEnergie U.S. Ltd. | Confidentiality Agreement | $ 0.00 |
| 1319 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Transmontaigne, Inc. | Incoming Unlimited Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), Transmontaigne, Inc. (Counterparty), and Transmontaigne Product Services (Guarantor) effective 9/24/2004 | |
| 1320 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Transok Gas LLC | Base Contract for Gas Purchase/Sale dated 11/1/1996 | $ 0.00 |
| 1321 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | TransTexas Gas Corporation | ISDA & Financial Agreement dated 10/1/2000 | $ 0.00 |
| 1322 Mirant Services, LLC.... | | Travelers c/o McGriff, Seibels & Williams, Inc. | Workers Compensation & Employers Liability Insurance Policy Nos. TC2IUBA87D534803 and TRJUB48TD535A03 for Coverage Period 2/17/2003-2/1/2004 | $ 0.00 |
| 1323 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Tri-State Generation and Transmission Association, Inc. | Service Agreement for Non-Firm Point-To-Point Transmission dated 5/8/2000 | $ 0.00 |
| 1324 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Tri-State Generation and Transmission Association, Inc. | Service Agreement for Short-Term Firm Point-To-Point dated 6/18/2002 | $ 0.00 |
| 1325 Mirant Americas, Inc. (MAI) ............. | | Triumph Securities Corporation | Confidentiality Agreement | $ 0.00 |
| 1326 Mirant Corporation. ....... | New Mirant | Twin City Fire Insurance Company c/o McGriff, Seibels & Williams, Inc. | Directors & Officers Liability Insurance Policy No. NDA020089-01 for Coverage Period 4/2/2001-8/11/2002 | $ 0.00 |
| 1327 Mirant Corporation. | New Mirant | Twin City Fire Insurance Company c/o McGriff, Seibels & Williams, Inc. | Directors & Officers Liability Insurance Policy No. NDA020089-01 for Coverage Period 8/11/2002-8/11/2003 | $ 0.00 |

## Schedule 12

## Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases

| Mirant Entity | Assignee or Transferee Mirant Entity | Counterparty | Contract Name/Description | POR Cure Amount |
|---|---|---|---|---|
| 1328 Mirant Corporation... | | TXU Energy Retail Company, LP | Station Services Agreement (Wichita Falls) | $ 0.00 |
| 1329 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | TXU Gas Distribution (formerly, Lone Star Gas Company) | Base Contract for the Short-Term Purchase/Sale of dated 4/1/2000 | $ 0.00 |
| 1330 Mirant Wichita Falls, LP... | | TXU Lone Star Pipeline | Service Agreement | $ 0.00 |
| 1331 Mirant Wichita Falls, LP... | | TXU Lone Star Pipeline | Supplemental Agreement to Interruptible Natural Gas Transportation Agreement | $ 0.00 |
| 1332 Mirant Wichita Falls, LP... | | TXU Lone Star Pipeline | Umbrella Intrastate Interruptible Natural Gas Transportation Agreement dated 6/1/2000 | $ 0.00 |
| 1333 Mirant Americas Energy Wichita Falls, L.P. ... | | TXU Lone Star Pipeline, a division of TXU Gas Company | Interruptible Natural Gas Transportation Agreement dated 1/1/2002 | $ 0.00 |
| 1334 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | TXU Portfolio Management Company LP | Confidentiality Agreement | $ 0.00 |
| 1335 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | TXU Portfolio Management Company LP | Confidentiality Agreement | $ 0.00 |
| 1336 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | TXU Portfolio Management Company LP | Incoming Patent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), TXU Portfolio Management Company (Counterparty), and TXU Energy Company, LLC (Guarantor) in the amount of $20,000,000 effective 7/23/2003 | $ 0.00 |
| 1337 Mirant Canal, LLC ... | | Tyco Valves and Controls | Uniform Rental Agreement | $ 3,298.93 |
| 1338 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | UAE Lowell Power LLC | Umbrella Service Agreement for Short-Term Sales dated 1/1/2000 | $ 0.00 |
| 1339 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | UGI Utilities Services | Master Gas Purchase/Sale Contract dated 11/1/1998 | $ 0.00 |
| 1340 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | UGI Utilities, Inc. | Edison Electric Institute (EEI) Master Power Purchase and Sale Agreement dated 7/17/2001 | $ 0.00 |
| 1341 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | UGI Utilities, Inc. | Master Gas Purchase and Sale Contract dated 3/1/1998 | $ 0.00 |
| 1342 Mirant California, LLC ... | | Ultramar Inc. | Confidentiality Agreement | $ 0.00 |
| 1343 Mirant Kendall, LLC ... | | UniFirst Corporation | Contract for Uniforms | 672.80 |
| 1344 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Union Carbide Corporation | Base Contract for Gas Purchase/Sale dated 11/1/1999 | $ 0.00 |
| 1345 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Union Gas Limited | General Terms and Conditions dated 4/14/2000 | $ 0.00 |
| 1346 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Union Gas Limited | Interruptible Service HUB Contract (All Services/A) dated 6/1/2000 | $ 0.00 |
| 1347 Mirant Americas, Inc. (MAI) ... | | United American Corp. | Confidentiality Agreement | $ 0.00 |
| 1348 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | United Illuminating Company | Master Electric Power Purchase and Sale Agreement dated 2/4/1999 | $ 0.00 |
| 1349 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | United Illuminating Company | Transmission Service Agreement (Non-Firm) dated 3/12/1997 | $ 0.00 |
| 1350 Mirant Corporation; Mirant Sugar Creek, LLC; Mirant Zeeland, LLC... | | United Steelworkers Association of America, Local #12502 | Collective Bargaining Agreement | $ 0.00 |
| 1351 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Unifil Power Corp. | Confidentiality Agreement | $ 0.00 |
| 1352 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Unifil Power Corp. | Edison Electric Institute (EEI) Master Power Purchase and Sale Agreement dated 9/30/2002 | $ 0.00 |
| 1353 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Unocal Energy Trading, Inc. | Base Contract for Gas Purchase/Sale dated 8/1/2000 | $ 0.00 |
| 1354 West Georgia Generating Company, L.L.C. ... | | US Filter/Ionpure, Inc. | Mobile DI Service Agreement | $ 0.00 |
| 1355 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | US Steel Group, A Unit of USX | Base Contract for Gas Purchase/Sale dated 7/1/1997 | $ 0.00 |
| 1356 Mirant Canal, LLC ... | | US Vanadium Corporation | Engineering and Consulting Agreement | 19,339.48 |
| 1357 Mirant Canal, LLC ... | | Utility Workers Union of America Local #480 | Collective Bargaining Agreement | $ 0.00 |
| 1358 Mirant Services, LLC ... | | VanDyke Software, Inc. | Master Software Agreement | $ 0.00 |

## Schedule 12

## Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases

| | Mirant Entity | Assignee or Transferee Mirant Entity | Counterparty | Contract Name/Description | POR Cure Amount |
|---|---|---|---|---|---|
| 1359 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Vastar Gas Marketing, Inc. | Firm Gas Sale Contract dated 12/1/1997 | $ 0.00 |
| 1360 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Vastar Gas Marketing, Inc. | Firm Gas Sale Contract dated 12/3/1991 | 0.00 |
| 1361 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Vastar Gas Marketing, Inc. | Firm Gas Sale Contract dated 7/1/1993 | 0.00 |
| 1362 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Vastar Gas Marketing, Inc. | Firm Gas Sale Contract dated 9/1/1997 | 0.00 |
| 1363 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Vastar Gas Marketing, Inc. | Interruptible Gas Purchase/Sale Contract dated 9/1/1997 | 0.00 |
| 1364 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Vastar Gas Marketing, Inc. | Interruptible Gas Sale Contract dated 10/1/1992 | $ 0.00 |
| 1365 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Vastar Resources, Inc. | Base Contract for Gas Purchase/Sale dated 12/1/1999 | 0.00 |
| 1366 | Mirant Corporation………………………………… | Mirant Services, LLC | VeriSign, Inc. | Master Software Agreement | $ 0.00 |
| 1367 | Mirant Corporation………………………………… | Mirant Services, LLC | VERITAS Software Corporation (formerly, WQuinn Associates Inc.) | Master Software Agreement | 0.00 |
| 1368 | Mirant Services, LLC ………………………………… | | Veritas Software Global Corp | Master Software Agreement | 0.00 |
| 1369 | Mirant Services, LLC ………………………………… | | Verify, Inc. | Master Software Agreement | 0.00 |
| 1370 | Mirant Services, LLC ………………………………… | | Verizon | Master Telecommunications Agreement | 26,319.78 |
| 1371 | Shady Hills Power Company, LLC …………………… | | Verizon Florida, Inc. | Agreement (Florida ICB FL0203045) dated 1/31/2003 | 792.28 |
| 1372 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Vermont Gas Systems, Inc. | Base Contract for Gas Purchase/Sale dated 8/1/2001 | $ 0.00 |
| 1373 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Vermont Gas Systems, Inc. | Confidentiality Agreement | 0.00 |
| 1374 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Vermont Gas Systems, Inc. | Master Monthly Netting/Close-Out Netting Agreement dated 8/1/2001 | 0.00 |
| 1375 | Mirant Services, LLC ………………………………… | | Vertex Inc. | Master Software Agreement | $ 0.00 |
| 1376 | Mirant Services, LLC ………………………………… | | ViaNovus, Inc. (formerly, Paragon Company) | Master Software Agreement | 0.00 |
| 1377 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Virginia Electric and Power Company | Service Agreement for Firm Point-To-Point Transmission dated 10/7/1998 | 0.00 |
| 1378 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Virginia Electric and Power Company | Transmission Service Agreement (Non-Firm) dated 11/4/1996 | $ 0.00 |
| 1379 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Virginia Power Energy Marketing, Inc. | Confidentiality Agreement | $ 0.00 |
| 1380 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Virginia Power Energy Marketing, Inc. | Incoming Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), Virginia Power Energy Marketing, Inc. (Counterparty), and Dominion Resources, Inc. (Guarantor) in the amount of $15,000,000 effective 4/26/2001 | 0.00 |
| 1381 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Virginia Power Services Energy Corp. Inc. | Base Contract for Gas Purchase/Sale dated 5/1/2000 | $ 0.00 |
| 1382 | Mirant Delta, LLC (successor-in-interest to Mirant Bay Area Procurement, LLC f/k/a Bay Area Power Services, LLC)… | | Vogt-NEM, Inc. | Agreement for the Purchase and Sale of Equipment dated 10/1/2000 | $ 0.00 |
| 1383 | Mirant Services, LLC ………………………………… | | W. Ray Wallace & Associates | Master Agreement for Services dated 10/24/2001 | $ 0.00 |
| 1384 | Mirant Services, LLC ………………………………… | | Wade Goins | Consulting Agreement | 0.00 |
| 1385 | West Georgia Generating Company, L.L.C. ……… | Mirant Caribbean, Inc. | Walhall Oil Company | Fuel Oil Purchase and Sale Agreement between West Georgia Generating Company and Walhall Oil Company dated 1/9/2000 | 0.00 |
| 1386 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Washington Gas Energy Services, Inc. | Alliance Agreement | $ 0.00 |
| 1387 | Mirant Americas Energy Marketing, LP (MAEM)… | Mirant Energy Trading, LLC (MET) | Washington Gas Energy Services, Inc. | Base Contract for Gas Purchase/Sale dated 11/1/1996 | 0.00 |

## Schedule 12

### Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases

| Mirant Entity | Assignee or Transferee Mirant Entity | Counterparty | Contract Name/Description | POR Cure Amount |
|---|---|---|---|---|
| 1388 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading, LLC (MET) | Washington Gas Energy Services, Inc. | Incoming Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), Washington Gas Energy Services, Inc. (Counterparty), and WGL Holdings, Inc. (Guarantor) in the amount of $25,000,000 effective 12/28/2004 | $       0.00 |
| 1389 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading, LLC (MET) | Washington Gas Energy Services, Inc. | International Swap Dealers Association (ISDA) Master Agreement dated 6/21/2002 | $       0.00 |
| 1390 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading, LLC (MET) | Washington Gas Energy Services, Inc. | Master Monthly Netting/Close-Out Netting Agreement dated 10/1/2000 | $       0.00 |
| 1391 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading, LLC (MET) | Washington Gas Energy Services, Inc. | Master Purchase and Sale Agreement | $       0.00 |
| 1392 Mirant Chalk Point, LLC ....................... | | Washington Gas Light Company | Delivery Service Agreement for Chalk Point Electric dated 1/1/1994 | $       0.00 |
| 1393 Mirant Americas Procurement, Inc. (MAPI); Mirant Services, LLC ................................. | | Waukesha Electric Systems c/o Stoughton and Associates, Inc. | Equipment Purchase Order No. 20170874 dated 5/30/2001 | $     32,366.66 |
| 1394 Mirant Americas Procurement, Inc. (MAPI); Mirant Services, LLC ................................. | | Waukesha Electric Systems c/o Stoughton and Associates, Inc. | Equipment Purchase Order No. 20170956 dated 6/11/2001 | $       0.00 |
| 1395 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading, LLC (MET) | WD Energy Services, Inc., formerly, EnCana Energy Services, Inc. | Master Monthly Netting/Close-Out Netting Agreement dated 9/1/1998 | $       0.00 |
| 1396 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Services, LLC | Weather Service International | Services Agreement | 1,580.00 |
| 1397 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Services, LLC | Websense Inc. | Master Software Agreement | 0.00 |
| 1398 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading LLC (MET) | West Georgia Generating Company, L.L.C. | Edison Electric Institute (EEI) Master Power Purchase and Sale Agreement dated 10/4/2001 | 0.00 |
| 1399 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading LLC (MET) | West Georgia Generating Company, L.L.C. | Edison Electric Institute (EEI) Master Power Purchase and Sale Agreement dated 10/4/2001 | $       0.00 |
| 1400 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading LLC (MET) | Westar Energy, Inc. | Transmission Service Agreement (Non-Firm) dated 1/24/1997 | $       0.00 |
| 1401 Mirant Delta, LLC ............................. | Mirant Americas, Inc. (MAI) | Westchester Fire Insurance Company c/o Marsh USA | Pipeline Franchise Lease Bond (County of Contra Costa, California) Surety Bond Policy No. KO6057858 for Continuous Coverage | $       0.00 |
| 1402 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading, LLC (MET) | Western Area Power Administration, Sierra Nevada Region (Folsom, CA) | Service Agreement for Non-Firm Point-To-Point Transmission dated 6/5/2000 | $       0.00 |
| 1403 Mirant Americas, Inc. (MAI) .................... | | Western Electricity Coordinating Council (WECC) | Membership Agreement | 0.00 |
| 1404 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading LLC (MET) | Western Gas Resources, Inc. | Base Contract for Gas Purchase/Sale dated 6/1/1999 | 0.00 |
| 1405 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading LLC (MET) | Western Kentucky Gas Company | Close-Out Netting dated 2/1/1998 | 0.00 |
| 1406 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading LLC (MET) | Westport Petroleum, Inc. | Incoming Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), Westport Petroleum, Inc. (Counterparty), and Mitsui & Co. (USA) (Guarantor) in the amount of $10,000,000 effective 7/27/2004 | 0.00 |
| 1407 Mirant Services, LLC ........................... | Mirant Caribbean, Inc. | WIDE Technical Services, Inc. | Consulting Agreement dated 1/20/2001 | 0.00 |
| 1408 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading LLC (MET) | Wild Goose Storage, Inc. | Master Gas Purchase/Sale Contract dated 6/1/1998 | 0.00 |
| 1409 Mirant Americas Energy Marketing, LP (MAEM).... | Mirant Energy Trading LLC (MET) | Wild Goose Storage, Inc. | Master Monthly Netting/Close-Out Netting Agreement dated 6/1/1998 | 0.00 |
| 1410 Mirant Services, LLC ........................... | | William M. Mercer Inc. | Master Consulting Agreement | $       0.00 |

## Schedule 12

## Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases

| Mirant Entity | Assignee or Transferee Mirant Entity | Counterparty | Contract Name/Description | POR Cure Amount |
|---|---|---|---|---|
| 1411 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Williams Production RMT Company, successor in interest through merger of Barrett Resources Company | Base Contract for Gas Purchase/Sale dated 6/1/1997 | $ 0.00 |
| 1412 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Williams Production RMT Company, successor in interest through merger of Barrett Resources Company | ISDA & Financial Agreement dated 9/1/1999 | $ 0.00 |
| 1413 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Williams Production RMT Company, successor in interest through merger of Barrett Resources Company | Master Monthly Netting/Close-Out Netting Agreement dated 10/22/1998 | $ 0.00 |
| 1414 Mirant Services, LLC .................................. | New Mirant | Wilson WindoWWare | Master Software Agreement | $ 0.00 |
| 1415 Mirant Corporation................................... | New Mirant | Winterthur International America Insurance Company/Arise Incorporated c/o McGriff, Seibels & Williams, Inc. | Jurisdictional Boiler Inspection Services Insurance Policy No. CP00377302 for Coverage Period 1/21/2002-1/21/2003 | $ 0.00 |
| 1416 Mirant Corporation................................... | New Mirant | Winterthur International America Insurance Company/Arise Incorporated c/o McGriff, Seibels & Williams, Inc. | Jurisdictional Boiler Inspection Services Insurance Policy No. CP00377303 for Coverage Period 1/21/2003-1/21/2004 | $ 0.00 |
| 1417 Mirant Corporation................................... | New Mirant | Winterthur International America Insurance Company c/o McGriff, Seibels & Williams, Inc. | Jurisdictional Boiler Inspection Services Policy No. CP00377303 for Coverage Period 1/21/2003-1/21/2004 | $ 0.00 |
| 1418 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Wisconsin Electric Power Company | Firm Gas Sale Contract dated 11/1/1993 | $ 0.00 |
| 1419 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Wisconsin Energy Corporation | Incoming Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), Kartex Energy Management/Blackhawk Energy Services, LLC (Counterparty), and Wisconsin Energy Corporation (Guarantor) in the amount of $2,500,000 effective 7/25/2002 | $ 0.00 |
| 1420 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Wisconsin Gas Company | Base Contract for Gas Purchase/Sale dated 9/1/1997 | $ 0.00 |
| 1421 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Wisconsin Gas Company | Close-Out Netting dated 9/1/1997 | $ 0.00 |
| 1422 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Wisconsin Gas Company | Master Contract dated 7/1/2002 | $ 0.00 |
| 1423 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Wisconsin Power and Light Company | Form of Service Agreement for Firm Point-To-Point Transmission dated 4/17/1998 | $ 0.00 |
| 1424 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Wisconsin Power and Light Company | Form of Service Agreement for Non-Firm Point-To-Point Transmission dated 4/17/1998 | $ 0.00 |
| 1425 Mirant Americas, Inc. (MAI) ..................... | Mirant Energy Trading, LLC (MET) | Wisconsin Public Power Inc. | Confidentiality Agreement | $ 0.00 |
| 1426 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Wisconsin Public Service Corp. | Base Contract for Gas Purchase/Sale dated 5/21/1997 | $ 0.00 |
| 1427 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Wisconsin Public Service Corporation — A WPS Resources Company | Form of Service Agreement for Firm Point-To-Point Transmission dated 8/25/1997 | $ 0.00 |
| 1428 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Wisconsin Public Service Corporation — A WPS Resources Company | Form of Service Agreement for Non-Firm Point-To-Point Transmission dated 2/7/1997 | $ 0.00 |
| 1429 Mirant Services, LLC ............................... | Mirant Energy Trading, LLC (MET) | Wise Solutions, Inc. | Master Software Agreement | $ 0.00 |
| 1430 Shady Hills Power Company, LLC .............. | Mirant Energy Trading, LLC (MET) | Withlacoochee River Electric Cooperative, Inc. | Station Service and Start-Up Power Electric Service Agreement dated 8/8/2001 | $ 0.00 |
| 1431 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Woodward Marketing, L.L.C. | Master Monthly Netting/Close-Out Netting Agreement dated 7/26/2002 | $ 0.00 |
| 1432 Mirant Services, LLC ............................... | Mirant Energy Trading, LLC (MET) | Workshare Technology, Inc. | Master Software Agreement | $ 0.00 |
| 1433 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | WPS Energy Services, Inc. | Base Contract for Gas Purchase/Sale dated 9/1/1997 | $ 0.00 |
| 1434 Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | WPS Energy Services, Inc. | Confidentiality Agreement | $ 0.00 |

99

## Schedule 12

### Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases

| | Mirant Entity | Assignee or Transferee Mirant Entity | Counterparty | Contract Name/Description | POR Cure Amount |
|---|---|---|---|---|---|
| 1435 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | WPS Energy Services, Inc. | Incoming Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), WPS Energy Services, Inc. (Counterparty), and WPS Resources Corporation (Guarantor) in the amount of $9,000,000 effective 7/14/2004 | $ 0.00 |
| 1436 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | WPS Energy Services, Inc. | Net Settlement Agreement dated 1/1/1998 | $ 0.00 |
| 1437 | Mirant Americas, Inc. (MAI) ... | | WPS Power Development, Inc. | Confidentiality Agreement | $ 0.00 |
| 1438 | Mirant Americas, Inc. (MAI) ... | | WPS Power Development, Inc. | Confidentiality Agreement | $ 0.00 |
| 1439 | Mirant Canal, LLC ... | | WSC Environmental Consultant | Machine Lease Agreement | $ 680.22 |
| 1440 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | WSI Corporation | Forecast Services Agreement, as amended dated 5/15/2001 | $ 0.00 |
| 1441 | Mirant New England, Inc. ... | | XEROX | Machine Lease Agreement | $ 381.92 |
| 1442 | Mirant Kendall, LLC ... | | XEROX | Machine Lease Agreement | $ 73.50 |
| 1443 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | Xerox Corporation | Confidentiality Agreement | $ 0.00 |
| 1444 | Mirant Corporation... | New Mirant | XL Insurance Company c/o McGriff, Seibels & Williams, Inc. | Directors & Officers Liability Insurance Policy No. XLDCR-1012-01 for Coverage Period 4/2/2001-8/1/2002 | $ 0.00 |
| 1445 | Mirant Corporation... | New Mirant | XL Insurance Company c/o McGriff, Seibels & Williams, Inc. | Directors & Officers Liability Insurance Policy No. XLDCR-1012-01 for Coverage Period 8/1/2002-8/1/2003 | $ 0.00 |
| 1446 | Mirant Corporation and Subsidiaries ... | New Mirant | XL Insurance Limited c/o McGriff, Seibels & Williams, Inc. | Commercial General Liability & Excess Liability Insurance Policy No. XLUMB-10121 for Coverage Period 4/2/2001-4/2/2002 | $ 0.00 |
| 1447 | Mirant Corporation and Subsidiaries ... | New Mirant | XL Insurance Limited c/o McGriff, Seibels & Williams, Inc. | Commercial General Liability & Excess Liability Insurance Policy No. XLUMB-10121 for Coverage Period 4/2/2002-4/2/2003 | $ 0.00 |
| 1448 | Mirant Corporation... | New Mirant | XL Insurance Limited c/o McGriff, Seibels & Williams, Inc. | Commercial General Liability & Excess Liability Policy No. XLUMB-10121 for Coverage Period 4/2/2001-4/2/2006 | $ 0.00 |
| 1449 | Mirant Americas Energy Marketing, LP (MAEM)... | Mirant Energy Trading, LLC (MET) | XL Insurance Ltd. | Incoming Unlimited Parent Guaranty by and between Mirant Americas Energy Marketing, LP (MAEM), XL Trading Partners, Ltd. (Counterparty), and XL Insurance, Ltd. (Guarantor) effective 4/13/2001 | $ 0.00 |
| 1450 | Mirant Corporation... | New Mirant | XL Specialty Insurance Company c/o McGriff, Seibels & Williams, Inc. | Directors & Officers Liability Insurance Policy No. ELU08436-01 for Coverage Period 8/1/2003-8/1/2005 | $ 0.00 |
| 1451 | Mirant Corporation... | New Mirant | XL Specialty Insurance Company c/o McGriff, Seibels & Williams, Inc. | Fiduciary Liability Policy No. ELU08448-05 for Coverage Period 4/2/2005-4/2/2006 | $ 0.00 |
| 1452 | Mirant Texas, LP ... | | Young Equipment | Rental Agreement (Site Forklift) | $ 4,599.05 |
| 1453 | Mirant Corporation... | Mirant Services, LLC | Zaiso Enterprises Inc. | Master Software Agreement | $ 0.00 |

## SCHEDULE 13

### PROVISIONS OF CERTIFICATE OF INCORPORATION OF
### NEW MIRANT RESTRICTING TRANSFER OF SECURITIES

Section          . Restrictions on Transfer of Capital Stock

(a)   *Certain Definitions*

As used in this Section          :

"5-Percent Shareholder" means a "5-percent shareholder" of the Corporation as defined in Treasury Regulation Section 1.382-2T(g).

"Business Day" means any day, other than a Saturday, Sunday or day on which banks located in New York, New York, are authorized or required by law to close.

"Effective Date" means the Effective Date, as such term is defined in the Plan.

"Entity" means an entity within the meaning of Treasury Regulation Section 1.382-3(a)(l).

"IRC" means the Internal Revenue Code of 1986, as amended from time to time.

"Percentage Stock Increase" means the increase in the Percentage Stock Ownership of the New Mirant Common Stock by a 5-Percent Shareholder (other than a public group segregated under Treasury Regulation Section 1 .382-2T(j)(2) and other than a public group segregated under Treasury Regulation Section l.382-2T(j)(3)(i) by reason of a Transfer of the New Mirant Common Stock by a 5-Percent Shareholder that owned such New Mirant Common Stock on the Effective Date and was a 5-Percent Shareholder at such time) over the lowest Percentage Stock Ownership of the New Mirant Common Stock by such 5-Percent Shareholder at any time since the Effective Date. For this purpose, the New Mirant Common Stock owned by a shareholder prior to becoming a 5-Percent Shareholder shall be deemed to be owned by a public group (as defined in Treasury Regulation Section l.382-2T(f)(13)) and not by the 5-Percent Shareholder during the period before the shareholder first became a 5-Percent Shareholder.

"Percentage Stock Ownership" means percentage stock ownership of the New Mirant Common Stock determined in accordance with the Treasury Regulations under Section 382 of the IRC.

"Plan" means the Joint Chapter 11 Plan of Reorganization of Mirant Corporation et al dated January 19, 2005, as amended on          and          .

"Prohibited Transfer" means a purported Substantial Stockholder Transfer, but only to the extent that such Transfer is null and void *ab initio* under paragraph (b) or (c) of this Section          .

"Restriction Notice" means a written notice provided by the Corporation to a potential Transferee, prior to 5:00 p.m. (New York time) on the fifth Business Day following the day of receipt by the Corporation of a Transferee Notice, stating that the Corporation believes the Restriction Period has commenced and the Termination Date has not yet occurred.

"Restriction Period" means the period:

(1) beginning on the earliest testing date (as described in Treasury Regulation Section 1.382-2(a)(4)), following the Effective Date, on which the aggregate Percentage Stock Increases of all 5-Percent Shareholders (taking into account all pending Transfers) equals or exceeds the Threshold Percentage; and

(2) ending on the earlier of (A) the day after the second anniversary of the Effective Date and (B) the earliest date on which the Board of Directors determines that (a) the consummation of the Plan did not satisfy the requirements of section 382(1)(5) of the IRC, (b) treatment under section 382(1)(5) of the IRC is not in the best interests of the Corporation, its affiliates and its stockholders, taking into account all relevant facts and circumstances, including, without limitation, the market and other impact of maintaining these Transfer restrictions herein, (c) an ownership change (within the meaning of

section 382 of the IRC) would not result in a substantial limitation on the ability of the Corporation (or a direct or indirect subsidiary of the Corporation) to use otherwise available Tax Benefits, or (d) no significant value attributable to Tax Benefits would be preserved by continuing the Transfer restrictions herein (the earliest of the dates described in this clause (2) being hereafter referred to as the "Termination Date").

The Board of Directors promptly shall determine, in its sole discretion, whether it is more likely than not that the consummation of the Plan will satisfy the requirements of section 382(1)(5) of the IRC.

"Substantial Stockholder" means a person or Entity whose Percentage Stock Ownership of the New Mirant Common Stock equals or exceeds 5%.

"Substantial Stockholder Transfer" means a Transfer to a person or Entity who is, or would become as a result of the Transfer, a Substantial Stockholder.

"Tax Benefits" means net operating loss carryovers and "net unrealized built-in loss."

"Threshold Percentage" means [35% minus the Percentage Stock Ownership on the Effective Date by 5-Percent Shareholders other than any direct public group (as such term is used in Treasury Regulation Section 1 .382-2T) of the Corporation].[insert no. when available]

"Transfer" means any direct or indirect sale, transfer, exchange, assignment, conveyance or other disposition for consideration, whether voluntary or involuntary, and whether by operation of law or otherwise, but not including an issuance, grant, redemption or repurchase of the New Mirant Common Stock. A Transfer also shall include, the grant (other than by the Corporation) or transfer of an option, but only if the option would be deemed exercised pursuant to Treasury Regulation Section 1 .382-4(d)(2)(i)(A) in connection with such grant or transfer.

"Transferee" means any person or Entity to whom the New Mirant Common Stock is Transferred and who is, or would become as a result of such Transfer, a Substantial Stockholder.

"Transferee Notice" means a written notice provided by a potential Transferee to the Corporation, at least seven and not more than twelve Business Days prior to completion of a potential Transfer, stating (i) the name, address, facsimile number and e-mail address, and Percentage Stock Ownership of the Transferee prior to the Transfer, (ii) if known to the Transferee, the name and address of the Transferor, (iii) the number of shares subject to the Transfer, and (iv) the proposed date of "completion" of the Transfer ("completion" occurs when all steps have been taken to effect the Transfer of beneficial ownership, for federal income tax purposes, of the New Mirant Common Stock referenced in such Transferee Notice).

"Transferor" means any person or Entity that Transfers the New Mirant Common Stock to a person or Entity who is, or would become as a result of such Transfer, a Substantial Stockholder.

"Treasury Regulation" means a Treasury Regulation promulgated under the IRC.

(b)    *Transfer Restrictions ("Transfer Restrictions")*

A Substantial Stockholder Transfer during the Restriction Period shall be null and void *ab initio* and shall not be effective to Transfer New Mirant Common Stock if the Substantial Stockholder; whose Percentage Stock Ownership would be increased by the purported Transfer was a Substantial Stockholder before the Transfer. If such purported Substantial Stockholder was not a Substantial Stockholder before the Transfer, a Substantial Stockholder Transfer during the Restriction Period shall be null and void *ab initio* and shall not be effective to Transfer New Mirant Common Stock, but only to the minimum extent necessary to prevent the purported Substantial Stockholder from becoming an actual Substantial Stockholder. The foregoing Transfer restrictions shall not (i) apply to Transfers pursuant to a tender offer to purchase more than 50% of the New Mirant Common Stock then outstanding, provided, that such tender offer results in the acquisition of beneficial ownership of the New Mirant Common Stock by any person or group which, when combined with the New Mirant Common Stock beneficially owned by such person or group represents more than 50% of the voting power represented by all then-outstanding the New Mirant Common Stock (without regard to tenders during any subsequent offering period), or (ii) preclude the settlement of a transaction entered into through

the facilities of any national securities exchange or any national securities quotation system, provided, that if the settlement of the transaction would result in a Transfer that is prohibited by this paragraph (b), such Transfer shall nonetheless be a Prohibited Transfer. The terms "group" and "beneficial" used in this paragraph shall have the meanings provided thereto in Rule 13d under the Securities Exchange Act of 1934, as amended.

(c)  *Notice and Permitted Transfers*

A Substantial Stockholder Transfer shall be null and void *ab initio* unless the Transferee provides a Transferee Notice to the Corporation. A Substantial Stockholder Transfer as to which a Transferee Notice is provided to the Corporation shall not be subject to the Transfer Restrictions set forth in paragraph (b) or this paragraph (c) of this Section          , unless "completion" will occur during the Restriction Period and the Corporation has provided a Restriction Notice to the potential Transferee with respect to such Transfer. Notwithstanding anything herein to the contrary, if the Corporation receives a Transferee Notice on a day that, but for such Transfer (taking into account all pending Transfers), would not be in the Restriction Period (but such Transfer would cause the Restriction Period to begin), then such Transfer shall be treated as a Prohibited Transfer to the extent it would cause the Restriction Period to begin; provided that if the Corporation receives more than one Transferee Notice under such circumstances, such Transfers shall be treated as Prohibited Transfers proportionately to the extent that they would cause the Restriction Period to begin.

Notwithstanding paragraph (b) and this paragraph (c) of this Section          , the Transfer Restrictions in such paragraphs shall not apply to a Substantial Stockholder Transfer, and such Transfer shall not be null and void *ab initio*, if the Transferee obtains the prior written approval of the Transfer by the Board of Directors. As a condition to granting its approval under the preceding sentence, the Board of Directors may require (at the expense of the Transferee) an opinion of counsel reasonably acceptable to the Board of Directors that the Transfer will not result in the application of any IRC section 382 limitation on the use of Tax Benefits by the Corporation (or a direct or indirect subsidiary of the Corporation).

(d)  *Recovery of Prohibited Transfers*

The Corporation may institute legal proceedings to force rescission of a Prohibited Transfer. Upon written demand by the Corporation, the purported Transferee of a Prohibited Transfer shall deliver or cause to be delivered any certificate or other evidence of ownership of the New Mirant Common Stock that is the subject of the Prohibited Transfer (the "Prohibited Stock"), together with any dividends or other distributions that were received by the Transferee from the Corporation with respect to such Prohibited Stock ("Prohibited Distributions"), to an agent designated by the Board of Directors (the "Securities Transfer Agent"). The Securities Transfer Agent promptly shall sell the Prohibited Securities to one or more buyers. The Securities Transfer Agent shall not act or be treated as acting as an agent for or on behalf of the purported Transferee or the Corporation and shall have no right to bind the Purported Transferee or the Corporation, in contract or otherwise, but shall act only to carry out the ministerial functions prescribed in these Transfer Restrictions. If the purported Transferee has resold the Prohibited Stock before receiving the Corporation's demand to surrender the Prohibited Stock to the Securities Transfer Agent, the purported Transferee shall be deemed to have sold the Prohibited Stock for the Securities Transfer Agent and shall be required to Transfer to the Securities Transfer Agent any Prohibited Distributions and the proceeds of such sale. If the purported Transferee fails to surrender the Prohibited Stock or proceeds of a sale thereof to the Securities Transfer Agent, together with any Prohibited Distributions within three Business Days from the date the Corporation makes a demand for such surrender, then the Corporation may institute legal proceedings to compel such surrender. If a Transfer is a Prohibited Transfer, but the Transfer did not result from a Transfer of the New Mirant Common Stock, the Substantial Stockholder or any person, entity or public group whose ownership of the New Mirant Common Stock is attributed to the Substantial Stockholder (collectively, the "Prohibited Party Group") shall not be required to dispose of any interest that is not the New Mirant Common Stock, but shall be required to dispose of, and shall be deemed to have disposed of, a sufficient number of shares of the New Mirant Common Stock (which New Mirant Common Stock shall be disposed of in the inverse order in which it was acquired by members of the Prohibited Party Group) to cause the Transfer, following such

disposition, not to be a prohibited Transfer. The New Mirant Common Stock required to be so disposed of shall be considered Prohibited Stock and the certificates for such Prohibited Stock, together with any Prohibited Distributions thereon, shall be delivered to the Securities Transfer Agent for disposition by the Securities Transfer Agent in accordance with this paragraph (d) and paragraph (t) of this Section        . The disposition of such Prohibited Stock by the Securities Transfer Agent shall be deemed to occur simultaneously with the Prohibited Transfer.

(e)   *Treatment of Prohibited Transfers*

No employee or agent of the Corporation shall record any Prohibited Transfer and the purported Transferee shall not be recognized as a stockholder of Prohibited Stock for any purpose whatsoever and shall not be entitled, with respect to such Prohibited Stock, to any rights of a stockholder of the Corporation, including, without limitation, the right to vote such Prohibited Stock or to receive dividend distributions, whether liquidating or otherwise, in respect thereof. Once Prohibited Stock has been acquired in a Transfer that is not a Prohibited Transfer, the Prohibited Stock shall cease to be Prohibited Stock.

(f)   *Proceeds of Prohibited Transfers*

The Securities Transfer Agent shall apply any proceeds of a sale by it of Prohibited Stock (or, if the purported Transferee resold the Prohibited Stock before the Securities Transfer Agent could recover the Prohibited Stock from the Purported Transferee, the proceeds from such resale of the Prohibited Stock by the Purported Transferee), as follows: (a) first, to reimburse itself for its costs and expenses in connection with its duties as Securities Transfer Agent hereunder; (b) second, from such proceeds as well as other funds available in the Prohibited Transfers Fund, to reimburse the purported Transferee for the amounts paid by the purported Transferee for the Prohibited Stock, and (c) third, to pay any remaining balance of such proceeds into a fund (the "Prohibited Transfers Fund") that will hold all excess proceeds from sales of Prohibited Stock. The Securities Transfer Agent shall be the disbursing agent of the Prohibited Transfers Fund, and such fund shall be used to reimburse purported Transferees for the amounts paid by the purported Transferees for Prohibited Stock. At the end of the Restriction Period, any remaining amounts in the Prohibited Transfers Fund shall be paid to the U.S. Treasury Department.

(g)   An affirmative vote of two-thirds of the shareholders of the Corporation shall be required to amend these Transfer Restrictions if such amendment would impose additional restrictions, burdens or requirements on any Transfer of New Mirant Common Stock.

(h)   *Legend on Certificates*

All certificates reflecting the New Mirant Common Stock of the Corporation on or after the Effective Date shall, until the end of the Restriction Period, bear a conspicuous legend in substantially the following form:

THE TRANSFER OF THE SECURITIES REPRESENTED HEREBY IS SUBJECT TO RE-STRICTION PURSUANT TO ARTICLE [        ] OF THE CERTIFICATE OF INCORPORA-TION OF THE CORPORATION, AS AMENDED AND IN EFFECT FROM TIME TO TIME, A COPY OF WHICH MAY BE OBTAINED FROM THE CORPORATION UPON REQUEST.

(i)   The Board of Directors of the Corporation shall have the power to determine, in its sole discretion, all matters related to this Section        of Article        , including matters necessary or desirable to administer or to determine compliance with this Section        of Article        .

(j)   Notice. All notices and other communications provided for under this Article        shall be in writing and shall be delivered by overnight courier service, faxed, or e-mailed, if to the Corporation, by overnight delivery to its address at 1155 Perimeter Center West, Atlanta, Georgia 30338-5416, Attention: Corporate Secretary, with a copy to Vice President, Tax, by confirmed facsimile, to facsimile number 678-579-        to the attention of, or by email, to email address        . If to a Transferee, by overnight delivery, confirmed facsimile or e-mail to address, facsimile number or e-mail address set forth in its Transferee Notice. All such notices shall be deemed given when received by the Corporation or Transferee, as the case may be.

(c) *Other distributions.*   Distribution to all holders of New Mirant Common Stock of any assets (other than ordinary cash dividends paid from earnings), debt securities, preferred stock or any options, warrants or other rights to purchase debt securities, assets or other securities of New Mirant; provided, that the foregoing shall not apply to any distribution referred to under (a) or (b) above. The adjustment shall be based on the following formula: $E' = E \times ((M - F)/M)$

> $E'$ = the adjusted Series A Exercise Price or Series B Exercise Price, as applicable.
> $E$ = the current Series A Exercise Price or Series B Exercise Price, as applicable.
> $M$ = the current market price per share of New Mirant Common Stock on the record date.
> $F$ = the fair market value on the record date of the assets, securities, rights or warrants to be distributed in respect of one share of New Mirant Common Stock as determined in good faith by the board of directors of New Mirant.

No adjustment shall be required until the cumulative adjustment required as a result of such events requires an increase or decrease of more than 1% in the prevailing Series A Exercise Price or Series B Exercise Price, as applicable.

(10) *Change of Control Events:*   Upon consolidation or merger, sale of all or substantially all of the assets of New Mirant or a successful tender for at least 80% of the then-outstanding New Mirant Common Stock, the New Mirant Warrants shall be exercisable for the amount of securities, cash or other assets that holders of the Warrants would have acquired if exercised immediately prior to such event. Alternatively, the holders of New Mirant Warrants shall be offered the opportunity to receive a payment equal to the Black-Scholes valuation of the warrants, using a 30% volatility; provided, that if such change of control event occurs after the third anniversary of the Effective Date or is for common equity securities that are registered under the Securities Exchange Act of 1934, then the warrant holders shall not be afforded this opportunity.

(11) *Notice:*   The Warrants shall contain customary provisions for notice before an event that would require an adjustment of the exercise price and customary provisions regarding certain records dates, dividends, extraordinary transactions and liquidation events.

(12) *Listing:*   New Mirant will use commercially reasonable efforts to (a) establish and maintain the registration of the New Mirant Common Stock and the New Mirant Warrants under the Securities Exchange Act of 1934, and (b) list the Warrants on the same exchange or over-the-counter market as the New Mirant Common Stock, or if the Warrants cannot be listed on such exchange or over-the-counter market, any other exchange or over-the-counter market acceptable to New Mirant's board of directors; provided, that it shall not be required to do so if the Warrants do not meet applicable listing requirements.

(13) *Transferability:*   The Warrants shall be freely transferable to the same extent as the New Mirant Common Stock (e.g., the New Mirant Warrants shall be subject to the same post-Effective Date transfer restrictions as the New Mirant Common Stock).

(14) *Voting and Dividends.*   Until a New Mirant Warrant is exercised, the holder thereof, shall have no rights as a shareholder of New Mirant, including, without limitation, the right to vote or to receive dividends or to participate in any transaction that would give rise to an adjustment as contemplated by (9), above.

(15) *Redemption.*   The New Mirant Warrants shall not be redeemable by New Mirant or any other Person.

## SCHEDULE 14
## MARKET PRICES FOR THE DEBTORS' PUBLICLY-TRADED SECURITIES

The market prices for the Debtors' publicly-traded securities from the Petition Date through September 8, 2005[1] are as follows:

| | 7/14/2003 | 9/1/2004 | 1/1/2005 | 2/1/2005 | 3/1/2005 | 4/1/2005 | 5/1/2005 | 6/1/2005 | 7/1/2005 | 8/1/2005 | 9/1/2005 | 9/8/2005 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **MIRANT** | | | | | | | | | | | | |
| 7.4% Sr. Notes . . . . | 59.0 | 62.0 | 73.5 | 76.8 | 80.0 | 78.3 | 76.5 | 77.8 | 83.3 | 94.0 | 102.0 | 113.0 |
| 7.9% Sr. Notes . . . . | 49.5 | 62.0 | 74.5 | 77.8 | 81.3 | 80.5 | 77.5 | 79.5 | 84.5 | 95.3 | 102.5 | 113.5 |
| 5.75% Conv. Sr. Notes . . . . . . . . . . | 65.4 | 59.0 | 72.5 | 75.0 | 77.0 | 77.0 | 76.0 | 77.5 | 82.0 | 89.9 | 98.0 | 108.3 |
| 2.5% Conv. Sr. Notes . . . . . . . . . . | 61.5 | 58.3 | 71.5 | 74.0 | 75.0 | 75.5 | 75.0 | 75.5 | 80.5 | 85.5 | 90.5 | 98.5 |
| **MAG** | | | | | | | | | | | | |
| 7.625% Sr. Notes . . | 75.0 | 83.3 | 107.5 | 113.0 | 114.0 | 113.3 | 113.8 | 115.3 | 116.3 | 115.3 | 118.0 | 118.5 |
| 7.2% Sr. Notes . . . . | 62.0 | 83.3 | 107.5 | 113.0 | 114.0 | 112.5 | 113.5 | 115.0 | 115.8 | 115.3 | 118.0 | 118.0 |
| 8.3% Sr. Notes . . . . | 61.0 | 82.8 | 105.8 | 110.3 | 113.5 | 111.5 | 108.3 | 110.0 | 115.8 | 115.0 | 118.8 | 123.5 |
| 8.5% Sr. Notes . . . . | 56.5 | 83.3 | 104.3 | 105.3 | 108.8 | 106.0 | 103.3 | 103.8 | 108.0 | 114.9 | 118.8 | 125.5 |
| 9.125% Sr. Notes . . | 57.0 | 82.8 | 104.3 | 108.0 | 111.5 | 108.0 | 105.5 | 105.0 | 109.0 | 118.5 | 122.5 | 128 |
| **EQUITY** | | | | | | | | | | | | |
| MIRKQ.PK . . . . . . | $2.01 | $0.40 | $ 0.39 | $ 0.27 | $ 0.29 | $ 0.29 | $ 0.37 | $ 0.35 | $ 0.63 | $ 0.78 | $ 0.82 | $ 1.15 |

---

[1] This is the date the Plan Term Sheet between the Debtors, the Committees and Phoenix was made public.

**EXHIBIT A**

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**EXHIBIT B**

**DISCLOSURE STATEMENT ORDER**
**AND**
**NOTICE OF THE CONFIRMATION HEARING**

**EXHIBIT C**

**LIQUIDATION ANALYSIS**

### Liquidation Analysis

#### A.  Introduction

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired allowed claim or interest either (i) accepts the plan or (ii) receives or retains under the plan property of a value, as of the effective date, that is not less than the value such holder would receive or retain if the debtors were liquidated under Chapter 7 of the Bankruptcy Code on the effective date. The first step in meeting this test is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtors' assets in the context of a Chapter 7 liquidation in which a Chapter 7 trustee is appointed and charged with reducing to cash any and all assets of the Debtors. The trustee would be required to either (i) sell the generating assets owned by the Debtors and their non-Debtor affiliates as going-concerns or (ii) shut down the Debtors' businesses, file the non-Debtor operating subsidiaries in affiliated Chapter 7 cases and sell the individual assets of the Debtors. In preparing the Liquidation Analysis, the Debtors determined that the greatest value would be realized if the Chapter 7 trustee were able to sell the cash-flow positive generating assets on a going-concern basis. Accordingly, this is the assumption employed in preparing the Liquidation Analysis. THERE EXISTS A RISK THAT IF THE DEBTORS WERE TO CONVERT THEIR CASES TO CHAPTER 7 THAT THE TRUSTEE WOULD NOT ELECT TO LIQUIDATE THE GENERATING ASSETS AS GOING-CONCERNS AND WOULD INSTEAD SELL THE INDIVIDUAL ASSETS OF THE DEBTORS.

The gross amount of cash available would be the sum of the proceeds from the disposition of the Debtors' assets, including cash held by the Debtors at the time of the commencement of the hypothetical Chapter 7 case. Such amount is reduced by the amount of any claims secured by such assets, the costs and expenses of the liquidation, and such additional administrative expenses and priority claims that may result from the termination of the Debtors' business and the use of Chapter 7 for purposes of the hypothetical liquidation. Any remaining net cash would be allocated to creditors and stockholders in strict priority in accordance with section 726 of the Bankruptcy Code.

A general summary of the assumptions used by the Debtors' management in preparing the Liquidation Analysis follows.

#### B.  Variance

Estimating recoveries in any Chapter 7 case is an uncertain process due to the number of unknown variables such as business, economic and competitive contingencies beyond the Chapter 7 trustee's control. The underlying projections contained in the Liquidation Analysis have not been compiled or examined by independent accountants. The Debtors make no representations regarding the accuracy of the projections or a Chapter 7 trustee's ability to achieve forecasted results. Many of the assumptions underlying the projections are subject to significant uncertainties. Inevitably, some assumptions will not materialize and unanticipated events and circumstances may affect the ultimate financial results. In the event these Chapter 11 Cases are converted to Chapter 7, actual results may vary materially from the estimates and projections set forth in the Liquidation Analysis. As such, the Liquidation Analysis is speculative in nature.

#### C.  Key Assumptions

##### (i)  General Assumptions

*Timing:*  The Debtors cases are converted to Chapter 7 liquidations on December 31, 2005.

*Chapter 7 Trustee:*  One Chapter 7 Trustee is appointed to oversee the liquidation of the various Debtor estates. An assumption of multiple Chapter 7 Trustees would imply longer delays to distribution, lower recoveries and higher administrative costs.

*Corporate and Legal Structure:*  The Liquidation Analysis assumes that the Chapter 7 trustee would liquidate the Estates on a Debtor Group basis. Absent liquidation by Debtor Group, it is likely that the creditors of the Debtors' estates would engage in costly and contentious litigation (possibly resulting in the appointment of multiple trustees) thereby increasing costs and reducing recoveries.

110

### (ii)    Asset Assumptions

*Cash and Equivalents:*    Consists of (i) unrestricted cash in banks or operating accounts, (ii) specifically recoverable restricted cash, and (iii) liquid investments with maturities of three months or less. Cash and equivalents are assumed to be fully recoverable.

*Power Assets:*    Assumes that each of the power producing assets (or equity interests in power producing assets) is sold as a going concern during a three month period. The estimated values realized for such assets reflect, among other things, the following factors:

- Projected power prices by region

- Fuel costs, based on fuel types and heat rates for each unit

- Operating, maintenance and start-up costs

- Long-term supply and demand fundamentals for power

- Long-run marginal cost of new power generation

- Capital expenditure requirements, including environmental expenditures

- Capital costs

After a review of the assets and the likely buyers, the Debtors and their advisors concluded that the forced sale of the Debtors' generating portfolio in the compressed timeframe that would likely prevail during a Chapter 7 liquidation would result in significant valuation discounts relative to "fair value".

The estimated liquidation proceeds reflect the practical and pragmatic difficulties of (i) selling a project owned by one Debtor when the existing forward contracts, current employees, and other operating assets are owned by various other Debtors; (ii) the limitations on a Chapter 7 trustee of operating the business of the Debtor in a chapter 7 proceeding; (iii) the risk of intervention of regulatory authorities in connection with the operation of a project in a Chapter 7 proceeding; and (iv) the "as is" nature of the sale given the Chapter 7 trustee's limitation and/or inability to provide representations and warranties as well as indemnification provisions in connection with the sale of a project.

*Trading Assets:*    As part of their normal business operations, the Debtors maintain a portfolio of energy and commodity trading contracts. These contracts are used to hedge the energy and commodity price exposure of the individual generating assets as well as to generate profits through opportunistic trading. The commencement of a Chapter 7 proceeding would likely have a number of negative implications for the value of the Debtors' trading contract portfolio. Among other factors, (i) counterparties would likely seek termination values based upon their own forward curves and price estimates; (ii) many of the contracts are subject to netting agreements under which the Debtors must offset out-of-the-money and in-the-money trading positions; and (iii) counterparties may attempt to offset cash collateral held by the Debtors against the value of the contracts. Accordingly, the estimated value of the trading portfolio in the Liquidation Analysis is based upon a discount to the net book value of the Debtors trading contracts. Implicit in this calculation is an assumption that out-of-the money trading contracts would receive 100% recovery in a hypothetical liquidation as a result of the netting agreements and other factors listed in the forgoing. The Debtors do not believe that modifying this assumption would materially alter the results of the liquidation analysis. In those instances where trading contracts are associated with individual generating assets, the net value of such contracts (if any) is reflected as a component of that asset's value. The Liquidation Analysis does not include any value from optimization trading or opportunistic hedging.

*Proceeds from Letter of Credit Facility:*    The Liquidation Analysis assumes that certain outstanding pre-petition letters of credit will be drawn by trading counterparties prior to emergence; these draws will increase the amount of the (unsecured) pre-petition credit facility claims and will be used by counterparties to offset amounts otherwise due from the Debtors. In a hypothetical liquidation, these letter of credit draws will be used to offset trading obligations owed to counterparties. Because trading liabilities are assumed to receive 100%

recovery while pre-petition credit facilities are paid at the liquidation recovery percentage, these letter of credit facilities reflect incremental value.

*Other Assets:*   Intangible assets consist of goodwill, miscellaneous deferred charges, and other miscellaneous assets. While the Debtors and their advisors believe that the Mirant tradename and other intangible assets have value in a Chapter 11 reorganization, it is likely that this value would not be realized in a Chapter 7 liquidation, and accordingly no value was ascribed to such intangible assets in this analysis.

### (iii)   Claim Assumptions

*Superpriority Claims:*   During the course of the Chapter 11 cases, the Debtors have issued letters of credit under a DIP facility. There are no cash borrowings under the DIP facility. In a Chapter 7 liquidation, these letters of credit would be drawn by creditors who would otherwise hold Priority claims against the Debtors. In preparing the Liquidation analysis, the Debtors have not distinguished between Superpriority and Priority claims. Because the Debtors are administratively solvent even in a hypothetical Chapter 7 liquidation, this assumption does not impact creditor recoveries.

*Administrative and Priority Claims:*   Administrative and Priority claims consist of (i) priority tax claims, which are based on the tax liabilities recorded on the balance sheets of Mirant and its subsidiaries; and (ii) Chapter 7 professionals' fees, which also have a priority rank against pre-petition creditors. All post-petition payables of the Debtors relate to generating assets assumed to be sold as going-concerns for the purposes of this analysis, and such payables are assumed to be paid in the ordinary course by the purchaser.

*Secured Claims:*   In the normal course of business, the Debtors issue cash collateral and letters of credit on behalf of trading counterparties and other constituencies. The analysis assumes that at the outset of the liquidation period, collateralized counterparties draw on letters of credit and/or permanently take possession of cash collateral, in full or partial satisfaction of their claims against the Debtors. As a result, the trading liabilities contained in this analysis as Third-Party Unsecured Claims reflect only uncollateralized claims, net of L/C draws and cash collateral.

*Guaranteed Claims:*   Certain creditors of Mirant Corp subsidiary Debtors hold guaranty claims against Mirant Corp. Consistent with the assumption of partial substantive consolidation, such creditors receive one claim against Mirant Corp rather than multiple claims against multiple entities. Accordingly, guarantee claims are reflected within Third-Party Unsecured Claims.

*Third-Party Unsecured Claims:*   Third-Party unsecured claims are comprised of the following principle components:

- Unsecured bank debt

- Unsecured capital markets debt

- Third-party accounts payable

- Trading-related claims

- Contract rejection claims

- Intercompany claims

- Obligations under equipment lease financings

- Obligations under plant and property lease financings

- Guarantee Claims

The analysis assumes that certain collateralized claimants draw on letters of credit at the outset of the liquidation period. Such draws on letters of credit effectively increase the total unsecured bank debt claims and decrease other unsecured claims in the amount of the drawn letters of credit. Mirant's 6.25% Trust Preferred Securities are reflected as Third-Party Unsecured Claims.

112

*PEPCO PPA Liability:*  The Liquidation Analysis assumes that MAEM would be subject to an unsecured claim in connection with its alleged obligations under the PEPCO Back-to-Back agreement.[1]

### (iv)   Intercompany Relationships

*Pari Passu Treatment of Intercompany Claims:*  Unsecured intercompany claims against Mirant and its affiliates have been treated pari passu with third party claims. Intercompany claims are classified as either post-petition or pre-petition depending on the nature of the claim. Post-petition intercompany claims receive priority status and thus rank ahead of pre-petition third party and intercompany unsecured claims. There can be no assurances that creditors would not seek to subordinate intercompany claims.

*Netting of Intercompany Claims:*  Unless otherwise noted, pre-petition intercompany claims between Debtor entities that are substantively consolidated have been netted for purposes of calculating recoveries (i.e., there are no intercompany claims within the "Mirant Corp" and "MAG" groupings). However, there exist intercompany claims between Mirant Corp and MAG. Such claims have not been netted, with the result that Mirant Corp owes MAG $487 million in pre-petition claims and $67 million in post-petition claims. MAG owes Mirant Corp $135 million in pre-petition claims and $72 million in post-petition claims.

### (v)   Chapter 7 Fees and Expenses

*Corporate Overhead:*  In order to maximize collections on remaining assets, minimize the amount of asserted claims and generally ensure an orderly liquidation, substantial ongoing personnel would be required at both Mirant and MAEM. Accordingly, wind-down costs consist of the regularly occurring general and administrative costs required to operate the wound-down entities. It is assumed that Mirant headcount would be reduced to zero from the current levels over a two year period and that MAEM headcount would require approximately twelve months. The costs associated with this corporate overhead reduce value available to creditors.

*Chapter 7 Trustee Fees:*  Trustee fees are calculated based on the statutory escalating scale set forth in the Section 326 of the Bankruptcy Code, which provides for fees equal to 25.0% of the first $5,000 of proceeds, 10.0% of the next $45,000 of proceeds, 5.0% of the next $950,000 of proceeds, and 3.0% for all proceeds in excess of $1,000,000. It is also assumed that the liquidation of the generating assets would require the retention of outside legal and investment banking firms generating fees estimated at 2.0% of sales proceeds. Therefore, total trustee fees used in the Liquidation Analysis were 5% of sales proceeds.

## D.   Comparison of Creditor Recoveries Under the Plan to a Hypothetical Chapter 7 Liquidation

**Mirant Corporation Debtors**

| | Recovery in Liquidation |
|---|---|
| Consolidated Mirant Debtor Class 1 — Priority Claims | 100.0% |
| Consolidated Mirant Debtor Class 2 — Secured Claims | 100.0% |
| Consolidated Mirant Debtor Class 3 — Unsecured Claims | 37.2% |
| Consolidated Mirant Debtor Class 4 — Convenience Claims | 37.2% |
| Consolidated Mirant Debtor Class 5 — Equity Claims | 0% |

---

[1] Pepco requested modifications to this paragraph that the Debtors find objectionable. For the full text of Pepco's proposed alternative language, see Exhibit E.

113

**MAG Debtors**

| | Recovery in Liquidation |
|---|---|
| Consolidated MAG Debtor Class 1 — Priority Claims ................................. | 100.0% |
| Consolidated MAG Debtor Class 2 — Secured Claims ............................... | 100.0% |
| Consolidated MAG Debtor Class 3 — New York Taxing Authorities Secured Claims ..... | N/A |
| Consolidated MAG Debtor Class 4 — PG&E/RMR Claims.............................. | 100.0% |
| Consolidated MAG Debtor Class 5 — Unsecured Claims ............................. | 38.4% |
| Consolidated MAG Debtor Class 6 — Long Term Debt Claims ........................ | 38.4% |
| Consolidated MAG Debtor Class 7 — Convenience Claims............................ | 38.4% |
| Consolidated MAG Debtor Class 8 — Equity Claims ................................. | 0% |

## Liquidation Analysis Summary

### Mirant Corporation

| Claim | Amount | Value | Recovery |
|---|---|---|---|
| | | ($ in millions) | |
| Secured Claims ............................................... | $ 13 | $ 13 | 100.0% |
| Total Secured Claims ............................................ | 13 | 13 | 100.0% |
| Administrative Claims............................................ | 33 | 33 | 100.0% |
| Total Administrative Claims...................................... | 33 | 33 | 100.0% |
| Third-Party Priority Claims ......................................... | 9 | 9 | 100.0% |
| Post-petition Intercompany Claims ................................. | 67 | 67 | 100.0% |
| Total Priority Claims ........................................... | 76 | 76 | 100.0% |
| Third-Party Unsecured Claims...................................... | 6,369 | 2,369 | 37.2% |
| Pre-petition Intercompany Claims ................................... | 487 | 181 | 37.2% |
| Total Unsecured Claims ......................................... | 6,857 | 2,550 | 37.2% |
| Total ......................................................... | $6,978 | $2,672 | |

### Mirant Americas Generation

| Claim | Amount | Value | Recovery |
|---|---|---|---|
| Secured Claims ................................................ | $ 40 | $ 40 | 100.0% |
| Total Secured Claims ............................................ | 40 | 40 | 100.0% |
| Administrative Claims............................................ | 5 | 5 | 100.0% |
| Total Administrative Claims...................................... | 5 | 5 | 100.0% |
| Third-Party Priority Claims ......................................... | 6 | 6 | 100.0% |
| Post-petition Intercompany Claims ................................. | 72 | 72 | 100.0% |
| Total Priority Claims ........................................... | 78 | 78 | 100.0% |
| Third-Party Unsecured Claims...................................... | 3,655 | 1,402 | 38.4% |
| Pre-petition Intercompany Claims ................................... | 135 | 52 | 38.4% |
| Total Priority Claims ........................................... | 3,790 | 1,454 | 38.4% |
| Total ......................................................... | $3,912 | $1,577 | |

**E.    Conclusions**

The Debtors have determined that confirmation of the plan would provide each holder of claims or interests with a recovery that is not less than such holder would receive pursuant to a liquidation of the Debtors under Chapter 7 of the bankruptcy code.

Moreover, the Debtors believe that the value of the distributions from the liquidation proceeds to each class of allowed claims in a Chapter 7 case may not occur for a substantial period of time. In this regard, it is possible that a distribution of the proceeds of the liquidation could be delayed for one year or more after the completion of such liquidation in order to resolve the claims and prepare for distributions. In the event litigation were necessary to resolve claims asserted in the Chapter 7 cases, the delay could be further prolonged and administrative expenses further increased. THE EFFECTS OF THIS DELAY ON THE VALUE OF DISTRIBUTIONS UNDER THE HYPOTHETICAL LIQUIDATION HAVE NOT BEEN CONSIDERED.

THE DEBTORS' LIQUIDATION ANALYSIS IS AN ESTIMATE OF THE PROCEEDS THAT MAY BE GENERATED AS A RESULT OF A HYPOTHETICAL CHAPTER 7 LIQUIDATION OF THE ASSETS OF THE DEBTORS. Underlying the Liquidation Analysis are a number of estimates and assumptions that are inherently subject to significant economic, competitive and operation uncertainties and contingencies beyond the control of the Debtors or a Chapter 7 trustee. Additionally, various liquidation decisions upon which certain assumptions are based are subject to change. Therefore, there can be no assurance that the assumptions and estimates employed in determining the liquidation values of the Debtors' assets will result in the proceeds that would be realized were the Debtors to undergo an actual liquidation. The actual amounts of allowed claims against the Debtors could vary significantly from the Debtors' estimate, depending on the claims asserted during the pendency of the Chapter 7 case. This Liquidation Analysis does not include liabilities that may arise as a result of potential litigation, certain new tax assessments or other potential claims. This Liquidation Analysis also does not include potential recoveries from avoidance actions. Therefore, the actual liquidation value of the Debtors could vary materially from the estimates provided herein.

## EXHIBIT D

### PROJECTIONS

THE PROJECTIONS, AS SET FORTH HEREIN IN EXHIBIT D, WERE PREPARED IN CONNEC-TION WITH THE PREPARATION AND FILING OF THE DEBTORS' FIRST AMENDED DISCLO-SURE STATEMENT. SINCE THE PROJECTIONS WERE PREPARED, ACTUAL RESULTS HAVE BEEN REALIZED AND NEW INFORMATION HAS BECOME AVAILABLE TO THE DEBTORS, INCLUDING UPDATED CASH FLOW FORECASTS AND ADDITIONAL INFORMATION DEVEL-OPED AND IDENTIFIED SUBSEQUENT TO THE DEVELOPMENT OF THE PROJECTIONS THAT VARY MATERIALLY FROM THE PROJECTIONS. THE READER IS REFERRED TO "FINANCIAL PROJECTIONS AND ASSUMPTIONS" IN THE DISCLOSURE STATEMENT FOR A DISCUSSION OF CERTAIN ASSUMPTIONS AND QUALIFICATIONS UNDERLYING THE PRO-JECTIONS AND CERTAIN SUBSEQUENTLY IDENTIFIED VARIANCES TO THE PROJECTIONS ALL OF WHICH ARE INCORPORATED HEREIN BY REFERENCE IN THEIR ENTIRETY.

THE PROJECTIONS UTILIZE THE PRELIMINARY VALUATION PREPARED BY THE BLACK-STONE GROUP SOLELY IN CONNECTION WITH THE FILING OF THE FIRST AMENDED DISCLOSURE STATEMENT. ABSENT A STIPULATED OR BANKRUPTCY COURT DETER-MINED ENTERPRISE VALUE OF THE DEBTORS, THE DEBTORS INTEND TO IDENTIFY AN ENTERPRISE VALUE FOR PURPOSES OF "FRESH START" ACCOUNTING UTILIZING MAR-KET DATA, INCLUDING THE TRADING PRICES OF THE SECURITIES OF THE DEBTORS THAT MAY DIFFER MATERIALLY FROM THE VALUATION ASSUMED IN THE PROJECTIONS.

## CONSOLIDATED MIRANT
## BALANCE SHEET

|  | Dec-05 | Dec-06 | Dec-07 | Dec-08 | Dec-09 | Dec-10 | Dec-11 |
|---|---|---|---|---|---|---|---|
|  |  |  |  | ($ in millions) |  |  |  |
| **ASSETS** |  |  |  |  |  |  |  |
| Cash and Short-term Cash Investments | $ 1,008.9 | $ 1,301.3 | $ 1,530.0 | $ 1,749.9 | $ 2,153.9 | $ 2,583.9 | $ 3,156.5 |
| Funds on Deposit | 235.3 | 215.1 | 197.5 | 183.3 | 168.2 | 155.7 | 139.1 |
| Receivables, Less Provision for Uncollectibles | 1,268.8 | 1,259.9 | 1,237.3 | 1,249.8 | 1,265.0 | 1,277.4 | 1,272.5 |
| Price Risk Management Assets — Current | 156.2 | 153.9 | 156.6 | 158.4 | 150.6 | 149.7 | 153.9 |
| Other Current Assets | 1,455.9 | 1,364.2 | 1,253.0 | 1,141.4 | 975.0 | 756.3 | 700.1 |
| **Total Current Assets** | $ 4,125.0 | $ 4,294.4 | $ 4,374.5 | $ 4,482.9 | $ 4,712.7 | $ 4,923.1 | $ 5,422.2 |
| **Property, Plant and Equipment, Net** | $ 5,885.6 | $ 5,859.7 | $ 5,909.2 | $ 5,945.3 | $ 5,777.1 | $ 5,782.6 | $ 5,669.8 |
| Goodwill, Net | $ 1.5 | $ 1.5 | $ 1.5 | $ 1.5 | $ 1.5 | $ 1.5 | $ 1.5 |
| Other Intang. Assets, Net | — | — | — | — | — | — | — |
| Reorg. Value in Excess of Book | — | — | — | — | — | — | — |
| Investments | 261.3 | 268.8 | 285.9 | 303.2 | 310.1 | 318.7 | 324.9 |
| Notes and Other Receivables, Net | 318.7 | 261.5 | 223.0 | 216.9 | 210.8 | 204.8 | 164.4 |
| Price Risk Management Assets | 107.1 | 96.1 | 87.0 | 77.8 | 69.2 | 69.2 | 69.2 |
| Other Non-Current Assets | (89.3) | 136.7 | 346.5 | 569.0 | 909.9 | 1,210.9 | 1,331.8 |
| **Total Non-Current Assets** | $ 599.3 | $ 764.6 | $ 943.9 | $ 1,168.3 | $ 1,501.5 | $ 1,805.0 | $ 1,891.7 |
| *Total Assets* | $10,609.9 | $10,918.7 | $11,227.6 | $11,596.6 | $11,991.3 | $12,510.7 | $12,983.7 |
| **LIABILITIES** |  |  |  |  |  |  |  |
| Accounts Payable | $ 469.2 | $ 477.2 | $ 486.4 | $ 507.4 | $ 507.9 | $ 529.3 | $ 509.2 |
| Short Term Debt | 19.2 | 19.2 | 19.3 | 10.0 | 10.0 | 10.0 | 10.0 |
| Current Portion of Long-term Debt | 388.5 | 144.7 | 103.4 | 103.8 | 117.7 | 174.5 | 75.9 |
| Price Risk Management Liabilities — Current | 144.3 | 139.5 | 139.5 | 139.5 | 139.5 | 139.5 | 139.5 |
| Transition Power Agreements and Other Obligations — Current | 4.8 | 0.5 | — | — | — | — | — |
| Other Current Liabilities | 107.4 | 107.1 | 103.5 | 96.7 | 92.2 | 87.8 | 86.0 |
| **Total Current Liabilities** | $ 1,133.2 | $ 888.2 | $ 852.1 | $ 857.4 | $ 867.3 | $ 941.1 | $ 820.6 |
| Notes Payable and Long-term Debt | $ 826.7 | $ 921.9 | $ 867.1 | $ 791.2 | $ 728.8 | $ 600.9 | $ 580.8 |
| New Credit Facilities | — | — | — | — | — | — | — |
| New Notes to Impaired Debt | 1,322.5 | 1,322.5 | 1,322.5 | 1,322.5 | 1,322.5 | 1,322.5 | 1,322.5 |
| Reinstated Debt | 1,700.0 | 1,700.0 | 1,700.0 | 1,700.0 | 1,700.0 | 1,700.0 | 1,700.0 |
| Long-term Accounts Payable | 94.0 | 94.0 | 94.0 | 94.0 | 94.0 | 94.0 | 94.0 |
| Price Risk Management Liabilities | 0.5 |  |  |  |  |  |  |
| Transition Power Agreements and Other Obligations | 1,216.9 | 1,376.3 | 1,479.2 | 1,599.3 | 1,684.9 | 1,771.3 | 1,853.1 |
| Other Non-current Liabilities |  |  |  |  |  |  |  |
| **Total Non-Current Liabilities** | $ 5,160.5 | $ 5,414.7 | $ 5,462.7 | $ 5,507.0 | $ 5,530.2 | $ 5,488.6 | $ 5,550.4 |
| Liabilities Subject to Compromise | 118.5 | 133.6 | 148.6 | 161.8 | 175.5 | 187.6 | 197.8 |
| Minority Interest | — | — | — | — | — | — | — |
| Preferred Stock |  |  |  |  |  |  |  |
| Stockholders' Equity: |  |  |  |  |  |  |  |
| **Total Stockholders' Equity** | 4,197.6 | 4,482.2 | 4,764.2 | 5,070.4 | 5,418.4 | 5,893.4 | 6,415.0 |
| *Total Liabilities Plus Shareholder Equity* | $10,609.9 | $10,918.7 | $11,227.6 | $11,596.6 | $11,991.3 | $12,510.7 | $12,983.7 |

117

## CONSOLIDATED MIRANT
## INCOME STATEMENT

($ in millions)

| | Jul-Dec 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|
| Total Revenues | $1,837.0 | $3,445.2 | $3,389.3 | $3,637.6 | $3,919.5 | $4,111.1 | $4,217.9 |
| Cost of Fuel, Electricity & Other Products | 797.3 | 1,424.0 | 1,395.1 | 1,576.9 | 1,640.9 | 1,761.5 | 1,756.9 |
| Total Gross Margin | $1,039.7 | $2,021.2 | $1,994.2 | $2,060.8 | $2,278.6 | $2,349.6 | $2,460.9 |
| Operating Expenses | | | | | | | |
| Labor | $ 153.4 | $ 301.9 | $ 305.3 | $ 307.3 | $ 307.6 | $ 314.3 | $ 321.1 |
| O&M | 119.3 | 245.4 | 246.7 | 261.1 | 247.0 | 268.9 | 280.6 |
| Lease Expense | 50.7 | 96.5 | 96.5 | 96.5 | 96.5 | 96.5 | 96.5 |
| SG&A | 70.5 | 125.2 | 126.6 | 130.2 | 131.3 | 134.8 | 137.4 |
| Property tax | 42.0 | 82.9 | 81.9 | 81.5 | 80.3 | 81.4 | 82.4 |
| Insurance | 24.9 | 50.4 | 50.0 | 50.6 | 51.7 | 53.4 | 53.5 |
| Restructuring Costs | 4.0 | 2.0 | 1.5 | 3.0 | — | — | — |
| Depreciation & Amortization | 155.2 | 310.1 | 295.4 | 303.0 | 303.0 | 311.4 | 322.8 |
| (Gain) Loss On Sales of Assets | — | — | — | — | 161.0 | — | — |
| Total Operating Expenses | $ 619.9 | $1,214.3 | $1,203.8 | $1,233.1 | $1,378.5 | $1,260.6 | $1,294.4 |
| Operating Income | $ 419.8 | $ 806.9 | $ 790.4 | $ 827.7 | $ 900.1 | $1,089.0 | $1,166.5 |
| Other Income/(Expense), Net | | | | | | | |
| Interest Expense | $ (185.8) | $ (357.6) | $ (346.3) | $ (351.6) | $ (344.0) | $ (334.7) | $ (338.7) |
| Interest Income | 7.0 | 17.5 | 19.1 | 22.4 | 25.9 | 31.8 | 37.2 |
| Equity Income | 15.1 | 27.5 | 30.1 | 30.0 | 32.2 | 35.8 | 37.6 |
| Minority Interest | (15.8) | (24.6) | (26.5) | (30.3) | (31.5) | (31.6) | (35.3) |
| Miscellaneous Income/(Expense) | 0.4 | 4.6 | 3.1 | 12.1 | 1.6 | 1.3 | 2.0 |
| Total Other Income/(Expense), Net | $ (179.1) | $ (332.7) | $ (320.5) | $ (317.4) | $ (315.8) | $ (297.4) | $ (297.3) |
| Income/(Loss) from Continuing Operations Before Reorganization Items and Income Taxes | $ 240.8 | $ 474.2 | $ 469.9 | $ 510.2 | $ 584.3 | $ 791.6 | $ 869.2 |
| Reorganization Items, Net | — | — | — | — | — | — | — |
| Provision/(Benefit) for Income Taxes | 96.3 | 189.7 | 188.0 | 204.1 | 233.7 | 316.6 | 347.7 |
| Net Income/(Loss) | $ 144.5 | $ 284.5 | $ 281.9 | $ 306.1 | $ 350.6 | $ 475.0 | $ 521.5 |

118

## CONSOLIDATED MIRANT
## CASH FLOW STATEMENT

| | Jul-Dec 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|
| | | | | ($ in millions) | | | |
| **Cash Flows from Operating Activities** | | | | | | | |
| Net Income | $ 144.5 | $ 284.5 | $ 281.9 | $ 306.1 | $ 350.6 | $ 475.0 | $ 521.5 |
| Adjustments to reconcile net (loss) income to net cash | | | | | | | |
| Equity in Income from Affiliates | $ (15.0) | $ (27.4) | $ (29.9) | $ (29.8) | $ (32.1) | $ (35.7) | $ (37.4) |
| Dividends received from Equity investments | 10.4 | 19.4 | 17.3 | 18.1 | 24.6 | 26.5 | 30.6 |
| Impairment Losses and Restructuring Charges | — | — | — | — | — | — | — |
| Gain on sales of assets and investments | — | — | — | — | — | — | — |
| Depreciation & Amortization | 157.5 | 309.2 | 295.6 | 303.8 | 303.8 | 312.2 | 323.7 |
| Non-Cash Charges for Reorganization items | — | — | — | — | 161.0 | — | — |
| Price Risk Management Activities, Net | (13.3) | 8.5 | 6.3 | 7.4 | 16.5 | 0.9 | (4.2) |
| Obligations Under Energy Delivery, (Net) | (2.4) | (4.8) | (0.5) | 1.3 | (65.2) | 52.9 | 57.2 |
| Deferred Taxes | 44.2 | 14.8 | (5.8) | 30.3 | 31.5 | 31.6 | 35.3 |
| Minority Interest | 15.8 | 24.6 | 26.5 | — | — | — | — |
| Interest Rate Hedging Losses | (25.6) | — | — | — | — | — | — |
| Other, (Net) | — | 0.9 | 1.2 | (8.1) | 1.1 | 1.3 | 1.5 |
| Changes in Operating Assets & Liabilities | | | | | | | |
| Receivables, Net | (7.4) | (7.9) | (4.6) | (17.9) | (15.1) | (10.3) | 6.8 |
| Other Current Assets | 24.6 | 2.3 | 0.9 | (13.9) | (32.4) | (30.2) | (23.4) |
| Accounts Payables and Accrued Liabilities | 44.3 | 41.0 | 50.9 | 47.5 | 27.4 | 14.4 | (24.9) |
| Taxes Accrued | (1.0) | 0.8 | 3.6 | 0.7 | 0.1 | (0.2) | (1.0) |
| Other Liabilities | (0.0) | — | — | — | — | — | — |
| *Net Cash (Used in) Provided by Operating Activities* | $ 376.6 | $ 665.9 | $ 643.5 | $ 645.5 | $ 771.9 | $ 838.4 | $ 885.7 |
| **Cash Flows from Investing Activities** | | | | | | | |
| Capital Expenditures | $ (117.7) | $ (289.0) | $ (341.1) | $ (331.5) | $ (307.3) | $ (322.5) | $ (206.8) |
| Cash Pd for Acquisitions | (72.2) | — | — | — | — | — | — |
| Issuance of Notes Receivable | — | — | — | — | — | — | — |
| Repayments on Notes Receivable | (0.0) | 0.0 | 0.0 | 0.0 | 0.0 | — | — |
| Proceeds from the Sale of Assets | 35.0 | — | — | — | — | — | — |
| Proceeds from the Sale of Minority-owned Investments | — | — | — | — | — | — | — |
| Other Investing | (0.0) | 0.4 | (4.7) | (5.7) | 0.4 | 0.3 | 0.4 |
| *Net Cash (Used in) Provided by Investing Activities* | $ (154.9) | $ (288.7) | $ (345.8) | $ (337.3) | $ (306.9) | $ (322.2) | $ (206.4) |
| **Cash Flows from Financing Activities** | | | | | | | |
| Iss. of Stock | $ (0.0) | $ 0.0 | $ 0.0 | $ 0.0 | $ 0.0 | $ 0.0 | $ (0.0) |
| Capital Contribution | 0.0 | 0.0 | (0.0) | (0.0) | 0.0 | 0.0 | (0.0) |
| Capital Contribution from Minority Interest | (1.2) | (4.9) | (1.4) | (7.7) | (13.6) | (15.0) | (12.7) |
| Ret. of Capital to Parent | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Payment of Dividends | (0.0) | (0.0) | (0.0) | (0.0) | 0.0 | 0.0 | 0.0 |
| Payment of Dividends to Minority Interest | (4.9) | (4.5) | (10.0) | (9.4) | (4.3) | (4.4) | (12.4) |
| Issuance of Short Term Debt, Net | 10.0 | 0.0 | — | — | — | — | — |
| Proceeds from Issuance of Long-term Debt | 21.6 | 252.1 | 57.2 | 36.8 | 66.0 | 56.5 | 71.4 |
| Proceeds from Issuance of Preferred Securities | — | — | — | — | — | — | — |
| Repayment of Long-term Debt | (104.9) | (400.3) | (153.8) | (113.5) | (114.9) | (129.0) | (191.6) |
| Change in Debt Service Reserve Fund | 19.1 | 74.9 | 39.3 | 5.7 | 5.7 | 5.7 | 40.6 |
| Other Financing | — | (2.0) | (0.2) | (0.3) | — | — | (2.0) |
| *Net Cash (Used in) Provided by Financing Activities* | $ (60.2) | $ (84.7) | $ (69.0) | $ (88.3) | $ (61.1) | $ (86.2) | $ (106.7) |
| Net Inc./(Dec.) in Cash and Cash Equivalents | $ 161.5 | $ 292.4 | $ 228.7 | $ 219.9 | $ 404.0 | $ 430.0 | $ 572.5 |
| Cash and Cash Equivalents, Beginning of Period | 847.4 | 1,008.9 | 1,301.3 | 1,530.0 | 1,749.9 | 2,153.9 | 2,583.9 |
| Cash and Cash Equivalents, End of Period | $1,008.9 | $1,301.3 | $1,530.0 | $1,749.9 | $2,153.9 | $2,583.9 | $3,156.5 |

## MAG
## BALANCE SHEET

($ in millions)

### ASSETS

| | Dec-05 | Dec-06 | Dec-07 | Dec-08 | Dec-09 | Dec-10 | Dec-11 |
|---|---|---|---|---|---|---|---|
| Cash and Short-term Cash Investments | $ 221.3 | $ 314.0 | $ 265.0 | $ 222.2 | $ 459.6 | $ 898.0 | $1,212.7 |
| Funds on Deposit | 144.3 | 134.8 | 133.6 | 133.2 | 133.2 | — | 133.4 |
| Receivables, Less Provision for Uncollectibles | 882.7 | 889.3 | 893.8 | 915.3 | 939.0 | 955.6 | 940.3 |
| Price Risk Management Assets — Current | 158.6 | 156.3 | 159.1 | 160.9 | 153.0 | 152.2 | 156.4 |
| Other Current Assets | 411.1 | 417.9 | 424.5 | 434.2 | 438.7 | 438.1 | 440.4 |
| **Total Current Assets** | $1,818.1 | $1,912.3 | $1,876.0 | $1,865.8 | $2,123.5 | $2,577.0 | $2,883.1 |
| Property, Plant and Equipment, Net | $2,853.9 | $2,866.6 | $2,946.0 | $3,016.4 | $2,879.3 | $2,905.2 | $2,395.1 |
| Goodwill, Net | $ — | — | — | — | — | — | $ — |
| Other Intang. Assets, Net | — | — | — | — | — | — | — |
| Reorg. Value in Excess of Book | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 | 20.7 |
| Investments | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 | 5.7 |
| Notes and Other Receivables, Net | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 | 30.0 |
| Price Risk Management Assets | 107.9 | 96.9 | 87.8 | 78.6 | 69.9 | 69.9 | 69.9 |
| Other Non-Current Assets | 201.4 | 208.1 | 221.0 | 243.5 | 282.2 | 331.7 | 370.5 |
| **Total Non-Current Assets** | $ 365.7 | $ 361.3 | $ 365.2 | $ 378.5 | $ 408.5 | $ 458.0 | $ 496.8 |
| ***Total Assets*** | $5,037.7 | $5,140.2 | $5,187.1 | $5,260.7 | $5,411.3 | $5,940.2 | $6,275.0 |

### LIABILITIES

| | Dec-05 | Dec-06 | Dec-07 | Dec-08 | Dec-09 | Dec-10 | Dec-11 |
|---|---|---|---|---|---|---|---|
| Accounts Payable | $ 356.6 | $ 354.6 | $ 345.7 | $ 363.1 | $ 358.0 | $ 367.6 | $ 342.1 |
| Short Term Debt | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Current Portion of Long-term Debt | 2.9 | 3.1 | 3.4 | 3.6 | 3.9 | 4.1 | 8.5 |
| Price Risk Management Liabilities — Current | 144.5 | 136.7 | 136.7 | 136.7 | 136.7 | 136.7 | 136.7 |
| Transition Power Agreements and Other Obligations — Current | — | — | — | — | — | — | — |
| Other Current Liabilities | 102.5 | 115.9 | 117.1 | 122.7 | 139.3 | 164.1 | 187.1 |
| **Total Current Liabilities** | $ 606.6 | $ 610.3 | $ 602.8 | $ 626.1 | $ 637.8 | $ 672.6 | $ 674.3 |
| Notes Payable and Long-term Debt | $ 55.1 | $ 53.1 | $ 50.9 | $ 47.6 | $ 43.0 | $ 39.0 | $ 30.5 |
| New Credit Facilities | — | — | — | — | — | — | — |
| New Notes to Impaired Debt | 1,322.5 | 1,322.5 | 1,322.5 | 1,322.5 | 1,322.5 | 1,322.5 | 1,322.5 |
| Reinstated Debt | 1,700.0 | 1,700.0 | 1,700.0 | 1,700.0 | 1,700.0 | 1,700.0 | 1,700.0 |
| Long-term Accounts Payable | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Price Risk Management Liabilities | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 | 100.0 |
| Transition Power Agreements and Other Obligations | — | — | — | — | — | — | — |
| Other Non-current Liabilities | 200.8 | 208.4 | 219.1 | 229.8 | 242.5 | 256.5 | 270.6 |
| **Total Non-Current Liabilities** | $3,378.4 | $3,384.1 | $3,392.5 | $3,399.9 | $3,408.0 | $3,418.0 | $3,423.6 |
| Liabilities Subject to Compromise | — | — | — | — | — | — | — |
| Minority Interest | — | — | 0.0 | 0.0 | — | 0.0 | — |
| Preferred Stock | 384.5 | 384.5 | 384.5 | 384.5 | 384.5 | 384.5 | 384.5 |
| Stockholders' Equity: | | | | | | | |
| ***Total Stockholders' Equity*** | 668.2 | 761.4 | 807.4 | 850.3 | 981.1 | 1,465.2 | 1,792.6 |
| ***Total Liabilities Plus Shareholder Equity*** | $5,037.7 | $5,140.2 | $5,187.2 | $5,260.7 | $5,411.3 | $5,940.3 | $6,275.0 |

120