EXHIBIT "E"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case |
|  | ) |  |
| MIRANT CORPORATION, et al., | ) | Case No. 03-46590(DML)11 |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

**NOTICE OF (A) SOLICITATION OF VOTES TO ACCEPT OR REJECT THE SECOND
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MIRANT
CORPORATION AND ITS AFFILIATED DEBTORS, (B) HEARING TO CONSIDER
CONFIRMATION OF THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION FOR MIRANT CORPORATION AND ITS AFFILIATED
DEBTORS AND (C) DEADLINE FOR FILING OBJECTIONS TO THE SECOND
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MIRANT
CORPORATION AND ITS AFFILIATED DEBTORS**

TO ALL CREDITORS OR SHAREHOLDERS OF THE
DEBTORS HOLDING EQUITY INTERESTS THAT ARE
IMPAIRED UNDER THE PLAN AND OTHER PARTIES IN INTEREST:

NOTICE IS HEREBY GIVEN that on _____ __, 2005, the United States
Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court") entered
an order (the "Order") approving the disclosure statement, dated September 22, 2005 (the
"Disclosure Statement") with respect to the Second Amended Joint Chapter 11 Plan of
Reorganization for Mirant Corporation and its Affiliated Debtors, dated September 22, 2005 (the
"Plan") filed by Mirant Corporation and its affiliated debtors (collectively, the "Debtors").
Pursuant to the Order, solicitation materials consisting of a CD-ROM containing a copy of the
Disclosure Statement, the Plan and all exhibits thereto, and a paper ballot for the purpose of
voting to accept or reject the Plan have been mailed to all known holders of impaired claims and
equity interests against the Debtors entitled to vote on the Plan. If you are a holder of an
impaired claim against the Debtors and have not received the foregoing solicitation materials,
you may obtain the same by request to Bankruptcy Services, LLC, at 1-866-316-7766.
Additionally, the Plan and Disclosure Statement are available at http://www.txnb.uscourts.gov
and http://www.mirant-caseinfo.com. Paper copies of the Disclosure Statement and Plan will be
provided only to those holders of claims or equity interests (i) that can establish by written
request that receiving a CD-ROM imposes a hardship or (ii) who purchase a paper copy of the
Disclosure Statement and Plan for the cost of $50 per copy. Please contact Bankruptcy Services,
LLC at 1-866-316-7766 for information regarding submission of a written notice of hardship or
how to purchase of a paper copy of the Disclosure Statement and Plan.

NOTICE IS FURTHER GIVEN that except as set forth in the next paragraph, all ballots
cast to accept or reject the Plan must be properly completed, executed and mailed or delivered to
the Debtors' Solicitation and Tabulation Agent at P.O. Box 5014, F.D.R. Station, New York, NY
10150-5014, Attn: Mirant Ballot Tabulation, so that they are ACTUALLY RECEIVED no later

than 4:00 p.m., Prevailing Central Time, on November 10, 2005. If your ballot is not properly completed or received by such time, it will not be counted as a vote to accept or reject the Plan. Ballots transmitted by facsimile, telecopy transmission or electronic mail will not be accepted and will not be counted as a vote to accept or reject the Plan.

NOTICE IS FURTHER GIVEN that if you hold your claim or interest beneficially through a trustee, agent bank, broker dealer or other agent or nominee (a "Voting Nominee"), you may receive your solicitation materials, including your ballot (a "Beneficial Holder Ballot"), directly from such Voting Nominee. All Beneficial Holder Ballots cast to accept or reject the Plan must be properly completed, executed and returned to the Voting Nominees in such manner to allow sufficient time for the Voting Nominees to process such votes on "Master Ballots" and mail or deliver such Master Ballots to the Debtors' Solicitation and Tabulation Agent so that they are ACTUALLY RECEIVED no later than 4:00 p.m., Prevailing Central Time, on November 10, 2005.

NOTICE IS FURTHER GIVEN that the Court has fixed December 1, 2005, at 9:00 a.m. (Prevailing Central Time) as the date and time for the hearing to consider confirmation of the Plan and related matters (the "Confirmation Hearing"). The Confirmation Hearing will be held before the Honorable D. Michael Lynn, United States Bankruptcy Judge, United States Courthouse, 501 W. Tenth Street, Fort Worth, Texas. The Confirmation Hearing may be adjourned from time to time without further notice other than announcement made at the Confirmation Hearing or any adjourned hearing.

NOTICE IS FURTHER GIVEN that objections, if any, to the confirmation of the Plan must be in writing, and must (a) state the name and address of the objecting party and the nature and amount of the claim or interest of such party, (b) state with particularity the basis and nature of each objection to confirmation of the Plan, and (c) be filed, together with proof of service, with the Court and served so that they are received no later than 4:00 p.m., Prevailing Central Time, on [_____ __, 2005], by the Court, and the following parties: (i) White & Case LLP, Co-Attorneys for the Debtors and Debtors-in-Possession, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131, Attention: Thomas E Lauria, Esq.; (ii) Andrews & Kurth, L.L.P., 450 Lexington Avenue, 15th Floor, New York, New York 10017, Attention: Paul N. Silverstein, Esq.; (iii) Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022-6069, Attention: Fredric Sosnick, Esq.; (iv) Cadwalader, Wickersham & Taft, One World Financial Center, New York, New York 10281, Attention: Bruce R. Zirinsky, Esq.; (v) Brown Rudnick Berlack Israels LLP, 120 West 45th Street, New York, New York 10036, Attention: Edward S. Weisfelner, Esq.; (vi) Gardere Wynne Sewell LLP, 3000 Thanksgiving Tower, 1601 Elm Street, Suite 3000, Dallas, Texas 75201, Attention: Richard M. Roberson, Esq.; and (vii) The Office of the United States Trustee, Earle Cabell Federal Building, 1100 Commerce Street, Room 976, Dallas, Texas 75242, Attention: George F. McElreath.

NOTICE IS FURTHER GIVEN that the Court has fixed November 30, 2005, at 9:00 a.m. (Prevailing Central Time) as the date and time for the pre-Confirmation Hearing status conference (the "Plan Status Conference"). The Plan Status Conference will be held before the Honorable D. Michael Lynn, United States Bankruptcy Judge, United States Courthouse, 501 W. Tenth Street, Fort Worth, Texas. All parties who intend to participate in the Confirmation Hearing must appear at the Plan Status Conference.

NOTICE IS FURTHER GIVEN that the Debtors intend to file the Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases as Schedule 10 to the

Disclosure Statement (as may be supplemented from time to time prior to the entry of an order confirming the Plan) (the "Assumption Schedule") with the Court setting forth the list of executory contracts and unexpired leases to be assumed, or assumed and assigned, by the Debtors pursuant to the Plan. Unless otherwise provided in the Plan or otherwise listed on the Assumption Schedule, all executory contracts and unexpired leases of the Debtors not previously assumed by the Debtors, including, but not limited to, those agreements listed and described in the "Schedule of Rejected Executory Contracts and Unexpired Leases" attached as Schedule 9 to the Disclosure Statement (as may be supplemented from time to time prior to the entry of an order confirming the Plan), shall be rejected by the Debtors, as of the effective date of the Plan, pursuant to the provisions of section 365 of the Bankruptcy Code. Any claims arising from the rejection of an executory contract or unexpired lease must be asserted in accordance with the terms of the Plan or such claims will be forever barred and unenforceable against the Debtors, New Mirant, their respective Affiliates, or the Assets (each, as defined in the Plan).

NOTICE IS FURTHER GIVEN that the Plan provides that substantially all of the Assets of Mirant will be transferred to New Mirant, a corporation organized under the laws of Delaware, which will serve as the corporate parent of the Debtors' business enterprise on and after the effective date of the Plan. Except as otherwise provided in the Plan, New Mirant shall not have, and shall not be construed to have or maintain, any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the effective date of the Plan (including, without limitation any liability or claims arising under applicable non-bankruptcy law as a successor to Mirant) and no such liabilities, claims, or obligations for any acts shall attach to New Mirant.

NOTICE IS FURTHER GIVEN that the Plan provides that the trading and marketing business of Mirant Americas Development, Inc., Mirant Americas Production Company, Mirant Americas Energy Marketing, LP, Mirant Americas Retail Energy Marketing, LP, Mirant Americas Gas Marketing I - XV, LLC (collectively, the "Trading Debtors") shall be transferred to Mirant Energy Trading LLC ("MET"), a Delaware limited liability company. Except as otherwise provided in the Plan, MET shall not have, and shall not be construed to have or maintain, any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the effective date of the Plan (including, without limitation any liability or claims arising under applicable non-bankruptcy law as a successor to the Trading Debtors) and no such liabilities, claims, or obligations for any acts shall attach to MET.

NOTICE IS FURTHER GIVEN that the Plan contains an injunction which, with certain exceptions, permanently enjoins any holder of any claim (other than claims of holders of Allowed MAG Long-term Note Claims) or equity interest from, among other things, taking any of the following actions against or affecting New Mirant and its Affiliates, the Debtors and the Estates (as defined in the Plan), the Assets, or the Disbursing Agent under the Plan (as defined in the Plan), or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such claims or equity interests (other than actions brought to enforce any rights or obligations under the Plan): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and (iv) asserting any setoff, right of

subrogation or recoupment of any kind. In addition, except as provided in the Plan, upon the occurrence of the effective date of the Plan, the Debtors shall be discharged from all claims and causes of action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and, except as otherwise provided in the Plan, all holders of claims and equity interests shall be precluded from asserting against New Mirant and its Affiliates, the Debtors, the Assets, or any property dealt with under the Plan, any further or other cause of action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the effective date of the Plan.

Dated: Miami, FL
      September ___, 2005

              WHITE & CASE LLP
              Wachovia Financial Center
              200 South Biscayne Blvd.
              Miami, Florida 33131
              (305) 371-2700

              By_____

                  Thomas E Lauria
                  State Bar No. 11998025

                      -and-

                  Robin Phelan
                  State Bar No. 15903000
                  HAYNES AND BOONE, LLP
                  901 Main Street
                  Suite 3100
                  Dallas, TX 75202
                  (214) 651-5000

              ATTORNEYS FOR THE DEBTORS AND
              DEBTORS-IN-POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case |
|  | ) |  |
| MIRANT CORPORATION, et al., | ) | Case No. 03-46590(DML)11 |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

**NOTICE OF (A) HEARING TO CONSIDER CONFIRMATION OF
THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
FOR MIRANT CORPORATION AND ITS AFFILIATED DEBTORS,
(B) TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS, AND
(C) DEADLINE FOR FILING OBJECTIONS TO THE SECOND AMENDED
JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MIRANT
CORPORATION AND ITS AFFILIATED DEBTORS**

TO ALL CREDITORS OF THE DEBTORS HOLDING CLAIMS
THAT ARE UNIMPAIRED UNDER THE PLAN:

NOTICE IS HEREBY GIVEN that on _____, 2005, the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court") entered an order (the "Order") approving the disclosure statement, dated September 22, 2005 (the "Disclosure Statement") with respect to the Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and its Affiliated Debtors, dated September 22, 2005 (the "Plan") filed by Mirant Corporation and its affiliated debtors (collectively, the "Debtors"). Pursuant to the Order, solicitation materials consisting of a CD-ROM containing a copy of the Disclosure Statement, the Plan and all exhibits thereto need not be mailed to any holder of an unimpaired claim unless such party makes a specific request in writing for the same. Such solicitation materials are available upon request to Bankruptcy Services, LLC, at 757 Third Avenue, 3rd Floor, New York, New York 10017. Additionally, the Plan and Disclosure Statement are available at http://www.txnb.uscourts.gov and http://www.mirant-caseinfo.com. Paper copies of the Disclosure Statement and Plan will be provided only to those holders of claims or equity interests (i) that can establish by written request that receiving a CD-ROM imposes a hardship or (ii) who purchase a paper copy of the Disclosure Statement and Plan for the cost of $50 per copy. Please contact Bankruptcy Services, LLC at 1-866-316-7766 for information regarding submission of a written notice of hardship or how to purchase of a paper copy of the Disclosure Statement and Plan.

NOTICE IS FURTHER GIVEN that under the terms of the Plan, your claim against the Debtors is not impaired pursuant to section 1124 of the Bankruptcy Code and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are (i) deemed to have accepted the Plan and (ii) not entitled to vote on the Plan. If you have any questions regarding the status of your claims, you should contact Financial Balloting Group LLC at 1-866-847-8179.

NOTICE IS FURTHER GIVEN that the Court has fixed December 1, 2005, at 9:00 a.m. (Prevailing Central Time) as the date and time for the hearing to consider confirmation of the Plan and related matters (the "Confirmation Hearing"). The Confirmation Hearing will be held before the Honorable D. Michael Lynn, United States Bankruptcy Judge, United States Courthouse, 501 W. Tenth Street, Fort Worth, Texas. The Confirmation Hearing may be adjourned from time to time without further notice other than announcement made at the Confirmation Hearing or any adjourned hearing.

NOTICE IS FURTHER GIVEN that objections, if any, to the confirmation of the Plan must be in writing, and must (a) state the name and address of the objecting party and the nature and amount of the claim or interest of such party, (b) state with particularity the basis and nature of each objection to confirmation of the Plan, and (c) be filed, together with proof of service, with the Court and served so that they are received no later than 4:00 p.m., Prevailing Central Time, on [_____, 2005], by the Court, and the following parties: (i) White & Case LLP, Co-Attorneys for the Debtors and Debtors-in-Possession, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131, Attention: Thomas E Lauria, Esq.; (ii) Andrews & Kurth, L.L.P., 450 Lexington Avenue, 15th Floor, New York, New York 10017, Attention: Paul N. Silverstein, Esq.; (iii) Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022-6069, Attention: Fredric Sosnick, Esq.; (iv) Cadwalader, Wickersham & Taft, One World Financial Center, New York, New York 10281, Attention: Bruce R. Zirinsky, Esq.; (v) Brown Rudnick Berlack Israels LLP, 120 West 45th Street, New York, New York 10036, Attention: Edward S. Weisfelner, Esq.; (vi) Gardere Wynne Sewell LLP, 3000 Thanksgiving Tower, 1601 Elm Street, Suite 3000, Dallas, Texas 75201, Attention: Richard M. Roberson, Esq.; and (vii) The Office of the United States Trustee, Earle Cabell Federal Building, 1100 Commerce Street, Room 976, Dallas, Texas 75242, Attention: George F. McElreath.

NOTICE IS FURTHER GIVEN that the Court has fixed November 30, 2005, at 9:00 a.m. (Prevailing Central Time) as the date and time for the pre-Confirmation Hearing status conference (the "Plan Status Conference"). The Plan Status Conference will be held before the Honorable D. Michael Lynn, United States Bankruptcy Judge, United States Courthouse, 501 W. Tenth Street, Fort Worth, Texas. All parties who intend to participate in the Confirmation Hearing must appear at the Plan Status Conference.

NOTICE IS FURTHER GIVEN that the Plan provides that substantially all of the Assets of Mirant will be transferred to New Mirant, a corporation organized under the laws of Delaware, which will serve as the corporate parent of the Debtors' business enterprise on and after the effective date of the Plan. Except as otherwise provided in the Plan, New Mirant shall not have, and shall not be construed to have or maintain, any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the effective date of the Plan (including, without limitation any liability or claims arising under applicable non-bankruptcy law as a successor to Mirant) and no such liabilities, claims, or obligations for any acts shall attach to New Mirant.

NOTICE IS FURTHER GIVEN that the Plan provides that the trading and marketing business of Mirant Americas Development, Inc., Mirant Americas Production Company, Mirant Americas Energy Marketing, LP, Mirant Americas Retail Energy Marketing, LP, Mirant Americas Gas Marketing I - XV, LLC (collectively, the "Trading Debtors") shall be transferred

to Mirant Energy Trading LLC ("MET"), a Delaware limited liability company. Except as otherwise provided in the Plan, MET shall not have, and shall not be construed to have or maintain, any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the effective date of the Plan (including, without limitation any liability or claims arising under applicable non-bankruptcy law as a successor to the Trading Debtors) and no such liabilities, claims, or obligations for any acts shall attach to MET.

NOTICE IS FURTHER GIVEN that the Plan contains an injunction which, with certain exceptions, permanently enjoins any holder of any claim (other than claims of holders of Allowed MAG Long-term Note Claims) or equity interest from, among other things, taking any of the following actions against or affecting New Mirant and its Affiliates, the Debtors and the Estates (as defined in the Plan), the Assets, or the Disbursing Agent under the Plan (as defined in the Plan), or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such claims or equity interests (other than actions brought to enforce any rights or obligations under the Plan): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and (iv) asserting any setoff, right of subrogation or recoupment of any kind. In addition, except as provided in the Plan, upon the occurrence of the effective date of the Plan, the Debtors shall be discharged from all claims and causes of action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and, except as otherwise provided in the Plan, all holders of claims and equity interests shall be precluded from asserting against New Mirant and its Affiliates, the Debtors, the Assets, or any property dealt with under the Plan, any further or other cause of action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the effective date of the Plan.

Dated: Miami, FL
     September __, 2005

          WHITE & CASE LLP
          Wachovia Financial Center
          200 South Biscayne Blvd.
          Miami, Florida 33131
          (305) 371-2700

          By_____
               Thomas E Lauria
               State Bar No. 11998025

                   -and-

Robin Phelan
State Bar No. 15903000
HAYNES AND BOONE, LLP
901 Main Street
Suite 3100
Dallas, TX 75202
(214) 651-5000

ATTORNEYS FOR THE DEBTORS AND
DEBTORS-IN-POSSESSION

EXHIBIT "G"

NOTE: THE AGGREGATE VOTING AMOUNTS HEREIN ARE FOR VOTING
PURPOSES ONLY. NOTHING HEREIN SHALL PREJUDICE THE DEBTORS' ABILITY
TO OBJECT TO THE CLAIMS OR INTERESTS REFERENCED HEREIN ON ANY BASIS.

The following prepetition claims for debt securities are entitled to vote on the Plan in the
following amounts:

| Name of Trustee / Payee / Transfer/Fiscal Agent | Instrument (CUSIP) | Secured or Unsecured | Aggregate Voting Amount | Debtor |
|---|---|---|---|---|
| Deutsche Bank Trust Co Americas, AS | 7 4% Senior Unsecured Notes due 7/15/2004 (842815AC6) | Unsecured | $200,575,555 54 | Mirant Corporation |
| Deutsche Bank Trust Co. Americas, AS | 7.9% Senior Unsecured Notes due 7/15/2009 (842815AA0) | Unsecured | $501,536,111.08 | Mirant Corporation |
| HSBC Bank USA | 2 5% Convertible Senior Debentures due 6/15/2021 (604675AB4) (604675AA6) | Unsecured | $667,000,000 00 | Mirant Corporation |
| Law Debenture Trust Company of New York | 6 25% Series A Junior Convertible Subordinated Notes due 2030 | Unsecured | $356,534,626.06 | Mirant Corporation |
| HSBC Bank USA | 5.75% Convertible Senior Notes due 07/2007 (604675AC2) | Unsecured | $380,578,402.78 | Mirant Corporation |
| Wells Fargo Bank Minnesota | 7.625% Senior Unsecured Notes due 05/01/2006 (60467PAG9) | Unsecured | $507,730,902.78 | Mirant Americas Generation, LLC |
| Wells Fargo Bank Minnesota | 7 2% Senior Notes due 10/2008 (Registered) (60467PAK0) (60467PAM6) | Unsecured | $306,180,000 00 | Mirant Americas Generation, LLC |

1

The following prepetition claims for syndicated credit facilities and syndicated letter of credit facilities are entitled to vote on the Plan in the following amounts:

| Name of Agent / Payee | Facility | Secured or Unsecured | Aggregate Voting Amount | Debtor |
|---|---|---|---|---|
| Credit Suisse First Boston | 364-day Term loan facility due 7/2003 | Unsecured | $1,127,436,115.18 | Mirant Corporation |
| Credit Suisse First Boston | Four-year Senior unsecured Credit Facility due 7/2005 | Unsecured | $580,500,000 00[1] | Mirant Corporation |
| Citibank, N.A. | Senior unsecured Credit Facility due 4/2004 | Unsecured | $448,248,681.69 | Mirant Corporation |
| Lehman Brothers | Credit Facility due 10/2004 | Unsecured | $250,743,056 11 | Mirant Americas Generation, LLC |
| Lehman Brothers | Credit Facility due 10/2004 | Unsecured | $50,133,118.06 | Mirant Americas Generation, LLC |

The following equity interests are entitled to vote on the Plan:

| Name of Transfer Agent | Type of Security (CUSIP) | Amount of Shares Outstanding as of the Petition Date |
|---|---|---|
| Mellon Investment Services | Mirant Common Stock (604675108) | 405,468,084 |

---

[1] This voting amount is subject to upward adjustment based upon additional letters of credit drawn on this facility prior to October 1, 2005.

The following prepetition claims for other types of non-public debt (and related guaranties) are entitled to vote on the Plan in the following amounts:

| Name of Agent / Payee | Facility | Secured or Unsecured | Aggregate Voting Amount | Debtor |
|---|---|---|---|---|
| Deutsche Bank Securities, Inc. | Deferred Purchase Price Obligation | Unsecured | $45,000,000 00 | Mirant Americas, Inc. |
| Deutsche Bank AG | West Georgia Notes due 12/2003 | Secured | $139,500,000.00 | West Georgia Generating Company, LLC |
| Bayerische Hypo-Und Vereinsbank AG | Unsecured Notes for Gas Prepay | Unsecured | $222,913,568.10 | Mirant Americas Energy Marketing, LP |
| MC Equipment Revolver Statutory Trust | Turbine Facility due 7/2020 | Unsecured | $214,221,481.62 | Mirant Americas Development Capital, LLC |
| MC Equipment Revolver Statutory Trust | Guaranty of Turbine Facility due 7/2020 | Unsecured | $214,221,481 62 | Mirant Corporation |

3

EXHIBIT "H"

d-1379261

The Official Committee of Unsecured Creditors
of Mirant Corporation, *et al.*

September 30, 2005

To:   The Unsecured Creditors Within the
      Mirant Debtor Group

Re:  In re Mirant Corporation, *et al.* (the "Debtors")

Dear Unsecured Creditor:

On behalf of the Official Committee of Unsecured Creditors of Mirant
Corporation, *et al.* (the "Mirant Committee"), we are writing to encourage unsecured creditors
within the Mirant Debtor Group to vote to ACCEPT the Debtors' proposed chapter 11 plan of
reorganization (the "Plan", a copy of which is included on the CD in the solicitation package
being distributed contemporaneously with this letter; capitalized terms used herein and not
otherwise defined shall have the meanings set forth in the Plan).

The Debtors commenced these chapter 11 cases on July 14-15, 2003 and certain
dates thereafter.  On July 25, 2003, the Office of the United States Trustee appointed the Mirant
Committee to serve in these cases.  Since its appointment, the Mirant Committee and its
professionals have been actively involved in the cases, including participation in a 27-day trial
conducted over two months to determine the total enterprise value ("TEV") of the Debtors,
which would serve as the basis upon which a chapter 11 plan would be formulated.

Following the conclusion of the valuation trial, the Bankruptcy Court issued a
preliminary ruling on June 30, 2005 that directed Curt Morgan, the Debtors' COO ("Morgan"),
and their financial advisor, the Blackstone Group ("Blackstone"), under the supervision of
William Snyder, the Court-appointed Examiner (collectively, with Morgan and Blackstone, the
"Valuation Implementation Committee" or "VIC"), to make certain revisions to the Debtors'
business plan and to adjust certain aspects of Blackstone's valuation methodology.  As the
parties assessed this preliminary ruling, it became apparent that implementing the Court-ordered
revisions would take more than two months to complete, and that the resulting TEV calculation
would likely be the subject of additional, potentially protracted and costly, litigation.

Faced with these circumstances, the parties renewed plan discussions in mid-
August 2005 with the intent of trying to reach a consensual resolution.  After extensive, intense

Unsecured Creditors of
Mirant Corporation, et al.
September 28, 2005
Page 2

negotiations over several weeks, the parties reached agreement on the key terms of a consensual
resolution, and these terms were embodied in a plan term sheet, dated September 7, 2005, signed
by the Debtors, the Mirant Committee, the MAG Committee, the Equity Committee and various
Phoenix entities (as representatives of holders of subordinated notes issued by Mirant).  The
parties requested that the Court direct the VIC to suspend its efforts, and the Court entered an
order to that effect on September 9, 2005.  Subsequently, the resulting agreement was
incorporated into the Plan and the related Disclosure Statement.

        As described above, the Plan is the culmination of extensive negotiations among
the various parties in interest in the Debtors' chapter 11 cases.  Creditors are encouraged to read
the Plan and the Disclosure Statement in their entirety.

        Under the Plan, in settlement and compromise of certain existing and potential
disputes regarding intercompany claims and related matters, and for the specified purposes of
voting on the Plan, confirmation of the Plan and determining treatment, and making distributions
in respect of, claims against and equity interests in each Debtor Group, the Plan divides the
Debtors into two distinct Debtor Groups, the Mirant Debtor Group and the MAG Debtor Group.

        The Plan provides that unsecured creditors of the Mirant Debtor Group holding
Class 3 – Unsecured Claims are to receive (i) 96.25% of the stock in the reorganized company,
exclusive of shares to be issued (a) to holders of claims against the MAG Debtors (which will
receive approximately 2.3% of the shares of the reorganized company (the "MAG Shares")) and
(b) certain shares reserved for issuance pursuant to certain New Mirant Employee Stock
Programs (the "Employee Shares"), and (ii) payments equal to 50% of the cash proceeds of
certain identified causes of action (including in particular, the Debtors' lawsuit against Mirant's
former parent, the Southern Company), net of any offsets, fees and expenses incurred in
connection with such causes of action (the "Net Litigation Proceeds").

        The Plan further provides that holders of the subordinated "Trust Preferred" notes,
which are classified in the same class as general unsecured claims against the Mirant Debtor
Group, will receive, in lieu of their Class 3 distribution, (i) 3.5% of the stock in the reorganized
company, exclusive of the MAG Shares and the Employee Shares, (ii) warrants to purchase an
additional 5% of the stock in the reorganized company, and (iii) a pro rata portion of the Net
Litigation Proceeds allocated to Class 3 – Unsecured Creditors.

        Under the Plan, the MAG Long-term Notes will be reinstated, and the MAG
Short-term Notes, together with the PG&E/RMR Claims, will receive (x) either cash or new
notes for 90% of the value of their claims, plus (y) approximately 2.3% of the stock in the
reorganized company.

        The Plan also provides for the release of substantially all intercompany claims,
and in consideration for these releases (and, according to the Debtors, to support the feasibility of
the Plan with respect to the MAG Debtor Group), the contribution by Mirant of certain assets to
the MAG Debtor Group, including (i) the transfer of certain assets of the Debtors' trading

Unsecured Creditors of
Mirant Corporation, et al.
September 28, 2005
Page 3

operations, (ii) the transfer of the Mirant Peaker, Mirant Potomac River and Mirant Zeeland plants and (iii) commitments to make prospective capital contributions of (x) $150 million for re-financing certain MAG debt that matures in 2011 and (y) up to $265 million for environmental capital expenditures.  The Mirant Committee does believe that under the circumstances, these value transfers represent a reasonable compromise and are warranted.

**THE MIRANT COMMITTEE BELIEVES THAT UNDER THE PRESENT CIRCUMSTANCES, THE PLAN IS FAIR AND REASONABLE TO UNSECURED CREDITORS OF THE MIRANT DEBTOR GROUP, AND PROVIDES THESE CREDITORS WITH AN EFFICIENT AND COST-EFFECTIVE MECHANISM FOR REALIZING THE BEST AND HIGHEST RETURN ON THEIR CLAIMS.  THE MIRANT COMMITTEE BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND STRONGLY RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.**

The Mirant Committee's recommendation and support is conditioned on the satisfaction of the conditions precedent to confirmation of the Plan and assumes that the Plan will not be modified or amended in any manner adverse to creditors within the Mirant Debtor Group without the prior consent of the Mirant Committee.

Sincerely,

/s/ LoriAnn Curnyn
LoriAnn Curnyn
Mirant Committee Co-Chair

/s/ Ronald Goldstein
Ronald Goldstein
Mirant Committee Co-Chair

CWT DRAFT
ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
### MIRANT AMERICAS GENERATION, LLC

c/o Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

-and-

Cox Smith Matthews Inc.
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205

September [_], 2005

TO ALL CREDITORS OF
MIRANT AMERICAS GENERATION, LLC:

#### The MAG Committee Recommends That You Vote to
#### Accept the Second Amended Plan of Reorganization for Mirant Corp. *et al.*

The Official Committee of Unsecured Creditors (the "MAG Committee") of Mirant Americas Generation, LLC ("MAG") was appointed by the United States Trustee for the Northern District of Texas after MAG, Mirant Corp. and certain of Mirant Corp.'s subsidiaries (collectively with MAG, the "Debtors") sought relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The MAG Committee represents the interests of all holders of unsecured claims against MAG arising prior to the petition date. The MAG Committee has been advised by its legal counsel, Cadwalader, Wickersham & Taft LLP and Cox Smith Matthews Inc., and by its financial advisor, Houlihan Lokey Howard & Zukin, among other professional advisory firms.

Since the commencement of the Debtors' cases, the MAG Committee and its legal and financial advisors actively participated in the Debtors' bankruptcy cases. The MAG Committee consistently took steps in the Debtors' chapter 11 cases to pursue, and to preserve, valuable claims belonging to the MAG estate. The MAG Committee further took all available actions to expedite MAG's bankruptcy proceedings, while at the same time obtaining an appropriate recovery for MAG creditors. In this regard, the MAG Committee assumed an active role in various litigations to ensure all MAG creditors received fair and equitable treatment under a plan of reorganization, which includes providing MAG creditors with the payment of interest due and owing on their claims. In addition to these efforts, the MAG Committee investigated and evaluated the Debtors' Second Amended Plan of Reorganization, dated September 22, 2005 (the "Second Amended Plan"), to determine whether it is in the best interests of MAG and MAG creditors.

The Second Amended Plan that the Debtors now have proposed is the product of extensive efforts by the MAG Committee and its advisors, working with the Debtors and the other constituencies in these cases, to achieve a substantial recovery for MAG creditors while at the

same time providing for the Debtors' continued economic viability. During these negotiations, the MAG Committee consistently sought equitable treatment of all MAG creditors based upon the overall value of MAG and its subsidiaries.

The Second Amended Plan provides that holders of the MAG Long-term Notes will be reinstated pursuant to Bankruptcy Code section 1124, and such holders will receive all accrued post-petition interest due to them, including "interest on interest" and "Additional Interest", as applicable. As part of a global settlement of intercompany claims, and to help ensure MAG's ability to meet its financial obligations (including in respect of the Long-term Notes), the Second Amended Plan also provides for valuable assets to be transferred to MAG's subsidiaries, and provides for the implementation of additional covenant protection through the New MAG Debt Covenants. Holders of claims based on the MAG Short-term Notes, the MAG Revolver, and certain other unsecured MAG claimants, will receive under the Plan both of the following: (i) either cash or new notes for 90% of their Allowed Claims, and (ii) stock in the reorganized Mirant company, known as New Mirant, for the remainder of their Allowed Claims. Holders of MAG Short-term Notes also will receive distributions for accrued post-petition interest on their claims, including "interest on interest" and "Additional Interest", as applicable.

After engaging in intensive negotiations, and considering all of the circumstances of the Debtors' chapter 11 cases and their businesses, the MAG Committee has determined to support confirmation and implementation of the Debtors' Second Amended Plan, including the Second Amended Plan's proposed treatment of the claims against MAG. **THEREFORE, THE MAG COMMITTEE RECOMMENDS THAT YOU VOTE TO ACCEPT THE SECOND AMENDED PLAN.**

Each MAG creditor is entitled to make its own determination with respect to its vote on the Second Amended Plan. No member of the MAG Committee will vote on your behalf. Thus, your individual vote is very important. The MAG Committee urges you to follow the instructions for voting and to return your ballot promptly, as detailed in the enclosed voting instructions. Failure to return your ballot on time could result in your vote not being counted. This letter is being distributed for informational purposes together with the Second Amended Plan and Disclosure Statement (the "Disclosure Statement") filed with the United States Bankruptcy Court for the Northern District of Texas in the Debtors' chapter 11 cases, as well as a ballot for registering your vote on the Second Amended Plan. This letter is not intended to be a replacement for or summary of the Disclosure Statement. All MAG creditors are urged to carefully read the Second Amended Plan and the Disclosure Statement and, if appropriate, consult with their own counsel or financial advisor prior to submitting their vote.

The MAG Committee supports approval of the Second Amended Plan and strongly recommends that you timely vote to accept the Second Amended Plan in accordance with the procedures that have been established by the Bankruptcy Court.

Very truly yours,

Attorneys for the Official Committee of
Unsecured Creditors of Mirant Americas Generation, LLC


CADWALADER, WICKERSHAM & TAFT LLP


By:_____
            Gregory M. Petrick, Esq.


COX SMITH MATTHEWS INC.


By:_____
            Deborah D. Williamson

**OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF
MIRANT CORPORATION, *ET AL.*, DEBTORS**
CHAPTER 11 CASE NO. 03-46590 (DML) JOINTLY ADMINISTERED

c/o Brown Rudnick Berlack Israels LLP
Seven Times Square
New York, NY 10036
-and-
Hohmann, Taube & Summers, L.L.P.
100 Congress Avenue, Suite 1800
Austin, Texas 78701

September 30, 2005

**TO:   THE HOLDERS OF EQUITY INTERESTS IN MIRANT CORPORATION**

---

We, the law firms of Brown Rudnick Berlack Israels LLP ("Brown Rudnick") and Hohmann, Taube & Summers, L.L.P. ("HTS"), are co-counsel to the Official Committee of Equity Security Holders (the "Equity Committee") of Mirant Corporation, *et al.*, the debtors and debtors in possession (collectively, the "Debtors") in these Chapter 11 bankruptcy cases. The Equity Committee was appointed by the United States Trustee to represent the interests of equity holders of Mirant Corporation in the above-referenced chapter 11 cases. We write to advise you of the Equity Committee's position regarding the Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and its Affiliates dated September 30, 2005 (the "Plan"). The Plan, described in, and attached as Exhibit A to, the accompanying Second Amended Disclosure Statement relating to the Debtors' Second Amended Joint Chapter 11 Plan of Reorganization (the "Disclosure Statement") provides, among other things, how your interest as an equity holder will be treated. (Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Disclosure Statement or the Plan.)

**THE EQUITY COMMITTEE SUPPORTS THE PLAN AND BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF THE HOLDERS OF EQUITY INTERESTS IN MIRANT CORPORATION UNDER ALL THE CIRCUMSTANCES IN THESE CASES AND STRONGLY URGES THE MIRANT DEBTOR CLASS 5 – EQUITY HOLDERS TO VOTE TO ACCEPT THE PLAN.**

The Equity Committee believes that the Plan recoveries provided to Mirant Debtor Class 5 – Equity Interests represent a fair and reasonable compromise of the issues and positions raised by the Equity Committee in support of equity holder recoveries. Since its formation on September 18, 2003, the members of the Equity Committee, together with its legal advisors, Brown Rudnick and HTS, and financial advisors, Peter J. Solomon Company, have made every effort to thoroughly investigate the business and legal affairs of the Debtors in an attempt to maximize equity holder recoveries. In addition, the Equity Committee took various actions to further its efforts to have a valuation hearing for the purpose of establishing that the enterprise value of the Debtors would be sufficient to satisfy all creditor claims and leave equity holders with a recovery. Ultimately, the Debtors filed a motion to conduct a separate hearing on valuation in advance of a disclosure statement hearing. The Bankruptcy Court agreed to schedule such a hearing and it commenced on April 18, 2005.

After intensive discovery and twenty-seven days of trial, on June 30, 2005, the Bankruptcy Court issued a ruling, as amended by a letter ruling dated July 26, 2005, with respect to the valuation hearing that required the Debtors to recalculate their initial valuation (which would have left equity holders with no recovery). This ruling prompted extensive negotiations among the Debtors, the Official Committee of Unsecured Creditors of Mirant Corporation, the Official Committee of Unsecured Creditors of Mirant Americas Generation LLC, representatives of the holders of Mirant Corporation subordinated debt, and the Equity Committee. Through such negotiations, these parties reached a consensual resolution regarding the recoveries to be afforded to the equity holders of Mirant Corporation, the terms of which are reflected in the Plan. The Equity Committee submits that this resolution represents a fair and reasonable outcome under the circumstances of these Chapter 11 cases. Understand that absent the consensual resolution reflected in the Plan, the valuation process mandated by the Court could well have resulted in a finding that stockholders were entitled to no value whatsoever.

Distributions to holders of equity interests in Mirant Corporation are described in the enclosed Disclosure Statement relating to the Plan. In summary, each holder of Mirant Debtor Class 5 – Equity Interests -- i.e., equity interests in Mirant Corporation -- will receive a pro rata share of (1) 3.75% of the shares of New Mirant Common Stock to be issued under the Plan, excluding shares distributed to unsecured creditors of Mirant Americas Generation LLC and shares distributed pursuant to an employee compensation program, and (2) warrants to purchase 10% of the shares of New Mirant Common Stock, which warrants shall have a strike price equal to a total enterprise value of New Mirant at $11.4 billion. In connection with Plan negotiations, Peter J. Solomon Company ("PJS"), the Equity Committee's financial advisor, advised members of the Equity Committee that the stock and warrants offered could achieve a market value of approximately $1.45 per share at or about September 7, 2005, the date of the Plan Term Sheet. It must be emphasized that PJS's views are not an opinion of how these securities will perform and there are numerous factors that can and, in all likelihood will, materially affect the value of these securities. PJS's views were expressed in connection with negotiations and are not intended and should not be used or relied upon for any other purposes, including the purchase or sale of securities of the Debtors. Furthermore, we are advised that it remains the views of the Creditors Committees and the Debtors that, absent the compromise reflected in the Plan, stockholders might not be entitled to any recovery because creditors may not be getting payment in full on account of their claims. Additionally, Mirant Debtor Class 5 – Equity Interests will be entitled to payments equal to 50% of the cash recoveries on certain avoidance actions (including, most notably, the existing action against The Southern Company) net of any fees and expenses incurred in connection with such actions and reduced by an agreed upon share of the tax consequences of such recoveries to New Mirant, if any.

Please note that the Equity Committee refused to agree with the Debtors' position (as encompassed in the Plan) that existing officers and directors keep their common stock (and receive shares of New Mirant Common Stock on account thereof). The Equity Committee reserved the right and intends to seek that the Bankruptcy Court subordinate or cancel any such stock.

-2-

An informational "town hall" meeting will be held on Monday, October 31, 2005 from 1:00 p.m. to 4:00 p.m. at the Gaylord Texan Hotel, 1501 Gaylord Trail, Grapevine, Texas (ph: 866-782-7897). The purpose of this meeting is so that the Equity Committee's professionals can respond to questions equity holders may have with respect to the Plan. To facilitate this meeting, all equity holder questions must be submitted at least 72 hours prior to the meeting, in writing, to Leslie Scharf of Brown Rudnick, either by e-mail at lscharf@brownrudnick.com, or by facsimile at (212) 209-4801. The determination as to selection of specific questions for response at the meeting will be made by the Equity Committee's professionals in consultation with the Examiner. Please note that the information provided at the meeting will not go beyond the information already provided in the Disclosure Statement or otherwise publicly available and attendance at the meeting is not a substitute for review of the Disclosure Statement. In addition, the Equity Committee's professionals will not provide legal advice at this meeting, and equity holders will need to consult with their own counsel, especially with respect to tax and securities laws issues. The Equity Committee's professionals merely will assist with equity holders' understanding of the information provided in the Disclosure Statement.

*The foregoing description is not intended as a substitute for the Disclosure Statement, which has been approved by the Court. Equity holders should read the Disclosure Statement and the Plan in their entirety, and then make their own respective independent decision as to whether the Plan is acceptable.*

The Debtors have provided you with a Ballot to vote to accept or reject the Plan. In order to have your vote counted, you must complete and return the ballot in accordance with the procedures set forth therein and in the accompanying Disclosure Statement and Disclosure Statement Approval/Voting Procedures orders. PLEASE READ THE DIRECTIONS ON THE BALLOT CAREFULLY AND COMPLETE YOUR BALLOT IN ITS ENTIRETY BEFORE RETURNING IT TO THE DEBTORS' BALLOTING AGENT.

Your timely vote is important, as only those holders of Mirant Debtor Class 5 – Equity Interests that timely and actually vote on the Plan will have their vote counted for purposes of determining whether the Plan has been accepted by Mirant Debtor Class 5 – Equity Interests. *In short, the Equity Committee supports approval of the Plan and strongly recommends that you timely vote to accept the Plan in accordance with the procedures that have been established by the Bankruptcy Court.*

Very truly yours,

Attorneys for the Official Committee of
Equity Security Holders of Mirant Corporation

**BROWN RUDNICK BERLACK ISRAELS LLP**

By: /s/ _____
　　　Edward S. Weisfelner, Esq.

**HOHMANN, TAUBE & SUMMERS, L.L.P.**

By: /s/ _____
　　　Eric Taube, Esq.