Surrender of securities for exchange may only be made by you, and will only be accepted pursuant to a letter of transmittal that will be furnished to you by the Debtors following confirmation of the Plan by the United States Bankruptcy Court.

No Ballot or Master Ballot shall constitute or be deemed (a) a proof of claim or equity interest or an assertion of a claim or equity interest or (b) an admission by the Debtors of the nature, validity or amount of any claim or equity interest.

We will, upon request, reimburse you for customary mailing and handling expenses incurred by you in forwarding the Ballots and other enclosed materials to the Beneficial Holders of Mirant Debtor Class 3 Debt Securities, MAG Debtor Class 5 Debt Securities, or Mirant Debtor Class 5 Equity Interests held by you as a nominee or in a fiduciary capacity.

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF ANY OF THE DEBTORS OR THE SOLICITATION AND TABULATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE ENCLOSED DOCUMENTS.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES OR IF YOU NEED ADDITIONAL COPIES OF THE MASTER BALLOT, BALLOTS, DISCLOSURE STATEMENT, PLAN OR OTHER RELATED MATERIALS, PLEASE CALL FINANCIAL BALLOTING GROUP LLC, AT 1-646-282-1800.**

(This page intentionally left blank)

## VOTING INSTRUCTIONS

### General Instructions for Provisional Ballots

1.      You have filed a motion (the "Temporary Allowance Motion") with the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") requesting that your claim be temporarily allowed for voting purposes. Receipt of a Provisional Ballot and Voting Instructions does not mean that you have an allowed claim entitled to vote on the Second Amended Joint Chapter 11 Plan of Reorganization (the "Plan") for Mirant Corporation and its Affiliated Debtors (collectively, the "Debtors") that is attached as Exhibit "A" to the Debtors' disclosure statement (the "Disclosure Statement") in support of the Plan. Rather, whether you have a claim and, if so, the amount and classification of such claim, shall be determined by the Bankruptcy Court on or before November 10, 2005, or such later date the Bankruptcy Court may establish. This provisional Ballot (the "Provisional Ballot") together with the Solicitation Package has been sent to you in order to provide you with sufficient time to review the Plan and Disclosure Statement in order to make a determination to vote to accept or reject the Plan if the Bankruptcy Court ultimately allows your claim to permit your vote on the Plan on or before the Voting Deadline. **If the Bankruptcy Court ultimately allows your claim for voting purposes then your vote will be counted if and only if the Solicitation and Tabulation Agent actually receives a fully executed copy of this Ballot by no later than 4:00 p.m. (Prevailing Central Time) on November 10, 2005 (the "Voting Deadline").** All capitalized terms used, but not defined herein or in the Provisional Ballot shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as the case may be.

2.      **PLEASE READ THESE VOTING INSTRUCTIONS, THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THE PROVISIONAL BALLOT. YOU SHOULD REVIEW THE PLAN AND THE DISCLOSURE STATEMENT BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM UNDER THE PLAN.**

### Voting and Non-Voting Classes

3.      As more fully set forth in the Plan and the Disclosure Statement, Mirant Debtors Classes 2 through 5 and MAG Debtors Classes 2 through 5 and 7 are impaired and are receiving distributions under the Plan and, therefore, the Debtors are soliciting acceptances from holders of claims in these Classes only (collectively, the "Voting Classes"). All other classes are (a) unimpaired and conclusively presumed to have accepted the Plan or (b) comprised of intercompany claims asserted by proponents of the Plan and deemed to have accepted the Plan (collectively, the "Non-Voting Classes").

<u>Voting Procedures</u>

4.      The Debtors have provided a Solicitation Package containing, among other things, copies of the Plan, Disclosure Statement and the Provisional Ballot to you because you have filed a Temporary Allowance Motion with the Bankruptcy Court.

5.      If no return envelope was enclosed with the Disclosure Statement and Provisional Ballot, please send your Provisional Ballot to the Solicitation and Tabulation Agent at the address listed below in Paragraph 6.b.

6.      With respect to holders of claims in the Voting Classes that have Temporary Allowance Motions:

   a.      Holders of such claims can vote by completing the Provisional Ballot, signing it and returning it to the Solicitation and Tabulation Agent so as to be received by the Solicitation and Tabulation Agent on or before **November 10, 2005 at 4:00 p.m. (Prevailing Central Time)**.

   b.      Provisional Ballots should be sent to the Solicitation and Tabulation Agent in the preaddressed, postage prepaid envelope provided which contains the following address:

   > Mirant Ballot Tabulation
   > P.O. Box 5014
   > F.D.R. Station
   > New York, NY 10150-5014

   c.      In order to be counted, your Provisional Ballot must (i) be **<u>actually received</u>** by the Voting Deadline and (ii) the Bankruptcy Court must allow your claim for voting purposes on or before the Voting Deadline (or such later date the Bankruptcy Court may establish).

   d.      The Provisional Ballot is not a letter of transmittal and may not be used for any purpose other than to transmit votes to accept or reject the Plan.

<u>Tabulation Procedures for All Voting Classes</u>

7.      The United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court") has established the following procedures regarding the tabulation of votes cast with respect to the Plan:

   a.      Votes will be tabulated both on an individual debtor basis for each relevant class and on a consolidated basis for each relevant class within a proposed consolidated group.

   b.      A vote shall be disregarded if the Bankruptcy Court determines, after notice and a hearing, that a vote was not solicited or procured in good faith or in accordance

with the provisions of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.
(the "Bankruptcy Code").

c.      Any Ballot that is returned to the Solicitation and Tabulation Agent, but which is
unsigned, or has a non-original signature, shall not be counted, unless otherwise
ordered by the Bankruptcy Court.

d.      All votes to accept or reject the Plan must be cast by using the appropriate Ballot
and in accordance with these voting instructions and/or as set forth on the Ballot
(as may be applicable) and votes that are cast in any other manner shall not be
counted, unless otherwise ordered by the Bankruptcy Court.

e.      A holder of claims and/or equity interests in more than one class must use
separate Ballots for each class of claims and/or equity interests.

f.      If multiple Ballots are received for a holder of claims or equity interests voting the
same claims or equity interests, the last Ballot received, as determined by the
Solicitation Agent or the Tabulation Agent, as the case may be, from such holder
prior to the Voting Deadline will be the Ballot that is counted.

g.      If multiple Ballots are received from different holders purporting to hold the same
claim or equity interest, in the absence of contrary information establishing which
claimant or holder held such claim or equity interest as of the Record Date, the
last Ballot received prior to the Voting Deadline will be the Ballot that is counted.

h.      If multiple Ballots are received from a holder of a claim or equity interest and
someone purporting to be his, her, or its attorney or agent, the Ballot received
from the holder of the claim or equity interest will be the Ballot that is counted,
and the vote of the purported attorney or agent will not be counted, unless
otherwise ordered by the Bankruptcy Court.

i.      A Ballot that is completed, but on which the claimant or holder of equity interest
did not indicate whether to accept or reject the Plan or that indicates both an
acceptance and rejection of the Plan shall not be counted, unless otherwise
ordered by the Bankruptcy Court.

j.      Any Ballot (except a Master Ballot) that partially accepts and partially rejects the
Plan shall not be counted, unless otherwise ordered by the Bankruptcy Court.

k.      A holder of claims or equity interest shall be deemed to have voted the full
amount of its claim or equity interest in each class and shall not be entitled to split
its vote within a class.

l.      The Solicitation and Tabulation Agent shall not accept a vote by facsimile,
telecopy transmission or electronic mail, unless otherwise ordered by the
Bankruptcy Court.

m.   For the purpose of voting on the Plan, the Solicitation and Tabulation Agent will be deemed to be in constructive receipt of any Ballot timely delivered to any address that the Solicitation and Tabulation Agent designates for the receipt of Ballots cast on the Plan.

8.   The Bankruptcy Court has also established the following voting procedures:

a.   if a claim is deemed allowed as such term is defined in the Bankruptcy Code, then such claim shall be allowed for voting purposes in the amount and classification deemed allowed in the Plan;

b.   except as otherwise provided herein and unless temporarily allowed for voting purposes by the Bankruptcy Court, if a filed proof of claim asserts a claim in a wholly undetermined or unliquidated amount or is docketed in the official claim register maintained by Bankruptcy Services, LLC ("BSI"), the Bankruptcy Court-appointed claims and noticing agent, as of the Record Date in the amount of $0, then such claim shall be allowed for voting purposes as a general unsecured claim only in the amount of $1.00;

c.   except as otherwise provided herein and unless temporarily allowed for voting purposes by the Bankruptcy Court, if a filed proof of claim asserts a claim in a partially undetermined or unliquidated amount, then such claim shall be allowed for voting purposes only in the amount of the known or liquidated portion of the claim;

d.   if a claim has been estimated by an order of the Bankruptcy Court in accordance with the procedures for the estimation of certain contingent and unliquidated proofs of claim for purposes of feasibility of, voting on, and distribution under a chapter 11 plan of reorganization, which procedures were approved by the Bankruptcy Court by orders dated October 21, 2004 and October 26, 2004, then such claim will be allowed for voting purposes in the amount approved by the Bankruptcy Court, provided that such order is entered on or before the Voting Deadline;

e.   unless temporarily allowed for voting purposes by the Bankruptcy Court, if a claim is listed in the Debtors' Schedules of Assets and Liabilities (the "Schedules") as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable deadline for the filing of proofs of claim by creditors of the Debtors for which Schedules had been filed as of such dates (the "Bar Dates")[1] or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline, then such claim shall be disallowed for voting purposes;

---

[1]   By orders dated August 21, 2003, October 8, 2003 and January 18, 2004 (the "Bar Date Orders"), and pursuant to Bankruptcy Rule 3003(c)(3), the Bankruptcy Court established December 16, 2003, as the Bar Date applicable to all the Debtors other than Mirant Americas Energy Capital, LP and Mirant Americas Energy Capital Assets, LLC (collectively, the "MAEC Debtors"), and March 12, 2004, as the Bar Date applicable to the MAEC Debtors.

f.      notwithstanding anything else provided herein, if (i) the Debtors have objected to a claim or equity interest by serving an objection, motion, adversary proceeding or otherwise to the entirety of a claim or equity interest on or before the date of the entry of the order approving the Disclosure Statement and (ii) the claim or equity interest has not been temporarily allowed for voting purposes by the Bankruptcy Court, then such claim or equity interest shall be disallowed for voting purposes;

g.      notwithstanding anything else provided herein, if (i) the Debtors have objected to a claim or equity interest by serving an objection, motion, adversary proceeding or otherwise to a portion of a claim or equity interest on or before the date of the entry of the Disclosure Statement Order and (ii) such portion of the claim or equity interest has not been temporarily allowed for voting purposes by the Bankruptcy Court, then the claim or equity interest shall be allowed for voting purposes only in the amount that is set forth in the pending objection;

h.      notwithstanding anything else provided herein, if (i) the Debtors have objected to a claim by serving an objection, motion, adversary proceeding or otherwise to the classification of all or part of a claim on or before the date of the entry of the Disclosure Statement Order (including any requests to subordinate such claim) and (ii) such claim has not been temporarily allowed for voting purposes by the Bankruptcy Court, then the claim shall be allowed for voting purposes only in the amount and classification that is set forth in the pending objection (if any);

i.      unless such claim has been temporarily allowed for voting purposes by the Bankruptcy Court or otherwise allowed as to all or part of the claim, if the Debtors have objected to a claim by serving an objection, motion, adversary proceeding or otherwise to a proof of claim based upon the claim being asserted against the wrong debtor, then the claim shall be allowed for voting purposes only in the amount and against the Debtor as set forth in the pending objection;

j.      unless otherwise provided by an order of the Bankruptcy Court, the allowed amount of any proof of claim for voting purposes shall be the amount as docketed in BSI's claims database as of the Record Date;

k.      unless otherwise provided by an order of the Bankruptcy Court or otherwise provided herein, for purposes of determining eligibility to vote, the classification of a claim shall be determined based on the classification as docketed in BSI's claims database as of the Record Date; provided, however, that any claims for which BSI was unable to identify the classification shall be classified as general unsecured claims;

l.      unless temporarily allowed for voting purposes by the Bankruptcy Court, if a single proof of claim has been filed against multiple Debtors (in contravention of the Bar Date Orders), then such claim shall be allowed for voting purposes only against the Debtor as docketed in BSI's claims database as of the Record Date;

m.     if a claim or equity interest is allowed pursuant to a Bankruptcy Court-approved settlement (except for a claim or equity interest that is temporarily allowed by the Bankruptcy Court, which claim or equity interest may vote so long as such order temporarily allowing the claim or equity interest is entered by the Voting Deadline) on or before ten days prior to the Voting Deadline, then such claim or equity interest will be entitled to vote on the Plan in accordance with the terms of such settlement;

n.     unless temporarily allowed for voting purposes by the Bankruptcy Court, if a proof of claim asserts a claim that is not in U.S. dollars, such claim will be treated as unliquidated and allowed for voting purposes only in the amount of $1.00;

o.     unless temporarily allowed for voting purposes by the Bankruptcy Court, if (i) a proof of claim was filed after the applicable Bar Date, (ii) the creditor did not obtain leave to file such late claim, and (iii) the proof of claim is not docketed in BSI's database as of the Record Date as an amendment of a timely filed claim, then such claim shall be disallowed for voting purposes only;

p.     unless otherwise temporarily allowed for voting purposes by the Bankruptcy Court, if a proof of claim does not list a Debtor or the Debtor is unidentifiable on the proof of claim, then such claim will be allowed for voting purposes only against Mirant Corporation;

q.     unless otherwise temporarily allowed for voting purposes by the Bankruptcy Court, if a claim is disallowed pursuant to section 502(d) of the Bankruptcy Code or is equitably subordinated under the Bankruptcy Code, then such claim shall be disallowed for voting purposes only;

r.     if the Debtors schedule a claim and the creditor filed a proof of claim superseding such scheduled claim, the scheduled claim is deemed superseded in accordance with Rule 3003(c)(4) of the Federal Rules of Bankruptcy Procedure and such scheduled claim shall be disallowed for voting purposes;

s.     if a union representative or plan administrator of an employee benefit program filed a claim on behalf of its constituents, then (i) each constituent creditor will be entitled to vote its claim in the amount and classification set forth in the claim filed by the union representative or plan administrator, however any other separate claim filed by a constituent creditor based upon the same facts and circumstances alleged in the claim filed by the union representative or plan administrator will supercede the claim filed by the union representative or plan administrator for voting purposes and (ii) the union representative or plan administrator will not be entitled to vote any amount on account of its proof of claim; and

t.     in addition to the foregoing, the Debtors may seek an order of the Bankruptcy Court disallowing a claim for voting purposes at anytime prior to the commencement of the hearing to consider confirmation of the Plan.

<u>Questions</u>

9.    If you have any questions regarding your Provisional Ballot or these voting instructions,
      please call Bankruptcy Services, LLC, at 1-866-316-7766.

(This page intentionally left blank)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case |
|  | ) |  |
| MIRANT CORPORATION, et al., | ) | Case No. 03-46590(DML)11 |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

**NOTICE OF (A) SOLICITATION OF VOTES TO ACCEPT OR REJECT THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MIRANT CORPORATION AND ITS AFFILIATED DEBTORS, (B) HEARING TO CONSIDER CONFIRMATION OF THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MIRANT CORPORATION AND ITS AFFILIATED DEBTORS AND (C) DEADLINE FOR FILING OBJECTIONS TO THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MIRANT CORPORATION AND ITS AFFILIATED DEBTORS**

TO ALL CREDITORS OR SHAREHOLDERS OF THE
DEBTORS HOLDING EQUITY INTERESTS THAT ARE
IMPAIRED UNDER THE PLAN AND OTHER PARTIES IN INTEREST:

NOTICE IS HEREBY GIVEN that on _____ __, 2005, the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court") entered an order (the "Order") approving the disclosure statement, dated September 22, 2005 (the "Disclosure Statement") with respect to the Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and its Affiliated Debtors, dated September 22, 2005 (the "Plan") filed by Mirant Corporation and its affiliated debtors (collectively, the "Debtors"). Pursuant to the Order, solicitation materials consisting of a CD-ROM containing a copy of the Disclosure Statement, the Plan and all exhibits thereto, and a paper ballot for the purpose of voting to accept or reject the Plan have been mailed to all known holders of impaired claims and equity interests against the Debtors entitled to vote on the Plan. If you are a holder of an impaired claim against the Debtors and have not received the foregoing solicitation materials, you may obtain the same by request to Bankruptcy Services, LLC, at 1-866-316-7766. Additionally, the Plan and Disclosure Statement are available at http://www.txnb.uscourts.gov and http://www.mirant-caseinfo.com. Paper copies of the Disclosure Statement and Plan will be provided only to those holders of claims or equity interests (i) that can establish by written request that receiving a CD-ROM imposes a hardship or (ii) who purchase a paper copy of the Disclosure Statement and Plan for the cost of $50 per copy. Please contact Bankruptcy Services, LLC at 1-866-316-7766 for information regarding submission of a written notice of hardship or how to purchase of a paper copy of the Disclosure Statement and Plan.

NOTICE IS FURTHER GIVEN that except as set forth in the next paragraph, all ballots cast to accept or reject the Plan must be properly completed, executed and mailed or delivered to the Debtors' Solicitation and Tabulation Agent at P.O. Box 5014, F.D.R. Station, New York, NY 10150-5014, Attn: Mirant Ballot Tabulation, so that they are ACTUALLY RECEIVED no later

than 4:00 p.m., Prevailing Central Time, on November 10, 2005. If your ballot is not properly completed or received by such time, it will not be counted as a vote to accept or reject the Plan. Ballots transmitted by facsimile, telecopy transmission or electronic mail will not be accepted and will not be counted as a vote to accept or reject the Plan.

NOTICE IS FURTHER GIVEN that if you hold your claim or interest beneficially through a trustee, agent bank, broker dealer or other agent or nominee (a "Voting Nominee"), you may receive your solicitation materials, including your ballot (a "Beneficial Holder Ballot"), directly from such Voting Nominee. All Beneficial Holder Ballots cast to accept or reject the Plan must be properly completed, executed and returned to the Voting Nominees in such manner to allow sufficient time for the Voting Nominees to process such votes on "Master Ballots" and mail or deliver such Master Ballots to the Debtors' Solicitation and Tabulation Agent so that they are ACTUALLY RECEIVED no later than 4:00 p.m., Prevailing Central Time, on November 10, 2005.

NOTICE IS FURTHER GIVEN that the Court has fixed December 1, 2005, at 9:00 a.m. (Prevailing Central Time) as the date and time for the hearing to consider confirmation of the Plan and related matters (the "Confirmation Hearing"). The Confirmation Hearing will be held before the Honorable D. Michael Lynn, United States Bankruptcy Judge, United States Courthouse, 501 W. Tenth Street, Fort Worth, Texas. The Confirmation Hearing may be adjourned from time to time without further notice other than announcement made at the Confirmation Hearing or any adjourned hearing.

NOTICE IS FURTHER GIVEN that objections, if any, to the confirmation of the Plan must be in writing, and must (a) state the name and address of the objecting party and the nature and amount of the claim or interest of such party, (b) state with particularity the basis and nature of each objection to confirmation of the Plan, and (c) be filed, together with proof of service, with the Court and served so that they are received no later than 4:00 p.m., Prevailing Central Time, on [_____ __, 2005], by the Court, and the following parties: (i) White & Case LLP, Co-Attorneys for the Debtors and Debtors-in-Possession, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131, Attention: Thomas E Lauria, Esq.; (ii) Andrews & Kurth, L.L.P., 450 Lexington Avenue, 15th Floor, New York, New York 10017, Attention: Paul N. Silverstein, Esq.; (iii) Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022-6069, Attention: Fredric Sosnick, Esq.; (iv) Cadwalader, Wickersham & Taft, One World Financial Center, New York, New York 10281, Attention: Bruce R. Zirinsky, Esq.; (v) Brown Rudnick Berlack Israels LLP, 120 West 45th Street, New York, New York 10036, Attention: Edward S. Weisfelner, Esq.; (vi) Gardere Wynne Sewell LLP, 3000 Thanksgiving Tower, 1601 Elm Street, Suite 3000, Dallas, Texas 75201, Attention: Richard M. Roberson, Esq.; and (vii) The Office of the United States Trustee, Earle Cabell Federal Building, 1100 Commerce Street, Room 976, Dallas, Texas 75242, Attention: George F. McElreath.

NOTICE IS FURTHER GIVEN that the Court has fixed November 30, 2005, at 9:00 a.m. (Prevailing Central Time) as the date and time for the pre-Confirmation Hearing status conference (the "Plan Status Conference"). The Plan Status Conference will be held before the Honorable D. Michael Lynn, United States Bankruptcy Judge, United States Courthouse, 501 W. Tenth Street, Fort Worth, Texas. All parties who intend to participate in the Confirmation Hearing must appear at the Plan Status Conference.

NOTICE IS FURTHER GIVEN that the Debtors intend to file the Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases as Schedule 10 to the

Disclosure Statement (as may be supplemented from time to time prior to the entry of an order confirming the Plan) (the "Assumption Schedule") with the Court setting forth the list of executory contracts and unexpired leases to be assumed, or assumed and assigned, by the Debtors pursuant to the Plan.  Unless otherwise provided in the Plan or otherwise listed on the Assumption Schedule, all executory contracts and unexpired leases of the Debtors not previously assumed by the Debtors, including, but not limited to, those agreements listed and described in the "Schedule of Rejected Executory Contracts and Unexpired Leases" attached as Schedule 9 to the Disclosure Statement (as may be supplemented from time to time prior to the entry of an order confirming the Plan), shall be rejected by the Debtors, as of the effective date of the Plan, pursuant to the provisions of section 365 of the Bankruptcy Code.  Any claims arising from the rejection of an executory contract or unexpired lease must be asserted in accordance with the terms of the Plan or such claims will be forever barred and unenforceable against the Debtors, New Mirant, their respective Affiliates, or the Assets (each, as defined in the Plan).

NOTICE IS FURTHER GIVEN that the Plan provides that substantially all of the Assets of Mirant will be transferred to New Mirant, a corporation organized under the laws of Delaware, which will serve as the corporate parent of the Debtors' business enterprise on and after the effective date of the Plan.  Except as otherwise provided in the Plan, New Mirant shall not have, and shall not be construed to have or maintain, any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the effective date of the Plan (including, without limitation any liability or claims arising under applicable non-bankruptcy law as a successor to Mirant) and no such liabilities, claims, or obligations for any acts shall attach to New Mirant.

NOTICE IS FURTHER GIVEN that the Plan provides that the trading and marketing business of Mirant Americas Development, Inc., Mirant Americas Production Company, Mirant Americas Energy Marketing, LP, Mirant Americas Retail Energy Marketing, LP, Mirant Americas Gas Marketing I - XV, LLC (collectively, the "Trading Debtors") shall be transferred to Mirant Energy Trading LLC ("MET"), a Delaware limited liability company. Except as otherwise provided in the Plan, MET shall not have, and shall not be construed to have or maintain, any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the effective date of the Plan (including, without limitation any liability or claims arising under applicable non-bankruptcy law as a successor to the Trading Debtors) and no such liabilities, claims, or obligations for any acts shall attach to MET.

NOTICE IS FURTHER GIVEN that the Plan contains an injunction which, with certain exceptions, permanently enjoins any holder of any claim (other than claims of holders of Allowed MAG Long-term Note Claims) or equity interest from, among other things, taking any of the following actions against or affecting New Mirant and its Affiliates, the Debtors and the Estates (as defined in the Plan), the Assets, or the Disbursing Agent under the Plan (as defined in the Plan), or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such claims or equity interests (other than actions brought to enforce any rights or obligations under the Plan): (i)  commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and (iv) asserting any setoff, right of

subrogation or recoupment of any kind.  In addition, except as provided in the Plan, upon the occurrence of the effective date of the Plan, the Debtors shall be discharged from all claims and causes of action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and, except as otherwise provided in the Plan, all holders of claims and equity interests shall be precluded from asserting against New Mirant and its Affiliates, the Debtors, the Assets, or any property dealt with under the Plan, any further or other cause of action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the effective date of the Plan.

Dated:  Miami, FL
       September ___, 2005

      WHITE & CASE LLP
      Wachovia Financial Center
      200 South Biscayne Blvd.
      Miami, Florida 33131
      (305) 371-2700

      By_____

        Thomas E Lauria
        State Bar No. 11998025

           -and-

        Robin Phelan
        State Bar No. 15903000
        HAYNES AND BOONE, LLP
        901 Main Street
        Suite 3100
        Dallas, TX 75202
        (214) 651-5000

      ATTORNEYS FOR THE DEBTORS AND
      DEBTORS-IN-POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case |
|  | ) |  |
| MIRANT CORPORATION, et al., | ) | Case No. 03-46590(DML)11 |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

**NOTICE OF (A) HEARING TO CONSIDER CONFIRMATION OF
THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
FOR MIRANT CORPORATION AND ITS AFFILIATED DEBTORS,
(B) TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS, AND
(C) DEADLINE FOR FILING OBJECTIONS TO THE SECOND AMENDED
JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MIRANT
CORPORATION AND ITS AFFILIATED DEBTORS**

TO ALL CREDITORS OF THE DEBTORS HOLDING CLAIMS
THAT ARE UNIMPAIRED UNDER THE PLAN:

　　　　NOTICE IS HEREBY GIVEN that on _____ __, 2005, the United States
Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court") entered
an order (the "Order") approving the disclosure statement, dated September 22, 2005 (the
"Disclosure Statement") with respect to the Second Amended Joint Chapter 11 Plan of
Reorganization for Mirant Corporation and its Affiliated Debtors, dated September 22, 2005 (the
"Plan") filed by Mirant Corporation and its affiliated debtors (collectively, the "Debtors").
Pursuant to the Order, solicitation materials consisting of a CD-ROM containing a copy of the
Disclosure Statement, the Plan and all exhibits thereto need not be mailed to any holder of an
unimpaired claim unless such party makes a specific request in writing for the same. Such
solicitation materials are available upon request to Bankruptcy Services, LLC, at 757 Third
Avenue, 3rd Floor, New York, New York 10017. Additionally, the Plan and Disclosure
Statement are available at http://www.txnb.uscourts.gov and http://www.mirant-caseinfo.com.
Paper copies of the Disclosure Statement and Plan will be provided only to those holders of
claims or equity interests (i) that can establish by written request that receiving a CD-ROM
imposes a hardship or (ii) who purchase a paper copy of the Disclosure Statement and Plan for
the cost of $50 per copy. Please contact Bankruptcy Services, LLC at 1-866-316-7766 for
information regarding submission of a written notice of hardship or how to purchase of a paper
copy of the Disclosure Statement and Plan.

　　　　NOTICE IS FURTHER GIVEN that under the terms of the Plan, your claim against the
Debtors is not impaired pursuant to section 1124 of the Bankruptcy Code and, therefore,
pursuant to section 1126(f) of the Bankruptcy Code, you are (i) deemed to have accepted the
Plan and (ii) not entitled to vote on the Plan. If you have any questions regarding the status of
your claims, you should contact Financial Balloting Group LLC at 1-866-847-8179.

NOTICE IS FURTHER GIVEN that the Court has fixed December 1, 2005, at 9:00 a.m. (Prevailing Central Time) as the date and time for the hearing to consider confirmation of the Plan and related matters (the "Confirmation Hearing"). The Confirmation Hearing will be held before the Honorable D. Michael Lynn, United States Bankruptcy Judge, United States Courthouse, 501 W. Tenth Street, Fort Worth, Texas. The Confirmation Hearing may be adjourned from time to time without further notice other than announcement made at the Confirmation Hearing or any adjourned hearing.

NOTICE IS FURTHER GIVEN that objections, if any, to the confirmation of the Plan must be in writing, and must (a) state the name and address of the objecting party and the nature and amount of the claim or interest of such party, (b) state with particularity the basis and nature of each objection to confirmation of the Plan, and (c) be filed, together with proof of service, with the Court and served so that they are received no later than 4:00 p.m., Prevailing Central Time, on [_____ __, 2005], by the Court, and the following parties: (i) White & Case LLP, Co-Attorneys for the Debtors and Debtors-in-Possession, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida  33131, Attention: Thomas E Lauria, Esq.; (ii) Andrews & Kurth, L.L.P., 450 Lexington Avenue, 15th Floor, New York, New York 10017, Attention: Paul N. Silverstein, Esq.; (iii) Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022-6069, Attention: Fredric Sosnick, Esq.; (iv) Cadwalader, Wickersham & Taft, One World Financial Center, New York, New York 10281, Attention: Bruce R. Zirinsky, Esq.; (v) Brown Rudnick Berlack Israels LLP, 120 West 45th Street, New York, New York 10036, Attention: Edward S. Weisfelner, Esq.; (vi) Gardere Wynne Sewell LLP, 3000 Thanksgiving Tower, 1601 Elm Street, Suite 3000, Dallas, Texas 75201, Attention: Richard M. Roberson, Esq.; and (vii) The Office of the United States Trustee, Earle Cabell Federal Building, 1100 Commerce Street, Room 976, Dallas, Texas 75242, Attention: George F. McElreath.

NOTICE IS FURTHER GIVEN that the Court has fixed November 30, 2005, at 9:00 a.m. (Prevailing Central Time) as the date and time for the pre-Confirmation Hearing status conference (the "Plan Status Conference"). The Plan Status Conference will be held before the Honorable D. Michael Lynn, United States Bankruptcy Judge, United States Courthouse, 501 W. Tenth Street, Fort Worth, Texas.  All parties who intend to participate in the Confirmation Hearing must appear at the Plan Status Conference.

NOTICE IS FURTHER GIVEN that the Plan provides that substantially all of the Assets of Mirant will be transferred to New Mirant, a corporation organized under the laws of Delaware, which will serve as the corporate parent of the Debtors' business enterprise on and after the effective date of the Plan.  Except as otherwise provided in the Plan, New Mirant shall not have, and shall not be construed to have or maintain, any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the effective date of the Plan (including, without limitation any liability or claims arising under applicable non-bankruptcy law as a successor to Mirant) and no such liabilities, claims, or obligations for any acts shall attach to New Mirant.

NOTICE IS FURTHER GIVEN that the Plan provides that the trading and marketing business of Mirant Americas Development, Inc., Mirant Americas Production Company, Mirant Americas Energy Marketing, LP, Mirant Americas Retail Energy Marketing, LP, Mirant Americas Gas Marketing I - XV, LLC (collectively, the "Trading Debtors") shall be transferred

2

to Mirant Energy Trading LLC ("MET"), a Delaware limited liability company. Except as otherwise provided in the Plan, MET shall not have, and shall not be construed to have or maintain, any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the effective date of the Plan (including, without limitation any liability or claims arising under applicable non-bankruptcy law as a successor to the Trading Debtors) and no such liabilities, claims, or obligations for any acts shall attach to MET.

NOTICE IS FURTHER GIVEN that the Plan contains an injunction which, with certain exceptions, permanently enjoins any holder of any claim (other than claims of holders of Allowed MAG Long-term Note Claims) or equity interest from, among other things, taking any of the following actions against or affecting New Mirant and its Affiliates, the Debtors and the Estates (as defined in the Plan), the Assets, or the Disbursing Agent under the Plan (as defined in the Plan), or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such claims or equity interests (other than actions brought to enforce any rights or obligations under the Plan): (i)  commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and (iv) asserting any setoff, right of subrogation or recoupment of any kind.  In addition, except as provided in the Plan, upon the occurrence of the effective date of the Plan, the Debtors shall be discharged from all claims and causes of action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and, except as otherwise provided in the Plan, all holders of claims and equity interests shall be precluded from asserting against New Mirant and its Affiliates, the Debtors, the Assets, or any property dealt with under the Plan, any further or other cause of action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the effective date of the Plan.

Dated:  Miami, FL
        September __, 2005

WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131
(305) 371-2700

By_____
    Thomas E Lauria
    State Bar No. 11998025

-and-

Robin Phelan
State Bar No. 15903000
HAYNES AND BOONE, LLP
901 Main Street
Suite 3100
Dallas, TX 75202
(214) 651-5000

ATTORNEYS FOR THE DEBTORS AND
DEBTORS-IN-POSSESSION

EXHIBIT "G"

NOTE:  THE AGGREGATE VOTING AMOUNTS HEREIN ARE FOR VOTING
PURPOSES ONLY. NOTHING HEREIN SHALL PREJUDICE THE DEBTORS' ABILITY
TO OBJECT TO THE CLAIMS OR INTERESTS REFERENCED HEREIN ON ANY BASIS.

The following prepetition claims for debt securities are entitled to vote on the Plan in the following amounts:

| Name of Trustee / Payee / Transfer/Fiscal Agent | Instrument (CUSIP) | Secured or Unsecured | Aggregate Voting Amount | Debtor |
|---|---|---|---|---|
| Deutsche Bank Trust Co. Americas, AS | 7.4% Senior Unsecured Notes due 7/15/2004 (842815AC6) | Unsecured | $200,575,555.54 | Mirant Corporation |
| Deutsche Bank Trust Co. Americas, AS | 7.9% Senior Unsecured Notes due 7/15/2009 (842815AA0) | Unsecured | $501,536,111.08 | Mirant Corporation |
| HSBC Bank USA | 2.5% Convertible Senior Debentures due 6/15/2021 (604675AB4) (604675AA6) | Unsecured | $667,000,000.00 | Mirant Corporation |
| Law Debenture Trust Company of New York | 6.25% Series A Junior Convertible Subordinated Notes due 2030 | Unsecured | $356,534,626.06 | Mirant Corporation |
| HSBC Bank USA | 5.75% Convertible Senior Notes due 07/2007 (604675AC2) | Unsecured | $380,578,402.78 | Mirant Corporation |
| Wells Fargo Bank Minnesota | 7.625% Senior Unsecured Notes due 05/01/2006 (60467PAG9) | Unsecured | $507,730,902.78 | Mirant Americas Generation, LLC |
| Wells Fargo Bank Minnesota | 7.2% Senior Notes due 10/2008 (Registered) (60467PAK0) (60467PAM6) | Unsecured | $306,180,000.00 | Mirant Americas Generation, LLC |

1

The following prepetition claims for syndicated credit facilities and syndicated letter of credit facilities are entitled to vote on the Plan in the following amounts:

| Name of Agent / Payee | Facility | Secured or Unsecured | Aggregate Voting Amount | Debtor |
|---|---|---|---|---|
| Credit Suisse First Boston | 364-day Term loan facility due 7/2003 | Unsecured | $1,127,436,115.18 | Mirant Corporation |
| Credit Suisse First Boston | Four-year Senior unsecured Credit Facility due 7/2005 | Unsecured | $580,500,000.00[1] | Mirant Corporation |
| Citibank, N.A. | Senior unsecured Credit Facility due 4/2004 | Unsecured | $448,248,681.69 | Mirant Corporation |
| Lehman Brothers | Credit Facility due 10/2004 | Unsecured | $250,743,056.11 | Mirant Americas Generation, LLC |
| Lehman Brothers | Credit Facility due 10/2004 | Unsecured | $50,133,118.06 | Mirant Americas Generation, LLC |

The following equity interests are entitled to vote on the Plan:

| Name of Transfer Agent | Type of Security (CUSIP) | Amount of Shares Outstanding as of the Petition Date |
|---|---|---|
| Mellon Investment Services | Mirant Common Stock (604675108) | 405,468,084 |

---

[1]     This voting amount is subject to upward adjustment based upon additional letters of credit drawn on this facility prior to October 1, 2005.

d-1379260

The following prepetition claims for other types of non-public debt (and related guaranties) are entitled to vote on the Plan in the following amounts:

| Name of Agent / Payee | Facility | Secured or Unsecured | Aggregate Voting Amount | Debtor |
|---|---|---|---|---|
| Deutsche Bank Securities, Inc. | Deferred Purchase Price Obligation | Unsecured | $45,000,000.00 | Mirant Americas, Inc. |
| Deutsche Bank AG | West Georgia Notes due 12/2003 | Secured | $139,500,000.00 | West Georgia Generating Company, LLC |
| Bayerische Hypo-Und Vereinsbank AG | Unsecured Notes for Gas Prepay | Unsecured | $222,913,568.10 | Mirant Americas Energy Marketing, LP |
| MC Equipment Revolver Statutory Trust | Turbine Facility due 7/2020 | Unsecured | $214,221,481.62 | Mirant Americas Development Capital, LLC |
| MC Equipment Revolver Statutory Trust | Guaranty of Turbine Facility due 7/2020 | Unsecured | $214,221,481.62 | Mirant Corporation |

d-1379260

(This page intentionally left blank)

EXHIBIT "H"

d-1379261

(This page intentionally left blank)

The Official Committee of Unsecured Creditors
of Mirant Corporation, *et al.*


September 30, 2005


To:   The Unsecured Creditors Within the
      Mirant Debtor Group


Re:  In re Mirant Corporation, *et al.* (the "Debtors")

Dear Unsecured Creditor:

On behalf of the Official Committee of Unsecured Creditors of Mirant Corporation, *et al.* (the "Mirant Committee"), we are writing to encourage unsecured creditors within the Mirant Debtor Group to vote to ACCEPT the Debtors' proposed chapter 11 plan of reorganization (the "Plan", a copy of which is included on the CD in the solicitation package being distributed contemporaneously with this letter; capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Plan).

The Debtors commenced these chapter 11 cases on July 14-15, 2003 and certain dates thereafter.  On July 25, 2003, the Office of the United States Trustee appointed the Mirant Committee to serve in these cases.  Since its appointment, the Mirant Committee and its professionals have been actively involved in the cases, including participation in a 27-day trial conducted over two months to determine the total enterprise value ("TEV") of the Debtors, which would serve as the basis upon which a chapter 11 plan would be formulated.

Following the conclusion of the valuation trial, the Bankruptcy Court issued a preliminary ruling on June 30, 2005 that directed Curt Morgan, the Debtors' COO ("Morgan"), and their financial advisor, the Blackstone Group ("Blackstone"), under the supervision of William Snyder, the Court-appointed Examiner (collectively, with Morgan and Blackstone, the "Valuation Implementation Committee" or "VIC"), to make certain revisions to the Debtors' business plan and to adjust certain aspects of Blackstone's valuation methodology.  As the parties assessed this preliminary ruling, it became apparent that implementing the Court-ordered revisions would take more than two months to complete, and that the resulting TEV calculation would likely be the subject of additional, potentially protracted and costly, litigation.

Faced with these circumstances, the parties renewed plan discussions in mid-August 2005 with the intent of trying to reach a consensual resolution.  After extensive, intense

Unsecured Creditors of
Mirant Corporation, et al.
September 28, 2005
Page 2

negotiations over several weeks, the parties reached agreement on the key terms of a consensual resolution, and these terms were embodied in a plan term sheet, dated September 7, 2005, signed by the Debtors, the Mirant Committee, the MAG Committee, the Equity Committee and various Phoenix entities (as representatives of holders of subordinated notes issued by Mirant). The parties requested that the Court direct the VIC to suspend its efforts, and the Court entered an order to that effect on September 9, 2005. Subsequently, the resulting agreement was incorporated into the Plan and the related Disclosure Statement.

As described above, the Plan is the culmination of extensive negotiations among the various parties in interest in the Debtors' chapter 11 cases. Creditors are encouraged to read the Plan and the Disclosure Statement in their entirety.

Under the Plan, in settlement and compromise of certain existing and potential disputes regarding intercompany claims and related matters, and for the specified purposes of voting on the Plan, confirmation of the Plan and determining treatment, and making distributions in respect of, claims against and equity interests in each Debtor Group, the Plan divides the Debtors into two distinct Debtor Groups, the Mirant Debtor Group and the MAG Debtor Group.

The Plan provides that unsecured creditors of the Mirant Debtor Group holding Class 3 – Unsecured Claims are to receive (i) 96.25% of the stock in the reorganized company, exclusive of shares to be issued (a) to holders of claims against the MAG Debtors (which will receive approximately 2.3% of the shares of the reorganized company (the "MAG Shares")) and (b) certain shares reserved for issuance pursuant to certain New Mirant Employee Stock Programs (the "Employee Shares"), and (ii) payments equal to 50% of the cash proceeds of certain identified causes of action (including in particular, the Debtors' lawsuit against Mirant's former parent, the Southern Company), net of any offsets, fees and expenses incurred in connection with such causes of action (the "Net Litigation Proceeds").

The Plan further provides that holders of the subordinated "Trust Preferred" notes, which are classified in the same class as general unsecured claims against the Mirant Debtor Group, will receive, in lieu of their Class 3 distribution, (i) 3.5% of the stock in the reorganized company, exclusive of the MAG Shares and the Employee Shares, (ii) warrants to purchase an additional 5% of the stock in the reorganized company, and (iii) a pro rata portion of the Net Litigation Proceeds allocated to Class 3 – Unsecured Creditors.

Under the Plan, the MAG Long-term Notes will be reinstated, and the MAG Short-term Notes, together with the PG&E/RMR Claims, will receive (x) either cash or new notes for 90% of the value of their claims, plus (y) approximately 2.3% of the stock in the reorganized company.

The Plan also provides for the release of substantially all intercompany claims, and in consideration for these releases (and, according to the Debtors, to support the feasibility of the Plan with respect to the MAG Debtor Group), the contribution by Mirant of certain assets to the MAG Debtor Group, including (i) the transfer of certain assets of the Debtors' trading

Unsecured Creditors of
Mirant Corporation, et al.
September 28, 2005
Page 3

operations, (ii) the transfer of the Mirant Peaker, Mirant Potomac River and Mirant Zeeland plants and (iii) commitments to make prospective capital contributions of (x) $150 million for re-financing certain MAG debt that matures in 2011 and (y) up to $265 million for environmental capital expenditures.  The Mirant Committee does believe that under the circumstances, these value transfers represent a reasonable compromise and are warranted.

**THE MIRANT COMMITTEE BELIEVES THAT UNDER THE PRESENT CIRCUMSTANCES, THE PLAN IS FAIR AND REASONABLE TO UNSECURED CREDITORS OF THE MIRANT DEBTOR GROUP, AND PROVIDES THESE CREDITORS WITH AN EFFICIENT AND COST-EFFECTIVE MECHANISM FOR REALIZING THE BEST AND HIGHEST RETURN ON THEIR CLAIMS.  THE MIRANT COMMITTEE BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND STRONGLY RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.**

The Mirant Committee's recommendation and support is conditioned on the satisfaction of the conditions precedent to confirmation of the Plan and assumes that the Plan will not be modified or amended in any manner adverse to creditors within the Mirant Debtor Group without the prior consent of the Mirant Committee.

Sincerely,

/s/ LoriAnn Curnyn
LoriAnn Curnyn
Mirant Committee Co-Chair

/s/ Ronald Goldstein
Ronald Goldstein
Mirant Committee Co-Chair

(This page intentionally left blank)

CWT DRAFT
ATTORNEY WORK PRODUCT
PRIVILEGED AND CONFIDENTIAL

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
### MIRANT AMERICAS GENERATION, LLC

c/o Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

-and-

Cox Smith Matthews Inc.
112 E. Pecan Street, Suite 1800
San Antonio, Texas  78205

September [_], 2005

TO ALL CREDITORS OF
 MIRANT AMERICAS GENERATION, LLC:

### The MAG Committee Recommends That You Vote to
### Accept the Second Amended Plan of Reorganization for Mirant Corp. *et al.*

The Official Committee of Unsecured Creditors (the "MAG Committee") of Mirant Americas Generation, LLC ("MAG") was appointed by the United States Trustee for the Northern District of Texas after MAG, Mirant Corp. and certain of Mirant Corp.'s subsidiaries (collectively with MAG, the "Debtors") sought relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The MAG Committee represents the interests of all holders of unsecured claims against MAG arising prior to the petition date.  The MAG Committee has been advised by its legal counsel, Cadwalader, Wickersham & Taft LLP and Cox Smith Matthews Inc., and by its financial advisor, Houlihan Lokey Howard & Zukin, among other professional advisory firms.

Since the commencement of the Debtors' cases, the MAG Committee and its legal and financial advisors actively participated in the Debtors' bankruptcy cases.  The MAG Committee consistently took steps in the Debtors' chapter 11 cases to pursue, and to preserve, valuable claims belonging to the MAG estate.  The MAG Committee further took all available actions to expedite MAG's bankruptcy proceedings, while at the same time obtaining an appropriate recovery for MAG creditors.  In this regard, the MAG Committee assumed an active role in various litigations to ensure all MAG creditors received fair and equitable treatment under a plan of reorganization, which includes providing MAG creditors with the payment of interest due and owing on their claims.  In addition to these efforts, the MAG Committee investigated and evaluated the Debtors' Second Amended Plan of Reorganization, dated September 22, 2005 (the "Second Amended Plan"), to determine whether it is in the best interests of MAG and MAG creditors.

The Second Amended Plan that the Debtors now have proposed is the product of extensive efforts by the MAG Committee and its advisors, working with the Debtors and the other constituencies in these cases, to achieve a substantial recovery for MAG creditors while at the

same time providing for the Debtors' continued economic viability.  During these negotiations, the MAG Committee consistently sought equitable treatment of all MAG creditors based upon the overall value of MAG and its subsidiaries.

The Second Amended Plan provides that holders of the MAG Long-term Notes will be reinstated pursuant to Bankruptcy Code section 1124, and such holders will receive all accrued post-petition interest due to them, including "interest on interest" and "Additional Interest", as applicable.  As part of a global settlement of intercompany claims, and to help ensure MAG's ability to meet its financial obligations (including in respect of the Long-term Notes), the Second Amended Plan also provides for valuable assets to be transferred to MAG's subsidiaries, and provides for the implementation of additional covenant protection through the New MAG Debt Covenants.  Holders of claims based on the MAG Short-term Notes, the MAG Revolver, and certain other unsecured MAG claimants, will receive under the Plan both of the following: (i) either cash or new notes for 90% of their Allowed Claims, and (ii) stock in the reorganized Mirant company, known as New Mirant, for the remainder of their Allowed Claims.  Holders of MAG Short-term Notes also will receive distributions for accrued post-petition interest on their claims, including "interest on interest" and "Additional Interest", as applicable.

 After engaging in intensive negotiations, and considering all of the circumstances of the Debtors' chapter 11 cases and their businesses, the MAG Committee has determined to support confirmation and implementation of the Debtors' Second Amended Plan, including the Second Amended Plan's proposed treatment of the claims against MAG.  **THEREFORE, THE MAG COMMITTEE RECOMMENDS THAT YOU VOTE TO ACCEPT THE SECOND AMENDED PLAN.**

Each MAG creditor is entitled to make its own determination with respect to its vote on the Second Amended Plan.  No member of the MAG Committee will vote on your behalf.  Thus, your individual vote is very important.   The MAG Committee urges you to follow the instructions for voting and to return your ballot promptly, as detailed in the enclosed voting instructions.  Failure to return your ballot on time could result in your vote not being counted.  This letter is being distributed for informational purposes together with the Second Amended Plan and Disclosure Statement (the "Disclosure Statement") filed with the United States Bankruptcy Court for the Northern District of Texas in the Debtors' chapter 11 cases, as well as a ballot for registering your vote on the Second Amended Plan.  This letter is not intended to be a replacement for or summary of the Disclosure Statement.  All MAG creditors are urged to carefully read the Second Amended Plan and the Disclosure Statement and, if appropriate, consult with their own counsel or financial advisor prior to submitting their vote.