**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
ENTERED
THE DATE OF ENTRY IS
ON THE COURTS DOCKET
TAWANA C. MARSHALL, CLERK

|  |  |
|---|---|
| In re | ) Chapter 11 Case |
|  | ) |
| MIRANT CORPORATION, et al., | ) Case No. 03-46590 (DML) |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) |

### ORDER CONFIRMING THE AMENDED AND RESTATED SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MIRANT CORPORATION AND ITS AFFILIATED DEBTORS

Based on the Findings of Fact and Conclusions of Law in Support of the Amended and

Restated Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and

Its Affiliated Debtors by the Bankruptcy Court (the "Findings and Conclusions") issued

contemporaneously herewith, the Bankruptcy Court hereby orders, determines, and decrees as

follows:

### JURISDICTION

1.      The Bankruptcy Court has subject matter jurisdiction to confirm the Plan[1]

pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and

1409.

3.      Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(A), (L),

and (O).

---

[1]      Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Findings and Conclusions, as applicable.

## CONFIRMATION OF THE PLAN

4.     Pursuant to section 1127 of the Bankruptcy Code, the Modifications are approved, and pursuant to section 1129 of the Bankruptcy Code, the Plan[2] is hereby CONFIRMED. Each of the objections to the Plan not otherwise withdrawn, resolved or otherwise disposed of, is OVERRULED and denied.   All withdrawn objections are deemed withdrawn with prejudice.

5.     The following are hereby incorporated by reference into, and are an integral part of, the Confirmation Order: (a) the Findings and Conclusions, (b) the Plan, (c) the exhibits to the Plan, (d) the Plan Documents and (e) the Bankruptcy Court's legal reasoning set forth in (i) the "Memorandum Opinion" dated May 24, 2005 [Docket No. 9880] relating to the motions of the (i) MAG Committee regarding the proposed classification and treatment of MAG Long-term Note Claims under the First Amended Plan of Reorganization and (ii) MAG Ad Hoc Committee regarding impairment of their respective claims, (ii) the "Memorandum Opinion" dated October 27, 2005 issued in Adversary Nos. 05-04219 [Docket No. 11] and 05-04221 [Docket No. 32] commenced against The Wilson Law Firm, P.C., and other defendants named therein, (iii) the Bankruptcy Court's letter ruling dated June 30, 2005 [Docket No. 10393], as amended by the Bankruptcy Court's letter dated July 26, 2005 [Docket No. 10723], (iv) the "Order Suspending Valuation Process" dated September 9, 2005 [Docket No. 11338] and (v) the Memorandum Opinion respecting valuation of even date herewith. The failure to reference any particular Plan Document, or any provision of a Plan Document or the Plan in the Confirmation Order will have no effect on the Bankruptcy Court's approval and authorization of, or the validity, binding effect or enforceability of, the Plan and the Plan Documents in their entirety.

---

2     A true and correct copy of the Plan, incorporating the Modifications, is attached hereto as Exhibit "1" and, by this reference, incorporated herein for all purposes and titled, "Amended And Restated Second Amended Joint Chapter 11 Plan Of Reorganization For Mirant Corporation And Its Affiliated Debtors "

6. The stay contemplated by Bankruptcy Rule 3020(e) shall terminate at 4:00 p.m. Central Standard Time on December 9, 2005. Notwithstanding any otherwise applicable law, immediately upon the termination of such stay, but subject to the occurrence of the Effective Date, the terms of the Plan (including the exhibits thereto, the Plan Documents and all documents and agreements executed pursuant to the Plan) and the Confirmation Order shall be binding upon the Debtors, New Mirant and its Affiliates and all holders of Claims against and Equity Interests in the Debtors, whether or not impaired under the Plan, each Person acquiring property under the Plan, any other party in interest, any Person or Entity making an appearance in these Chapter 11 Cases and each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, managers, members, partners, agents, representatives, attorneys, beneficiaries or guardians. To the extent that any provisions of the Confirmation Order may be inconsistent with the terms of the Plan or any Plan Documents, the terms of the Confirmation Order shall be binding and conclusive. To the extent that any provision of any Plan Document may be in conflict with or inconsistent with any provision of the Plan, the terms of the Plan shall govern and be binding and conclusive.

## RESOLUTION OF CERTAIN INTER-DEBTOR ISSUES

7. The global settlement of Intercompany Claims and related matters set forth in the Plan, including, without limitation, Article II of the Plan, is approved in all respects.

8. The treatment of guaranty claims provided in Section 2.2 of the Plan is fair and equitable and approved in its entirety.

9. The treatment of Intercompany Claims and Equity Interests provided in Section 2.3 of the Plan is approved in its entirety.

MIAMI 624052 (2K)

## CLASSIFICATION AND TREATMENT

10.     All Claims and Equity Interests shall be, and hereby are, classified and treated as set forth in the Plan on a Debtor-by-Debtor basis. The Plan's classification scheme, including, without limitation, the separate classification of the MAG Long-term Note Claims in MAG Debtor Class 6 shall be, and hereby is, approved.

11.     The treatment of all Claims and Equity Interests as provided in the Plan and the Plan Documents, including, without limitation, the treatment of the MAG Long-term Note Claims (which does not impair the MAG Long-term Note Claims pursuant to section 1124 of the Bankruptcy Code or other applicable law) shall be, and hereby is, approved. The MAG Long-term Note Claims are, as of the Effective Date, reinstated and not in default. The New MAG Debt Covenants shall be, and hereby are, approved in all respects and the Debtors and the MAG Indenture Trustee are hereby authorized (without soliciting or obtaining the consent of the holders of the MAG Long-term Notes) to enter into a supplemental indenture to give effect to the New MAG Debt Covenants, whereupon they shall be enforceable by the MAG Indenture Trustee for the benefit of the holders of MAG Long-term Notes. The New MAG Debt Covenants shall apply equally with all of the other rights and privileges under the MAG Indenture with respect to the MAG Long-term Notes, and the Indenture Trustee under the MAG Indenture, as of the Effective Date, shall have the full power to enforce the New MAG Debt Covenants with the same force and effect as all other provisions in the MAG Indenture.

12.     The global settlement described in Sections 17.24 and 8.19 of the Plan is hereby approved pursuant to sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019, and the Debtors are hereby authorized and directed to implement such global settlement. In addition, the Debtors shall use commercially reasonable efforts to obtain a Standard & Poor's

4

rating and a Moody's rating for each series of MAG Long-term Notes and the New MAG Holdco Notes (if issued).

## ADMINISTRATIVE CLAIMS

13.    A holder of an Administrative Claim, other than (a) the DIP Claims, (b) a Fee Claim, (c) a liability incurred and payable in the ordinary course of business by a Debtor (and not disputed), or (d) an Administrative Claim that has been Allowed on or before the Effective Date or as part of the California Settlement, must file with the Bankruptcy Court and serve on the Debtors, any official committee appointed in the Chapter 11 Cases and the Office of the United States Trustee, notice of such Administrative Claim within forty (40) days after service of Notice of Confirmation. Such notice must include at a minimum (i) the name of the Debtor(s) which are purported to be liable for the Claim, (ii) the name of the holder of the Claim, (iii) the amount of the Claim, and (iv) the basis of the Claim. *Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.* An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 6.2(a) of the Plan shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days after the later of (A) the Effective Date, or (B) the date of service of the applicable notice of Administrative Claim complying with the requirements of the Confirmation Order and the Plan, or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 30-day period (or any extension thereof), such Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. The Debtors are authorized and directed to pay all reasonable fees and expenses owed to the Old Indenture Trustees under the Old Indentures and to the Facility Agent under the MAG Revolvers in Cash on the Effective Date.

5

14.     Each Professional Person or Person entitled to assert such a claim who holds or asserts a Fee Claim shall be, and hereby is, required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date. ***The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred and discharged.*** Parties who fail to file an application for approval of fees on a timely basis may not seek Bankruptcy Court approval of any fees or expenses recovered for the benefit of the Estate. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 6.2(b) of the Plan shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

## ENFORCEABILITY OF PLAN AND PLAN DOCUMENTS

15.     Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of the Confirmation Order, the Plan and all Plan-related documents (including, but not limited to, the Plan Documents) shall be, and hereby are, valid, binding and enforceable notwithstanding any otherwise applicable nonbankruptcy law. Each of the Plan Documents is hereby approved. Subject to Section 17.23 of the Plan, the Debtors and New Mirant may modify, amend or enter into the Plan Documents, without further order of the Bankruptcy Court.

## INTERCOMPANY TRANSACTIONS

16.     The intercompany transactions implementing the Plan as set forth in Sections 8.2 and 8.3 of the Plan, including, without limitation, the transactions described in Exhibit B to the Findings and Conclusions and the Plan Documents, are hereby authorized without further order of the Bankruptcy Court and shall be carried out in accordance with the provisions of the Plan and the Plan Documents, without requiring further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders, officers, board of directors, partners, members and managers of the Debtors or New Mirant.

6

17.     To the extent the successions to Assets of the Debtors by other Debtors, New Mirant, or their Affiliates or the Plan Trust are deemed to constitute "transfers" of property, such transfers of property (a) are legal, valid and effective transfers of property, (b) vest or shall vest in such other Debtor, New Mirant or Affiliate thereof or the Plan Trust, as applicable, with good title to such property, free and clear of all liens, charges, Claims, encumbrances and interests, including, without limitation, the liens set forth in Exhibit "2" to the Confirmation Order, except as expressly provided in the Plan or the Confirmation Order, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) do not and shall not subject the entity to whom such property was transferred to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws directly of indirectly affecting successor or transferee liability of any kind or nature whatsoever.

## AUTHORIZATION TO IMPLEMENT PLAN

18.     Upon the entry of the Confirmation Order, the Debtors, New Mirant and their Affiliates are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and to execute, enter into, or otherwise make effective all documents arising in connection therewith, including, without limitation, the Plan Documents (as they may be amended or modified as contemplated or permitted by the Plan), prior to, on and after the Effective Date. All such actions taken or caused to be taken shall be, and hereby are, authorized and approved by the Bankruptcy Court such that no further approval, act or action need to be taken under any applicable law, order, rule or regulation, including without limitation, any action otherwise required by the stockholders or directors of New Mirant, the Debtors and their Affiliates.

7

19.      The approvals and authorizations specifically set forth in the Confirmation Order are not intended to limit the authority of any Debtor, New Mirant or their Affiliates or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or the Confirmation Order.

20.      The initial board of directors of New Mirant is authorized to serve, is duly qualified and shall be empowered to act as permitted by applicable non-bankruptcy law on the Effective Date without further reference to the Bankruptcy Court.

## CANCELLATION OF INSTRUMENTS AND SECURITIES

21.      Upon the occurrence of the Effective Date, the Mirant Notes, the Mirant "C" Facility, the Mirant 364-Day Revolver, the Mirant 4-Year Revolver, the MAG Revolvers, the Subordinated Notes and the MAG Short-term Notes shall be cancelled and annulled. Immediately upon the completion of all Plan Distributions to the holders of the Mirant Notes, the Subordinated Notes and the MAG Short-term Notes, the Old Indenture Trustees shall be authorized and directed (without further approval, act or other determination under applicable law, regulation, order or rule) to take such action as shall be necessary or appropriate to terminate and extinguish (a) all of the Debtors' obligations under the Mirant Indentures and (b) all of the Debtors' obligations with respect to the MAG Short-term Notes under the MAG Indenture, following which, each of the Mirant Indentures and the MAG Indenture (to the extent it relates to the MAG Short-term Notes) shall terminate.

22.      On the Effective Date, all Equity Interests in Mirant shall be cancelled and annulled, and all rights thereunder shall be settled and compromised in full in exchange for the Plan Distributions to be made to the holders of all such Allowed Equity Interests.

## SEPARATE EXISTENCE/REVESTING OF ASSETS

23.     Except as otherwise provided in Article VIII of the Plan, each of the Debtors shall continue to exist after the Effective Date as a separate entity, with all the powers available to such legal entity, in accordance with applicable law and pursuant to the New Mirant Constituent Documents, which shall become effective upon the occurrence of the Effective Date. On or after the Effective Date, the Debtors may, within their sole and exclusive discretion take such action as permitted by applicable non-bankruptcy law as they determine is reasonable and appropriate.

24.     Although Mirant will convert into a limited liability company, it shall continue to exist as a separate legal entity on and after the Effective Date, having all rights and powers under applicable law.

25.     Upon the occurrence of the Effective Date, except as otherwise provided in the Plan, title to all of the Assets shall vest in the Debtors free and clear of all liens, Claims, Causes of Action, interests, security interests and other encumbrances and without further order of the Bankruptcy Court, including, without limitation, the liens set forth in Exhibit "2" to the Confirmation Order. On and after the occurrence of the Effective Date, except as otherwise provided in the Plan, the Debtors and New Mirant may operate their business and may use, acquire and dispose of their Assets free of any restrictions of the Bankruptcy Code.

## RETENTION OF CAUSES OF ACTION

26.     Except as otherwise provided in the Plan, all Causes of Action, including Avoidance Actions (including, without limitation, the Southern Company Causes of Action and the Pepco Causes of Action) shall, upon the occurrence of the Effective Date, be transferred to, and be vested in, New Mirant for the benefit of the Debtors and their Estates. Except as otherwise provided in the Plan, New Mirant's rights to commence, prosecute or settle such

9

Causes of Action shall be, and hereby are, preserved notwithstanding the occurrence of the Effective Date.

27.     No Person or Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that New Mirant, the Debtors, Litigation Sub (as hereinafter defined) or the Plan Trustees will not pursue any and all available Causes of Action against it. The Debtors (for the benefit of themselves and the benefit of the Litigation Sub, as applicable), the Estates, New Mirant, the Plan Trustees and the Plan Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise provided in the Plan.  Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, New Mirant, the Debtors (for their own benefit and the benefit of the Litigation Sub, as applicable) and the Plan Trust expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan by reason of entry of the Confirmation Order.

## DISBURSING AGENT/DISTRIBUTIONS

28.     New Mirant is approved as the Disbursing Agent and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan or any Plan Document.  Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan or any Plan Document on the relevant Distribution Date therefor.  In addition, the Old Indenture Trustees and the Facility Agents shall be subject to, have the benefit of and comply in all respects with all of the provisions of Section

10

10.9 of the Plan applicable to the Old Indenture Trustees and the Facility Agents (as the case may be).

29.     Except as otherwise ordered by the Bankruptcy Court or as provided in the Plan or the Confirmation Order, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent and the Old Indenture Trustees (including any paying or transfer agents for such Old Indenture Trustees) on or after the Effective Date (including, but not limited to, taxes) shall be paid when due.

30.     Professional fees and expenses incurred by the Disbursing Agent and the Old Indenture Trustees (including any paying or transfer agents for such Old Indenture Trustees) from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business. Any dispute regarding compensation shall be resolved by agreement of the parties or if the parties are unable to agree, as determined by the Bankruptcy Court.

31.     For the purpose of making Plan Distributions, the transfer ledgers and related registers in respect of the Allowed Equity Interests in Mirant, Mirant Note Claims and MAG Short-term Note Claims shall be closed as of the close of business on the Effective Date, and the Disbursing Agent, the Plan Trustees and their respective agents shall be entitled to recognize and deal for all purposes herein with only those holders of record stated on the transfer ledgers and related registers maintained by the applicable transfer agents (or the Old Indenture Trustees or Depository Trust Company, as applicable) as of the close of business on the Effective Date. The Debtors shall provide notification to the transfer agents, the Old Indenture Trustees and Depository Trust Company of the need to close the transfer records and maintain accurate and complete records of ownership as of the Effective Date to facilitate Plan Distributions. The

11

Debtors may seek further relief from the Bankruptcy Court in aid of confirmation to facilitate the making of Plan Distributions.

32.    If CERS (as such term is defined in Section 1.1.35 of the California Settlement Agreement) is the holder of any portion of the California Party Unsecured Claims on the Distribution Date, then any distributions to CERS on account of its allocable share of those claims, excluding cash distributions which shall be distributed directly to CERS, shall be made by the Disbursing Agent (a) to the trustee of the liquidating trust required to be created by Section 3.7 of the California Settlement Agreement (respectively, the "Liquidating Trustee" and the "Liquidating Trust") or (b) if a stock transfer agent has been identified in writing to the Mirant Parties (as defined in the California Settlement Agreement) by CERS in accordance with the notice provisions of the California Settlement Agreement at least ten (10) Business Days prior to the Distribution Date, then to such stock transfer agent for sale thereafter until further written notice by CERS to the Mirant Parties. The Liquidating Trustee shall, if no stock transfer agent has been identified in writing to the Mirant Parties by CERS as provided above, thereafter administer such distributions in accordance with the terms of the written agreement establishing and governing the Liquidating Trust (the "California Liquidating Trust Agreement").

33.    If, pursuant to Section 5.1.4 of the California Settlement Agreement, any of the California Parties timely elects to have its respective allocable share of the California Party Unsecured Claims distributed to the Liquidating Trust, then any distributions to such California Parties on account of their respective allocable share of those claims, except to the extent expressly provided for in their Section 5.1.4 of the California Settlement Agreement election notices to Mirant, shall be made by the Disbursing Agent to the Liquidating Trustee and

12

thereafter administered by the Liquidating Trustee in accordance with the terms of the California Liquidating Trust Agreement.

34.    The California Liquidating Trust Agreement was filed as a Plan Document and is hereby approved in all respects. The Debtors are authorized, in the reasonable exercise of their discretion, to modify the Liquidating Trust Agreement to incorporate such changes thereto as may reasonably be requested by the California Parties and/or the Liquidating Trustee, to execute, enter into, and deliver the California Liquidating Trust Agreement, as so modified, and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the transactions contemplated therein.

35.    Interest upon Allowed Claims shall be, and hereby is, payable only as set forth in the Plan or any Final Order.

36.    Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action other than those in Litigation Sub (as defined below), without further review or approval of the Bankruptcy Court, other than (a) the settlement or compromise of a Claim where the difference between the amount of the Claim listed on the Debtors' Schedules and the amount of the Claim proposed to be Allowed under the settlement is in excess of $1,000,000, or (b) any settlement or compromise of a Claim or Cause of Action that involves an Insider.

37.    The Disbursing Agent may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Disbursing Agent has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to

13

estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contested Claim, such estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Notwithstanding anything to the contrary in the Plan or the Bankruptcy Code, neither the Disbursing Agent nor any holder of a Letter of Credit Claim may seek to estimate a Letter of Credit Claim.

## NEW MIRANT EMPLOYEE STOCK PROGRAMS

38.     The holders of Equity Interests in Mirant and/or holders of New Mirant Common Stock, having in total overwhelmingly accepted the Plan, are deemed to have approved the New Mirant Employee Stock Programs for purposes of the shareholder approval requirements under the Internal Revenue Code, and for purposes of any requirements for shareholder approval under the laws of Delaware. The Debtors are authorized and directed to reserve, as required by the Plan, New Mirant Common Stock to be issued under the Plan for issuance under the New Mirant Employee Stock Programs.

## PLAN TRUST

39.     The Plan Trust Declaration is approved in all respects. The Plan Trust shall be administered by trustee(s) approved by the Bankruptcy Court, who shall have the powers and duties set forth in Section 9.3 of the Plan. The Debtors shall reimburse the Plan Trustees for any actual and necessary out-of-pocket expenses incurred by them from the Confirmation Date to the Effective Date in preparing to assume their responsibilities under the Plan Trust Declaration in an aggregate amount not to exceed $50,000. On the Effective Date, New Mirant shall advance

14

$500,000 to the Plan Trust to pay the reasonable costs and expenses associated with the administration of the Plan Trust. On the Effective Date, New Mirant shall have the obligation to advance funds to pay the reasonable costs and expenses associated with the administration of the Plan Trust up to an aggregate unreimbursed amount of $1,000,000, inclusive of New Mirant's initial advance of $500,000 on the Effective Date.

## DESIGNATED NET LITIGATION DISTRIBUTIONS

40.     As an essential bargained-for component of the global settlement between and among the Debtors, the Committees and Phoenix with regard to the Plan as set forth in Section 17.24 of the Plan, Designated Net Litigation Distributions shall be made as set forth in Section 10.13 of the Plan. The mechanics and implementation of Section 10.13 of the Plan, as modified herein, are approved.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

41.     Except as otherwise provided for in the Plan and agreements governed by paragraphs 49 and 62 through 63, on the Effective Date, all executory contracts and unexpired leases of the Debtors shall be, and hereby are, assumed or rejected in accordance with Section 14.1 of the Plan.

42.     Each executory contract and unexpired lease to be assumed or assumed and assigned by the Debtors shall include all modifications, amendments, supplements, restatements or other similar agreements made directly or indirectly by any agreement, instrument or other document to which the Debtors' counterparties have assented that affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Disclosure Statement Schedule 12 (as amended) or the Assumption Schedule.

43.     Inclusion of a contract, lease or other agreement on Disclosure Statement Schedule 11 (as amended) shall constitute adequate and sufficient notice that (a) any Claims

15

arising thereunder or related thereto shall be treated as Unsecured Claims under the Plan, and (b) neither the Debtors nor New Mirant are bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder. The inclusion of a contract, lease or other agreement in Section 14.1(a) of the Plan or on Disclosure Statement Schedule 11 or 12 (as amended) or the Assumption Schedule shall not constitute an admission by the Debtors as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting Claims against the Debtors. The Debtors reserve all rights with respect to the characterization of any such agreements.

44.    The assumption and assignment of each of the executory contracts and unexpired leases that is designated to be assumed and assigned as set forth in Schedule 12 (as amended) or the Assumption Schedule or as otherwise designated as being assumed or assumed and assigned in Section 14.1(a) of the Plan and for which no timely objection was filed as required by Section 14.1(d) of the Plan is approved pursuant to sections 365(a), (b) and (f) of the Bankruptcy Code and any objections to such assumption and assignment are hereby deemed waived in all respects. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall have no liability for any breach of such assumed and assigned executory contract or lease occurring after such assignment, except as is specifically provided in the Plan.

45.    At the election of the Debtors, with respect to any monetary defaults under any executory contract or unexpired lease to be assumed under the Plan, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as

16

soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding: (i) the amount of any cure payments; (ii) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption or assumption and assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assumption and assignment, as applicable, except with respect to agreements subject to Section 14.1(a)(xi)-(xv) of the Plan for which the cure amounts are zero.

46.    Any non-Debtor counterparty to an agreement listed on the Disclosure Statement Schedule 12 (as amended) or the Assumption Schedule who disputes the scheduled cure obligation contained therein was required to file with the Bankruptcy Court, and serve upon the Debtors and the Committees, a written objection to the cure obligation, setting forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption or assumption and assignment of the relevant agreement by no later than ten (10) Business Days prior to the Confirmation Hearing or such further date as set by the Bankruptcy Court pursuant to the Order on Motion to Set Deadline of November 29, 2005, By Which Certain Objections Must Be Filed to Amended Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases (Schedule 12) Relating to the Second Amended Disclosure Statement Relating to the Debtors' Second Amended Joint Chapter 11 Plan of Reorganization, dated November 22, 2005 [Docket No. 12286]; provided, however, nothing in this paragraph shall limit the Bankruptcy Court from reconsidering any cure amount so established in order to carry out the Bankruptcy Code or in the interest of equity.

17

47.     The cure obligation set forth on Schedule 12 to the Disclosure Statement (as amended), the Assumption Schedule and the Notice of Cure Amount in Respect of the MIRMA Leases is binding upon each non-Debtor counterparty that failed to file and serve an objection satisfying the requirements of this paragraph and each such non-Debtor counterparty is deemed to have waived any and all objections to the assumption or assumption and assignment of the relevant agreement as proposed by the Debtors; provided, however, nothing in this paragraph shall limit the Bankruptcy Court from reconsidering any cure amount so established in order to carry out the Bankruptcy Code or in the interest of equity.

48.     Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with any applicable orders of the Bankruptcy Court, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is rejected pursuant to Section 14.1 of the Plan or by separate motion to reject post-confirmation, no later than thirty (30) days after the Confirmation Date (or in the case of a separate motion granted after the date hereof, thirty (30) days after the final order granting the motion is entered on the Bankruptcy Court's Docket). Any such Claims for which a proof of claim is not filed and served within such time will be forever barred from assertion and shall not be enforceable against the Debtors, New Mirant, their respective Estates, Affiliates, or the Assets. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by the Disbursing Agent.

18

49.     Except with respect to any executory contract or unexpired lease that is specifically listed on Disclosure Statement Schedule 11 or 12 (as amended) or the Assumption Schedule, or has already been assumed or rejected prior to the Confirmation Date, the deadline for the Debtors to assume or reject executory contracts and unexpired leases that relate to the New York Debtors, Hudson Valley Gas Corporation ("Hudson Valley") and Mirant NY-Gen or to which they are a party shall be, and hereby is, extended to the first Business Day that is at least thirty (30) days after the confirmation of a chapter 11 plan as to the New York Debtors, Hudson Valley or Mirant NY-Gen, as applicable. Section 365 of the Bankruptcy Code shall apply to any motion to reject, assume, or assume and assign any executory contracts that are subject to Section 15.3(c) of the Plan.

## SPECIAL PROVISIONS REGARDING THE BEWAG CONTRACT

50.     The BEWAG Contract shall be, and hereby is, treated as an executory contract that is not being assumed or rejected pursuant to section 365 of the Bankruptcy Code and shall instead "ride through" the chapter 11 process. From and after the Effective Date, the BEWAG Contract shall constitute an asset and obligation of Mirant with the same force and effect and to the extent that the BEWAG Contract was an asset and obligation of Mirant prior to the Petition Date. From and after the Effective Date, the counterparties under the BEWAG Contract shall be entitled to exercise all rights and remedies available, if any, to enforce the BEWAG Contract against Mirant. All obligations arising under the BEWAG Contract shall remain the sole and exclusive obligation of Mirant from and after the issuance of the member interests in Mirant to the Plan Trust. In no event shall the obligations arising under the BEWAG Contract constitute obligations of, or be enforceable against, New Mirant, its direct and indirect subsidiaries or their assets.

19

## CERTAIN PROVISIONS REGARDING PEPCO AND ITS SUBSIDIARIES, THE FCC AGREEMENT, AND THE SITE LEASE

51.     Section 14.5 of the Plan, which provides for the treatment of all executory contracts with Pepco, shall be, and hereby is, approved in all respects. Nothing in the Plan, Findings and Conclusions, or Confirmation Order regarding the Debtors' exercise of reasonable business judgment or otherwise having satisfied the requirements of section 365 of the Bankruptcy Code or any applicable rejection standards shall be binding on Pepco, or otherwise affect in any way the treatment of executory contracts and unexpired leases under Section 14.5 of the Plan or the litigation referred to therein.

52.     Section 14.8 of the Plan, which provides for treatment of the FCC Agreement and the Site Lease, shall be, and hereby is, approved in all respects. Nothing in the Plan, Findings and Conclusions, or Confirmation Order regarding the Debtors' exercise of reasonable business judgment or otherwise having satisfied the requirements of section 365 of the Bankruptcy Code or any applicable rejection standards shall be binding on SMECO, or otherwise affect in any way the treatment of executory contracts and unexpired leases under Section 14.8 of the Plan or the litigation referred to therein.

53.     Confirmation of the Plan does not terminate the Debtors' or New Mirant's right to continue to pursue the assumption or rejection, pursuant to section 365 of the Bankruptcy Code, of (a) any agreement with Pepco or its subsidiaries as to which any of the Debtors have commenced an action seeking to reject, recharacterize or avoid such Debtor's obligations thereunder, but as to which such actions have not been determined by Final Order, (b) the FCC Agreement, or (c) the Site Lease.

## CERTAIN PROVISIONS REGARDING MIRMA

54.     The MIRMA Leases shall be, and hereby are, treated as unexpired leases under

section 365 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, on or before the Effective Date, MIRMA shall assume and cure defaults in respect of each of the MIRMA Leases, including all Operative Documents (as defined in the MIRMA Leases), consistent with Sections 8.2(e)(i) and 14.6 of the Plan and in accordance with the terms and conditions set forth in Exhibit "3" attached hereto (the "MIRMA Treatment"), which MIRMA Treatment is hereby approved, binding on all parties and shall replace and supersede Section 14.6 of the Plan, as filed on September 30, 2005, in its entirety in all respects, except for Sections 14.6(a)(i) and 14.6(b)(i) and (ii), which shall remain. Upon assumption of the MIRMA Leases in accordance with the MIRMA Treatment, all defaults shall be deemed cured or otherwise excused and no longer continuing, provided that the defaults set forth in Exhibit "3" shall be cured as provided therein.

55. The Debtors are authorized to enter into each of the agreements set forth in the MIRMA Treatment (including the payment upon assumption of the MIRMA Leases of (i) $6.5 million collectively to the MIRMA Owner/Lessors and (ii) $6.5 million to the MIRMA Indenture Trustee for the collective benefit of the holders of those certain pass through trust certificates issued in connection with the MIRMA Leases) and the making or delivery of any instrument of transfer in connection therewith shall be deemed to be made or delivered under the Plan for the purposes of section 1146(c) of the Bankruptcy Code.

56. Upon assumption of the MIRMA Leases, each of the amendments in favor of the non-Debtor parties as set forth in the MIRMA Treatment shall be deemed effective without any further action; provided that the parties shall work cooperatively to separately document each such amendment and the MIRMA Indenture Trustee and the Pass Through Trustee, as applicable, are authorized and directed to enter into such amendments.

21

57. Each of the interpretations set forth on Exhibit One to the MIRMA Treatment is hereby approved, and all parties shall comply with the Operative Documents in accordance therewith.

58. Conforming clarification to Exhibit GG to the Participation Agreements (as defined in the MIRMA Leases) and elsewhere as appropriate shall be, and hereby is, made to give effect to the MIRMA Treatment.

59. Each of the MIRMA Owner/Lessors, the Owner Participants (as defined in the Participation Agreements), the MIRMA Indenture Trustee and Pass Through Trustee shall be, and hereby are, deemed to be "Protected Persons" for the purposes of Section 17.4 of the Plan.

60. Any right or obligation of any party to any Operative Document, arising under any Operative Document, relating to or arising on account of the commencement of any of the Debtors' chapter 11 cases is hereby deemed unenforceable.

61. All parties, including the holders of those certain pass through trust certificates issued in respect of the MIRMA Leases, shall be, and hereby are, permanently enjoined from taking any action or exercising any remedy against any party to the Operative Documents on account of such party's compliance with the terms and conditions of the MIRMA Treatment; provided, however, that nothing herein shall prohibit any party from asserting that a party has failed to comply with the terms and conditions of the MIRMA Treatment or from taking any action or exercising any remedy in connection therewith.

## CERTAIN PROVISIONS REGARDING MINT FARM

62. Notwithstanding anything in Article XIV of the Plan to the contrary, but except with respect to any executory contract or unexpired lease that is specifically listed on Disclosure Statement Schedule 11 or 12 (as amended) or the Assumption Schedule or has already been assumed or rejected prior to the Confirmation Date, and as set forth below in the final sentence

22

of this paragraph, the deadline for the Debtors to assume executory contracts and unexpired leases that relate to the Mint Farm generating facilities is extended, as permitted by law, to the earlier to occur of the following: (a) the date upon which the sale of the Mint Farm generating facility (and related assets) closes; and (b) one year after the Effective Date, or such later date extended by the Bankruptcy Court after notice and a hearing. Section 365 of the Bankruptcy Code shall apply to any motion to reject, assume, or assume and assign any executory contracts that are subject to this section. Any rejection damages Claim with respect to an executory contract or unexpired lease relating to Mint Farm shall be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after the rejection has become effective. The Debtors shall be entitled to object to such claims. Notwithstanding the foregoing, the deadline for Mint Farm to assume or reject that certain Agreement for Natural Gas Service in the State of Washington dated February 28, 2001 with Cascade Natural Gas Corporation shall be, and hereby is, governed by Order of the Bankruptcy Court entered November 22, 2005 [Docket No. 12270].

63.     Under Section 8.8 of the Plan and pursuant to the Order entered by the Bankruptcy Court on October 19, 2005 [Docket No. 11839] approving the sale of the Mint Farm facility and related assets (the "Mint Farm Sale Order"), the transfer of the Purchased Assets (as defined in the Mint Farm Sale Order) to Mint Farm Energy Center LLC in connection with such sale is deemed to be a transfer under the Plan and accordingly, shall constitute a transfer pursuant to section 1146(c) of the Bankruptcy Code, even if the sale closes after confirmation of the Plan, and shall not be taxed under any law imposing a stamp tax or other similar tax (but not including Washington State sales tax on personal property). Subject to the terms and provisions of Section 14.7 of the Plan, in the event a sale of the generating facility owned by Mint Farm does not close

within one year after the Effective Date, the Debtors are hereby authorized to liquidate the Assets of Mint Farm.

## CERTAIN PROVISIONS REGARDING THE EXIT FINANCING

64.     The Exit Financing Documents (as defined in the Findings and Conclusions) shall constitute legal, valid, binding and authorized obligations of the Debtors, New MAG Holdco and the Subsidiary Guarantors (as defined in the Findings and Conclusions), as applicable, enforceable in accordance with their terms. The obligations of the Debtors, New MAG Holdco and the Subsidiary Guarantors arising pursuant to the Exit Financing and the Exit Financing Documents are in exchange for fair and reasonably equivalent value and do not constitute a fraudulent conveyance or transfer and are not otherwise avoidable under any provision of the Bankruptcy Code or applicable non-bankruptcy law. On the Effective Date, all of the liens and security interests to be granted in accordance with the Senior Secured Facilities (as defined in the Findings and Conclusions) shall be deemed approved and shall be legal, valid, binding and enforceable first priority liens on the collateral granted thereunder, except to the extent senior liens are permitted therein. In furtherance of the foregoing, the Debtors, New MAG Holdco and the Subsidiary Guarantors, as applicable, and any other person granting such liens and security interests, are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of any state, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

24

## THE CALIFORNIA SETTLEMENT

65.     The California Settlement is incorporated into the Plan by this reference. To the extent there is any conflict between the California Settlement Agreement or any documents related thereto and the Plan, the California Settlement Agreement shall govern. Mirant Delta and Special Procurement were authorized to enter into, deliver and perform the CC8 Transfer Agreement by the California Settlement Order. Such authorization is hereby ratified and confirmed in all respects. The Plan is hereby clarified to provide that the Administrative Claim of the California Power Exchange Corporation, which was allowed pursuant to the California Settlement, shall be paid as an Allowed Administrative Claim under the Plan.

## INTERCOMPANY AGREEMENTS

66.     Nothing in the Plan, in the Findings and Conclusion or in the Confirmation Order is intended to limit, impair or otherwise affect the Debtors' rights to enter into and perform any intercompany agreements, including any intercompany agreements between the Debtors and MET for the procurement of fuel, sale of energy, marketing, plant dispatch, risk management and asset optimization activities.

## CERTAIN ADDITIONAL SETTLEMENTS

67.     The settlement of certain existing employee obligations (both with active and inactive employees) in Section 15.2 of the Plan is hereby approved pursuant to sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019, and the Debtors are hereby authorized to implement such settlement.

68.     The settlement by the Debtors and the holders of Mirant Debt Claims with respect to the contractual subordination provisions against all holders of Subordinated Note Claims, as set forth in Section 15.4 of the Plan, is approved pursuant to sections 1123(b)(3) and (6) of the

Bankruptcy Code and Bankruptcy Rule 9019 and the Debtors are hereby authorized to implement such settlement.

69.     All of the other settlements and compromises contained in the Plan or the Plan Documents meet the applicable standards under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation and are hereby approved.

## DEBTORS AS TO WHICH CONFIRMATION IS ADJOURNED

70.     In accordance with Section 15.3 of the Plan, the Plan is deemed to exclude the New York Debtors from the MAG Debtors and the Confirmation Hearing with respect to such Debtors is adjourned until further notice or order of the Bankruptcy Court.

71.     In accordance with Section 17.16 of the Plan, the Plan is deemed to exclude Hudson Valley from the MAG Debtors and the Confirmation Hearing with respect to Hudson Valley is adjourned until further notice or order of the Bankruptcy Court.

72.     In accordance with Section 17.26 of the Plan, the Plan is deemed to exclude Mirant NY-Gen from the MAG Debtors and the Confirmation Hearing with respect to Mirant NY-Gen is adjourned until further notice or order of the Bankruptcy Court.

73.     Confirmation of the Plan does not disturb the Bankruptcy Court's existing Order Further Extending the Period In Which to Solicit Acceptances of a Plan of Reorganization, dated March 30, 2005 [Docket No. 9005], as to the New York Debtors, Hudson Valley and Mirant NY-Gen except that the exclusive periods with respect to such Debtors may be shortened or terminated for cause shown.

74.     The New York Debtors, Hudson Valley and Mirant NY-Gen are hereinafter referred to collectively as the "Excluded Debtors." Notwithstanding any other provision in the Plan, (a) both the Mirant Debtors and the MAG Debtors have the right to assert claims against the Excluded Debtors arising from and after July 15, 2003 (the date the Excluded Debtors filed

26

their respective petitions for relief under chapter 11); (b) the Excluded Debtors shall have the right to assert claims against the Mirant Debtors and MAG Debtors arising from and after July 15, 2003; and (c) Intercompany Claims held by or against the Excluded Debtors are reserved and the treatment of such Intercompany Claims shall be subject to the Plan (to the extent applicable) if any of the Excluded Debtors' adjourned Confirmation Hearing is recommenced resulting in the inclusion of an Excluded Debtor in the Plan. Nothing contained herein shall be deemed to be a waiver or withdrawal of the New York Taxing Authorities' objections (at any subsequently recommenced Confirmation Hearing) to the settlement, release or discharge of Intercompany Claims and/or Administrative Claims held by the New York Debtors.

75.     The Plan and Confirmation Order shall provide no relief with respect to any Claim against or any obligation of the New York Debtors unless and until the Plan shall have been confirmed, and the Effective Date shall have occurred, as to the New York Debtors.

## MAG COMMITTEE / MAG AD HOC COMMITTEE

76.     To the extent the Debtors are unable to make a $1,231,110,000 cash payment to the holders of Allowed MAG Debtor Class 5 – Unsecured Claims, pursuant to Section 5.2(e)(i) of the Plan, the Debtors, the MAG Committee and the MAG Ad Hoc Committee shall engage in good faith negotiations regarding the terms and conditions of the New MAG Holdco Notes, which shall have market terms and conditions as agreed to by the Debtors, the MAG Committee and the MAG Ad Hoc Committee or as ordered by the Bankruptcy Court. To the extent the Debtors elect to issue the New MAG Holdco Notes, it is an express condition precedent to the Effective Date that either (a) the New MAG Holdco Notes contain terms and conditions reasonably satisfactory to the MAG Committee and the MAG Ad Hoc Committee, or (b) the Bankruptcy Court, at the request of any party, shall have entered an order that is not then stayed determining that the MAG Debtor Class 5 – Unsecured Claims have been satisfied in full.

27