## RELEASES AND EXCULPATIONS

77.    The releases set forth in Section 8.16 of the Plan shall be, and hereby are, approved, and shall be effective without further action upon the occurrence of the Effective Date. Former members of each Committee shall be entitled to Protected Person status only for acts or omissions through the date of their respective resignation and/or termination as a member of such Committee, as noted on the "Schedule of Protected Persons Pursuant to Section 8.16 of the Second Amended Joint Chapter 11 Plan of Reorganization, dated September 30, 2005," as amended.

78.    Except as otherwise provided in Section 13.3 of the Plan, the Disbursing Agent, including the Old Indenture Trustees (and each of their respective paying agents, as applicable), as disbursing agent for the holders of the MAG Short-term Note Claims, MAG Long-term Note Claims, Mirant Debt Claims and Subordinated Note Claims, and the Facility Agents, as disbursing agent for the holders of the MAG Revolver Claims, Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claims, together with their officers, directors, employees, agents, and representatives, as applicable, are exculpated pursuant to the Plan, by all Persons, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent, including the Old Indenture Trustees (and each of their respective paying agents) and the Facility Agents, by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent and/or such Old Indenture Trustees' and Facility Agents' willful misconduct or gross negligence. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent, such Old Indenture Trustees or such Facility Agents, or their respective

28

officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained in Section 13.3 of the Plan shall preclude or impair any holder of an Allowed Claim or Allowed Equity Interest from bringing an action in the Bankruptcy Court against any Debtor, the Disbursing Agent or any Person obligated to make distributions under the Plan to compel the making of Plan Distributions contemplated by the Plan on account of such Claim or Equity Interest. The Bankruptcy Court retains jurisdiction to resolve any such disputes.

79. Except as otherwise provided in Section 9.3 of the Plan, the Plan Trustees, together with their officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and parties in interest, from any and all Causes of Action, arising out of the discharge of the powers and duties conferred upon the Plan Trustees by the Plan Trust Declaration, the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Plan Trustees' gross negligence or willful misconduct. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Claim or Cause of Action against the Plan Trustees or their officers, directors, employees, agents, and representatives for making payments in accordance with the Plan Trust Declaration, or for liquidating assets to make payments under the Plan Trust Declaration.

## RETENTION OF JURISDICTION

80. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and except as expressly limited by the California Settlement Agreement and related agreements, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to the Chapter 11 Cases or the Plan (except

29

in the case of the Exit Financing Documents, which shall be subject to the jurisdictional provisions set forth therein); or (c) that relates to the matters set forth in Article XVI of the Plan.

## EFFECT OF CONFIRMATION

81.     The rights afforded in the Plan or in any Plan Documents and the treatment of all Claims and Equity Interests therein shall be, and hereby are, in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including, where applicable, any accrued interest, as calculated under Section 10.14 of the Plan, against the Debtors and the Debtors-in-Possession, or any of their Estates, Assets, properties, or interests in property. Except as otherwise provided in the Plan, on the Effective Date, all Claims against and Equity Interests in the Debtors and the Debtors-in-Possession shall be satisfied, discharged, and released in full. Neither New Mirant, its Affiliates nor the Debtors shall be responsible for any pre-Effective Date obligations of the Debtors or the Debtors-in-Possession, except those expressly assumed by New Mirant, its Affiliates or any such Debtor, as applicable. Except as otherwise provided in the Plan, all Persons and Entities shall be precluded and forever barred from asserting against New Mirant and its Affiliates, the Debtors, their respective successors or assigns, or their Estates, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date; provided, however, that nothing herein shall affect the rights of any entity to pursue a claim (as defined in section 101(5) of the Bankruptcy Code) that arises after entry of the Confirmation Order against any entity liable to such entity on account of such

30

claim, and nothing herein shall affect any rights of any entity to assert a claim if the Bankruptcy Court determines such entity was not afforded due process.

82.     None of the Debtors, the Old Indenture Trustees or any Protected Persons shall be liable for any Cause of Action arising in connection with or out of the administration of the Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.

83.     Except as otherwise provided herein (including in Paragraph 81) or in the Plan, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), (h), or (i) of the Bankruptcy Code, whether or not: (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order constitutes a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against New Mirant and its Affiliates or property of the Debtors or their Estates to the extent it relates to a discharged Claim.

31

84.     Except as otherwise provided in the Plan or the Confirmation Order (including Paragraph 81) or upon the occurrence of the Effective Date, the Debtors shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and Equity Interests shall be precluded from asserting against New Mirant and its Affiliates, the Debtors, the Assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

85.     After the consummation of the intercompany transfers contemplated in Sections 8.2 and 8.3 of the Plan, including the Fresh Structure Transactions, New Mirant and MET shall not have, and shall not be construed to have or maintain, any liability, claim, or obligation that is based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the Effective Date of the Plan (including, without limitation, any liability or claims arising under applicable non-bankruptcy law as a successor to Mirant or the Trading Debtors) and no such liabilities, claims, or obligations for any acts shall attach to New Mirant or MET under any theory at law or in equity, including without limitation, as a successor to Mirant or the Trading Debtors, respectively; provided, however, solely with respect to the Indenture dated as of February 9, 2001 by and among non-Debtor subsidiary Mirant Trinidad Investments, Inc., Bankers Trust Company, as trustee and Deutsche Bank Luxembourg S.A., as paying agent and transfer agent, New Mirant shall be, and hereby is, the successor to Mirant. All Persons shall be precluded and forever barred from asserting against New Mirant or MET and their respective Affiliates any event, occurrence, thing, or other further Claims or Causes of Action based upon any act or omission, transaction, or other activity of any

32

kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date. Adequate notice of the foregoing proposed treatment of New Mirant and MET has been provided and, accordingly, subject only to any entity that can establish that notice was not adequate as to due process or that such entity is the holder of a Claim that has arisen after the Effective Date, this paragraph shall be binding on all entities.

86.     Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan (including, without limitation, the Exit Facility), shall not be subject to any stamp tax, or other similar tax.

87.     The provisions of section 1145 of the Bankruptcy Code are applicable to the issuance and distribution of any securities issued under the Plan or any Plan Document, including, without limitation, New Mirant Common Stock, New Mirant Series A Warrants, New Mirant Series B Warrants, MAI Series A Preferred Shares, MAI Series B Preferred Shares, New MAG Holdco Notes and the Plan Secured Notes. Therefore, to the extent that an "offer or sale" is deemed to have occurred, any such securities are exempt from the requirements of Section 5 of the Securities Act and any state or local law requiring registration.

## INJUNCTIONS

88.     On the Effective Date and except as otherwise provided herein, all Persons and Entities who have been, are, or may be holders of Claims against or Equity Interests in the Debtors (other than holders of Allowed MAG Long-term Note Claims with respect to their legal, equitable and contractual rights, and personal Causes of Action against MAG, MAG's Assets

33

and any of MAG's current or former managers, officers, employees, agents and professionals) shall be permanently enjoined from taking any of the following actions against or affecting New Mirant and its Affiliates, the Debtors, Protected Persons, the Estates, the Assets, the Plan Trust or the Disbursing Agent, or any of their respective current or former members, directors, managers, officers, employees, agents, members, shareholders, professionals, successors and assigns or their respective assets and property with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan, the Plan Documents or the Confirmation Order):

 (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

 (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;

 (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

 (d) asserting any setoff, right of subrogation or recoupment of any kind; provided, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 17.17 of the Plan, except that Pepco's TPA Claims are not subject to any such defenses, offsets or counterclaim objections.

89. The prosecution of any Cause of Action indemnified by the Debtors, New Mirant or MET pursuant to Section 8.4 of the Plan shall be, and hereby is, permanently enjoined and prohibited, except solely for the purpose of obtaining a recovery from the issuer of any applicable insurance policy proceeds; provided, however, any entity without actual or constructive notice of the Plan and The Southern Company ("Southern") shall not be stayed by *unless such entity or Southern agrees to be enjoined pursuant* this paragraph, provided, further, that the Bankruptcy Court shall marshal insurance policy *to this paragraph;* proceeds referred to in this paragraph to ensure that entities enjoined by this paragraph are

34

satisfied as to their claims before use of such proceeds to satisfy any entity (including Southern) which is not so enjoined.

90.     Holders of Allowed Tax Claims are bound by the terms of the Plan and the Confirmation Order from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtors that otherwise would be liable to such holders for payment of such Tax Claims so long as the Debtors are in compliance with Section 6.3 of the Plan.

91.     The BEWAG Counterparties are permanently enjoined from taking any action to enforce the BEWAG Contract and the obligations arising thereunder against New Mirant, its subsidiaries and their assets.

92.     All holders of Claims and Equity Interests are permanently enjoined from asserting or prosecuting any Claim or Cause of Action against any Protected Person as to which such Protected Person has been exculpated from liability pursuant to the Plan and the Confirmation Order.

## SPECIAL PROVISIONS REGARDING RESOLUTION OF OBJECTIONS

93.     The following provisions reflect the consensual resolution of certain of the Objections to the Plan.

**a.      Equity Committee**

94.     Designated Net Litigation Distributions shall not be triggered by or made in respect of any recoveries (including, without limitation, Cash) realized by New Mirant, MET or the Debtors in respect of the Pepco Causes of Action, and any such recoveries shall be the property of New Mirant, MET or the Debtors, as applicable.

95.     Within ten (10) days of the date the Confirmation Order is entered, the Debtors shall file with the Bankruptcy Court in the MADCI avoidance action styled *In re: Mirant v.*

35

*Salomon Smith Barney, et al.,* Adv. No. 05-04140 (DML), a notice of withdrawal with prejudice with respect to the complaint therein and all Causes of Action asserted therein, whereupon such action shall be dismissed with prejudice without the need for any further action.

96. The amount of any Designated Net Litigation Distribution that would otherwise be made under Section 10.13 of the Plan as a consequence of a recovery in respect of a Designated Avoidance Action shall be reduced on a dollar-for-dollar basis by the amount of any Allowed Claim that arises against any Debtor as a result of such recovery.

97. On the Effective Date, the Debtors shall transfer and assign all of the Debtors' rights under and interests in the Designated Avoidance Actions to a newly-formed special purpose subsidiary of New Mirant ("Litigation Sub"), which shall have sole power and control over the manner in which the Designated Avoidance Actions are prosecuted, settled or otherwise liquidated, including, without limitation, the selection of professionals and the terms on which such professionals may be retained (which may include contingent fee arrangements). Litigation Sub's board of directors shall be comprised of three (3) persons, the initial members of which shall be selected as follows: the Corp Committee shall select one director; the Equity Committee shall select one director; and the foregoing directors shall jointly select the third director. Any vacancies on the board shall be filled by the remaining directors. Each director shall receive an annual fee of $25,000 plus a reasonable meeting fee to be determined by the board. Litigation Sub's initial charter and by-laws shall be subject to the review and approval of the Equity Committee and the Corp Committee, which approval shall not be unreasonably withheld. New Mirant shall have (a) no right to elect directors of Litigation Sub or to amend its charter or by-laws, and (b) no duty or liability to any person or entity for the acts or omissions of Litigation Sub, or its directors, officers or professionals or the outcome of any Designated Avoidance

Action. New Mirant's sole duties to Litigation Sub shall be to (a) fund the payment of professional fees incurred in connection with the Designated Avoidance Actions in an aggregate amount up to $20,000,000, plus reasonable (i) related costs, including, without limitation, expert fees and (ii) overhead, including, without limitation, D&O insurance, and (b) reasonably cooperate with prosecution of the Designated Avoidance Actions including, without limitation, providing Litigation Sub counsel and representatives reasonable access to (i) the master document depository maintained by New Mirant, (ii) New Mirant employees, and (iii) Mirant records and documents. New Mirant and Litigation Sub will have a common interest in the prosecution of the Designated Avoidance Actions. New Mirant and Litigation Sub, as they will be engaged pursuant to this paragraph in a common endeavor, may enter into such agreements, as are appropriate, to preserve as to third parties as to any applicable privilege. All amounts advanced by New Mirant to Litigation Sub shall be reimbursed from the first dollars received by Litigation Sub in respect of any Designated Avoidance Actions. Except as set forth in the Plan, Litigation Sub shall bear all tax consequences arising from any recoveries in respect of Designated Avoidance Actions. The obligation to make Designated Net Litigation Distributions shall be evidenced by non-certificated, non-transferable (except by ordinary successorship upon death or dissolution) contractual obligations that shall be owed to each record holder on the Effective Date of (I) an Allowed Mirant Debtor Class 3 – Unsecured Claim, (II) a Contested Mirant Debtor Class 3 – Unsecured Claim that subsequently becomes Allowed, or (III) an Allowed Mirant Debtor Class 5 – Equity Interest.

98.     The Series A Warrants and Series B Warrants shall each be issued in a number so that, upon the full exercise of all Series A Warrants and Series B Warrants, the holders shall have 10% and 5%, respectively, of the aggregate number of shares of New Mirant Common Stock (a)

37

then issued and outstanding in respect of Allowed Claims, (b) reserved for issuance in respect of Contested Claims, and (c) issued in respect of the Series A and B Warrants.

99.    In making the determinations required to calculate the denominator in the formulation of the Pro Rata Share for the holders of Allowed Mirant Debtor Class 3 – Unsecured Claims, the Disbursing Agent shall not be required to reserve shares of New Mirant Common Stock in respect of any particular Contested Claims; provided, that if additional shares are later issued in respect of Allowed Claims that were Contested Claims as of the Effective Date in order to satisfy the requirements of Section 11.4 of the Plan with respect to such Claims, then the Disbursing Agent shall issue pursuant to the Plan a sufficient numbers of additional shares to the holders of Allowed Mirant Debtor Class 3 – Unsecured Claims that arise under the Subordinated Notes and the holders of Allowed Mirant Debtor Class 5 – Equity Interests so that the percentage of shares issued in respect of such Claims and Interests shall continue to be 3.0% and 3.75%, respectively, of the total number of shares issued in respect of Mirant Debtor Class 3 – Unsecured Claims and Mirant Debtor Class 5 – Equity Interests.

100.    Within ten (10) days of the entry of the Confirmation Order, the Equity Committee shall file in the Bankruptcy Court in the action styled *Official Committee of Equity Security Holders v  Correll, et al.,* Adv. No. 05-4241 a notice of withdrawal with prejudice of the complaint and the Causes of Action asserted therein, and thereupon such action shall be dismissed with prejudice with no further action.

101.    On the basis of the foregoing, the Equity Committee's objections to the confirmation of the Plan will be and are deemed by the Bankruptcy Court to be withdrawn.

**b.    Pension Benefit Guaranty Corporation**

38

102.     Notwithstanding any provision of the Disclosure Statement, Plan or the Confirmation Order, any obligations with respect to the Mirant Services Pension Plan and the Mirant Services Pension Plan for Bargaining Unit Employees will not be affected in any way by this reorganization proceeding.

### c.     The United States of America, Bonneville Power Administration and the Western Area Power Administration

103.     Notwithstanding any provision in the Plan or the Confirmation Order, the confirmation of the Plan does not affect any setoff or recoupment rights of the United States and such rights, and any defenses Debtors may have thereto, are expressly preserved.

### d.     Federal, State and Local Environmental Agencies

104.     Nothing in the Plan or the Confirmation Order shall release, discharge, enjoin or preclude any liability of any Debtor that arises anew under any federal, state, or local police or regulatory law as a consequence of such Debtor being the owner or operator of property or a facility after the Effective Date. Nothing in the Plan or the Confirmation Order shall release, discharge, enjoin or preclude any liability of a Debtor to a governmental unit under its police or regulatory laws, except to the extent such liability constitutes a claim or debt (in each case, as defined in section 101 of the Bankruptcy Code) that is subject to discharge under section 1141 of the Bankruptcy Code. By way of example, without limitation: (a) liabilities arising from the pre-Effective Date off-site disposal of waste, (b) liabilities arising from the pre-Effective Date ownership or operation of property that is not owned or operated after the Effective Date, and (c) liabilities for penalties for pre-Effective Date acts or omissions, are discharged to the extent such liabilities constitute a claim or debt (in each case, as defined in section 101 of the Bankruptcy Code) that is subject to discharge under section 1141 of the Bankruptcy Code.

105.     Any relief provided under the Plan or the Confirmation Order to non-debtors shall

not release, discharge, enjoin or preclude any liability of such non-debtors to a governmental unit under any federal, state, or local environmental laws.

106. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, with respect to a governmental unit's exercise of its police or regulatory powers, the jurisdiction of the Bankruptcy Court and any other tribunal shall not be enlarged, reduced, or impaired from that as set forth in any applicable, valid statutory grant of jurisdiction.

107. Nothing in the Plan or the Confirmation Order shall adversely affect in any way the rights and remedies of the United States, Commonwealth of Virginia, or the State of Maryland under the actions styled as *United States, et al. v. Mirant Potomac River, LLC and Mirant Mid-Atlantic LLC,* #1:04-CV-1136, Eastern District of Virginia, including without limitation, the Consent Decree therein and any amendment thereto ("E.D. Va. Actions"). Nor shall anything in the Plan or the Confirmation Order divest or limit the jurisdiction of the United States District Court for the Eastern District of Virginia over the E.D. Va. Actions. Upon the Effective Date of the Plan, the E.D. Va. Actions shall survive the bankruptcy case and may be adjudicated and enforced in the United States District Court for the Eastern District of Virginia, provided, however, that Bankruptcy Court approval must be obtained for any allowance of an administrative expense.

108. Except to the extent the rights and remedies of the City of Alexandria, Virginia give rise to a dischargeable claim under section 1141 of the Bankruptcy Code, nothing in the Plan or the Confirmation Order shall adversely affect in any way such rights and remedies in any pending judicial or administrative actions involving the City of Alexandria, Virginia with respect to the exercise of its police or regulatory powers (if any, to the extent applicable) including but not limited to the actions styled as *United States, et al. v Mirant Potomac River, LLC and*

40

*Mirant Mid-Atlantic, LLC,* #1:04-CV-1136, Eastern District of Virginia; *Mirant Potomac River, LLC and Mirant Mid-Atlantic, LLC v Alexandria City Council and City of Alexandria, Virginia,* Chancery #CH-05-001092, Circuit Court for the City of Alexandria; and *City of Alexandria, Virginia v. Mirant Potomac River, LLC and Mirant Mid-Atlantic, LLC,* Chancery #CH-05-002882, Circuit Court for the City of Alexandria . These are referred to as the "Alexandria Actions." Notwithstanding anything to the contrary in the Plan or the Confirmation Order with respect to the City of Alexandria's exercise of its police or regulatory powers (if any, to the extent applicable) the jurisdiction of the Circuit Court for the City of Alexandria, the Bankruptcy Court and any other tribunal shall not be enlarged, reduced or impaired from that as set forth in any applicable, valid statutory grant of jurisdiction in regards to the Alexandria Actions. The City of Alexandria's right to object to the jurisdiction of the Bankruptcy Court in regards to the Alexandria Actions or any other action with respect to the City of Alexandria's exercise of its police and regulatory powers (if any, to the extent applicable) is expressly reserved.

109. The "Stipulations Regarding Proofs of Claim filed by California Department of Toxic Substances Control (Claim Nos. 7522-7525 & 7630-7631) and Debtors' Pending Omnibus Objection Thereto" and the "Stipulation Regarding Proofs of Claim filed by San Francisco Bay Regional Water Quality Control Board (Claim Nos. 7586, 7587 & 7588) and Debtors' Pending Omnibus Objection Thereto" are incorporated and made a part of the Confirmation Order. Furthermore, nothing in the Plan shall impair the terms of these Stipulations.

110. The "Stipulation Regarding Proofs of Claim filed by Massachusetts Dept. of Environmental Protection (Claim Nos. 7583, 7584 & 7585) and Debtors' Pending Omnibus Objection Thereto" are incorporated and made a part of the Confirmation Order. Furthermore, nothing in the Plan shall impair the terms of this Stipulation.

41

111.     Nothing in the Plan or the Confirmation Order shall adversely affect in any way the rights and remedies of the State of New York in any pending judicial or administrative actions by the State of New York under environmental laws, including but not limited to *New York v. Mirant New York and Mirant Lovett*, No. 03 CV 4326 (S.D.N.Y.), and the Consent Decree therein and any amendment thereto (the "New York Actions"). Nor shall anything in the Plan or Confirmation Order divest or limit the jurisdiction of the tribunals in New York with jurisdiction over the New York Actions. Upon the Effective Date of the Plan as to the New York Debtors, the New York Actions shall survive the bankruptcy case and may be adjudicated and enforced in the tribunals in New York with jurisdiction over the New York Actions. Notwithstanding the above, however, nothing in this paragraph shall allow the State of New York to pursue prepetition monetary claims as defined in section 101(5) of the Bankruptcy Code in the New York Actions and Bankruptcy Court approval must be obtained for any allowance of an administrative expense.

**e.     Chesapeake Bay Foundation, et al.**

112.     The rights of the Chesapeake Bay Foundation, the Environmental Integrity Project, and the Chesapeake Climate Action Network, if any, to commence an action as a private attorney general under any federal, state, or local environmental law or regulation regarding the postpetition acts or omissions of the Debtors are not affected or impaired by the Plan or the Confirmation Order except to the extent that any such action gives rise to a Claim or debt subject to discharge under section 1141 of the Bankruptcy Code. With respect to any such action, the jurisdiction of the Bankruptcy Court and any other tribunal shall not be enlarged, reduced, or impaired from that as set forth in any applicable, valid, statutory grant of jurisdiction.

**f.     Certain State and Local Taxing Authorities.**

113. The (a) "Stipulation by and between the Debtors and Various Taxing Authorities Resolving Objections to the Debtors' Plan of Reorganization"; (b) "Stipulation by and between the Debtors and Clark County, Nevada Resolving the Objection to the Debtors' Plan of Reorganization"; and (c) "Stipulation by and between the Debtors and Nevada Department of Taxation Resolving the Objection to the Debtors' Plan of Reorganization" are incorporated and made a part of the Confirmation Order.

114. Pursuant to the Plan, The Texas Comptroller of Public Accounts will receive, on the Distribution Date, in full satisfaction of its Allowed Priority Claim, a single Cash payment equal to (a) the Allowed Priority Claim, and (b) accrued post-confirmation interest on account of such Allowed Priority Claim at an interest rate agreed to by the parties or, if no agreement can be reached, an interest rate to be determined by the Bankruptcy Court after notice and a hearing.

### g. **New York Taxing Authorities**

115. On the Record and as further evidenced by the stipulation between the New York Debtors and the Town of Haverstraw, the Town of Stony Point, the Haverstraw-Stony Point Central School District and the County of Rockland (the "Stipulation"), which is being filed contemporaneously herewith, the objections of the New York Taxing Authorities are resolved. Except as provided in paragraphs 49 and 70 through 75, nothing contained herein shall supersede the Stipulation.

### h. **The City of Vernon**

116. Notwithstanding any provision in the Plan or the Confirmation Order, the confirmation of the Plan does not affect any prepetition setoff or recoupment rights of the City of Vernon and such rights, and any defenses the Debtors may have thereto, are expressly preserved.

43

### i.    **The Southern Company**

117.    Nothing in the Plan or the Confirmation Order shall impair or otherwise affect the rights, claims or defenses of Southern in the Southern Company Causes of Action including the pending motions to withdraw the reference and transfer venue.

118.    Notwithstanding any provision in the Plan or the Confirmation Order, the confirmation of the Plan does not affect any prepetition setoff or recoupment rights of Southern and such rights, and any defenses the Debtors may have thereto, are expressly preserved.

### j.    **Pepco**

119.    Nothing in the Plan, Findings and Conclusions, or Confirmation Order expands or reduces the jurisdiction of the Bankruptcy Court or any other tribunal with respect to the matters to be adjudicated pursuant to Section 14.5 of the Plan, including without limitation, the entitlement of the Debtors or Pepco to an award of attorneys' fees.

120.    Notwithstanding any provision of the Plan, Findings and Conclusions, or Confirmation Order to the contrary, the Claims of Pepco under the Assumption/Assignment Agreement shall be in such amount(s) and against such Debtor(s) as the parties may agree or as determined by Final Order. Upon allowance, such Claims shall receive the treatment specified in the Plan the same as if they were Allowed Claims on the Effective Date; provided, that nothing herein shall entitle Pepco to more than one recovery on its Allowed Claims.

121.    Based on Pepco's stipulation that it will not use the unliquidated status of its Claims to in any way impede or delay the administration of the Chapter 11 Cases, including without limitation, the confirmation of the Plan and occurrence of the Effective Date, the Debtors waive the right to seek to estimate Pepco's Claims under section 502(c) of the Bankruptcy Code after the Effective Date.

MIAMI 624052 (2K)

122. Nothing in the Plan, Findings and Conclusions, or Confirmation Order shall restrict or prohibit Pepco's right to assert any claim, cause of action, counterclaim, crossclaim, third-party claim, defense, affirmative defense, or rights of setoff or recoupment of Pepco or its affiliates in connection with any pending litigation; provided, that Pepco's recovery therefor shall be as set forth in the Plan.

123. Nothing in the Plan, Findings and Conclusions, or the Confirmation Order shall impair, limit or preclude the right of Pepco to liquidate its Claims arising from the rejection of any executory contract or lease of non-residential real property; provided, that any recovery thereon shall be as set forth in the Plan. In connection with the assumption or assignment pursuant to Section 14.5(c) of the Plan of any executory contract or lease of non-residential real property, the rights of the Debtors and Pepco shall be, and hereby are, as set forth in the Bankruptcy Code, including without limitation, section 365. With respect to Pepco's Claims, (a) the TPA Claims against Mirant and MAEM in the amount of $105 million are Allowed for distribution purposes, with interest to accrue as provided in Section 10.14 of the Plan from the date of the TPA Order, (b) the $472,500 Claim for indemnification against Mirant is Allowed for distribution purposes, with interest to accrue as provided in Section 10.14 of the Plan from the Petition Date, (c) all of Pepco's other Claims shall accrue interest as provided in Section 10.14 of the Plan from the date the Debtors stop performing under the applicable contract or lease.

**k.** **Claims Arising From Recovery Of Avoided Property**

124. Notwithstanding anything set forth in the Plan or in an order of the Bankruptcy Court, any Claim assertable by Southern, Siemens Westinghouse Power Corporation, Pepco, or all of the defendants named in the suit styled *Mirant v. Commerzbank, AG,* Adv. No. 05-04142 (DML), and asserted under section 502(h) of the Bankruptcy Code from the recovery of property

45

under sections 522, 550 or 553 of the Bankruptcy Code must be filed with the Bankruptcy Court

and served upon the Debtors no later than thirty (30) days after full compliance with any Final

Order providing for the recovery of the property giving rise to such Claim. Any such Claim for

which a proof of claim is not filed and served within such time will be forever barred from

assertion and shall not be enforceable against the Debtors, New Mirant, their respective Estates,

Affiliates, or the Assets. Unless otherwise ordered by the Bankruptcy Court, all such Claims that

are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to

objection by the Disbursing Agent. The Disbursing Agent shall have sixty (60) days from the

filing of a Claim under this paragraph to object to such Claim on any legal grounds including,

without limitation, on the grounds that the recovery of the applicable property by the Debtors did

not give rise to a Claim under section 502(h) of the Bankruptcy Code.

**l.     Securities Fraud Plaintiffs**

125.    Nothing in the Plan or Confirmation Order, including the injunction set out in

Section 17.20 of the Plan and paragraph 85 above, shall in any way enjoin, preclude, prohibit,

restrict or otherwise limit plaintiffs in the consolidated securities class action styled *In re Mirant*

*Corporation Securities Litigation*, No. 1:02 Civ. 1467-RWS (N.D. Ga.), from fully prosecuting

any and all claims or causes of action arising thereunder, or from enforcing any judgment entered

therein, against any non-debtor; provided, that any recovery against any present or former

officers or directors of the Debtors shall be limited to the proceeds of any applicable insurance

policy.

**m.     William and Patricia Croissant, Old Mongaup Incorporated, and Swinging Bridge, Inc.**

126.    William and Patricia Croissant, Old Mongaup Incorporated, and Swinging Bridge,

Inc. (the "Claimants") shall be able to file an administrative claim under Section 6.2 of the Plan

within forty (40) days after service of Notice of Confirmation. The Claimants reserve the right to assert related to postpetition personal injury claims. The Plan does not bar the Claimants from pursuing any available relief against insurance that may be available with respect to these claims.

**n.      Vernon J. Gregory and Sandra Gregory and MWH Americas, Inc.**

127.    Nothing contained in the Plan shall prohibit Vernon J. Gregory and Sandra Gregory or MWH Americas, Inc. from seeking and obtaining recovery for the amount of any judgment obtained against the Debtors or settlement reached with the Debtors from the proceeds of (i) any applicable insurance policies owned by the Debtors or New Mirant or (ii) any applicable third-party insurance policies in which the Debtors are named as additional insureds.

**o.      ACE American Insurance Company, ESIS, Inc. and Their Affiliates**

128.    Notwithstanding anything in the Plan or this Conformation Order to the contrary, the claims of ACE American Insurance Company, ESIS, Inc. and their affiliates ("ACE Companies") related to postpetition workers compensation insurance policies issued to Mirant Services, LLC ("Services") and related agreements ("ACE Claims"): (i) are Administrative Claims for a liability incurred and payable in the ordinary course of business by a Debtor (and not past due), as described in Section 6.2(a)(iii) of the Plan, (ii) are hereby expressly assumed by Services and shall not be discharged, (iii) shall be Allowed Administrative Claims, and (iv) shall be paid in the ordinary course of business of Services; provided, that, Services reserves the right to raise good faith disputes, if any, to the ACE Claims (and the ACE Companies reserve their right to contest or defend any such disputes) in accordance with the insurance policies and related agreements.

**p.      James Brown and Greg Waller**

129.    Nothing in the Plan, including the discharge and injunction provisions set forth in

47

Sections 17.5, 17.6, and 17.20 of the Plan, shall in any way alter the rights of the parties to the Stipulation of Settlement of Claims Brought by James Brown and Greg Waller approved pursuant to the Order Granting Debtors' Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving Settlement with James Brown and Greg Waller, Individually and as Representatives and on Behalf of All Others Similarly Situated dated April 6, 2005.

## **MISCELLANEOUS PROVISIONS**

130.     The stay in effect in the Chapter 11 Cases pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunctions set forth in the Confirmation Order, Section 17.20 of the Plan and/or sections 524 and 1141 of the Bankruptcy Code; provided, however, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements and bills of sale) or the taking of such other actions as are necessary to effectuate the transactions contemplated by the Plan or by the Confirmation Order prior to the Effective Date.

131.     The Confirmation Order hereby incorporates, without modification, each provision of the Implementation Order, entered concurrently with the Confirmation Order.

132.     During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as Debtors-in-Possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

133.     New Mirant and MET are hereby deemed appointed, with full power of substitution, as true and lawful agents and attorneys-in-fact with full irrevocable power and authority on behalf of and in the place and stead of Mirant or the Trading Debtors, to take any

48

and all actions deemed necessary or appropriate by New Mirant or MET to carry out the asset transfers contemplated under Sections 8.2, 8.3 and 8.4 of the Plan, including, without limitation, the preparation, execution and delivery of any and all documents, the making of any and all filings or registrations and the payment of any and all fees and expenses relating to the foregoing, as New Mirant or MET shall deem necessary or appropriate to give effect to the asset transfers contemplated under Sections 8.2 and 8.3 of the Plan. Each of New Mirant and MET shall have full and unqualified authority to delegate any or all of the foregoing powers to any of its respective officers or agents. These powers shall survive the winding up and dissolution of Mirant and/or the Trading Debtors.

134.    Nothing in the Plan or the Confirmation Order is intended to affect or modify the rights of any party under section 502(j) of the Bankruptcy Code.

135.    Except with respect to the treatment of any Claim, nothing in the Plan or the Conformation Order shall be construed to modify, discharge, alter, amend, or impair the terms of, or rights under or reserved in, any stipulation or agreement (including any reservations of rights contained therein) between a Debtor and any party in interest that has been approved by a Final Order ("Settlement Agreement"). Nothing in the Plan or the Conformation Order creates jurisdiction in the Bankruptcy Court that the Bankruptcy Court otherwise would not have over any such rights under or reserved in any Settlement Agreement.

136.    If the reasonable consent of any counterparty to an executory contract of the Trading Debtors is required in connection with the transfer of such contract to MET under the Plan, (i) the refusal to grant such consent is *per se* unreasonable and (ii) such consent is hereby deemed to have been given pursuant to the Confirmation Order, unless upon a motion of a

49

counterparty for good cause, including excusable neglect, the Bankruptcy Court orders otherwise.

137.    The Implementation Order is ratified and confirmed in all respects. The Debtors, New Mirant and its subsidiaries are authorized to take all corporate actions necessary or appropriate to implement all provisions thereof.

138.    Pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

139.    Notwithstanding anything contained herein or in the Plan, the Plan Documents or any other document filed with the Bankruptcy Court in connection with the Chapter 11 Cases, the Committees shall remain in existence and shall have and retain all the rights, powers, duties and responsibilities conferred upon them under the Bankruptcy Code and by any order of the Bankruptcy Court until the Effective Date. Notwithstanding the foregoing, the Committees shall remain in existence for the purpose of, and pending, the resolution of the issues contemplated by Section 6.2 of the Plan.

140.    Upon entry of the Confirmation Order, the employment of the Equity Committee's financial advisors, Peter J. Solomon Company ("PJSC") shall be terminated (without any waiver or impairment of PJSC's right to file an application for final compensation and reimbursement of expenses).

141.    In accordance with Section 17.13 of the Plan, the Debtors will serve and publish notice of the entry of the Confirmation Order which will include, among other things, notice of relevant deadlines and dates.

142. Notwithstanding anything to the contrary in the Confirmation Order, the Plan or any Plan Document, nothing in the Confirmation Order, the Plan or any Plan Document shall, without the agreement of any affected entity, (a) serve to discharge, release or otherwise affect any obligation now existing or hereafter coming into existence which was not, as of the date of the Confirmation Order, a claim within the meaning of section 101(5) of the Bankruptcy Code or (b) abrogate or limit the right of any entity to due process.

143. Specific reference to an entity in the Confirmation Order does not constitute a determination by the Bankruptcy Court that another unnamed entity that is similarly situated is not entitled to identical treatment.

144. The Bankruptcy Court specifically retains jurisdiction to determine whether or not any claim or right has been affected by the Plan or the Confirmation Order.

Dated: December 9, 2005
     Fort Worth, Texas

 

_____
HONORABLE D. MICHAEL LYNN
UNITED STATES BANKRUPTCY JUDGE

**Submitted By:**

Robin E Phelan
State Bar No 15903000
Ian T. Peck
State Bar No. 24013306
HAYNES AND BOONE, LLP
901 Main Street
Suite 3100
Dallas, TX 75202
(214) 651-5000

-and-

Thomas E Lauria
State Bar No. 11998025
Craig H Averch
State Bar No. 01451020
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131
(305) 371-2700

52