# EXHIBIT "1"

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re | Chapter 11 Case |
| MIRANT CORPORATION, et al., | Case No. 03-46590(DML)<br>Jointly Administered |
| Debtors. | |

## AMENDED AND RESTATED SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR MIRANT CORPORATION AND ITS AFFILIATED DEBTORS

Dated: December 9, 2005

WHITE & CASE LLP
Thomas E Lauria
Craig H. Averch
Gerard Uzzi
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700

HAYNES AND BOONE, LLP
Robin Phelan
Ian T. Peck
901 Main Street, Suite 3100
Dallas, TX 75202
(214) 651-5000

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION

# TABLE OF CONTENTS

ARTICLE I.   DEFINITIONS AND INTERPRETATION ..............................................................1

 1.1. Definitions.................................................................................................................1
 1.2. Interpretation.............................................................................................................1
 1.3. Application of Definitions and Rules of Construction Contained in the
   Bankruptcy Code. ....................................................................................................1
 1.4. Other Terms. .............................................................................................................1
 1.5. Appendices and Plan Documents..............................................................................1

ARTICLE II.   RESOLUTION OF CERTAIN INTER-DEBTOR ISSUES .....................................2

 2.1. Formation of Debtor Groups for Certain Purposes....................................................2
 2.2. Treatment of Guaranty Claims Against a Debtor in a Debtor Group. .......................2
 2.3. Intercompany Claims and Equity Interests...............................................................2

ARTICLE III.   CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ...........................3

 3.1. Administrative Claims and Tax Claims.....................................................................3
 3.2. Mirant Debtor Claims and Equity Interests. .............................................................3
 3.3. MAG Debtor Claims and Equity Interests.................................................................4
 3.4. Separate Classification of Secured Claims. ...............................................................5
 3.5. Separate Classification of PG&E/RMR Claims. .......................................................5
 3.6. Separate Classification of the Secured Claims of the New York Taxing
   Authorities................................................................................................................6

ARTICLE IV.   IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND
   EQUITY INTERESTS...........................................................................................6

 4.1. Unimpaired Classes of Claims and Equity Interests..................................................6
 4.2. Impaired Classes of Claims and Equity Interests. .....................................................6
 4.3. Impairment Controversies.........................................................................................6

ARTICLE V.   PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
   INTERESTS UNDER THE PLAN ........................................................................6

 5.1. Mirant Debtor Claims and Equity Interests. .............................................................6
 5.2. MAG Debtor Claims and Equity Interests.................................................................9

ARTICLE VI.   PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS
   UNDER THE PLAN.............................................................................................11

 6.1. Unclassified Claims. ...............................................................................................11
 6.2. Treatment of Administrative Claims. ......................................................................11
 6.3. Treatment of Tax Claims. .......................................................................................13

ARTICLE VII.  ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY
INTERESTS ....................................................................................................................14

7.1.    Classes Entitled to Vote. ..................................................................................14
7.2.    Class Acceptance Requirement ........................................................................14
7.3.    Tabulation of Votes on a Non-Consolidated Basis ..........................................14
7.4.    Cramdown. ........................................................................................................15
7.5.    Confirmation of All Cases. ...............................................................................15

ARTICLE VIII.  MEANS FOR IMPLEMENTATION OF THE PLAN .....................................15

8.1.    Operations between the Confirmation Date and the Effective Date. .....................15
8.2.    Certain Intercompany Transactions On or Prior to the Effective Date .................15
8.3.    Certain Intercompany Transfers On the MAEM/MET Effective Date. ................17
8.4.    Corporate Action. .............................................................................................18
8.5.    Termination of Certain Debt Obligations. .......................................................19
8.6.    Continued Corporate Existence of the Debtors. ..............................................19
8.7.    Re-vesting of Assets. ........................................................................................20
8.8.    Sale Provisions Relating to Mint Farm. ...........................................................20
8.9.    Management. .....................................................................................................20
8.10.   Initial Boards of Directors. ..............................................................................20
8.11.   Officers. ............................................................................................................21
8.12.   Causes of Action. .............................................................................................21
8.13.   Appointment of the Disbursing Agent. ............................................................22
8.14.   Sources of Cash for Plan Distributions. ...........................................................22
8.15.   Investment of Funds Held by the Disbursing Agent; Tax Reporting by the
        Disbursing Agent. ............................................................................................22
8.16.   Releases by the Debtors. ..................................................................................22
8.17.   New Mirant Employee Stock Programs. ..........................................................23
8.18.   Appointment of New Mirant and MET as Attorneys-In-Fact. .........................23
8.19.   Special Provisions Regarding the MAG Long-term Notes ...............................23

ARTICLE IX.  THE PLAN TRUST ...........................................................................................24

9.1.    Creation of Plan Trust and Appointment of Plan Trustees. ..............................24
9.2.    Property of the Plan Trust. ...............................................................................24
9.3.    Powers and Duties of the Plan Trustees ...........................................................24

ARTICLE X.  DISTRIBUTION PROVISIONS .........................................................................25

10.1.   Plan Distributions ............................................................................................25
10.2.   Timing of Plan Distributions. ..........................................................................25
10.3.   Address for Delivery of Plan Distributions/Unclaimed Distributions ...............25
10.4.   De Minimis Distributions. ...............................................................................26
10.5.   Time Bar to Cash Payments. ...........................................................................26
10.6.   Manner of Payment under the Plan ..................................................................26
10.7.   Expenses Incurred on or after the Effective Date and Claims of the
        Disbursing Agent. ............................................................................................26

10.8.   Fractional Plan Distributions. .................................................................27

10.9.   Special Distribution Provisions for MAG Short-term Debt Claims, MAG
Long-term Note Claims and Mirant Debt Claims.........................................27

10.10.  Special Distribution Provisions for Equity Interests...............................30

10.11.  Special Distribution for California Parties...............................................30

10.12.  Surrender and Cancellation of Instruments.............................................31

10.13.  Designated Net Litigation Distributions..................................................31

10.14.  Accrual of Interest for Purposes of Calculating Plan Distributions.......32

10.15.  Supplemental Distributions to Holders of Allowed Mirant Debtor Class 3 –
Unsecured Claims. .....................................................................................33

ARTICLE XI.  PROCEDURES FOR RESOLVING AND TREATING CONTESTED
CLAIMS ...........................................................................................................34

11.1.   Objection Deadline. ...................................................................................34

11.2.   Prosecution of Contested Claims. .............................................................34

11.3.   Claims Settlement.....................................................................................34

11.4.   Entitlement to Plan Distributions Upon Allowance.................................34

11.5.   Estimation of Claims.................................................................................34

ARTICLE XII.  CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
AND THE OCCURRENCE OF THE EFFECTIVE DATE .........................................35

12.1.   Conditions Precedent to Confirmation......................................................35

12.2.   Conditions Precedent to the Occurrence of the Effective Date. ...............37

12.3.   Waiver of Conditions.................................................................................37

12.4.   Effect of Non-Occurrence of the Effective Date. .....................................37

ARTICLE XIII.  THE DISBURSING AGENT ............................................................38

13.1.   Powers and Duties.....................................................................................38

13.2.   Plan Distributions......................................................................................38

13.3.   Exculpation. ..............................................................................................38

ARTICLE XIV.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES............................................................................................................39

14.1.   Assumption and Rejection of Executory Contracts and Unexpired Leases. .........39

14.2.   Cure...........................................................................................................41

14.3.   Claims Arising from Rejection, Expiration or Termination. ....................41

14.4.   Special Provisions Relating to the BEWAG Contract..............................42

14.5.   Special Provisions Relating to Agreements with Pepco and its Subsidiaries........42

14.6.   Special Provisions Related to the MIRMA Leases...................................43

14.7.   Special Provisions Relating to Mint Farm................................................44

14.8.   Special Provisions Relating to the FCC Agreement.................................44

ARTICLE XV.  SETTLEMENTS AND COMPROMISES ..........................................45

15.1.   California Settlement. ................................................................................45

15.2.   Settlement of Prepetition Employee Agreements.....................................45

15.3. Proposed New York Tax Settlement.........................................................46
15.4. Settlement of Certain Subordination Rights. ..........................................47

ARTICLE XVI. RETENTION OF JURISDICTION ...................................................48

ARTICLE XVII. MISCELLANEOUS PROVISIONS ...............................................50

17.1. Payment of Statutory Fees. ...................................................................50
17.2. Satisfaction of Claims. ..........................................................................50
17.3. Third Party Agreements; Subordination. ...............................................50
17.4. Exculpation. ..........................................................................................51
17.5. Discharge of Liabilities.........................................................................51
17.6. Discharge of Debtors. ...........................................................................51
17.7. Notices. .................................................................................................52
17.8. Headings. ..............................................................................................53
17.9. Governing Law. ....................................................................................53
17.10. Expedited Determination. .....................................................................53
17.11. Exemption from Transfer Taxes. ...........................................................53
17.12. Retiree Benefits.....................................................................................54
17.13. Notice of Entry of Confirmation Order and Relevant Dates. .................54
17.14. Interest and Attorneys' Fees. ................................................................54
17.15. Modification of the Plan. ......................................................................54
17.16. Revocation of Plan.................................................................................55
17.17. Setoff Rights. ........................................................................................55
17.18. Compliance with Tax Requirements.......................................................55
17.19. Rates......................................................................................................56
17.20. Injunctions.............................................................................................56
17.21. Binding Effect........................................................................................56
17.22. Severability. ..........................................................................................57
17.23. Committees' Consultation and Agreement..............................................57
17.24. Global Settlement Of Certain Recoveries...............................................57
17.25. No Admissions.......................................................................................58
17.26. Potential Exclusion of Mirant NY-Gen from Plan. ................................58

EXHIBITS

Glossary of Defined Terms .............................................................. Exhibit A
MAG Debtors ................................................................................... Exhibit B
Mirant Debtors ................................................................................. Exhibit C
MAI Series A & B Preferred Shares .................................................. Exhibit D
New Mirant Warrant Terms............................................................... Exhibit E
MIRMA Lease Plan Treatment......................................................... Exhibit F

Mirant Corporation and its affiliated debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases hereby collectively and jointly propose the following joint chapter 11 plan of reorganization:

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

**1.1.  Definitions.**

The capitalized terms used herein shall have the respective meanings set forth in the Glossary of Defined Terms attached hereto as Exhibit "A."

**1.2.  Interpretation.**

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

**1.3.  Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Glossary of Defined Terms. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**1.4.  Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

**1.5.  Appendices and Plan Documents.**

All appendices to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Subject to Section 17.23, all Plan Documents shall be filed with the Clerk of the Bankruptcy Court not less than ten (10) days prior to the commencement of the Confirmation Hearing. Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address:

White & Case LLP
Wachovia Financial Center
200 South Biscayne Boulevard
Suite 4900
Miami, Florida 33131
Attention: Mark B. Fuhr
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

# ARTICLE II.

## RESOLUTION OF CERTAIN INTER-DEBTOR ISSUES

### 2.1.    Formation of Debtor Groups for Certain Purposes.

In settlement and compromise of certain existing and potential disputes regarding Intercompany Claims and related matters, pursuant to sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan (a) treats the Mirant Debtors as comprising a single Estate solely for purposes of voting on the Plan (except as set forth in Section 7.3), confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the Mirant Debtors under the Plan, and (b) treats the MAG Debtors as comprising a single Estate solely for purposes of voting on the Plan (except as set forth in Section 7.3), confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the MAG Debtors under the Plan. Such settlement and compromise shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities. This settlement and compromise (and the treatment derived therefrom) serves only as a mechanism to effect a fair distribution of value to the Debtors' constituencies.

### 2.2.    Treatment of Guaranty Claims Against a Debtor in a Debtor Group.

Any holder of a Claim against a Debtor and a Claim based on a guaranty of such base Claim given by a Debtor within the same Debtor Group, including, without limitation, (a) Claims arising under the Commodity Prepay Facility and the Commodity Prepay Guaranty, and (b) Claims arising under the Equipment Warehouse Facility and the Equipment Warehouse Guaranty, shall receive only a single recovery in respect of such Claims.

### 2.3.    Intercompany Claims and Equity Interests.

Intercompany Claims and Administrative Claims between and among a Debtor in a Debtor Group and another Debtor in the same Debtor Group shall, solely for purposes of receiving Plan Distributions, be deemed resolved as a result of the settlement and compromise described in Section 2.1 and therefore not entitled to any Plan Distribution and shall not be entitled to vote on the Plan. In addition, all Intercompany Claims between the Mirant Debtors

2

and the MAG Debtors shall, solely for purposes of receiving Plan Distributions, be deemed resolved as part of the global settlement of Intercompany Claims and related matters under the Plan and therefore not entitled to any Plan Distribution and shall not be entitled to vote on the Plan. Administrative Claims between the Mirant Debtors and the MAG Debtors shall be settled in the ordinary course. Except with respect to Allowed Mirant Debtor Class 5 – Equity Interests and Allowed MAG Debtor Class 8 – Equity Interests, no Plan Distributions shall be made on account of any Equity Interests in any Debtor regardless of whether such Equity Interests are held by a Person which is not a Debtor; provided, that any Debtor that owns Equity Interests in another Debtor shall retain such Equity Interests, except as otherwise provided in the Plan.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

For the purposes of organization, voting and all confirmation matters, except as otherwise provided herein, all Claims (except as provided in Section 3.1) and all Equity Interests in the Mirant Debtors and the MAG Debtors shall be classified as set forth in this Article III.

### 3.1.    Administrative Claims and Tax Claims.

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims shall not be classified under the Plan, and shall instead be treated separately as unclassified Claims on the terms set forth in Article VI.

### 3.2.    Mirant Debtor Claims and Equity Interests.

The classes of Claims against the Mirant Debtors and the Equity Interests in Mirant shall be treated under the Plan as follows:

(a)    Mirant Debtor Class 1 – Priority Claims

Mirant Debtor Class 1 shall consist of all Priority Claims against any of the Mirant Debtors.

(b)    Mirant Debtor Class 2 – Secured Claims

Mirant Debtor Class 2 shall consist of all Secured Claims against any of the Mirant Debtors.

(c)    Mirant Debtor Class 3 – Unsecured Claims

Mirant Debtor Class 3 shall consist of all Unsecured Claims (including the Mirant Debt Claims, the Subordinated Note Claims and the California Party Unsecured Claims, but excluding Convenience Claims, Mirant Debtor Class 6 – Unimpaired Unsecured/Convenience Claims and Mirant Debtor Class 7 – Mirant Peaker Unsecured Claims) against any of the Mirant Debtors.

3

(d)     Mirant Debtor Class 4 – Convenience Claims

Mirant Debtor Class 4 shall consist of all Convenience Claims (other than any Convenience Claims in Mirant Debtor Class 6 – Unimpaired Unsecured/Convenience Claims) against any of the Mirant Debtors.

(e)     Mirant Debtor Class 5 – Equity Interests

Mirant Debtor Class 5 shall consist of all Equity Interests in Mirant.

(f)     Mirant Debtor Class 6 – Unimpaired Unsecured/Convenience Claims

Mirant Debtor Class 6 – Unimpaired Unsecured/Convenience Claims shall consist of the following Claims: (i) the Unsecured Claims against each of (A) Mirant Americas Energy Marketing Investments, Inc., (B) Mirant Las Vegas, (C) Mirant Wichita, (D) Shady Hills Power Company, LLC and (E) West Georgia and (ii) Convenience Claims against each of (A) MADI, (B) Mirant Americas Energy Capital, LP, (C) Mirant Americas Energy Marketing Investments, Inc. (D) Mirant Americas Procurement, Inc., (E) MAREM, (F) Mirant Capital Management, LLC, (G) Mirant Chalk Point Development, LLC, (H) Mirant Michigan Investments, Inc., and (I) Mirant Wyandotte.

(g)     Mirant Debtor Class 7 – Mirant Peaker Unsecured Claims

Mirant Debtor Class 7 – Mirant Peaker Unsecured Claims shall consist of all Unsecured Claims against Mirant Peaker.

**3.3.    MAG Debtor Claims and Equity Interests.**

The classes of Claims against the MAG Debtors and the Equity Interests in MAG shall be treated under the Plan as follows:

(a)     MAG Debtor Class 1 – Priority Claims

MAG Debtor Class 1 shall consist of all Priority Claims against any of the MAG Debtors.

(b)     MAG Debtor Class 2 – Secured Claims

MAG Debtor Class 2 shall consist of all Secured Claims (other than New York Taxing Authorities Secured Claims) against any of the MAG Debtors.

(c)     MAG Debtor Class 3 – New York Taxing Authorities Secured Claims

MAG Debtor Class 3 shall consist of all Secured Claims of the New York Taxing Authorities against the New York Debtors.

4

(d)     MAG Debtor Class 4 – PG&E/RMR Claims

MAG Debtor Class 4 shall consist of all PG&E/RMR Claims against the MAG Debtors.

(e)     MAG Debtor Class 5 – Unsecured Claims

MAG Debtor Class 5 shall consist of all Unsecured Claims (including without limitation, MAG Short-term Debt Claims, but excluding Convenience Claims) against any of the MAG Debtors.

(f)     MAG Debtor Class 6 – MAG Long-term Note Claims

MAG Debtor Class 6 shall consist of all MAG Long-term Note Claims against the MAG Debtors.

(g)     MAG Debtor Class 7 – Convenience Claims

MAG Debtor Class 7 shall consist of all Convenience Claims against any of the MAG Debtors (other than the MAG Debtor Class 9 – MAG Non-Voting Convenience Claims that are identified and described in Section 3.3(i) of the Plan).

(h)     MAG Debtor Class 8 – Equity Interests

MAG Debtor Class 8 shall consist of all Equity Interests in MAG.

(i)     MAG Debtor Class 9 – MAG Non-Voting Convenience Claims

MAG Debtor Class 9 – MAG Non-Voting Convenience Claims shall consist of the Convenience Claims against each of MAG and Mirant MD Ash Management, LLC.

**3.4.    Separate Classification of Secured Claims.**

Although Secured Claims against the Mirant Debtors and the MAG Debtors have been placed in one category with respect to each such Debtor Group for purposes of nomenclature, each such Secured Claim shall be treated as a separate class for purposes of voting on the Plan and receiving Plan Distributions (to be designated as Mirant Debtor Class 2A, Mirant Debtor Class 2B, Mirant Debtor Class 2C, etc.; MAG Debtor Class 2A, MAG Debtor Class 2B, MAG Debtor Class 2C, etc.).

**3.5.    Separate Classification of PG&E/RMR Claims.**

Although the PG&E/RMR Claims have been placed in one category for purposes of nomenclature, each of the three PG&E/RMR Claims shall be treated as a separate class for purposes of voting on the Plan and receiving Plan Distributions (to be designated MAG Debtor Class 4A, MAG Debtor Class 4B and MAG Debtor Class 4C).

5

**3.6.** **Separate Classification of the Secured Claims of the New York Taxing Authorities.**

Although the Secured Claims of the New York Taxing Authorities have been placed in one category for purposes of nomenclature, each Secured Claim of the New York Taxing Authorities shall be treated as a separate class for purposes of voting on the Plan (to be designated MAG Debtor Class 3A, MAG Debtor Class 3B, MAG Debtor Class 3C, etc.).

## ARTICLE IV.

## IDENTIFICATION OF IMPAIRED
## CLASSES OF CLAIMS AND EQUITY INTERESTS

**4.1.** **Unimpaired Classes of Claims and Equity Interests.**

Mirant Debtor Class 1 – Priority Claims, Mirant Debtor Class 6 – Unimpaired Unsecured/Convenience Claims, MAG Debtor Class 1 – Priority Claims, MAG Debtor Class 6 – MAG Long-term Note Claims, MAG Debtor Class 8 – Equity Interests, and MAG Debtor Class 9 – MAG Non-Voting Convenience Claims are not impaired under the Plan.

**4.2.** **Impaired Classes of Claims and Equity Interests.**

Except as provided in Section 4.1, all classes of Claims and Equity Interests are impaired under the Plan.

**4.3.** **Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE V.

## PROVISIONS FOR TREATMENT OF CLAIMS
## AND EQUITY INTERESTS UNDER THE PLAN

**5.1.** **Mirant Debtor Claims and Equity Interests.**

The classes of Claims against the Mirant Debtors and Equity Interests in Mirant shall be treated under the Plan as follows:

(a)     Mirant Debtor Class 1 – Priority Claims

Each holder of an Allowed Priority Claim against any of the Mirant Debtors shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Claim entitles such holder in respect of such Claim shall be fully reinstated and retained, and such Allowed Priority Claim (including any

6

amounts to which such holder is entitled pursuant to section 1124(2) of the Bankruptcy Code) shall be paid in full in accordance with such reinstated rights on the Distribution Date.

(b)     Mirant Debtor Class 2 – Secured Claims

(1)     General Treatment. Each holder of an Allowed Secured Claim against the Mirant Debtors will receive on the Distribution Date in full satisfaction of such holder's Allowed Secured Claim, (A) a single Cash payment equal to the sum of (1) the Allowed Secured Claim and (2) accrued postpetition interest from the Petition Date through the Effective Date, at an interest rate agreed to by the parties or, if no agreement can be reached, as determined by the Bankruptcy Court after notice and hearing, or (B) if applicable, the implementation of any applicable valid right of setoff permitted under section 553 of the Bankruptcy Code.

(2)     Alternative Consensual Treatment. Notwithstanding any other provision in this Section 5.1(b), the Mirant Debtors and any holder of an Allowed Mirant Debtor Class 2 – Secured Claim may agree to any alternate treatment of such Secured Claim; provided that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of the amount of such holder's Allowed Mirant Debtor Class 2 – Secured Claim.

(3)     Treatment of West Georgia Facility Claims.

(A)     If the holders of the West Georgia Facility Claims do not enter into and comply with their obligations under the West Georgia Settlement Agreement and do not vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, on the Distribution Date the holders of the Allowed West Georgia Facility Claims shall receive, to the extent that the West Georgia Facility Claims are determined by the Bankruptcy Court to be Secured Claims (i) a Cash payment of up to $30,000,000, and (ii) to the extent that the secured portion of the West Georgia Facility Claims exceeds $30,000,000, the West Georgia Secured Note.

(B)     If the holders of the West Georgia Facility Claims enter into and comply with their obligations under the West Georgia Settlement Agreement and vote in favor of the Plan pursuant to section 1126 of the Bankruptcy Code, the West Georgia Facility Claims will be Allowed as Secured Claims in the amount of $139,700,000 plus accrued and unpaid interest through the Effective Date and on the Distribution Date the holders of the Allowed West Georgia Facility Claims shall receive (i) a Cash payment in the amount of $45,000,000, and (ii) rights under the West Georgia Amended Loan Documents.

(c)     Mirant Debtor Class 3 – Unsecured Claims

Except as provided in Sections 15.4 and 17.3, each holder of an Allowed Mirant Debtor Class 3 – Unsecured Claim (including accrued interest as calculated pursuant to Section 10.14(a)) shall receive on the Distribution Date a Pro Rata Share of (i) 96.25% of the shares of New Mirant Common Stock to be issued pursuant to the Plan, except for (A) the shares to be issued to the holders of Allowed MAG Debtor Class 4 – PG&E/RMR Claims and Allowed MAG Debtor Class 5 – Unsecured Claims pursuant to Sections 5.2(d) and (e) hereof, respectively, and (B) the shares reserved for issuance pursuant to the New Mirant Employee Stock Programs, and

7

(ii) the right to receive the Designated Net Litigation Distributions allocated to holders of Allowed Mirant Debtor Class 3 – Unsecured Claims as provided in Section 10.13.

### (d)    Mirant Debtor Class 4 – Convenience Claims

Each holder of an Allowed Mirant Debtor Class 4 – Convenience Claim shall receive on the Distribution Date a single Cash payment in an amount equal to the amount of such holder's Allowed Convenience Claim (including accrued interest as calculated pursuant to Section 10.14(d)).

### (e)    Mirant Debtor Class 5 – Equity Interests

On the Effective Date, all Equity Interests in Mirant shall be cancelled, and each holder of an Allowed Mirant Debtor Class 5 – Equity Interest shall receive on the Distribution Date a Pro Rata Share of (i) 3.75% of the shares of New Mirant Common Stock issued under the Plan (excluding the shares (A) to be issued to the holders of Allowed MAG Debtor Class 4 – PG&E/RMR Claims and Allowed MAG Debtor Class 5 – Unsecured Claims; provided, that, if such shares are distributed to holders of Allowed Mirant Debtor Class 3 – Unsecured Claims, the holders of Allowed Mirant Debtor Class 5 – Equity Interests shall receive 3.75% of such shares, and (B) to be reserved for issuance pursuant to the New Mirant Employee Stock Programs), (ii) the New Mirant Series A Warrants, and (iii) the right to receive the Designated Net Litigation Distributions allocated to Allowed Mirant Debtor Class 5 – Equity Interests as provided in Section 10.13.

### (f)    Mirant Debtor Class 6 – Unimpaired Unsecured/Convenience Claims

Each holder of an Allowed Mirant Debtor Class 6 – Unimpaired Unsecured/Convenience Claim shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, receive on the Distribution Date, a single Cash payment in an amount equal to the amount of such holder's Allowed Unimpaired Unsecured/Convenience Claim together with simple interest from the Petition Date to the Effective Date at 4% interest per annum.

### (g)    Mirant Debtor Class 7 – Mirant Peaker Unsecured Claims

Each holder of an Allowed Unsecured Claim against Mirant Peaker shall receive the treatment provided to holders of Mirant Debtor Class 3 – Unsecured Claims. To the extent that the thirty (30)-day weighted average price per share of New Mirant Common Stock, after trading commences in a recognized market, multiplied by the number of shares received by a holder of an Allowed Unsecured Claim against Mirant Peaker is less than the amount of such Allowed Unsecured Claim, New Mirant shall pay to such holder Cash in the amount of the difference between such Allowed Unsecured Claim and such price per share multiplied by the number of shares received by such holder within seven (7) Business Days after the Claim has been Allowed to cover the shortfall, other than the right to receive the Designated Net Litigation Distributions.

8

**5.2.** **MAG Debtor Claims and Equity Interests.**

The classes of Claims against the MAG Debtors and Equity Interests in MAG shall be treated under the Plan as follows:

(a) <u>MAG Debtor Class 1 – Priority Claims</u>

Each holder of an Allowed Priority Claim against any of the MAG Debtors shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Claim entitles such holder in respect of such Claim shall be fully reinstated and retained, and such Allowed Priority Claims (<u>including</u> any amounts to which such holder is entitled pursuant to section 1124(2) of the Bankruptcy Code) shall be paid in full in accordance with such reinstated rights on the Distribution Date.

(b) <u>MAG Debtor Class 2 – Secured Claims</u>

(1) <u>General Treatment</u>. Each holder of an Allowed Secured Claim against the MAG Debtors (except the MAG Debtor Class 3 – New York Taxing Authorities Secured Claims) will receive on the Distribution Date in full satisfaction of such holder's Allowed Secured Claim, (A) a single Cash payment equal to the sum of (1) the Allowed Secured Claim and (2) accrued postpetition interest from the Petition Date through the Effective Date, at an interest rate agreed to by the parties or, if no agreement can be reached, as determined by the Bankruptcy Court after notice and a hearing, or (B) if applicable, the implementation of any applicable valid right of setoff permitted under section 553 of the Bankruptcy Code.

(2) <u>Alternative Consensual Treatment</u>. Notwithstanding any other provision in this Section 5.2(b), the MAG Debtors and any holder of an Allowed MAG Debtor Class 2 – Secured Claim may agree to any alternate treatment of such Secured Claim; <u>provided</u> that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of the amount of such holder's Allowed MAG Debtor Class 2 – Secured Claim.

(c) <u>MAG Debtor Class 3 – New York Taxing Authorities Secured Claims</u>

(1) If each of the New York Taxing Authorities votes to accept the Plan pursuant to section 1126 of the Bankruptcy Code, on the Effective Date, each holder of an Allowed New York Taxing Authorities Secured Claim shall receive the treatment specified in the Proposed New York Tax Settlement set forth in Section 15.3.

(2) If each of the New York Taxing Authorities does not vote to accept the Plan pursuant to section 1126 of the Bankruptcy Code, the Plan shall exclude the New York Debtors and the Confirmation Hearing, solely with respect to the New York Debtors, shall be adjourned pending further notice or order of the Bankruptcy Court as set forth in Section 15.3(c) and the Debtors shall seek the alternative interim relief with respect to the New York Debtors as set forth in Section 15.3(c).

MIAMI 623421 v4 (2K)

(d)     MAG Debtor Class 4 – PG&E/RMR Claims

In respect of the Allowed PG&E/RMR Claims, PG&E shall receive on the Distribution Date the treatment specified in the California Settlement as set forth in Section 15.1 of the Plan, including (a) at the option of the Debtors as exercised with respect to MAG Debtor Class 5 – Unsecured Claims, $119,700,000 either in Cash or New MAG Holdco Notes and (b) 0.2% of the shares of New Mirant Common Stock issued under the Plan (excluding the shares reserved for the New Mirant Employee Stock Programs).

(e)     MAG Debtor Class 5 – Unsecured Claims

Each holder of an Allowed MAG Debtor Class 5 – Unsecured Claim (including accrued interest as calculated pursuant to Section 10.14(b)) shall receive on the Distribution Date a Pro Rata Share of (i) at the option of the Debtors, $1,231,110,000 in Cash or New MAG Holdco Notes; and (ii) 2.1% of the shares of New Mirant Common Stock issued under the Plan (excluding the shares to be reserved for issuance pursuant to the New Mirant Employee Stock Programs). The treatment set forth herein is based upon an assumed Effective Date of December 31, 2005. To the extent the Effective Date occurs on a date other than December 31, 2005, the Plan Distributions set forth in subclause (i) shall be adjusted to reflect the appropriate amount of accrued interest payable, calculated in accordance with Section 10.14(b).

(f)     MAG Debtor Class 6 – MAG Long-term Note Claims

Each holder of an Allowed MAG Long-term Note Claim shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, (i) all of the legal, equitable and contractual rights to which such Claim entitles such holder against the MAG Debtors in respect of such Claim shall be fully reinstated and retained; (ii) all defaults, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, shall be cured; (iii) the maturity of such MAG Long-term Note Claim shall be reinstated; and (iv) all amounts owed in respect of such Allowed MAG Long-term Note Claim (including (A) accrued interest as calculated pursuant to Section 10.14(c), and (B) any amounts to which such holder is entitled pursuant to sections 1124(2)(C) and (D) of the Bankruptcy Code) shall be paid in full on the later of the Effective Date and the date such amount otherwise becomes due and payable under the MAG Indenture and the MAG Long-term Notes, as reinstated. In addition, the Confirmation Order shall implement and give effect to the settlement and compromise with respect to the New MAG Debt Covenants as specified in Section 8.19.

(g)     MAG Debtor Class 7 – Convenience Claims

Each holder of an Allowed Convenience Claim against any of the MAG Debtors shall receive on the Distribution Date a single Cash payment in an amount equal to the amount of such holder's Allowed Convenience Claim (including accrued interest as calculated pursuant to Section 10.14(e)).

10

(h)     MAG Debtor Class 8 – Equity Interests

The holder of the Allowed Equity Interests in MAG shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Equity Interests entitle such holder in respect of such Equity Interests shall be fully reinstated and retained on and after the Effective Date.

(i)     MAG Debtor Class 9 – MAG Non-Voting Convenience Claims

Each holder of an Allowed MAG Non-Voting Convenience Claim will receive on the Distribution Date in full satisfaction of such holder's Allowed MAG Non-Voting Convenience Claim, a single Cash payment equal to (1) the Allowed MAG Non-Voting Convenience Claim and (2) accrued postpetition interest from the Petition Date through the Effective Date, at an interest rate agreed to by the parties or, if no agreement can be reached, as determined by the Bankruptcy Court after notice and a hearing.

## ARTICLE VI.

## PROVISIONS FOR TREATMENT
## OF UNCLASSIFIED CLAIMS UNDER THE PLAN

### 6.1.   Unclassified Claims.

Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

### 6.2.   Treatment of Administrative Claims.

All Administrative Claims shall be treated as follows:

(a)     Time for Filing Administrative Claims.

The holder of an Administrative Claim, other than (i) the DIP Claims, (ii) a Fee Claim, (iii) a liability incurred and payable in the ordinary course of business by a Debtor (and not past due), or (iv) an Administrative Claim that has been Allowed on or before the Effective Date or as part of the California Settlement, must file with the Bankruptcy Court and serve on the Debtors, any official committee appointed in the Chapter 11 Cases and the Office of the United States Trustee, notice of such Administrative Claim within forty (40) days after service of Notice of Confirmation.  Such notice must include at a minimum (A) the name of the Debtor(s) which are purported to be liable for the Claim, (B) the name of the holder of the Claim, (C) the amount of the Claim, and (D) the basis of the Claim.  **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.**

11

(b)     Time for Filing Fee Claims.

        Each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date. **The failure to file timely and serve such Fee Application shall result in the Fee Claim being forever barred and discharged.**

(c)     Allowance of Administrative Claims/Fee Claims.

        An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 6.2(a) shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days after the later of (i) the Effective Date, or (ii) the date of service of the applicable notice of Administrative Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 30-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 6.2(b) shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

(d)     Reimbursement of Certain Fees and Expenses.

        (i)     Phoenix. As contemplated by the settlement of subordination rights in Section 15.4, and conditioned upon the approval by the Bankruptcy Court as required under the Bankruptcy Code, Phoenix shall be reimbursed from the Estates with respect to the professional fees and expenses it has incurred in connection with the valuation hearing and otherwise in the Chapter 11 Cases (including expert fees and disbursements and counsel's incentive fee). Subject to a reasonable opportunity to review such professional fees and expenses, each of the Debtors and the Committees shall not object to such professional fees and expenses to the extent they do not exceed $5,500,000 in the aggregate. Notwithstanding anything set forth herein, the approval by the Bankruptcy Court of such professional fees and expenses shall be neither a prerequisite, nor a condition to, confirmation of the Plan.

        (ii)    MAG Ad Hoc Committee. Conditioned upon the approval by the Bankruptcy Court as required under the Bankruptcy Code, the MAG Ad Hoc Committee shall receive reimbursement from the Estates of the professional fees and expenses it has incurred in connection with the Chapter 11 Cases. Subject to a reasonable opportunity to review such professional fees and expenses, each of the Debtors and the Committees shall not object to such professional fees and expenses to the extent they do not exceed $3,500,000 in the aggregate. Notwithstanding anything set forth herein, the approval by the Bankruptcy Court of such professional fees and expenses shall be neither a prerequisite, nor a condition to, confirmation of the Plan.

        (iii)   Mirant Ad Hoc Committee. Conditioned upon the approval by the Bankruptcy Court as required under the Bankruptcy Code, the Mirant Ad Hoc

12

Committee shall receive reimbursement from the Estates of the professional fees and expenses it has incurred in connection with the Chapter 11 Cases. Subject to a reasonable opportunity to review such professional fees and expenses, each of the Debtors and the Committees shall not object to such professional fees and expenses to the extent they do not exceed $300,000 in the aggregate. Notwithstanding anything set forth herein, the approval by the Bankruptcy Court of such professional fees and expenses shall be neither a prerequisite, nor a condition to, confirmation of the Plan.

(e)     Payment of Allowed Administrative Claims.

On the Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; provided, further, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business.

(f)     Allowance and Payment of DIP Claims.

The DIP Claims shall be Allowed Administrative Claims on the Effective Date and shall be paid in Cash in full on the Effective Date. On the Effective Date, in accordance with the terms of the DIP Credit Agreement any outstanding letters of credit issued under the DIP Credit Agreement shall be cash collateralized, replaced or secured with letters of credit issued under the Exit Facility.

(g)     Allocation of Payments.

All payments made in respect of Allowed Administrative Claims pursuant to this Section shall be allocated among the Debtors, as determined by the Bankruptcy Court, on a fair and equitable basis.

**6.3.    Treatment of Tax Claims.**

At the election of the Debtors, each holder of an Allowed Tax Claim shall receive in full satisfaction of such holder's Allowed Tax Claim, (a) the amount of such holder's Allowed Tax Claim, with Post-Confirmation Interest thereon, in equal annual Cash payments on each anniversary of the Effective Date, until the sixth anniversary of the date of assessment of such Tax Claim (provided that the Disbursing Agent may prepay the balance of any such Allowed Tax Claim at any time without penalty); (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, that such agreed-upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim. The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as the Debtors are in compliance with Section 6.3.

13

So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under Section 6.3 or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

## ARTICLE VII.

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

### 7.1. Classes Entitled to Vote.

Except for Mirant Debtor Class 1 – Priority Claims, MAG Debtor Class 1 – Priority Claims, MAG Debtor Class 6 – MAG Long-term Note Claims and MAG Debtor Class 8 – Equity Interests, all classes of Claims and Equity Interests are entitled to vote on the Plan.

### 7.2. Class Acceptance Requirement.

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan. A class of Equity Interests shall have accepted the Plan if it is accepted by holders of at least two-thirds (2/3) of the Equity Interests in such class that actually vote on the Plan.

### 7.3. Tabulation of Votes on a Non-Consolidated Basis.

Notwithstanding Section 2.1, the Debtors will tabulate all votes on the Plan on a non-consolidated basis by class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code with respect to each Debtor. For each Debtor that satisfies 1129(a)(8) and/or (10) of the Bankruptcy Code, and provided that all other requirements to confirmation of the Plan are met, the inclusion of such Debtor into the applicable Debtor Group as set forth in Article II shall be deemed to occur by operation of the Plan. For each Debtor that fails to satisfy either sections 1129(a)(8) or (10) of the Bankruptcy Code, the inclusion of such Debtor into the applicable Debtor Group pursuant to the settlement set forth in Article II shall be subject to a determination of the Bankruptcy Court that the settlement satisfies the requirements for approval under sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019, which determination may be made at the Confirmation Hearing. If all classes of a Debtor accept the Plan, then the settlement set forth in Article II as to that Debtor shall occur without any evidentiary showing. If one or more, but less than all, impaired classes of a Debtor accepts the Plan, then the approval of the settlement set forth in Article II as to that Debtor shall be addressed as part of the 1129(b) case as to that Debtors' rejecting classes in order to implement the settlement set forth in Article II as to that Debtor. In lieu of obtaining the approval of the settlement of Intercompany Claims and related matters as contemplated by Article II with respect to any Mirant Debtor, the Debtors may modify the Plan to appropriately address the rights of the holders of Allowed Claims against such Mirant Debtor.

14

**7.4. Cramdown.**

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8) thereof, the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, the Plan.

**7.5. Confirmation of All Cases.**

Except as provided in Sections 15.3(c), 17.16 and 17.25, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors.

## ARTICLE VIII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**8.1. Operations between the Confirmation Date and the Effective Date.**

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as Debtors-in-Possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

**8.2. Certain Intercompany Transactions On or Prior to the Effective Date.**

The following intercompany transactions shall occur and be implemented pursuant to section 1123(a)(5) of the Bankruptcy Code on or prior to the Effective Date, but only after the resolution of Intercompany Claims as contemplated by Section 2.3.

(a)     Transfers of Mirant's Assets to New Mirant.

Mirant shall transfer substantially all of its Assets, excluding Mirant's interests in the BEWAG Contract (which shall remain in all respects obligations of Mirant) and subject to Article XIV, to New Mirant or one or more subsidiaries of New Mirant and then Mirant shall be transferred to the Plan Trust.

(b)     Transfer of Mirant to the Plan Trust.

Mirant shall continue to exist as a separate legal entity on and after the Effective Date, having all rights and powers under applicable law. Immediately after the consummation of the transfers described in Section 8.2 (a), (i) Mirant will change its name to "MC 2005 Corporation," (ii) the Equity Interests in Mirant shall be cancelled, and (iii) Mirant shall issue shares of common stock (evidencing 100% of the Equity Interests in Mirant) to the Plan Trust. Mirant shall then be converted into a Delaware limited liability company, whereupon the

15

common stock shall be cancelled and member interests (evidencing 100% of the member interests in Mirant) shall be issued to the Plan Trust.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, NEW MIRANT SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE OR MAINTAIN, ANY LIABILITY, CLAIM, OR OBLIGATION THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN (INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO MIRANT) AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO NEW MIRANT.**

(c)     Formation of New MAG Holdco.

New MAG Holdco shall be formed as a wholly-owned subsidiary of MAG through the following actions:

(i)     Mirant California Investments, Inc., a direct subsidiary of MAG, will be converted into a Delaware limited liability company and its name will be changed to "Mirant North America, LLC;"

(ii)     each of Mirant New England, Inc., Mirant Texas Investments, Inc. and Mirant New York, Inc. (unless the settlement contemplated by Section 15.3 is not consummated) will be merged and consolidated with and into the entity created under Section 8.2(c)(i), such entity continuing as the surviving entity.

(d)     Transfer of Certain Assets Between New Mirant and New MAG Holdco.

(i)     Prior to the transactions contemplated in Section 8.2(d)(ii), the Debtors shall transfer (or cause to be transferred) the Carved-Out Receivables to MAI or New Mirant;

(ii)     The Trading Debtors shall become direct or indirect subsidiaries of New MAG Holdco through the following transfers (in the following sequence):

(A)     MAEMI shall transfer its 99% limited partnership interest in MAEM to MAPCO;

(B)     New MAEM Holdco shall be organized as a limited liability company under the laws of Delaware and as a direct wholly-owned subsidiary of New MAG Holdco;

(C)     MAEMI shall transfer 100% of its Equity Interest in MAPCO, including MAPCO's 99% limited partnership interest in MAEM, to New MAEM Holdco; and

16

(D)    MAI shall transfer 100% of its Equity Interest in MADI, including MADI's 1% general partnership interest in MAEM, to New MAEM Holdco.

(iii)    MAEM shall transfer 100% of the Equity Interests in MET to New MAG Holdco and as a result of such transfer MET shall be a direct wholly-owned subsidiary of New MAG Holdco;

(iv)    MAI shall cause to be contributed by merger or otherwise, its 100% ownership interest in Mirant Zeeland to New MAG Holdco;

(v)    New MAG Holdco shall no later than five (5) Business Days after the Effective Date, transfer $250,000,000 in Cash to MAI or New Mirant;

(vi)    The MAI Series A Preferred Shares will be issued to MIRMA;

(vii)    The MAI Series B Preferred Shares will be issued to MAG; and

(viii)    New Mirant shall enter into (A) the Series A Put Agreement with MIRMA and (B) the Series B Put Agreement with MAG.

(e)    Transfer of Certain Assets to MIRMA; Transfer of MIRMA to New MAG Holdco.

Certain assets shall be transferred to MIRMA and MIRMA shall be merged with a subsidiary of New MAG Holdco pursuant to the following steps (in the following sequence):

(i)    Mirant shall transfer its 100% ownership interests in (A) Mirant Peaker to MIRMA, and (B) Mirant Potomac to Mirant Chalk Point, LLC. Obligations owing by Mirant Peaker and Mirant Potomac to MIRMA under the intercompany notes and by Mirant under the Capital Contribution Agreement, dated December 19, 2000, between Mirant and MIRMA, each issued in connection with the MIRMA Leases, shall be treated as Intercompany Claims under the Plan.

(ii)    Second Tier MAG Holdco shall be organized as a limited liability company under the laws of Delaware and as a direct wholly-owned subsidiary of New MAG Holdco.

(iii)    MIRMA shall merge and consolidate into Second Tier MAG Holdco with MIRMA surviving. As a result of such merger, New MAG Holdco shall directly or indirectly own 100% of the equity interests in MIRMA.

## 8.3.    Certain Intercompany Transfers On the MAEM/MET Effective Date.

On the MAEM/MET Effective Date and after the consummation of the transactions contemplated in Section 8.2, the following transfers shall occur:

(a)    New MAEM Holdco shall transfer or cause to be transferred to MET all of the Assets of the Trading Debtors (excluding (i) the Equity Interests in each of the Trading Debtors,

17

(ii) any right to recover postpetition transfers made to Pepco under the Back-to-Back Agreement (or the APSA, as applicable), which right shall vest in New Mirant, (iii) the Back-to-Back Agreement (or the APSA, as applicable), which shall be performed by Mirant Oregon pursuant to Section 14.5, and (iv) any obligations, duties, or responsibilities of any of the Debtors arising under or related to the Assumption/Assignment Agreement which shall be performed by Mirant Oregon pursuant to Section 14.5) and MET will assume the liabilities of the Trading Debtors which have been expressly assumed by the Trading Debtors under the Plan; and

(b)     New MAG Holdco shall transfer or cause to be transferred 100% of the equity interests in New MAEM Holdco, including all the Equity Interests in the Trading Debtors, to the Plan Trust and as a result of such transfer to the Plan Trust, the Plan Trust will, either directly or indirectly, own 100% of the Equity Interest in each of the Trading Debtors.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, MET SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE OR MAINTAIN, ANY LIABILITY, CLAIM, OR OBLIGATION THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN (INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE TRADING DEBTORS) AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO MET.**

### 8.4.    Corporate Action.

The entry of the Confirmation Order shall constitute authorization for New Mirant, the Debtors and their Affiliates to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, any action required by the stockholders or directors of New Mirant, the Debtors and their Affiliates, including, among other things, (a) the adoption of the New Mirant Constituent Documents, (b) the termination and cancellation of any outstanding instrument, document or agreement evidencing Mirant Debt Claims, the Subordinated Note Claims, MAG Short-term Debt Claims or Equity Interests in Mirant, MADI and MAEMI, (c) the formation of New MAG Holdco, New MAEM Holdco and Second Tier MAG Holdco, (d) the issuance of the New MAG Holdco Notes, the New Mirant Common Stock, the New Mirant Warrants, the MAI Series A Preferred Shares, the MAI Series B Preferred Shares and any other securities to be issued under the Plan, (e) the execution and delivery of all documents arising in connection with the Exit Financing and performance of their obligations thereunder, (f) the execution and delivery of the New MAG Holdco Indenture, (g) all transfers of Assets that are to occur pursuant to the Plan, including without limitation, the transactions set forth in Sections 8.2 and 8.3, (h) the incurrence of all obligations contemplated by the Plan and the making of all Plan Distributions, (i) the formation of the Plan Trust, the qualification of the Plan Trustees and the transfers to the Plan Trust as contemplated by the Plan, (j) the implementation of all settlements and compromises as set forth in or contemplated by the Plan, including, without limitation, the

18

California Settlement, (k) the adoption of the New Mirant Employee Stock Programs, (l) taking of all actions to preserve and provide for the prosecution of the Designated Avoidance Actions as contemplated by Section 10.13, and (m) entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation including, without limitation, intercompany contracts necessary, appropriate, or advisable to permit the funding and the provision of intercompany corporate services, intercompany commodity purchases and sales, intercompany commodity hedging arrangements (including the allocation of existing hedge transactions), and intercompany loans. The officers of the Debtors are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and the Plan Documents and to take all necessary action required in connection therewith, in the name of and on behalf of the Debtors. All obligations of the Debtors to indemnify and hold harmless their current and former directors, officers and employees, who served in any such capacity at any time after April 2, 2001 (except with respect to any Cause of Action that is not stayed by paragraph 89 of the Confirmation Order), whether arising under the Debtors' constituent documents, contract, law or equity, shall be assumed by the Debtors (and in the cases of Mirant and the Trading Debtors, assumed and assigned to New Mirant and MET, respectively) upon the occurrence of the Effective Date with the same effect as though such obligations constituted executory contracts that are assumed (or assumed and assigned, as applicable) under section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on their terms from and after the Effective Date. The prosecution of any so-indemnified Cause of Action shall upon the occurrence of the Effective Date be enjoined and prohibited, except solely for the purpose of obtaining a recovery from any available insurance policy proceeds.

## 8.5. **Termination of Certain Debt Obligations.**

Upon the occurrence of the Effective Date, the Mirant Notes, the Mirant "C" Facility, the Mirant 364-Day Revolver, the Mirant 4-Year Revolver, the MAG Revolvers, the Subordinated Notes and the MAG Short-term Notes shall be cancelled and annulled. Immediately upon the completion of all Plan Distributions to the holders of the Mirant Notes, the Subordinated Notes and the MAG Short-term Notes, the Old Indenture Trustees shall be authorized and directed (without further approval, act or other determination under applicable law, regulation, order or rule) to take such action as shall be necessary or appropriate to terminate and extinguish (a) all of the Debtors' obligations under the Mirant Indentures and (b) all of the Debtors' obligations with respect to the MAG Short-term Notes under the MAG Indenture, following which, each of the Mirant Indentures and the MAG Indenture (to the extent it relates to the MAG Short-term Notes) shall terminate.

## 8.6. **Continued Corporate Existence of the Debtors.**

Except as otherwise provided in Article VIII, each of the Debtors shall continue to exist after the Effective Date as a separate entity, with all the powers available to such legal entity, in accordance with applicable law and pursuant to the New Mirant Constituent Documents, which shall become effective upon the occurrence of the Effective Date. On or after the Effective Date, the Debtors may, within their sole and exclusive discretion take such action as permitted by applicable law and their constituent documents, as they determine is reasonable and appropriate, including (a) cause any or all of the Debtors to be merged into one or more of

19

the other Debtors or other legal entities, and (b) change the legal name of any of the Debtors including, but not limited to, the mergers and name changes provided for in Sections 8.2, 8.3 and 8.4.

**8.7.    Re-vesting of Assets.**

Upon the occurrence of the Effective Date, except as otherwise provided in the Plan and with respect to liens of taxing authorities on Assets of the Debtors for unpaid property taxes, which property tax liens shall be senior to any liens granted the Exit Lenders under the Exit Facility on such Assets subject to property tax liens, title to all of the Assets of the Debtors shall vest in the Debtors free and clear of all liens, Claims, Causes of Action, interests, security interests and other encumbrances and without further order of the Bankruptcy Court. On and after the occurrence of the Effective Date, except as otherwise provided in the Plan, the Debtors may operate their business and may use, acquire and dispose of their Assets free of any restrictions of the Bankruptcy Code.

**8.8.    Sale Provisions Relating to Mint Farm.**

The making or delivery of any instrument of transfer in connection with the sale of the generating facility owned by Mint Farm shall be deemed to have been made or delivered under the Plan. Subject to the terms and provisions of Section 14.7, in the event a sale of the generating facility owned by Mint Farm does not close within one year after the Effective Date, the Debtors may liquidate the Assets of Mint Farm.

**8.9.    Management.**

Except as set forth in Section 8.10(b) hereof, upon the occurrence of the Effective Date, the management, control, and operation of each of New Mirant and its Affiliates, including the Debtors (except for Mirant and the Trading Debtors), shall be the general responsibility of each such entity's then current board and management. Entry of the Confirmation Order shall ratify and approve all actions taken by each of the Debtors from the Petition Date through and until the Effective Date.

**8.10.   Initial Boards of Directors.**

(a)    On the Effective Date, the initial board of directors (or managers, as applicable) of each Debtor, except New Mirant, shall be comprised of the individuals who hold such positions as of the Effective Date.

(b)    On the Effective Date, the board of directors of New Mirant shall consist of nine members comprised of the following individuals:

(1)    Edward R. Muller, as Chairman and CEO;

(2)    A.D. Correll;

20

(3)     Thomas M. Johnson, Robert E. Murray, John M. Quain, William L. Thacker, and John T. Miller, each of whom was selected by the Joint Selection Committee;

(4)     an additional individual to be selected by the Joint Selection Committee from a list of candidates formulated by Russell Reynolds Associates, Inc., which individual shall (A) satisfy the New York Stock Exchange definition of "Independent Director" and (B) not be a member or Affiliate, Insider or relative of a member of the Corp Committee; and

(5)     an additional individual to be selected by a joint selection committee comprised of members of the Equity Committee, one member of the Nominating and Governance Committee of Mirant's Board of Directors and Edward R. Muller, from a list of candidates to be formulated by a national executive search firm of the Equity Committee's choosing; such individual shall (A) satisfy the New York Stock Exchange definition of "Independent Director" and (B) not be a member or Affiliate, Insider or relative of a member of the Equity Committee.

(c)     From and after the Effective Date, the members of the board of directors (or managers, as applicable) of New Mirant and its Affiliates shall be selected and determined in accordance with the provisions of the respective New Mirant Constituent Documents and applicable law.

## 8.11.  Officers.

Except as set forth in Section 8.10(b), the current officers of each of the Debtors (except for Mirant and the Trading Debtors) shall continue in such positions after the Effective Date in accordance with their respective employment agreements, if any, and applicable law. Except as otherwise determined by the Board of Directors of New Mirant, the then current officers of Mirant shall serve in such positions after the Effective Date at New Mirant in accordance with their respective employment agreements, if any, and applicable law. Subject to any applicable employment agreements and applicable law, from and after the Effective Date, the officers of New Mirant and its Affiliates shall be selected and appointed by the respective boards of directors of such entities, in accordance with, and pursuant to, the provisions of applicable law and the respective New Mirant Constituent Documents.

## 8.12.  Causes of Action.

Except as otherwise provided in the Plan, all Causes of Action, including Avoidance Actions (including, without limitation, the Southern Company Causes of Action and the Pepco Causes of Action) shall, upon the occurrence of the Effective Date, be transferred to, and be vested in, New Mirant for the benefit of the Debtors and their Estates. Except as otherwise provided in the Plan, New Mirant's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

**No Person or Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication**

that the Debtors will not pursue any and all available Causes of Action against them. Except as provided in Section 14.5, the Debtors, the Estates, the Plan Trustees and the Plan Trust, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise provided in the Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.

## 8.13. Appointment of the Disbursing Agent.

Upon the occurrence of the Effective Date, New Mirant shall be appointed to serve as the Disbursing Agent, and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

## 8.14. Sources of Cash for Plan Distributions.

All Cash necessary for the Disbursing Agent to make payments and Plan Distributions shall be obtained from proceeds of the Exit Financing and the Debtors' existing Cash balances.

## 8.15. Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent.

The Disbursing Agent may, but shall not be required to, invest any funds held by the Disbursing Agent pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state, and local taxes. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Disbursing Agent of a private letter ruling if the Disbursing Agent so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent), the Disbursing Agent may (a) treat the funds and other property held by it as held in a single trust for federal income tax purposes in accordance with the trust provisions of the Internal Revenue Code (sections 641 *et seq.*), and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

## 8.16. Releases by the Debtors.

**Except for the Southern Company Causes of Action, as of the Effective Date, each of the Debtors shall forever release, waive and discharge all Causes of Action (other than Causes of Action to enforce the terms of the Plan and the Plan Documents), then existing or thereafter arising, that are based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement and that could have been asserted by the Debtors against any Protected Persons identified in a schedule to be filed with the Bankruptcy Court not less**

22

than five (5) days before the commencement of the Confirmation Hearing, **including,** without limitation, such Causes of Action that have been or could be asserted derivatively on behalf of such Debtor by another Person.

### 8.17. New Mirant Employee Stock Programs.

New Mirant shall reserve sufficient shares of New Mirant Common Stock for issuance under the New Mirant Employee Stock Programs in order that such shares shall represent 5% of the New Mirant Common Stock. The Plan shall be deemed a solicitation to holders of Equity Interests in Mirant and/or holders of New Mirant Common Stock for approval of the New Mirant Employee Stock Programs, and the Confirmation Order shall constitute approval of the New Mirant Employee Stock Programs for purposes of the shareholder approval requirements under the Internal Revenue Code, and, to the fullest extent permissible by law, such other requirements for shareholder approval under the laws of the jurisdiction of formation of New Mirant.

### 8.18. Appointment of New Mirant and MET as Attorneys-In-Fact.

Each of Mirant and the Trading Debtors hereby appoints New Mirant and MET, with full power of substitution, as their true and lawful agents and attorneys-in-fact with full irrevocable power and authority on behalf of and in the place and stead of Mirant or the Trading Debtors, to take any and all actions deemed necessary or appropriate by New Mirant or MET to carry out the asset transfers contemplated under Sections 8.2, 8.3 and 8.4, including, without limitation, the preparation, execution and delivery of any and all documents, the making of any and all filings or registrations and the payment of any and all fees and expenses relating to the foregoing, as New Mirant or MET shall deem necessary or appropriate to give effect to the asset transfers contemplated under Sections 8.2, 8.3 and 8.4. Each of New Mirant and MET shall have full and unqualified authority to delegate any or all of the foregoing powers to any of its respective officers or agents. The powers granted in this Section 8.18 shall survive the winding up and dissolution of Mirant and/or the Trading Debtors.

### 8.19. Special Provisions Regarding the MAG Long-term Notes.

As part of the settlement and compromise described in Section 17.24, the Confirmation Order shall implement and give effect to the New MAG Debt Covenants. The New MAG Debt Covenants shall apply equally with all of the other rights and privileges under the MAG Indenture with respect to the MAG Long-term Notes, and the Indenture Trustee under the MAG Indenture, as of the Effective Date, shall have the full power to enforce the New MAG Debt Covenants with the same force and effect as all other provisions in the MAG Indenture. The Debtors shall seek a determination in the Confirmation Order that the Indenture Trustee under the MAG Indenture may, without the consent of the holders of the MAG Long-term Notes and without causing a default under the MAG Indenture, enter into a supplemental indenture giving effect to the New MAG Debt Covenants. In addition, the Debtors shall use commercially reasonable efforts to obtain a Standard & Poor's rating and a Moody's rating for each series of MAG Long-term Notes and the New MAG Holdco Notes (if issued).

## ARTICLE IX.

## THE PLAN TRUST

### 9.1. Creation of Plan Trust and Appointment of Plan Trustees.

(a)    On the Effective Date, the Plan Trust will be created pursuant to the Plan Trust Declaration.

(b)    The Plan Trust shall be administered by the Plan Trustees who shall be identified prior to the conclusion of the Confirmation Hearing.  The appointment of the initial Plan Trustees and the terms of their compensation shall be subject to the approval of the Bankruptcy Court.

(c)    During the period from the Confirmation Date to the Effective Date, the Debtors shall reimburse each Plan Trustee for actual and necessary out-of-pocket expenses incurred by them in preparing to assume their responsibilities under the Plan Trust Declaration in an aggregate amount not to exceed $50,000. On the Effective Date, New Mirant shall advance $500,000 to the Plan Trust to pay the reasonable costs and expenses associated with the administration of the Plan Trust.  After the Effective Date, New Mirant shall have the obligation to advance funds to pay the reasonable costs and expenses associated with the administration of the Plan Trust up to an aggregate unreimbursed amount of $1,000,000 inclusive of New Mirant's initial advancement on the Effective Date.

### 9.2. Property of the Plan Trust.

As contemplated by Sections 8.2(b) and 8.3(b), shares of common stock of Mirant (evidencing 100% of the Equity Interests in Mirant) shall be issued to the Plan Trust and 100% of the Equity Interests in New MAEM Holdco, which will include all of the Equity Interests in the Trading Debtors as set forth in Article VIII, shall be transferred to the Plan Trust.

### 9.3. Powers and Duties of the Plan Trustees.

(a)    Subject to the terms and provisions of the Plan Trust Declaration, the Plan Trustees shall have the duty and authority to take all actions, including, but not limited to, the retention of professionals, deemed by the Plan Trustees to be necessary or appropriate (i) to protect, maintain, liquidate to Cash, and maximize the value of the Assets transferred to the Plan Trust, whether by litigation, settlement or otherwise, and (ii) to prepare and make available to the holders of beneficial interests in the Plan Trust periodic reports regarding the results of the Plan Trust's operations.

(b)    To the extent that the legal names of Mirant and the Trading Debtors have not already been changed prior to their transfer to the Plan Trust, the Plan Trustees shall have the duty and authority to change the legal name of Mirant and any of the Trading Debtors whose legal name contains the word "Mirant" to another legal name that does not contain the word "Mirant."

24

(c)     Except as otherwise provided in Section 9.3, the Plan Trustees, together with their officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and Equity Interests, and parties in interest, from any and all Causes of Action, arising out of the discharge of the powers and duties conferred upon the Plan Trustees by the Plan Trust Declaration, the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Plan Trustees' gross negligence or willful misconduct. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any claim or Cause of Action against the Plan Trustees or their officers, directors, employees, agents, and representatives for making payments in accordance with the Plan Trust Declaration, or for liquidating assets to make payments under the Plan Trust Declaration.

## ARTICLE X.

## DISTRIBUTION PROVISIONS

### 10.1.   Plan Distributions.

The Disbursing Agent shall make all Plan Distributions. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

### 10.2.   Timing of Plan Distributions.

Except for Plan Distributions to holders of Allowed DIP Claims which pursuant to Section 6.2(f) shall be made on the Effective Date, each Plan Distribution shall be made on the relevant Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter; provided that Plan Distributions to holders of Letter of Credit Claims shall not be made unless and until such Claims become fixed and, as a result, become Allowed Claims against the Mirant Debtors.

### 10.3.   Address for Delivery of Plan Distributions/Unclaimed Distributions.

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth (a) in the Schedules, (b) on the proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), (d) in any notice served by such holder giving details of a change of address, (e) in the case of the holders of California Party Unsecured Claims in the California Settlement Agreement or as otherwise directed by such holder in writing, or (f) in the case of the holders of Mirant Notes, Subordinated Notes, MAG Short-term Notes and MAG Long-term Notes, to the applicable Old Indenture Trustees for distribution to the holders of such notes subject to the provisions of Section 10.9. If

25

any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to New Mirant, except for the forfeited Plan Distributions of holders of Allowed Mirant Debtor Class 3 – Unsecured Claims and Allowed Mirant Debtor Class 5 – Equity Interests, which shall be distributed on a pro rata basis to the holders of Allowed Mirant Debtor Class 3 – Unsecured Claims and Allowed Mirant Debtor Class 5 – Equity Interests in Mirant, respectively, that have not forfeited their Plan Distributions. Such supplemental Plan Distributions shall be made from time to time at the discretion of the Disbursing Agent.

## 10.4. De Minimis Distributions.

No Plan Distribution of less than twenty-five dollars ($25.00) shall be made by the Disbursing Agent to the holder of any Claim unless a request therefor is made in writing to the Disbursing Agent. If no request is made as provided in the preceding sentence within ninety (90) days of the Effective Date, all such Plan Distributions shall revert to New Mirant.

## 10.5. Time Bar to Cash Payments.

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within one hundred and eighty (180) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any claims in respect of such void check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to New Mirant.

## 10.6. Manner of Payment under the Plan.

Unless the Person or Entity receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made, at the option of the Disbursing Agent, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## 10.7. Expenses Incurred on or after the Effective Date and Claims of the Disbursing Agent.

Except as otherwise ordered by the Bankruptcy Court or as provided herein, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent and the Old Indenture Trustees (including any paying or transfer agents for such Old Indenture Trustees) on or after the Effective Date (including, but not limited to, taxes) shall be paid when due. Professional fees and expenses incurred by the Disbursing Agent and the Old Indenture

26

Trustees (including any paying or transfer agents for such Old Indenture Trustees) from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business. Any dispute regarding compensation shall be resolved by agreement of the parties or if the parties are unable to agree, as determined by the Bankruptcy Court.

## 10.8. Fractional Plan Distributions.

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractional shares or fractions of dollars (whether in Cash or notes) will be made. Fractional shares and fractions of dollars (whether in Cash or notes) shall be rounded to the nearest whole unit (with any amount equal to or less than one-half share or one-half dollar, as applicable, to be rounded down).

## 10.9. Special Distribution Provisions for MAG Short-term Debt Claims, MAG Long-term Note Claims and Mirant Debt Claims.

The following additional provisions shall apply specifically to Plan Distributions to be made to the holders of Allowed MAG Short-term Debt Claims, Allowed MAG Long-term Note Claims and Allowed Mirant Debt Claims under the Plan:

(a) Distributions to Holders of MAG Short-term Note Claims and Mirant Note Claims. Plan Distributions on account of the MAG Short-term Note Claims and the Mirant Note Claims shall be made by the Disbursing Agent to the Old Indenture Trustees for the MAG Short-term Notes and the Mirant Notes, respectively. The Old Indenture Trustees for the MAG Short-term Notes and the Mirant Notes, or their agents, shall make such Plan Distributions in accordance with the Old Indentures and such Plan Distributions shall be made directly to the registered holders of the MAG Short-term Notes and Mirant Notes in accordance with Section 10.9(f). For purposes of making Plan Distributions, the transfer ledger in respect of the MAG Short-term Note Claims and Mirant Note Claims shall be closed as of the close of business on the Effective Date. The Disbursing Agent, the Plan Trustees, the Old Indenture Trustees, and their respective agents, as applicable, shall have no obligation to recognize any transfer after the Effective Date of a MAG Short-term Note Claim or a Mirant Note Claim.

(b) Distributions to Holders of MAG Long-term Note Claims. Plan Distributions on account of the MAG Long-term Note Claims shall be made by the Disbursing Agent to the Old Indenture Trustee for the MAG Long-term Notes. The Old Indenture Trustee for the MAG Long-term Notes, or its agent, shall make such Plan Distributions in accordance with the MAG Indenture and such Plan Distributions shall be made directly to the registered holders of the MAG Long-term Notes in accordance with Section 10.9(f). The record date for the Plan Distributions on account of the MAG Long-term Note Claims shall be the Effective Date or such other date as established by the Old Indenture Trustee for the Long-term Notes, with the cooperation of the Debtors, under the MAG Indenture.

(c) Service by the Old Indenture Trustees.

(i) The Old Indenture Trustees and their agents, successors and assigns shall facilitate the making of Plan Distributions to the holders of the Mirant Notes

and the MAG Short-term Notes, as applicable, and upon the completion thereof, shall be discharged of all their respective obligations associated with the Mirant Notes and the MAG Short-term Notes. The rights of holders of Allowed MAG Short-term Note Claims and Mirant Note Claims, as established under the Old Indentures, shall continue in effect, for the sole purpose of (i) allowing the holders of Mirant Note Claims and the MAG Short-term Note Claims, as applicable, to receive their distributions hereunder, (ii) allowing and requiring the Old Indenture Trustees to make the distributions to be made on account of the Mirant Notes and the MAG Short-term Notes, as applicable, and (iii) permitting the Old Indenture Trustees to assert their Charging Lien against such distributions for payment of the Indenture Trustee Fees. Notwithstanding any provision contained in this Plan to the contrary, the distribution provisions contained in the Old Indentures for Mirant Notes and the MAG Short-term Notes shall continue in effect to the extent necessary to authorize the Old Indenture Trustees to receive and distribute to the holders of Allowed Claims, as applicable, distributions pursuant to the Plan on account of any Allowed Claims and shall terminate completely upon completion of all such distributions. Any actions taken by the Old Indenture Trustees with respect to the MAG Short-term Notes and the Mirant Notes that are not for the purposes authorized under the Plan shall be null and void.

(ii)     The Old Indenture Trustee under the MAG Indenture with respect to the MAG Long-term Notes, together with its agents, successors and assigns, shall facilitate the making of Plan Distributions to the holders of the MAG Long-term Notes. All of the rights, privileges and indemnities under the MAG Indenture with respect to the MAG Long-term Notes shall be reinstated and remain in full force and effect. Any actions taken by the Old Indenture Trustee under the MAG Indenture with respect to the MAG Long-term Notes that are not for the purposes authorized under the MAG Indenture and the Plan shall be null and void.

(d)     Service by Facility Agents. The Facility Agents and their agents, successors and assigns shall facilitate the making of Plan Distributions to the holders of the MAG Revolver Claims, Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claims, as applicable, and upon the completion thereof, shall be discharged of all their respective obligations associated with the MAG Revolver Claims, Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claims. The rights of holders of MAG Revolver Claims, Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claims shall continue in effect for the sole purpose of allowing and requiring the Facility Agents to make Plan Distributions to be made on account of such Claims. Any actions taken by the Facility Agents with respect to the MAG Revolver Claims, Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claims that are not for the purposes authorized herein shall be null and void.

(e)     Substitution of the Old Indenture Trustees; Distributions. Upon the occurrence of the Effective Date, the Claims of the Old Indenture Trustees shall, for all purposes under the Plan, including, without limitation, the right to receive distributions hereunder, be substituted for all Claims of individual holders of MAG Short-term Note Claims and Mirant Note Claims arising under, based upon, or evidenced by the notes or debentures issued under the Old Indentures. On the Distribution Date, all MAG Short-term Note Claims and Mirant Note Claims

28

shall be settled and compromised in exchange for the distribution to the Old Indenture Trustees of the applicable Plan Distributions to the holders of Allowed MAG Short-term Note Claims and Mirant Note Claims as specified in Sections 5.2(e) and 5.1(c), respectively, of the Plan; provided, that the Old Indenture Trustees shall return to the Disbursing Agent any Plan Distributions held on account of any MAG Short-term Note Claims and Mirant Note Claims as to which the requirements of Section 10.9(f) hereof are not satisfied by the first anniversary of the Effective Date.

(f)     Distributions by Old Indenture Trustees. On the Distribution Date, all distributions on behalf of the Allowed MAG Short-term Note Claims and Mirant Note Claims shall be made by the applicable Old Indenture Trustees and the Old Indenture Trustees shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that Old Indenture Trustees are so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by New Mirant. As soon as practicable after such surrender or exchange as described in Section 10.12, the Old Indenture Trustees shall distribute to their respective holders such holder's share of the distributions in accordance with the Plan, but subject to the rights of the Old Indenture Trustee in accordance with Section 10.9(h).

(g)     Substitution of the Facility Agents; Distributions. Upon the occurrence of the Effective Date, the Claims of the applicable Facility Agents shall, for all purposes under the Plan, including, without limitation, the right to receive distributions hereunder, be substituted for all Claims of individual holders of MAG Revolver Claims, Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claim. On the Distribution Date, all MAG Revolver Claims, Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claims shall be settled and compromised in exchange for the distribution to the Facility Agents of the applicable Plan Distributions to the holders of MAG Revolver Claims, Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claims as specified in Sections 5.2(e) and 5.1(c), respectively, of the Plan; provided, that the Facility Agents shall return to the Disbursing Agent any Plan Distributions held on account of any MAG Revolver Claims, Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claims as to which the requirements of Section 10.12 are not satisfied by the first anniversary of the Effective Date.

(h)     Enforcement of Rights of Old Indenture Trustees. The rights, liens (including the Charging Lien) and Claims of the Old Indenture Trustees under the Old Indentures with respect to the collection of their fees and expenses from the holders of MAG Short-term Note Claims, MAG Long-term Note Claims and Mirant Note Claims or from Plan Distributions made on account of such Claims (including the fees and expenses of counsel) shall survive confirmation of the Plan and may be fully enforced by the Old Indenture Trustees; provided, however, that such fees and expenses shall be subject to Bankruptcy Court approval under section 1129(a)(4) of the Bankruptcy Code, to the extent that section applies. All distributions to the Old Indenture Trustees on behalf of the holders of Allowed MAG Short-term Note Claims, MAG Long-term Note Claims and Mirant Note Claims shall be applied by the Old Indenture Trustees as provided by the Old Indentures.

29

(i)    Payment of Indenture Trustee Fees and Facility Agent Fees. Prior to the Effective Date, the Old Indenture Trustees and the agent under the MAG Revolvers shall provide statements of Indenture Trustees Fees to the Debtors. All reasonable fees and expenses owed to the Old Indenture Trustees under the Old Indentures and to the Facility Agent under the MAG Revolvers shall paid in Cash on the Effective Date. Unless contested by the Debtors, the fees and expenses owed to the Old Indenture Trustees and the Agent under the MAG Revolver shall be deemed reasonable, without further order of the Bankruptcy Court. The Bankruptcy Court shall resolve any of the Debtors' objections to such fees and expenses. The respective rights, liens, and claims of the respective Old Indenture Trustee under the Old Indentures (other than those related to the MAG Long-term Note Claims) and the Facility Agent under the MAG Revolvers shall be discharged upon payment of these fees and expenses.

(j)    Enforcement of Rights of Facility Agents. The rights, liens (including the Charging Liens), and Claims of the Facility Agents with respect to the collection of their fees and expenses from the holders of Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claims shall survive confirmation of the Plan and may be fully enforced by the Facility Agents. All distributions to the Facility Agents on behalf of the holders of Mirant "C" Facility Claims, Mirant 364-Day Revolver Claims and Mirant 4-Year Revolver Claims shall be applied by the Facility Agents as provided by the applicable agreement.

**10.10.  Special Distribution Provisions for Equity Interests.**

For the purpose of making Plan Distributions, the transfer ledger in respect of the Allowed Equity Interests in Mirant shall be closed as of the close of business on the Effective Date, and the Disbursing Agent, the Plan Trustees and their respective agents shall be entitled to recognize and deal for all purposes herein with only those holders of record stated on the transfer ledger maintained by the stock transfer agent for the Allowed Equity Interests in Mirant as of the close of business on the Effective Date. On the Effective Date, all Equity Interests in Mirant shall be cancelled and annulled, and all rights thereunder shall be settled and compromised in full in exchange for the Plan Distributions to be made to the holders of all such Allowed Equity Interests.

**10.11.  Special Distribution for California Parties.**

The following additional provisions shall apply specifically to any distributions to the California Parties under the Plan on account of the California Party Unsecured Claims:

(a)    CERS. If CERS (as such term is defined in Section 1.1.35 of the California Settlement Agreement) is the holder of any portion of the California Party Unsecured Claims on the Distribution Date, then any distributions to CERS on account of its allocable share of those claims shall be made by the Disbursing Agent (i) to the trustee of the liquidating trust required to be created by Section 3.7 of the California Settlement Agreement (respectively, the "Liquidating Trustee" and the "Liquidating Trust") or (ii) if a stock transfer agent has been identified in writing to the Mirant Parties (as defined in the California Settlement Agreement) by CERS in accordance with the notice provisions of the California Settlement Agreement at least ten (10) Business Days prior to the Distribution Date, then to such stock transfer agent for sale thereafter until further written notice by CERS to the Mirant Parties. The Liquidating Trustee shall, if no

30

stock transfer agent has been identified in writing to the Mirant Parties by CERS as provided above, thereafter administer such distributions in accordance with the terms of the written agreement establishing and governing the Liquidating Trust (the "California Liquidating Trust Agreement").

(b)     Other California Parties. If, pursuant to Section 5.1.4 of the California Settlement Agreement, any of the California Parties timely elect to have their respective allocable share of the California Party Unsecured Claims distributed to the Liquidating Trust, then any distributions to such California Parties on account of their respective allocable share of those claims, except to the extent expressly provided for in their Section 5.1.4 election notices to Mirant, shall be made by the Disbursing Agent to the Liquidating Trustee and thereafter administered by the Liquidating Trustee in accordance with the terms of the California Liquidating Trust Agreement.

(c)     Establishment of Liquidating Trust. The terms of the California Liquidating Trust Agreement shall be agreed upon by the Mirant Parties (as defined in the California Settlement Agreement) and the California Parties on or before the Confirmation Date. The California Liquidating Trust Agreement shall be a Plan Document.

## 10.12. **Surrender and Cancellation of Instruments.**

As a condition to receiving any Plan Distribution, on or before the Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument or note, other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (i) surrender such certificate, instrument or note representing such Claim, including, without limitation, any guaranties except to the extent assumed by the Debtors, subject to Section 12.1(i), and (ii) execute and deliver such other documents as may be necessary to effectuate the Plan. Such certificate, instrument or note, including any such guaranties, shall thereafter be cancelled and extinguished. The Disbursing Agent shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (1) such certificates, instruments or notes, including any such guaranties, are surrendered, or (2) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form. Any such holder who fails to surrender such certificates, instruments or notes, including any such guaranties, or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution. All property in respect of such forfeited Claims shall revert to New Mirant. In the event such certificate, instrument or note is held in the name of, or by a nominee of, the Depository Trust Company, the Debtors shall seek the cooperation of the Depository Trust Company in facilitating distributions.

## 10.13. **Designated Net Litigation Distributions.**

As an essential bargained-for component of the global settlement between and among the Debtors, the Committees and Phoenix with regard to the Plan, Cash payments shall be made in an amount equal to the aggregate Designated Net Litigation Distributions, such payments to be shared on a 50/50 basis by the holders of the Allowed Mirant Debtor Class 3 – Unsecured Claims (including holders of Allowed Claims in respect of Subordinated Notes) and

31

the holders of Allowed Mirant Debtor Class 5 – Equity Interests. The mechanics of implementing the foregoing sharing arrangement (including, without limitation, (a) whether the litigation shall be prosecuted for the benefit of the above-noted holders of Claims and Equity Interests through the vehicle of a trust, by New Mirant or an affiliate of New Mirant, (b) how the litigation will be controlled and managed, (c) how the litigation will be funded, (d) the duties owed by New Mirant with respect to the prosecution or settlement of the litigation (including the provision of reasonable access to personnel and records in connection with the litigation), and (e) whether the right of a beneficiary to participate in the payments shall be transferable), shall be determined by the agreement of the Debtors, the Committees and Phoenix (such agreement not to be unreasonably withheld). Payments triggered by the receipt of the first $175,000,000 in aggregate Designated Net Litigation Distributions shall not be reduced by the amount of any adverse tax consequences to New Mirant (regardless of whether such consequence is the payment of taxes or the consumption of tax attributes) ("Adverse Tax Consequences"); with respect to payments triggered by aggregate Designated Net Litigation Distributions over $175,000,000, the amount of such payments shall be reduced by an amount equal to 100% of the Adverse Tax Consequence to New Mirant, with the payment to holders of Allowed Mirant Debtor Class 3 – Unsecured Claims to be reduced by an amount equal to 60% of the Adverse Tax Consequences with respect to payments triggered by recoveries greater than $175,000,000 and less than $275,000,000; 70% with respect to payments triggered by recoveries equal to or greater than $275,000,000 and less than $375,000,000; 80% with respect to payments triggered by recoveries equal to or greater than $375,000,000 and less than $475,000,000; and 90% with respect to payments triggered by recoveries equal to or greater than $475,000,000. In each case, for payments triggered by the receipt of amounts above $175,000,000, the amount of the payments to the holders of Allowed Mirant Debtor Class 5 – Equity Interests shall be reduced by an amount equal to (a) 100% of the Adverse Tax Consequences to New Mirant resulting from any amount received on account of the Designated Net Litigation Distributions less (b) the amount by which the payments made to the holders of Allowed Mirant Debtor Class 3 – Unsecured Claims are reduced pursuant to this Section 10.13. To the extent New Mirant believes that a tax return reporting position at a level of authority not requiring separate disclosures in its tax return can be reached, New Mirant will take the position on its tax returns that any recoveries received by New Mirant or any of its subsidiaries in respect of Designated Avoidance Actions are not taxable. The foregoing payment obligations shall be evidenced in a fashion that shall be agreed upon by the Debtors, the Corp Committee, the Equity Committee and Phoenix.

## 10.14. Accrual of Interest for Purposes of Calculating Plan Distributions.

(a)     Mirant Debtors; Unsecured Claims. For purposes of calculating Plan Distributions, the accrual of interest from the Petition Date through the Effective Date on Allowed Mirant Debtor Class 3 – Unsecured Claims (including Allowed Claims in respect of Subordinated Notes) that have a contractual interest rate shall be at the applicable non-default contractual rate with compounding to occur on the date of scheduled payments. With respect to holders of Allowed Unsecured Claims against the Mirant Debtors that do not have a contractual rate of interest, interest from the Petition Date through the Effective Date shall be herein accrued at 4% without compounding.

32

(b)     MAG Debtors; Unsecured Claims.  For purposes of making Plan Distributions to the holders of Allowed MAG Debtor Class 5 – Unsecured Claims, including, but not limited to, the MAG Short-term Debt Claims, that have a contractual rate of interest, interest will be accrued at the contractual non-default rate from the Petition Date through the Effective Date for each holder (including with respect to MAG Short-term Note Claims (i) interest on interest, as contemplated by Section 503 of the MAG Indenture, with semi-annual compounding on the date of each scheduled payment up and to the Effective Date; and (ii) "Additional Interest," as such term is defined in Section 2(e) of the MAG Registration Rights Agreements from August 28, 2003 to July 28, 2005, the period during which MAG ceased to maintain its status as a reporting company under the Securities Exchange Act of 1934, as amended, as set forth in Section 2(e) of the MAG Registration Rights Agreements).  With respect to holders of Allowed Unsecured Claims against the MAG Debtors that do not have a contractual rate of interest, interest will be accrued at 4%, from the Petition Date through the Effective Date without compounding.

(c)     MAG Debtors; MAG Long-term Note Claims.  For purposes of making Plan Distributions to the holders of MAG Debtor Class 6 – MAG Long-term Note Claims, interest will be accrued at the contractual rate from the Petition Date through the Effective Date for each holder (including (i) interest on interest, as contemplated by section 503 of the MAG Indenture, with semi-annual compounding on the date of each scheduled payment; and (ii) "Additional Interest," as such term is defined in Section 2(e) of the MAG Registration Rights Agreements from August 28, 2003 to July 28, 2005, the period during which MAG ceased to maintain its status as a reporting company under the Securities Exchange Act of 1934, as amended, as set forth in Section 2(e) of the MAG Registration Rights Agreements).

(d)     Mirant Debtors; Convenience Claims.  For purposes of making Plan Distributions, the accrual of interest from the Petition Date through the Effective Date on Allowed Mirant Debtor Class 4 – Convenience Claims shall be at 4% without compounding.

(e)     MAG Debtors; Convenience Claims.  For purposes of making Plan Distributions, the accrual of interest from the Petition Date through the Effective Date on Allowed MAG Debtor Class 7 – Convenience Claims shall be at 4% without compounding.

## 10.15.  Supplemental Distributions to Holders of Allowed Mirant Debtor Class 3 – Unsecured Claims.

Each holder of an Allowed Mirant Debtor Class 3 – Unsecured Claim shall receive a Pro Rata Share of all Plan Distributions reserved in respect of Mirant Debtor Class 3 – Unsecured Claims that are Contested Claims as of the Effective Date that subsequently become Disallowed Claims, in whole or in part.  Such supplemental Plan Distributions shall be made from time-to-time at the discretion of the Disbursing Agent; provided, that in no event shall the final such supplemental Plan Distribution be made later than 60 days after the last Contested Mirant Debtor Class 3 – Unsecured Claim becomes an Allowed Claim or a Disallowed Claim.

MIAMI 623421 v4 (2K)