# ARTICLE XI.

## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

### 11.1. Objection Deadline.

As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of the Disbursing Agent without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made. The Disbursing Agent shall not object to any Letter of Credit Claim on the basis that such Claim is contingent at any time prior to the expiration date of such letter of credit.

### 11.2. Prosecution of Contested Claims.

The Disbursing Agent may object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 11.3.

### 11.3. Claims Settlement.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court, other than (a) the settlement or compromise of a Claim where the difference between the amount of the Claim listed on the Debtors' Schedules and the amount of the Claim proposed to be Allowed under the settlement is in excess of $1,000,000, or (b) any settlement or compromise of a Claim or Cause of Action that involves an Insider.

### 11.4. Entitlement to Plan Distributions Upon Allowance.

Notwithstanding any other provision of the Plan, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the setoff rights as provided in Section 17.17. When a Claim that is not an Allowed Claim as of the Effective Date (including, without limitation, any Claims of Pepco and SMECO that arise from the resolution of the matters set forth in Sections 14.5 and 14.8) becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

### 11.5. Estimation of Claims.

The Disbursing Agent may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Disbursing Agent has previously objected to such Claim or whether the Bankruptcy

34

Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Notwithstanding anything to the contrary in the Plan or the Bankruptcy Code, neither the Disbursing Agent nor any holder of a Letter of Credit Claim may seek to estimate a Letter of Credit Claim.

## ARTICLE XII.

### CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE

**12.1. Conditions Precedent to Confirmation.**

The following are conditions precedent to confirmation of the Plan:

(a) The Clerk of the Bankruptcy Court shall have entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (ii) authorizing the solicitation of votes with respect to the Plan, (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejection of the Plan, (iv) confirming and giving effect to the terms and provisions of the Plan, (v) determining that the settlements of certain inter-Debtor matters as set forth in Article II of the Plan are appropriate, (vi) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan, (vii) approving the Plan Documents, and (viii) authorizing the Debtors to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to, the transactions and transfer of Assets contemplated by the Plan and the Plan Documents;

(b) The Confirmation Order, the Plan Documents and the Plan subject to the provisions of Section 17.23 are each in a form satisfactory to the Debtors;

(c) The Confirmation Order shall determine that the rights of the MIRMA Owner/Lessors shall have been resolved as set forth in Section 14.6;

(d) The Confirmation Order shall include a determination that the treatment provided in the Plan with respect to MAG Debtor Class 6 – MAG Long-term Note Claims satisfies all of the requirements of reinstatement pursuant to section 1124 of the Bankruptcy Code and that the MAG Long-term Notes are, as of the Effective Date, reinstated and not in default, in particular, a finding by the Bankruptcy Court that (i) the MAG Long-term Notes are unimpaired under section 1124 of the Bankruptcy Code, (ii) all existing defaults under the MAG Long-term Notes are cured (save in respect of section 365(b)(2) of the Bankruptcy Code), and (iii) the transactions

35

contemplated by the Plan do not cause any default under the MAG Indenture in respect of the MAG Long-term Notes (giving effect to the New MAG Debt Covenants);

(e)     The Confirmation Order shall include a determination that the BEWAG Contract is not an obligation of New Mirant or its Affiliates and that BEWAG Counterparties shall have no rights or Claims against New Mirant or its Affiliates or their assets under the BEWAG Contract;

(f)     The Confirmation Order shall include a determination that confirmation of the Plan does not terminate the Debtors' right to continue to pursue assumption or rejection, pursuant to section 365 of the Bankruptcy Code, of (i) any agreement with Pepco or its subsidiaries as to which the Debtors have commenced an action seeking to reject, recharacterize or avoid the Debtors' obligations thereunder, but as to which such actions have not been determined by Final Order prior to entry of the Confirmation Order, (ii) the FCC Agreement or (iii) the Site Lease;

(g)     The Confirmation Order shall include findings that if the reasonable consent of any counterparty to an executory contract of the Trading Debtors is required in connection with the transfer of such contract to MET under the Plan (i) the refusal to grant such consent is per se unreasonable, and (ii) such consent shall be deemed to have been given;

(h)     The Confirmation Order shall include determinations that all of the settlements and compromises contained in the Plan meet the applicable standards under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation; and

(i)     The Bankruptcy Court shall have entered the Implementation Order ordering that (A) no later than five Business Days after written notification by MET that the Effective Date has occurred, (i) each applicant with respect to each letter of credit issued to a Trading Debtor as beneficiary securing a Transferred Trading Obligation shall cause each such letter of credit to be amended, modified or reissued by the applicable issuer to name MET instead of such Trading Debtor as a beneficiary thereof or provide such other replacement collateral as is acceptable to MET in its sole discretion and (ii) each guarantor that has issued a guarantee in favor of a Trading Debtor with respect to a Transferred Trading Obligation shall amend or modify such guarantee to name MET as the beneficiary of such guarantee in place of such Trading Debtor and (B) as of the Effective Date, (1) all other collateral held by a Trading Debtor securing a Transferred Trading Obligation, including any and all rights to exercise remedies with respect to such collateral, shall be assigned or otherwise transferred by such Trading Debtor to MET without further order of the Bankruptcy Court, (2) the right to draw or make a demand on any existing letter of credit, guarantee or other collateral securing a Transferred Trading Obligation shall be fully assigned or otherwise transferred by each applicable Trading Debtor to MET and MET shall be fully empowered, authorized and directed without further order of the Bankruptcy Court to draw or make a demand on any such letter of credit, guarantee or other collateral according to the terms of applicable letter of credit, guarantee or agreement pursuant to which such collateral is held and to retain any such draws for its own account, (3) any letter of credit for which a Debtor is the applicant and securing a Transferred Trading Obligation shall be deemed automatically to secure such Transferred Trading Obligation after such Transferred Trading Obligation has been transferred to MET; provided, that any such letter of credit shall be deemed

36

automatically cancelled upon the issuance of a substantially similar replacement letter of credit securing such Transferred Trading Obligation, (4) any guarantee previously issued by any of the Debtors to secure a Transferred Trading Obligation shall be deemed automatically to secure such Transferred Trading Obligation after such Transferred Trading Obligation has been transferred to MET; provided, that any guarantee shall be deemed automatically cancelled upon the issuance of a substantially similar replacement guarantee securing such Transferred Trading Obligation, (5) any cash posted by any of the Debtors to secure a Transferred Trading Obligation shall be deemed automatically to be property of MET and posted thereby to secure such Transferred Trading Obligation, and (6) all applicable parties shall take all actions reasonably required to implement the terms of the Implementation Order. The Implementation Order shall further clarify that any failure to amend, modify or reissue a letter of credit or to amend or modify a guarantee within the five Business Day period referred to in sub-clause (A) of this Section shall constitute an event of default under the trading contract or agreement giving rise to the relevant Transferred Trading Obligation notwithstanding any other cure period that might be set forth in such trading contract or agreement.

## 12.2. <u>Conditions Precedent to the Occurrence of the Effective Date</u>.

The following are conditions precedent to the occurrence of the Effective Date:

(a)     The Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction;

(b)     All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, including, without limitation, satisfaction or waiver of all conditions to (i) the obligations of the Debtors under the Plan and the Plan Documents, and (ii) the obligations of the Exit Lenders to make loans under the Exit Facility; and

(c)     The New MAG Holdco Indenture, the New MAG Holdco Notes, and the Exit Facility shall have become effective and all conditions to the effectiveness thereof shall have been satisfied or waived.

## 12.3. <u>Waiver of Conditions</u>.

Subject to Section 17.23, the Debtors may waive any one or more of the conditions set forth in Section 12.1(c), (e), (f), (g), (h) or (i) or Section 12.2(b) or (c) in a writing executed by each of them without notice or order of the Bankruptcy Court and without notice to any parties in interest.

## 12.4. <u>Effect of Non-Occurrence of the Effective Date</u>.

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in a Debtor; (b) prejudice in any manner the rights of the Debtors, including without limitation, the right to seek a further extension of the exclusivity periods under section 1121(d)

MIAMI 623421 v4 (2K)

of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtors.

## ARTICLE XIII.

## THE DISBURSING AGENT

### 13.1. Powers and Duties.

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims and Equity Interests; (b) comply with the Plan and the obligations thereunder; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in Article XI, and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim as provided in Article XI; (f) make annual and other periodic reports regarding the status of distributions under the Plan to the holders of Allowed Claims that are outstanding at such time; such reports to be made available upon request to the holder of any Contested Claim; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

### 13.2. Plan Distributions.

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan on the relevant Distribution Date therefor.

### 13.3. Exculpation.

**Except as otherwise provided in this Section 13.3, the Disbursing Agent, including the Old Indenture Trustees (and each of their respective paying agents), as applicable, as disbursing agent for the holders of the MAG Short-term Note Claims, MAG Long-term Note Claims, Mirant Debt Claims and Subordinated Note Claims, together with their officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, Entities, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent and the Old Indenture Trustees (and each of their respective paying agents), by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent and/or such Old Indenture Trustee's willful misconduct or gross negligence. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or such Old Indenture Trustees, or their respective officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained in this Section 13.3 shall**

38

**preclude or impair any holder of an Allowed Claim or Allowed Equity Interest from bringing an action in the Bankruptcy Court against any Debtor to compel the making of Plan Distributions contemplated by the Plan on account of such Claim or Equity Interest.**

## ARTICLE XIV.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 14.1. Assumption and Rejection of Executory Contracts and Unexpired Leases.

(a) On the Effective Date, all executory contracts and unexpired leases of the Debtors shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code, including, but not limited to, those agreements listed and described in Schedule 11 attached to the Disclosure Statement, except: (i) any executory contracts and unexpired leases that are the subject of separate motions to assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the Effective Date; (ii) contracts and leases listed in Schedule 12 attached to the Disclosure Statement and any subsequently filed "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" to be filed by the Debtors with the Bankruptcy Court before the entry of, or as an exhibit to, the Confirmation Order; (iii) all executory contracts and unexpired leases assumed or assumed and assigned under this Plan or by order of the Bankruptcy Court entered before the Effective Date; (iv) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to the next section hereof and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time; (v) any agreement, obligation, security interest, transaction or similar undertaking that the Debtors believe is not executory or a lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under section 365 of the Bankruptcy Code; (vi) any agreement between the Debtors and Pepco or any of its subsidiaries; (vii) the MIRMA Leases; (viii) the BEWAG Contract; (ix) the FCC Agreement and the Site Lease; (x) any executory contracts or unexpired leases constituting CC8 Assets, which shall be treated as set forth in the California Settlement Agreement and in the related implementing agreements; (xi) any oral or written joint defense agreements relating to actual, potential, or threatened litigation or investigations involving any of the Debtors, which shall be assumed; (xii) any Western Systems Power Pool Agreement with any counterparty, which shall be assumed unless specifically listed as an agreement to be rejected on Schedule 11 attached to the Disclosure Statement; (xiii) any unexecuted service agreement to an electric sales or transmission and natural gas transportation tariff on file with the Federal Energy Regulatory Commission, which shall be assumed unless specifically listed as an agreement to be rejected on Schedule 11 attached to the Disclosure Statement; (xiv) any guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to any of the Debtors or to indemnify the Debtors; and (xv) agreements with third parties (including governmental entities and agencies) regarding preservation of the confidentiality of documents produced by the Debtors. Any order entered postconfirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered preconfirmation. The Debtors reserve the right to amend Disclosure Statement Schedules 11 and 12 or the "Schedule of Assumed and

39

Assumed and Assigned Executory Contracts and Unexpired Leases" prior to the entry of the Confirmation Order. Each executory contract and unexpired lease to be assumed or assumed and assigned by the Debtors shall include modifications, amendments, supplements, restatements or other similar agreements made directly or indirectly by any agreement, instrument or other document that affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Disclosure Statement Schedule 12 or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases."

(b)     Inclusion of a contract, lease or other agreement on Disclosure Statement Schedules 11 shall constitute adequate and sufficient notice that (i) any Claims arising thereunder or related thereto shall be treated as Unsecured Claims under the Plan, and (ii) the Debtors are no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder. The inclusion of a contract, lease or other agreement in Section 14.1(a) or on Disclosure Statement Schedule 11 or 12 or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" shall not constitute an admission by the Debtors as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting Claims against the Debtors. The Debtors reserve all rights with respect to the characterization of any such agreements.

(c)     The Plan shall constitute a motion to reject such executory contracts and unexpired leases rejected pursuant to this section, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and their estates.

(d)     The Plan shall constitute a motion to assume and assign such executory contracts and unexpired leases as set forth in Schedule 12 or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" or as otherwise designated as being assumed or assumed and assigned in Section 14.1(a) and the Debtors shall have no liability thereunder for any breach of such assumed and assigned executory contract or lease occurring after such assignment pursuant to section 365(k) of the Bankruptcy Code, except as is specifically provided in the Plan. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to sections 365(a), (b) and (f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that the requirements of section 365(f) of the Bankruptcy Code have been satisfied. Any non-Debtor counterparty to an agreement listed on Schedule 12 or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" or otherwise designated as being assumed or assumed and assigned in Section 14.1(a) who disputes the assignment of an executory contract or unexpired lease must file with the Bankruptcy Court, and serve upon the Debtors and the Committees, a written objection to the assumption and assignment, which objection shall set forth the basis for the dispute by no later than ten (10) days prior to the Confirmation Hearing. The failure to timely object shall be deemed a waiver of any and all objections to the assumption and assignment of executory contracts and leases as set forth in

40

Schedule 12 or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" or as otherwise designated as being assumed or assumed and assigned in Section 14.1(a).

## 14.2.  Cure.

At the election of the Debtors, any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding: (i) the amount of any cure payments; (ii) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assigned; or (iii) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable, except with respect to agreements subject to 14.1(a)(xi)-(xv) for which the cure amounts are zero. Disclosure Statement Schedule 12 or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" attached to the Disclosure Statement set forth the Debtors' cure obligations for each agreement which a cure obligation must be satisfied as a condition to the assumption or assumption and assignment of such agreement. Any non-Debtor counterparty to an agreement listed on the Disclosure Statement Schedule 12 or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" who disputes the scheduled cure obligation must file with the Bankruptcy Court, and serve upon the Debtors and the Committees, a written objection to the cure obligation, which objection shall set forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption or assumption and assignment of the relevant agreement by no later than ten (10) Business Days prior to the Confirmation Hearing. If a non-Debtor counterparty fails to file and serve an objection which complies with the foregoing, the cure obligation set forth on the Disclosure Statement Schedule 12 or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" shall be binding on the non-Debtor counterparty, and the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption or assumption and assignment of the relevant agreement as proposed by the Debtors.

## 14.3.  Claims Arising from Rejection, Expiration or Termination.

Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the Bar Date Notice, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is rejected pursuant to Section 14.1, no later than thirty (30) days after the Confirmation Date. Any such Claims for which a proof of claim is not filed and served within such time will be forever barred from assertion and shall not be enforceable against the Debtors, New Mirant, their respective Estates, Affiliates, or the Assets. Unless otherwise ordered by the Bankruptcy Court,

all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by the Disbursing Agent.

## 14.4. <u>Special Provisions Relating to the BEWAG Contract.</u>

In the event the Bankruptcy Court determines that the BEWAG Contract is an executory contract, the BEWAG Contract shall not be assumed or rejected pursuant to section 365 of the Bankruptcy Code and shall instead ride through the chapter 11 process. From and after the Effective Date, the BEWAG Contract shall constitute an asset and obligation of Mirant with the same force and effect and to the extent that the BEWAG Contract was an asset and obligation of Mirant prior to the Petition Date. From and after the Effective Date, the counterparties under the BEWAG Contract shall be entitled to exercise all rights and remedies available, if any, to enforce the BEWAG Contract against Mirant. IN NO EVENT SHALL THE OBLIGATIONS ARISING UNDER THE BEWAG CONTRACT CONSTITUTE OBLIGATIONS OF, OR BE ENFORCEABLE AGAINST, NEW MIRANT, ITS SUBSIDIARIES OR THEIR ASSETS. THE CONFIRMATION ORDER SHALL PERMANENTLY ENJOIN THE BEWAG COUNTERPARTIES FROM TAKING ANY ACTION TO ENFORCE THE BEWAG CONTRACT AND THE OBLIGATIONS ARISING THEREUNDER AGAINST NEW MIRANT, ITS SUBSIDIARIES AND THEIR ASSETS.

## 14.5. <u>Special Provisions Relating to Agreements with Pepco and its Subsidiaries.</u>

(a)     <u>Interim Performance</u>. Pending a determination by Final Order of the disputes regarding the Debtors' right to reject the Back-to-Back Agreement (or the APSA, if it is determined by Final Order that the Back-to-Back Agreement is not severable from the APSA for purposes of rejection under section 365 of the Bankruptcy Code) and the Claims of Pepco thereunder, (i) the Debtors' obligations under the Back-to-Back Agreement, the APSA (excluding all ancillary agreements thereto), and the Assumption/Assignment Agreement shall be interim obligations of Mirant Oregon and unconditionally guaranteed by New Mirant, and no other subsidiary of New Mirant shall have any liability with respect to such interim performance, and (ii) any Debtor's obligations under any other agreement with Pepco or its subsidiaries (including, without limitation, the ancillary agreements) shall be interim obligations of such Debtor and unconditionally guaranteed by New Mirant, and no other subsidiary of New Mirant shall have any liability with respect to such interim performance. During this period, Pepco shall not be permitted to exercise any right or remedy arising from any default occurring under any such agreement prior to the Petition Date.

(b)     <u>Reservation of Rights.</u> The Debtors shall have the right, at any time prior to the commencement of the Confirmation Hearing, to commence an action or proceeding to obtain a Final Order (i) authorizing the Debtors to assume or reject any or all of the agreements with Pepco or any of its subsidiaries, (ii) determining that the Debtors' obligations under any of such agreements constitute prepetition debt obligations, (iii) determining that any postpetition amounts paid (in excess of the value of any actual benefits received) by the Debtors, Mirant Oregon, and/or New Mirant to Pepco (<u>including</u> payments made after the Effective Date) are recoverable by the Debtors pursuant to sections 105, 503, and 549 of the Bankruptcy Code; (iv) recharacterizing obligations under the agreement arising on or before the Petition Date; (v) avoiding any or all of the obligations under the agreements under the Pepco Causes of Action; or

42

(vi) otherwise resolving the disputes between the Debtors and Pepco. Nothing herein shall (A) preclude the Debtors and Pepco from seeking approval of a negotiated settlement of any such disputes, actions or matters at any time after the Effective Date, or (B) limit the rights, remedies, claims or defenses of Pepco with respect to the matters set forth herein or in connection with any pending litigation.

(c)     Condition Subsequent. Upon a determination by Final Order (i) authorizing the assumption or rejection of any agreement with Pepco or its subsidiaries; (ii) recharacterizing the obligations arising under any such agreement; or (iii) avoiding the obligations under such agreements, then (A) such agreement shall be rejected, recharacterized, and/or avoided, as the case may be, (B) the interim performance obligations set forth in Section 14.5(a) (and any guarantee thereof) shall terminate and be of no further force or effect, (C) New Mirant (for itself or as agent) may pursue any claims it may have against Pepco or third parties for rescission damages, (D) any Claim of Pepco resulting therefrom shall, upon becoming Allowed, be entitled to the treatment specified in the Plan the same as though such Claim became Allowed as of the Effective Date. If the Debtors are unable to obtain a Final Order authorizing the rejection, recharacterization or avoidance of any agreement with Pepco or its subsidiaries, to the extent such agreement constitutes an executory contract pursuant to section 365 of the Bankruptcy Code, such agreement shall be assumed by the Debtor that is a party thereto (and in the case of the Back-to-Back Agreement, the APSA and the Assumption/Assignment Agreement, assigned to Mirant Oregon and unconditionally guaranteed by New Mirant) and in connection therewith all required cure obligations under section 365 of the Bankruptcy Code shall then be performed pursuant to Section 14.2.

Section 14.5 of the Plan may not be amended, modified or supplemented in any way without the written consent of Pepco.

**14.6.    Special Provisions Related to the MIRMA Leases.**

(a)     The MIRMA Leases shall be treated as unexpired leases under Section 365 of the Bankruptcy Code. On or before the Effective Date, MIRMA shall assume and cure defaults in respect of each of the MIRMA Leases, including all Operative Documents (as defined in the MIRMA Leases) in accordance with the terms and conditions set forth in Exhibit F annexed hereto (the "MIRMA Treatment"), which MIRMA Treatment shall be binding on all parties. Upon assumption of the MIRMA Leases in accordance with the MIRMA Treatment, all defaults shall be deemed cured or otherwise excused and no longer continuing, provided that the defaults set forth in the MIRMA Treatment shall be cured as provided therein. The Confirmation Order shall contain appropriate findings providing that each of the MIRMA Dickerson Leases and MIRMA Morgantown Leases constitutes a single integrated transaction.

(b)     All parties, including the holders of those certain pass through trust certificates issued in respect of the MIRMA Leases, shall be permanently enjoined from taking any action or exercising any remedy against any party to the Operative Documents on account of such party's compliance with the terms and conditions of the MIRMA Treatment; provided, however, that nothing herein shall prohibit any party from asserting that a party has failed to comply with the terms and conditions of the MIRMA Treatment or from taking any action or exercising any remedy in connection therewith.

**14.7. Special Provisions Relating to Mint Farm.**

Notwithstanding anything in this Article XIV to the contrary, but except with respect to any executory contract or unexpired lease that is specifically listed on Disclosure Statement Schedules 11, 12 or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases," or has already been assumed or rejected prior to the Confirmation Date, the deadline for the Debtors to assume or reject executory contracts and unexpired leases that relate to the Mint Farm generating facilities is extended to the earlier to occur of the following: (a) the date upon which the sale of the Mint Farm generating facility (and related assets) closes; and (b) one year after the Effective Date, or such later date extended by the Bankruptcy Court after notice and a hearing. Bankruptcy Code section 365 shall apply to any motion to reject, assume, or assume and assign any executory contracts that are subject to this section. Any rejection damages Claim with respect to an executory contract or unexpired lease relating to Mint Farm shall be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after the rejection has become effective. The Debtors reserve all rights to object to such claims.

**14.8. Special Provisions Relating to the FCC Agreement.**

(a)     Interim Performance. Pending a determination by Final Order of the disputes regarding the proper characterization of the FCC Agreement and whether any Claims for damages arising from the rejection of the FCC Agreement should be limited by section 502(b)(6) of the Bankruptcy Code, the Debtors' postpetition obligations under the FCC Agreement shall be performed by Mirant Peaker and the Debtors' postpetition obligations under the Site Lease shall be performed by Mirant Chalk Point. Neither New Mirant nor any other subsidiary of New Mirant shall have any liability with respect to such interim performance of the FCC Agreement or the Site Lease. During this period, neither SMECO nor Pepco shall be permitted to exercise any right or remedy arising from any default occurring under the FCC Agreement or Site Lease prior to the Petition Date.

(b)     Reservation of Rights. Subject to the provisions of paragraph (c) below, the Debtors shall have the right, at any time prior to the commencement of the Confirmation Hearing to commence an action seeking a Final Order (i) authorizing the Debtors to assume or reject the FCC Agreement and the Site Lease, (ii) determining that the FCC Agreement constitutes a lease of non-residential real property and that any Claims for damages arising from the rejection of the FCC Agreement should be limited by section 502(b)(6) of the Bankruptcy Code, (iii) determining that the Debtors' obligations under the FCC Agreement constitute prepetition debt obligations, (iv) determining that any postpetition amounts paid (in excess of the value of any actual benefits received) by the Debtors to SMECO (including payments made after the Effective Date) are recoverable by the Debtors pursuant to sections 105, 503, and 549 of the Bankruptcy Code; (v) recharacterizing obligations under the FCC Agreement as Claims arising on or before the Petition Date; or (vi) otherwise resolving the disputes between the Debtors and SMECO and Pepco relating to the FCC Agreement. Nothing herein shall (A) preclude the Debtors, SMECO and Pepco from seeking approval of any negotiated settlement of any such disputes, actions or matters, or (B) limit the rights, remedies, claims or defenses of Pepco or SMECO with respect to the matters set forth herein or in connection with the pending litigation.

44

(c)    Time for Assumption or Rejection. Notwithstanding anything in this Article XIV of the Plan to the contrary, the deadline for the Debtors to assume or reject the FCC Agreement and the Site Lease is extended to 60 days after determination by Final Order of the disputes regarding the proper characterization of the FCC Agreement and whether any Claims for damages arising from the rejection of the FCC Agreement should be limited by section 502(b)(6) of the Bankruptcy Code. To the extent practical and applicable, Bankruptcy Code section 365 and Sections 14.2 and 14.3 above shall apply to assumption or rejection of the FCC Agreement and the Site Lease. Any rejection damages Claim with respect to the FCC Agreement or the Site Lease shall be filed with the Bankruptcy Court and served on the Debtors no later than 30 days after the rejection has become effective. The Debtors reserve all rights to object to such claims. If the Debtors are unable to obtain a Final Order (i) authorizing recharacterization of the FCC Agreement and limiting rejection damages thereunder pursuant to section 502(b)(6) of the Bankruptcy Code, or (ii) otherwise authorizing the rejection of the FCC Agreement or the Site Lease, the FCC Agreement shall be assumed by Mirant Peaker and the Site Lease shall be assumed by Mirant Chalk Point (and in connection therewith all required cure obligations under section 365 of the Bankruptcy Code shall then be performed pursuant to Section 14.2).

## ARTICLE XV.

## SETTLEMENTS AND COMPROMISES

### 15.1.  California Settlement.

The California Settlement is hereby incorporated into the Plan by this reference. To the extent there is any conflict between the California Settlement Agreement and the Plan, the California Settlement Agreement shall prevail.

### 15.2.  Settlement of Prepetition Employee Agreements.

The Plan provides for the settlement of most existing employee obligations (both with active and inactive employees). Specifically, the Plan shall constitute a motion under sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval of (i) the settlement of claims by employees regarding 26 prepetition retention agreements and (ii) three non-qualified retirement programs on the following terms:

(a)    With respect to the prepetition retention agreements, (i) for employee-related services rendered before the Petition Date, each employee will receive an Allowed Mirant Debtor Class 3 – Unsecured Claim; and (ii) for employee-related services rendered after the Petition Date, each employee will receive an Allowed Administrative Claim for any and all payments due and owing during the Debtors' Chapter 11 Cases; provided that each affected employee was employed on the Petition Date and continues to be employed on the postpetition contractual payment date. To the extent such affected employee participates in KERP, the applicable amount paid under KERP will be a direct dollar-for-dollar offset of any payment due and owing under a retention agreement related to post-KERP employment. If an employee accepts this settlement, the respective prepetition retention agreement will be terminated (except the employee must continue to be employed on the contractual payment date as condition precedent to receiving the treatment provided in this settlement) and the employee's claim will

45

be treated pursuant to the terms of the settlement. Alternatively, if the employee chooses to opt out of this settlement, the respective prepetition retention agreement will be rejected and the employee will be permitted to file a rejection claim, in accordance with the rejection procedures. Any employee that is a party to a prepetition retention agreement that has been rejected by the Debtors is not eligible to opt-in to this settlement.

(b)     With respect to the non-qualified retirement programs for former employees, the following three plans are reinstated and assumed by the Debtors: (i) the Mirant Services Supplemental Benefit Plan; (ii) the Mirant Services Supplemental Executive Retirement Plan; and (iii) the Deferred Compensation Plan for Directors and Select Employees.

## 15.3.  **Proposed New York Tax Settlement.**

(a)     Motion to Compromise and Settle. The Plan shall constitute a motion under sections 1123(b) (3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019 seeking approval of a proposed settlement of the disputes with the New York Taxing Authorities whose rights will be modified as set forth in the definitive agreements filed as Plan Documents.

(b)     Acceptance of the Proposed New York Tax Settlement. If the Plan is unanimously and affirmatively accepted by each of the New York Taxing Authorities, then the Debtors and the New York Taxing Authorities shall work together in good faith to consummate all conditions precedent to the Proposed New York Tax Settlement for the New York Debtors Effective Date to occur as soon as is practicable. The Confirmation Order shall provide that, to the extent that the New York Debtors Effective Date does not occur on or before the Effective Date for Mirant (i) New Mirant or its subsidiaries shall be authorized to operate the business of and provide debtor-in-possession financing to the New York Debtors, and (ii) in the event that New York Debtors Effective Date does not occur within 120 days of the Confirmation Date or the Proposed New York Tax Settlement terminates at any time prior to the occurrence of the New York Debtors Effective Date, unless otherwise ordered by the Bankruptcy Court, (A) the Plan shall without further action of the Debtors be deemed terminated with respect to the New York Debtors and otherwise amended to exclude the New York Debtors from the remaining MAG Debtors and (B) the exclusive periods in which the New York Debtors possess the exclusive right to file a plan of reorganization and solicit acceptances thereto shall be extended for an additional 180 days from such date of termination and amendment of the Plan without prejudice to the rights of the New York Debtors to seek additional extensions or the rights of parties in interest to seek to shorten or terminate such exclusive periods. Such deemed amendment shall be without prejudice to the New York Debtors to further amend, modify or revoke the Plan and/or submit any new plan of reorganization as it relates to the New York Debtors. In addition, notwithstanding any other provision in the Plan, (A) both the Mirant Debtors and the MAG Debtors will reserve the rights to assert Claims against the New York Debtors arising from and after July 15, 2003 (the date the New York Debtors filed their respective petitions for relief under chapter 11); (B) the New York Debtors will reserve the rights to assert Claims against the Mirant Debtors and the MAG Debtors arising from and after July 15, 2003, the treatment of which shall be subject to the Plan; and (C) Intercompany Claims held by the New York Debtors (and those against them held by any other Debtor) will also be reserved, the treatment of which shall be subject to the Plan.

46

(c)     Rejection of the Proposed New York Tax Settlement. If the Plan is not accepted by each of the New York Taxing Authorities, and notwithstanding the voting requirements of section 1126 of the Bankruptcy Code, the Plan shall be deemed amended without further action of the Debtors to exclude the New York Debtors from the MAG Debtors, and the Confirmation Hearing in respect of the Plan as to the New York Debtors shall be adjourned until further notice or order of the Bankruptcy Court. If this occurs, the Confirmation Order shall (i) authorize New Mirant or its subsidiaries to operate the business of and provide debtor-in-possession financing to the New York Debtors, and (ii) provide an extension of the periods in which the New York Debtors possess the exclusive right to file a plan of reorganization and solicit acceptances thereto for an additional one hundred and eighty (180) days without prejudice to the rights of the New York Debtors to seek additional extensions or the rights of parties in interest to seek to shorten or terminate such exclusive periods. Such deemed amendment shall be without prejudice to the New York Debtors to further amend, modify or revoke the Plan and/or submit any new plan of reorganization as it relates to the New York Debtors. In addition, notwithstanding any other provision in the Plan, (A) both the Mirant Debtors and the MAG Debtors will reserve the rights to assert Claims against the New York Debtors arising from and after July 15, 2003 (the date the New York Debtors filed their respective petitions for relief under chapter 11); (B) the New York Debtors will reserve the rights to assert Claims against the Mirant Debtors and the MAG Debtors arising from and after July 15, 2003, the treatment of which shall be subject to the Plan; and (C) Intercompany Claims held by the New York Debtors (and those against them held by any other Debtor) will also be reserved, the treatment of which shall be subject to the Plan. If the Debtors and the New York Taxing Authorities do not agree to definitive binding agreements in respect of the Proposed New York Tax Settlement prior to the commencement of the Confirmation Hearing, the New York Taxing Authorities shall be deemed to have rejected the Plan.

### 15.4.   Settlement of Certain Subordination Rights.

As permitted by Section 17.3, the Plan constitutes a motion pursuant to sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019 to compromise and settle the right of the holders of Mirant Debt Claims to enforce contractual subordination provisions against all holders of Subordinated Note Claims on the following terms:

(a)     each holder of an Allowed Subordinated Note Claim shall receive a Pro Rata Share of (i) 3.5% of the shares of New Mirant Common Stock to be issued under the Plan (excluding the shares (A) to be issued to the holders of Allowed MAG Debtor Class 5 – Unsecured Claims and Allowed MAG Debtor Class 4 – PG&E/RMR Claims; provided, that, if any such shares to be issued to the holders of Allowed MAG Debtor Class 5 – Unsecured Claims and Allowed MAG Debtor Class 4 – PG&E/RMR Claims are issued to the holders of Allowed Mirant Debtor Class 3 – Unsecured Claims, then the holders of Allowed Subordinated Note Claims shall receive 3.5% of such shares; and (B) to be reserved for issuance pursuant to the New Mirant Employee Stock Programs), (ii) the New Mirant Series B Warrants and (iii) the right to share on a pari passu basis in the Designated Net Litigation Distributions allocated to the holders of Allowed Mirant Debtor Class 3 – Unsecured Claims as provided in Section 10.13;

(b)     except for the Plan Distributions contemplated by Sections 15.4(a), and 10.13, any Plan Distribution that would otherwise be distributable under the Plan to the holders of

Allowed Subordinated Note Claims but for the enforcement of the subordination provision in the applicable indenture, shall be distributed to the holders of Allowed Mirant Debt Claims; and

(c)     the reimbursement of the fees and expenses of Phoenix as contemplated by Section 6.2(d)(i).

## ARTICLE XVI.

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and except as expressly limited by the California Settlement Agreement and related agreements, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan (except in the case of the Exit Financing, which shall be subject to the jurisdiction set forth in the documents arising in connection therewith), or (c) that relates to the following:

(i)     To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XIV hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)     To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Disbursing Agent or the Debtors, as applicable, after the Effective Date;

(iii)     To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)     To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)     To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)     To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan, the Plan Documents or their interpretation, implementation, enforcement, or consummation;

(viii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

(ix)    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estates;

(x)    To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xi)    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which New Mirant and its Affiliates, the Debtors, the Debtors-in-Possession, or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan;

(xiii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action of the Debtors (including Avoidance Actions) commenced by the Disbursing Agent, the Debtors or any third parties, as applicable, before or after the Effective Date;

(xiv)    To enter an order or final decree closing the Chapter 11 Cases;

(xv)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(xvi)    To enter any and all appropriate orders necessary to effectuate and otherwise enforce the Implementation Order; and

(xvii)    To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

49

## ARTICLE XVII.

## MISCELLANEOUS PROVISIONS

### 17.1. Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

### 17.2. Satisfaction of Claims.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any accrued postpetition interest, as calculated under Section 10.14, against the Debtors and the Debtors-in-Possession, or any of their Estates, Assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Equity Interests in the Debtors and the Debtors-in-Possession shall be satisfied, discharged, and released in full. Neither New Mirant, its Affiliates nor the Debtors shall be responsible for any pre-Effective Date obligations of the Debtors or the Debtors-in-Possession, except those expressly assumed by New Mirant, its Affiliates or any such Debtor, as applicable. Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against New Mirant and its Affiliates, the Debtors, their respective successors or assigns, or their Estates, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

### 17.3. Third Party Agreements; Subordination.

The Plan Distributions to the various classes of Claims and Equity Interests hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise. All of such rights and any agreements relating thereto shall remain in full force and effect, except as compromised and settled pursuant to the Plan. Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan. The right of the Debtors or the Committees to seek subordination of any Claim or Equity Interest pursuant to section 510 of the Bankruptcy Code is fully reserved (except as otherwise provided pursuant to the California Settlement), and the treatment afforded any Claim or Equity Interest that becomes a Subordinated Claim or subordinated Equity Interest at any time shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a Subordinated Claim or subordinated Equity Interest. Notwithstanding any other term or provision of the Plan (including, without limitation, any releases, exculpation or injunctions) the right of the Equity Committee to seek subordination, disallowance or related relief (including, without limitation, by prosecuting motions, commencing causes of action or otherwise) with respect to any Equity

50

Interest (including, without limitation, with respect to the Debtors' officers and directors and/or any Protected Persons) is fully reserved, and the treatment afforded any Equity Interest that becomes a subordinated Equity Interest or is otherwise made the subject of any relief pursuant to this sentence at any time shall be modified to reflect such subordination or relief.

## 17.4. **Exculpation.**

**The Debtors, the Old Indenture Trustees and any Protected Persons shall not be liable for any Cause of Action arising in connection with or out of the administration of the Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court. The Confirmation Order shall enjoin all holders of Claims and Equity Interests from asserting or prosecuting any Claim or cause of action against any Protected Person as to which such Protected Person has been exculpated from liability pursuant to the preceding sentence. For the purposes of this Section 17.4, each of the MIRMA Owner/Lessors, the Owner Participants (as defined in the Participation Agreements relating to the MIRMA Leases), the MIRMA Indenture Trustee and the Pass Through Trustee (as defined in the MIRMA Leases) shall be deemed to be Protected Persons.**

## 17.5. **Discharge of Liabilities.**

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and Equity Interests shall be precluded from asserting against New Mirant and its Affiliates, the Debtors, the Assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, NEITHER NEW MIRANT NOR MET SHALL HAVE, AND SHALL NOT BE CONSTRUED TO HAVE OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION, THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN (INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO MIRANT OR ANY OF THE TRADING DEBTORS) AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO NEW MIRANT OR MET.**

## 17.6. **Discharge of Debtors.**

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, their estates, and all successors thereto shall be

deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their estates, and all successors thereto. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their estates, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against New Mirant and it Affiliates or property of the Debtors or their estates to the extent it relates to a discharged Claim.

## 17.7. Notices.

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Mirant Corporation
> Attention: General Counsel
> 1155 Perimeter Center West, Suite 100
> Atlanta, Georgia 30338
> Telephone: (678) 579-5000
> Telecopier: (678) 579-6767
>
> White & Case LLP
> Attention: Gerard Uzzi, Esq.
> Wachovia Financial Center
> 200 South Biscayne Boulevard, Suite 4900
> Miami, Florida 33131
> Telephone: (305) 371-2700
> Telecopier: (305) 358-5744
>
> Shearman & Sterling LLP
> Attention: Fredric Sosnick, Esq.
> 599 Lexington Avenue
> New York, NY 10022-6069
> Telephone: (212) 848-4000
> Telecopier: (212) 848-7179

Andrews Kurth, L.L.P.
Attention: Paul Silverstein, Esq.
450 Lexington Avenue, 15th Floor
New York, NY 10017
Telephone: (212) 850-2800
Telecopier: (212) 850-2929

Cadwalader, Wickersham & Taft LLP
Attention: Bruce Zirinsky, Esq.
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Telecopier: (212) 504-6666

*and*

Brown Rudnick Berlack Israels LLP
Attention: Edward Weisfelner, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 704-0100
Telecopier: (212) 704-0196

## 17.8. Headings.

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

## 17.9. Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

## 17.10. Expedited Determination.

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtors.

## 17.11. Exemption from Transfer Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the

MIAMI 623421 v4 (2K)

making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

## 17.12. Retiree Benefits.

Pursuant to section 1129(a)(13), on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

## 17.13. Notice of Entry of Confirmation Order and Relevant Dates.

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing notice of Administrative Claims (Section 6.2), and the deadline for filing rejection damage Claims (Section 14.3).

## 17.14. Interest and Attorneys' Fees.

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law. No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the Plan or as ordered by the Bankruptcy Court.

## 17.15. Modification of the Plan.

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Debtors may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications; provided further that any amendments must be made in accordance with Section 17.23. A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder. Notwithstanding the foregoing, the California Settlement cannot be modified by the Plan without the consent of the California Parties.

## 17.16. Revocation of Plan.

Subject to Section 17.23, the Debtors reserve the right to revoke and withdraw the Plan or to adjourn the Confirmation Hearing with respect to any one or more of the Debtors prior to the occurrence of the Effective Date. If the Debtors revoke or withdraw the Plan with respect to any one or more of the Debtors, or if the Effective Date does not occur as to any Debtor, then, as to such Debtor, the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in such Debtor or to prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor.

In the event that the Debtors choose to adjourn the Confirmation Hearing with respect to any one or more of the Debtors, the Debtors reserve the right to proceed with confirmation of the Plan with respect to those Debtors in relation to which the Confirmation Hearing has not been adjourned. With respect to those Debtors with respect to which the Confirmation Hearing has been adjourned, the Debtors reserve the right to amend, modify, revoke or withdraw the Plan and/or submit any new plan of reorganization at such times and in such manner as they consider appropriate, subject to the provisions of the Bankruptcy Code.

## 17.17. Setoff Rights.

In the event that any Debtor has a Claim of any nature whatsoever against the holder of a Claim against such Debtor, then such Debtor may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) such Debtor's Claim against such holder, subject to the provisions of sections 553, 556 and 560 of the Bankruptcy Code; provided, however, that the TPA Claim shall be governed by the TPA Order with respect to the foregoing and that nothing herein shall constitute a waiver of Southern Company's setoff rights set forth in section 9.15 of the Tax Indemnification Agreement (by and between Mirant and Southern Company); provided, further, that this Section 17.17 is subject to the California Settlement Agreement and the Debtors may not effectuate a setoff in violation thereof. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that any Debtor may have against the holder of any Claim.

## 17.18. Compliance with Tax Requirements.

In connection with the Plan, the Debtors, the Disbursing Agent, and the Plan Trustees, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Equity Interest that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Plan Distribution. The Disbursing Agent has the right, but not the obligation, to not make a

Plan Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

## 17.19. Rates.

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

## 17.20. Injunctions.

(a)     **On the Effective Date and _except_ as otherwise provided herein, all Persons and Entities who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting New Mirant and its Affiliates, the Debtors, Protected Persons, the Estates, the Assets, or the Disbursing Agent, or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and property with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan):**

    (i)     **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (_including_, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);**

    (ii)     **enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;**

    (iii)     **creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and**

    (iv)     **asserting any setoff, right of subrogation or recoupment of any kind; _provided_, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 17.17.**

(b)     **The foregoing provision shall not apply to holders of Allowed MAG Long-term Note Claims with respect to their legal, equitable and contractual rights, and personal Causes of Action against MAG, MAG's Assets and any of MAG's current or former managers, officers, employees, agents and professionals.**

## 17.21. Binding Effect.

The Plan shall be binding upon New Mirant and its Affiliates, the Debtors, the holders of all Claims and Equity Interests, parties in interest, Persons and Entities and their respective successors and assigns. To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

MIAMI 623421 v4 (2K)

**17.22.** <u>Severability</u>.

IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE DEBTORS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 17.15 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR EQUITY INTEREST OR TRANSACTION; <u>PROVIDED</u> THAT THE DEBTORS MAY NOT MODIFY THE PLAN TO SEVER ANY PROVISION OF THE CALIFORNIA SETTLEMENT AGREEMENT FROM ANOTHER. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN. NOTHING HEREIN SHALL PERMIT THE DEBTORS TO SEVER THE PROVISIONS OF THE CALIFORNIA SETTLEMENT AGREEMENT OR ANY IMPLEMENTING AGREEMENTS RELATED THERETO.

**17.23.** <u>Committees' Consultation and Agreement</u>.

The Debtors shall not:

(a)    file any Plan Document pursuant to Section 1.5 (<u>including</u>, without limitation, the Confirmation Order);

(b)    agree to the form of, amend or modify the Confirmation Order, the Plan or any Plan Document;

(c)    waive any condition referenced in Section 12.3; nor

(d)    revoke or withdraw the Plan or adjourn the Confirmation Hearing pursuant to Section 17.16,

without prior consultation with each of the Committees and <u>provided</u> that if any such proposed action would have a material adverse impact on the rights and interests of the creditors of the Mirant Debtors, the creditors of the MAG Debtors or the holders of Equity Interests in Mirant, then such action shall not be taken without the prior consent of the Committee representing the adversely impacted creditors or equity holders (acting reasonably and in good faith).

**17.24.** <u>Global Settlement Of Certain Recoveries</u>.

The Plan's treatment of the MAG Debtor Class 5 – Unsecured Claims, MAG Debtor Class 6 – MAG Long-term Note Claims, MAG Debtor Class 8 – Equity Interests, Mirant Debtor Class 3 – Unsecured Claims, and Mirant Debtor Class 5 – Equity Interests and the resolution of inter-Debtor Claims and related matters, represent elements of a global settlement and compromise that has been reached among the Debtors, the Committees and Phoenix. This settlement provides benefit to all parties in interest in these Chapter 11 Cases by allowing confirmation of the Plan to proceed and reducing the costs and uncertainty of litigation

concerning the Plan and related issues. All of the elements of the recoveries, including, in particular, the Designated Net Litigation Distributions, constitute critical elements of the parties' settlement. As a consequence, the parties' global settlement constitutes a resolution of disputed issues and may not be treated as an admission by the parties as to any issue, including, without limitation, the percentage recovery by any class of creditor or equity holder under the Plan.

## 17.25. No Admissions.

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, MIRANT OR ANY OF ITS SUBSIDIARIES AND AFFILIATES, AS DEBTORS AND DEBTORS-IN-POSSESSION IN THESE CHAPTER 11 CASES.**

## 17.26. Potential Exclusion of Mirant NY-Gen from Plan.

Pending the Debtors' resolution of certain potential claims and liabilities associated with the Swinging Bridge, Mongaup Falls and Rio hydroelectric projects owned by Mirant NY-Gen, LLC ("Mirant NY-Gen"), on terms and conditions acceptable to the Debtors, the Debtors reserve the right to amend the Plan to (i) treat Mirant NY-Gen separately from the MAG Debtors and (ii) adjourn the Confirmation Hearing in respect of the Plan as to Mirant NY-Gen until further notice or order of the Bankruptcy Court. If this occurs, the Confirmation Order shall (i) authorize New Mirant or its subsidiaries to operate the business of and provide debtor-in-possession financing, protected to the fullest extent permitted under sections 364(c) and (d) of the Bankruptcy Code, to Mirant NY-Gen, and (ii) provide an extension of the periods in which Mirant NY-Gen possesses the exclusive right to file a plan of reorganization and solicit acceptances thereto for an additional 180 days without prejudice to the rights of Mirant NY-Gen to seek additional extensions or the rights of parties in interest to seek to shorten or terminate such exclusive periods. Such amendment would be without prejudice to Mirant NY-Gen to further amend, modify or revoke the Plan and/or submit any new plan of reorganization as it relates to Mirant NY-Gen.

MIAMI 623421 v4 (2K)

Dated:  December 9, 2005

Respectfully submitted,

**Mirant Corporation**

By:_____/s/_____
Name:M. Michele Burns
Title:  Executive Vice President, Chief Financial
Officer and Chief Restructuring Officer

**Mirant Americas Energy Capital, LP**

**By:    Mirant Americas Development, Inc., its
general partner**

By:_____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Energy Capital Assets, LLC**

By:_____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Wrightsville Investments, Inc.**

By:_____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Wrightsville Management, Inc.**

By:_____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

59

**Wrightsville Power Facility, L.L.C.**

**By:  Mirant Wrightsville Management, Inc., its member and sole manager**

By:_____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Wrightsville Development Funding, L.L.C.**

**By:  Mirant Wrightsville Management, Inc., its member and sole manager**

By:_____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant EcoElectrica Investments I, Ltd.**

**By:  Mirant Caribbean, Inc., its sole member**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Puerto Rico Power Investments, Ltd.**

**By:  Mirant Caribbean, Inc., its member**

By: _____/s/_____
Name: J. William Holden III
Title: Vice President

**By:  Mirant South America and Caribbean Finance, Ltd., its member**

By: _____/s/_____
Name: Pedro Cherry
Title: Vice President

MIAMI 623421 v4 (2K)

**Mirant Sugar Creek, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Portage County, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Zeeland, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Wyandotte, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Peaker, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Gastonia, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Mid-Atlantic Services, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

MIAMI 623421 v4 (2K)

**Mirant New England, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Potomac River, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Michigan Investments, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Sugar Creek Ventures, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Texas Investments, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Vice President

**Mirant Las Vegas, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Dickerson Development, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

62

**Mirant Wichita Falls, LP**

By: **Mirant Wichita Falls Management, Inc., its general partner**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Wichita Falls Management, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Wichita Falls Investments, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Vice President

**Shady Hills Power Company, L.L.C.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**West Georgia Generating Company, L.L.C.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Special Procurement, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Parker, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

MIAMI 623421 v4 (2K)

**Mirant MD Ash Management, LLC**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Fund 2001, LLC**

**By:  Mirant Capital Management, LLC, its manager**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Services, LLC**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant NY-Gen, LLC**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Texas Management, Inc.**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Lovett, LLC**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Piney Point, LLC**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

64

**Mirant Sugar Creek Holdings, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Texas, LP**

**By:  Mirant Texas Management, Inc., its
general partner**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Kendall, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Intellectual Asset Management and
Marketing, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Potrero, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant New York, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

MIAMI 623421 v4 (2K)

**Mirant Americas Retail Energy Marketing, LP**

**By:** **Mirant Americas Development, Inc., its general partner**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President and Chief Financial
    Officer

**Mirant Americas Gas Marketing VIII, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Gas Marketing IX, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Gas Marketing X, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Gas Marketing VI, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Gas Marketing V, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Gas Marketing VII, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

66

**Mirant Americas Gas Marketing III, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Gas Marketing XI, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Gas Marketing I, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Energy Marketing, LP**

**By:     Mirant Americas Development, Inc., its general partner**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Development Capital, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**MLW Development, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Production Company**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

67

**Mirant Americas Development, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President and Chief Financial
      Officer

**Mirant Americas Energy Marketing Investments, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President and Chief Financial
      Officer

**Mirant Americas Gas Marketing II, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Chalk Point, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant California, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant California Investments, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

68

**Mirant Canal, LLC**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Central Texas, LP**

**By:   Mirant Texas Management, Inc., its general partner**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Danville, LLC**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Bowline, LLC**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Hudson Valley Gas Corporation**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Generation, LLC**

By: _____/s/_____
Name: J. William Holden III
Title:  Sr. Vice President and Chief Financial
           Officer

**Mint Farm Generation, LLC**

By: _____/s/_____
Name: J. William Holden III
Title: Sr. Vice President

69

**Mirant Americas Gas Marketing XII, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant D.C. O&M, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Mid-Atlantic, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President and Chief Financial
      Officer

**Mirant Capital, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Vice President

**Mirant Chalk Point Development, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Capital Management, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Gas Marketing XV, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

70

**Mirant Americas Gas Marketing XIV, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Gas Marketing XIII, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Procurement, Inc.**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Americas Gas Marketing IV, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Mirant Delta, LLC**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President

**Newco 2005 Corporation**

By: _____ /s/ _____
Name: J. William Holden III
Title: Sr. Vice President