# EXHIBIT D

# MAI SERIES A & B PREFERRED SHARES

# EXHIBIT "D"

## MIRANT AMERICAS, INC.
### Series A Preferred Shares

| | |
|---|---|
| Issuer | Mirant Americas, Inc. ("MAI") |
| Liquidation Preference | $265.0 million |
| Issue | Series A preferred shares with par value of $0.001 per share (the "Series A Preferred Shares"). |
| Dividends | None |
| Mandatory Redemption | Subject to the deferral described below, Series A Preferred Shares shall be called for redemption by MAI on June 30 of each year indicated below (each such June 30, a "Scheduled Redemption Date") at a price equal to the portion of the Liquidation Preference set forth in the following table (the "Specified Redemption Amount"): |

| Year | Amount |
|---|---|
| 2007 | $5,000,000 |
| 2008 | $31,000,000 |
| 2009 | $84,000,000 |
| 2010 | $95,000,000 |
| 2011 | $50,000,000 |

The redemption of any Series A Preferred Shares on any Scheduled Redemption Date shall be deferred to the extent that MIRMA has not incurred prior to the Scheduled Redemption Date, does not reasonably expect to incur within 180 days of such Scheduled Redemption Date, expenditures with respect to the installation of control technology relating to environmental capital expenditures of facilities owned or leased by MIRMA (the "Required Use"). Any amounts so deferred shall be added to the amount of Series A Preferred Shares to be redeemed on the next Scheduled Redemption Date.

2

| | |
|---|---|
| | The outstanding balance of Series A Preferred Shares, if any, shall be redeemed by MAI on December 31, 2020 at a price equal to the par value of the outstanding Series A Preferred Shares. |
| Use of Proceeds............................................ | MIRMA shall apply the proceeds of any redemption of the Series A Preferred Shares to fund the installation of control technology relating to environmental capital expenditures at facilities owned or leased by MIRMA within 180 days of any such redemption, including the reimbursement of previously incurred costs. |
| Put Right to [New Mirant]............................ | Pursuant to an agreement with New Mirant (the "Series A Put Agreement"), MIRMA will have the right (the "Put Right") to put the Series A Preferred Shares to New Mirant at an amount equal to the Specified Redemption Amount in the event that MAI fails to redeem the Series A Preferred Shares on a Scheduled Redemption Date. |
| Release of Obligations Under Put Right....... | New Mirant shall be released from its obligations under the Series A Put Agreement upon the assumption thereof by a substitute obligor; *provided* that such substitute obligor shall either (a) have a credit rating of at least BBB-/Baa3 or an equivalent rating by a nationally recognized ratings agency or (b) secure its obligations under the Series A Put Agreement with assets with a fair market value of equal or greater than 110% of an amount equal to the Liquidation Preference of the Series A Preferred Shares that have not been redeemed (as determined by an investment bank or appraiser of national reputation). |
| | New Mirant or any substitute obligor shall be released from its obligations under the Series A Put Agreement if New Mirant or the substitute obligor, as the case may be, deposits with a trustee in a collateral account for the benefit of MIRMA cash in U.S. dollars or government securities, or a |

| | |
|---|---|
| | combination thereof, in amounts equal to the Liquidation Preference (a "<u>Security Release</u>"). |
| Series A Put Agreement Covenants.............. | Under the Series A Put Agreement, New Mirant shall be restricted from (a) incurring, except in certain circumstances, indebtedness, as provided herein, and (b) paying any dividends or making distributions on, or redeem or repurchase, any New Mirant Common Stock except in certain circumstances, as provided herein. |

MIAMI 623421 v4 (2K)

# MIRANT AMERICAS, INC.
## Series B Preferred Shares

| | |
|---|---|
| Issuer............................................................ | Mirant Americas, Inc. ("MAI") |
| Liquidation Preference.................................. | $150.0 million |
| Issue............................................................. | Series B preferred shares with par value of $0.001 per share (the "Series B Preferred Shares") |
| Dividends..................................................... | None |
| Mandatory Redemption ................................ | April 1, 2011 |
| Put Right to New Mirant............................... | Pursuant to an agreement with New Mirant (the "Series B Put Agreement"), Mirant Americas Generation, LLC will have the right (the "Put Right"), at any time after June 30, 2010, to require New Mirant to purchase the Series B Preferred Shares at an amount equal to the Liquidation Preference. |
| Release of Obligations Under Put Right........ | New Mirant shall be released from its obligations under the Series B Put Agreement upon the assumption thereof by a substitute obligor; *provided* that such substitute obligor shall either: (a) have a credit rating of at least BBB-/Baa3 or an equivalent rating by a nationally recognized ratings agency or (b) secure its obligations under the Series B Put Agreement with assets with a fair market value of equal or greater than 110% of an amount equal to the Liquidation Preference (as determined by an investment bank or appraiser of national reputation). |
| | New Mirant or any substitute obligor shall be released from its obligations under the Series B Put Agreement if New Mirant or the substitute obligor, as the case may be, deposits with a trustee in a collateral account for the benefit of New MAG Holdco cash in U.S. dollars or government securities, or a combination thereof, in amounts equal to the Liquidation Preference |

MIAMI 623421 v4 (2K)

| | |
|---|---|
| | (a "Security Release"). |
| Series B Put Agreement Covenants.............. | Under the Series B Put Agreement, New Mirant shall be restricted from (a) incurring, except in certain circumstances, indebtedness, as provided in herein, and (b) paying any dividends or making distributions on, or redeem or repurchase, any New Mirant Common Stock except in certain circumstances, as provided herein. |

MIAMI 623421 v4 (2K)

# Covenants for MAI Series A & B Preferred Shares

Limitation on the Incurrence of Debt. New Mirant shall not, and shall not permit any of its consolidated subsidiaries, other than Mirant Americas Generation, LLC and its consolidated subsidiaries (collectively referred to as "Consolidated MAG"), to incur any Debt, other than Permitted Debt; *provided, however,* that New Mirant and its consolidated subsidiaries may incur Debt if the Consolidated Debt to Consolidated Capital of New Mirant, at its most recently ended full fiscal quarter for which internal financial statements are available, immediately preceding the date on which such Debt is incurred, would have been not more than 0.6 to 1.0, determined on a pro forma basis as if the additional Debt had been incurred on the last day of such fiscal quarter.

*"Consolidated Capital"* means the sum of Consolidated Debt plus Consolidated Net Worth.

*"Consolidated Debt"* means the aggregate principal amount of Debt of New Mirant and its consolidated subsidiaries at such time outstanding <u>excluding</u> the Debt of Consolidated MAG.

*"Consolidated Net Worth"* means the consolidated capital stock and other equity accounts (including retained earnings and paid in capital) of a Person *provided* that for purposes of calculating the Consolidated Net Worth of New Mirant such amount shall exclude the Consolidated Net Worth of Consolidated MAG to the extent such amount does not exceed zero.

*"Debt"* means, with respect to any Person, any obligations of such Person: (a) in respect of borrowed money; (b) evidenced by bonds, notes, debentures or similar instruments, factoring (other than on a non-recourse basis) or thirty days after the drawing thereof, reimbursement agreements in respect of drawn Letters of Credit; (c) in respect of banker's acceptances; (d) in respect of the amount of the liability in respect of a capital lease of such Person that would at that time be required to be capitalized on a balance sheet of such Person; and (e) in respect of the balance deferred and unpaid of the purchase price of any property or services, except any such balance that constitutes an accrued expense or trade payable in the ordinary course of business, in each case, if and to the extent any of the preceding items would appear as a liability upon the balance sheet of the specified Person. In addition, Debt of a Person includes, to the extent not otherwise included, a guarantee by such Person of any Debt of any other Person.

*"Permitted Debt"* means

(a) Debt existing on the date of the Series A Put Agreement and the Series B Put Agreement;

(b) Debt incurred in connection with a Security Release;

(c) Project Finance Debt;

(d) Debt incurred to finance (i) environmental capital expenditures and (ii) other capital expenditures made to comply with applicable law and regulation;

7

(e) intercompany Debt incurred by New Mirant or its consolidated subsidiaries between or among New Mirant and its consolidated subsidiaries provided, that with respect to intercompany Debt incurred by New Mirant that such intercompany Debt is subordinated to the obligations under the Put Agreements;

(f) the guarantee by New Mirant or any of its consolidated subsidiaries of Debt of New Mirant or any of its consolidated subsidiaries that was otherwise permitted to be incurred;

(g) Debt incurred in exchange for, or the net proceeds of which are used to extend, refinance, renew, replace, defease or refund other Debt of New Mirant or any of its consolidated subsidiaries that was otherwise permitted to be incurred (other than intercompany Debt permitted under clause (e) of this definition); *provided* that the amount of such Debt does not exceed the amount of the Debt so extended, refinanced, renewed, replaced, defeased or refunded, plus all accrued and unpaid interest thereon and the amount of any premium necessary to accomplish such refinancing and any expenses incurred in connection therewith ("Permitted Refinancing Debt");

(h) additional Debt in an aggregate amount at any time outstanding, <u>excluding</u> all Permitted Refinancing Debt incurred to refund, refinance or replace any Debt incurred pursuant to this clause (h), not to exceed $200.0 million; and

(i) Debt arising from the honoring by a bank or other financial institution of a check, draft or similar instrument drawn against insufficient funds in the ordinary course of business;

*"Project Finance Debt"* means Debt (not exceeding the cost of the acquisition, construction or creation of the relevant asset or project) of any subsidiary incurred or existing in connection with the financing or refinancing of any asset or project, the repayment of which Debt is to be made from the revenues arising out of, or other proceeds of realization from, the acquired or created asset or project, with recourse to those revenues and proceeds and assets forming the subject matter of such asset or project (including, without limitation, insurance, contracts and shares or other rights of ownership in the entity(ies) which own the relevant assets or project) and other assets ancillary thereto but without substantial recourse to any other asset or otherwise to New Mirant or its subsidiary; provided that substantial recourse shall not be deemed to exist by reason of normal and customary sponsor support arrangements.

<u>Restricted Payments</u>. New Mirant shall not, and shall not permit any of its consolidated subsidiaries to (a) declare or pay any dividend or make any other distribution on account of any shares of any class of capital stock of New Mirant or any of its consolidated subsidiaries, other than (x) dividends or distributions payable in Equity Interests of New Mirant or any of its consolidated subsidiaries and (y) dividends or distributions payable to New Mirant or any consolidated subsidiary thereof, (b) make any payments with respect to Affiliate Subordinated Debt or redeem or repurchase any Affiliate Subordinated Debt or (c) purchase, redeem or otherwise acquire for value any Equity Interests of New Mirant or any consolidated subsidiary thereof from a Person other than New Mirant or any consolidated subsidiary thereof (all such

payments and other actions set forth in clauses (a) through (c) above being collectively referred to as "Restricted Payments"), unless, at the time and after giving effect to such Restricted Payment:

    (a)    no default under the terms of the Series A/Series B Put Agreement shall have occurred and be continuing or would occur as a consequence thereof; and

    (b)    with respect to a Restricted Payment by New Mirant or its consolidated subsidiaries, New Mirant would have had, at the end of New Mirant's most recently ended full fiscal quarter for which internal financial statements are available immediately preceding the date on which such Restricted Payment is made, and after giving pro forma effect thereto as if such Restricted Payment has been made at the end of such fiscal quarter, a Tangible Net Worth in excess of an amount equal to 200% of the aggregate outstanding liquidation preferences under the MAI Series A Preferred Shares and the MAI Series B Preferred Shares.

The preceding provisions will not prohibit:

(a)    the payment of any dividend out of the net cash proceeds of a contribution to the common equity of New Mirant or a substantially concurrent sale of Equity Interests of New Mirant;

(b)    the redemption, repurchase, retirement, defeasance or other acquisition of any Affiliate Subordinated Debt or of any Equity Interests of New Mirant or its consolidated subsidiaries in exchange for, or out of the net cash proceeds of a contribution to the common equity of New Mirant or a substantially concurrent sale of Equity Interests of New Mirant;

(c)    the repurchase, redemption or other acquisition or retirement for value, in whole or in part, of the MAI Series A Preferred Shares or the Series B Preferred Shares or Restricted Payments made in connection with or related to a Security Release;

(d)    the defeasance, redemption, repurchase or other acquisition of Affiliate Subordinated Debt with the net cash proceeds from an incurrence of Permitted Refinancing Debt;

(e)    the repurchase, redemption or other acquisition or retirement for value of any Equity Interests of New Mirant held by any current or former employee or director of New Mirant (or any of its consolidated subsidiaries) pursuant to the terms of any employee equity subscription agreement, stock option agreement or similar agreement entered into in the ordinary course of business;

(f)    the declaration and payment of any dividend by any subsidiary of New Mirant to the holders of any series or class of its Equity Interests on a pro rata basis;

(g)    the repurchase, redemption or other acquisition or retirement for value of any Equity Interests of any subsidiary of New Mirant provided for in an agreement existing on the date of the Series A Put Agreement or the Series B Put Agreement;

(h)     the repurchase, redemption or other acquisition or retirement for value of any Equity Interests of any subsidiary of New Mirant *provided* that the aggregate purchase price paid for all such repurchased, redeemed, acquired or retired Equity Interests shall not exceed $[•] million in any 12-month period; and

(i)     the repurchase of capital stock deemed to occur upon the exercise of options or warrants to the extent that such capital stock represents all or a portion of the exercise price thereof.

*"Affiliate Subordinated Debt"* means Debt of New Mirant which is subordinated to the obligations of New Mirant under the Series A Put Agreement and the Series B Put Agreement and which is owed to or held by an affiliate of New Mirant other than a subsidiary of New Mirant.

*"Consolidated Intangible Assets"* means the intangible assets of New Mirant and its consolidated subsidiaries as set forth on the balance sheet of New Mirant and its consolidated subsidiaries for the most recently ended full fiscal quarter for which internal financial statements are available, immediately preceding the date the date of determination; *provided* that if the aggregate capital stock and other equity accounts (including retained earnings and paid-in capital) of Consolidated MAG as set forth on the balance sheet of Consolidated MAG for such period exceed the intangible assets of Consolidated MAG on such balance sheet, then the intangible assets of Consolidated MAG shall be excluded from Consolidated Intangible Assets.

*"Equity Interests"* means capital stock and all warrants, options or other rights to acquire capital stock (but <u>excluding</u> any debt security that is convertible into, or exchangeable for, capital stock).

*"Tangible Net Worth"* means, as of the date of determination, (a) the consolidated aggregate capital stock and other equity accounts (including retained earnings and paid-in capital) of New Mirant less (b) Consolidated Intangible Assets as set forth on the balance sheet of New Mirant and its consolidated subsidiaries for the most recently ended full fiscal quarter for which internal financial statements are available, immediately preceding the date the date of determination; *provided, however,* that to the extent that the intangible assets of Consolidated MAG for such period exceed the aggregate capital stock and other equity accounts (including retained earnings and paid-in capital) of Consolidated MAG for such period, the aggregate capital stock and other equity accounts (including retained earnings and paid in capital) of Consolidated MAG shall be excluded from clause (a).

MIAMI 623421 v4 (2K)