# EXHIBIT FOUR

## Exhibit Four

### Additional Cure Obligations

1. Alternative Rent (as defined in the Leases), due and owing pursuant to Section 3.4 of the Facility Leases due to a Reporting Cessation by MIRMA, which such obligation was confirmed by Opinion and Order of Judge Lynn, dated September 15, 2004. The amount of such outstanding obligation includes the Alternative Rent for the period from July 1, 2005 through July 25, 2005 (total of $332,231.98). Such amounts remain subject to final resolution by the parties or the Bankruptcy Court.

2. Interest, at the Overdue Rate, on unpaid Alternative Rent due and owing as of December 3

3. 0, 2003 and June 30, 2004, which were not delivered to the Trustee until December 29, 2004 (total of $363,835.02). Such amounts remain subject to final resolution by the parties or the Bankruptcy Court.

4. A reinstatement of Letters of Credit to cure breach of requirement to provide "Qualifying Credit Support" pursuant to §17(d) of the Leases and §5.13 of the Participation Agreement. The Indenture Trustee shall return to MIRMA any and all cash collateral held upon reinstatement of the Letters of Credit.

5. Officer's Certificate stating that insurance policies required to be maintained under section 11.4 of the Leases and Section 5.12 of the Participation Agreements have been maintained.

6. Officer's Certificate as required by §5.2 of the Participation Agreement that there are no other existing defaults, upon assumption of the MIRMA Leases in accordance herewith.

## Exhibit "2"

## Existing Security Interests, Liens, Charges, Claims, Encumbrances and Interests to be Discharged Pursuant to the Confirmation Order

### Mirant Kendall, LLC

1. Notice of Contract in favor of United Steel Structures, Inc., dated January 11, 2002, recorded January 11, 2002 as Instrument 1109 at Book 34552, Page 367, with the Middlesex South (Massachusetts) District Registry of Deeds.

2. Notice of Contract in favor of Brand Scaffold Rental & Erection, Inc., with respect to a written contract dated May 20, 2002, recorded May 30, 2002 at Book 35566, Page 368, with the Middlesex South (Massachusetts) District Registry of Deeds.

3. Notice of Contract in favor of Brand Scaffold Rental & Erection, Inc., with respect to a written contract dated February 15, 2002, recorded May 30, 2002 at Book 35566, Page 369, with the Middlesex South (Massachusetts) District Registry of Deeds.

4. Notice of Contract in favor of Brand Scaffold Rental & Erection, Inc., with respect to a written contract dated January 3, 2002, recorded December 2, 2002 at Book 37212, Page 488, with the Middlesex South (Massachusetts) District Registry of Deeds.

5. Notice of Contract in favor of Harding and Smith, with respect to a contract dated October 10, 2000, recorded June 19, 2002 at Book 35708, Page 578, as affected by Statement of Account, recorded September 17, 2002 at Book 36426, Page 504, as affected by notice of a complaint, brought by St. Paul Mercury Insurance Company, as subrogee and assignee against Mirant Kendall, LLC, among others, Middlesex Superior Court CA No. 02-5195, recorded at Book 37534, Page 192 with the Middlesex South (Massachusetts) District Registry of Deeds.

6. Notice of Contract in favor of Mass. Electric Construction Company, with respect to a written contract dated November 5, 2000, recorded November 15, 2002 at Book 37050, Page 198.

### Mirant Texas, L.P.

1. Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated November 5, 2003, by Mirant Texas, LP, a Delaware limited partnership (f/k/a SEI Texas, L.P.), as trustor to Fidelity National Title Insurance Company, as trustee, securing the payment of one note in the principal sum of $500,000,000.00 as therein described in favor of General Electric Capital Corporation; said Deed of Trust is filed for record in Volume 549, Page 316, Official Public Records of Bosque County, Texas.

2. Affidavit of Claim of Mechanic's and Materialman's Lien dated June 3, 2004 by David A. White, Claimant, on behalf of Sempco Surveying, Inc. for non-payment of survey, recorded in Volume 566, Page 655, Official Public Records of Bosque County, Texas.

**Mirant Potrero, LLC**

1. APN: Lot 1, Block 4232
   Default No. / Date: 04-2890 / 6/30/04
   Amt. to redeem: $5,974.05 (10/31), $6,048.11 (11/30)

2. APN: Lot 7, Block 4232
   Default No. / Date: 04-28292 / 6/30/04
   Amt. to redeem: $28,180.62 (10/31), $28,529.97 (11/30)

3. APN: Lot 8, Block 4232
   Default No. / Date: 04-2893 / 6/30/04
   Amt. to redeem: $28,200.55 (10/31), $28,550.14 (11/30)

4. APN: Lot 9, Block 4232
   Default No. / Date: 04-02894 / 6/30/04
   Amt. to redeem: $28,215.68 (10/31), $28,566.47 (11/30)

5. APN: Lot 1, Block 4240
   Default No. / Date: 04-2896 / 6/30/04
   Amt. to redeem: $6,124.51 (10/31), $6,200.44 (11/30)

6. APN: Lot 1, Block 4239
   Default No. / Date: 04-02895 / 6/30/04
   Amt. to redeem: $6,124.51 (10/31), $6,200.44 (11/30)

7. APN: Lot 2, Block 4175
   Default No. / Date: 04-02888 / 6/30/04
   Amt. to redeem: $11,194.90 (10/31), $11,333.68 (11/30)

**Mirant Zeeland, LLC**

1. Mortgage for $56,200,000 dated November 5, 2003 in favor of General Electric Capital Corporation by Mirant Zeeland, LLC (f/k/a SE1 Michigan, LLC) recorded November 7, 2003 in the Official Public Record of Ottawa County, Michigan under Liber 4329, Page 776.

**Mirant Delta, LLC**

1. Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated November 5, 2003 by Mirant Delta, LLC, a Delaware limited liability company (f/k/a Southern Energy Delta, LLC), as trustor to Fidelity National Title Insurance Company, as trustee, securing the payment of one note in the

principal sum of $500,000,000.00 as therein described in favor of General Electric Capital Corporation; said Deed of Trust is filed for record in the Official Records of Contra Costa County, California, Instrument No. 2003-561017

# Exhibit "3"

# MIRMA Lease Plan Treatment

# Dated November 30, 2005

On September 30, 2005, after notice and hearing, the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, issued an order pursuant to section 1125 of the Bankruptcy Code approving the Second Amended Disclosure Statement (the "Disclosure Statement") relating to the Second Amended Joint Chapter 11 Plan of Reorganization (the "Plan") of Mirant Corporation ("Mirant") and its affiliated debtors and debtors-in-possession (together with Mirant, the "Debtors"). Capitalized terms used but not defined herein shall have the meanings provided for in the Plan.

As a result of negotiations among the Debtors, the MIRMA Owner/Lessors and the MIRMA Indenture Trustee, the Debtors have proposed an alternate treatment ("Proposed Treatment") for the MIRMA Leases that the Debtors believe is more favorable to the MIRMA Owner/Lessors and the holders of the Pass-Through Certificates (as defined in the Disclosure Statement) than the treatment contained in Section 14.6 of the Plan.

**Interpretations;**
**Acknowledgements:** The Debtors contend that certain contractual provisions contained in the Operative Documents (as defined in the MIRMA Leases) are subject to uncertain meaning or are otherwise in dispute. To avoid the costs and uncertainty of continued perpetuation of such situation, including in regards to potential litigation regarding the appropriate interpretation of such contractual provisions, it is intended that the Bankruptcy Court will confirm, in connection with the assumption of the MIRMA Leases, that the interpretation and meaning of such provisions are as set forth below.

Exhibit One sets forth the interpretations to specified provisions of the Operative Documents. Exhibit Two (which will be submitted to the Bankruptcy Court in connection with approval of the terms hereof) sets forth the Fixed Charge Coverage Ratio calculations as of June 30, 2005, incorporating the interpretations set forth in Exhibit One. Conforming clarification to Exhibit GG to the Participation Agreement (and elsewhere as appropriate) will be ordered to be made to the extent appropriate to give effect to Exhibit One and the other terms of this Agreement.

**Consent**
**Decree:** The Owner Lessors shall not oppose a Consent Decree that is consistent with the definition thereof set forth below:

For purposes hereof, the "Consent Decree" shall mean an agreement or settlement with the DOJ, the EPA, and the

environmental agencies of the respective states of Virginia and Maryland with respect to NOx emissions, either in the form of a consent decree or otherwise, the terms of which shall include (i) representations that MIRMA wholly owns Mirant Chalk Point LLC, and the real estate on which the Morgantown and Dickerson facilities are located, and occupies and operates the Morgantown and Dickerson facilities pursuant to facility lease agreements, dated December 19, 2000, with a consortium of owner/lessors; (ii) with respect to the Morgantown and Dickerson leased facilities, NOx emissions rate and NOx tonnage limits and other terms and conditions that affect the operation or ownership of the leased facilities that are no more restrictive than those contained in the Consent Decree dated September 24, 2004; (iii) combined NOx emissions limitations for the MIRMA facilities permitting the operation of such facilities consistent with the historical operations after taking into account planned and other commercially reasonable capital expenditures and the installation of two SCRs at Morgantown on or before May 1, 2007 and May 1, 2008, respectively, with equipment specifications and warranties as previously disclosed to the Owner Lessors; (iv) that, in the event of a separation from the other MIRMA facilities, the Morgantown and Dickerson leased facilities together or individually shall have NOx emissions limitations permitting the operation of such facilities at commercially desirable outputs after taking into account market conditions, planned and other commercially reasonable capital expenditures and, in the event of an individual separation, Morgantown, for the period covered by the current NOx emissions allocations, would not be required to purchase NOx emissions credits in excess of the NOx emissions allocations for such facility existing on the date hereof, and (v) in the event of a separation from the other MIRMA facilities, the loss of the ability of the operator of the Morgantown and/or Dickerson facilities to claim emissions credits shall only apply to NOx.

**Restriction On Additional Lessor Notes:** Section 12.1(a)(viii) of the Participation Agreement(s) shall be amended to add a requirement for any Supplemental Financing (as defined in the Participation Agreement) that, in addition to the other requirements of Section 12.1, such will be permitted only if, (i) after giving effect to such Supplemental Financing, either (x) the Facility Lessee (as defined in the Participation Agreements) shall have, at such time, a credit rating of at least BBB- from S&P and Baa3 from Moody's or (y) the Fixed Charge Coverage Ratio (as defined in the Participation Agreements) shall be at least 2.5 to 1 historically (4 quarters) and prospectively (two four quarter

periods) and (ii) the MIRMA/Owner Lessors consent (in their sole and absolute discretion) to any Supplemental Financing.

**Shared Facilities Agreements:**
Obligations under the Shared Facilities Agreement (as defined in the Participation Agreements) shall be (in addition to existing rights) secured by a lien and easement on the assets subject to the Shared Facilities Agreement. Such lien and easement shall be subject in all respects to an easement, reciprocal shared facilities agreement and springing lien each granted in favor of MIRMA providing MIRMA with all use, rights and benefits of the subject assets that exist on the date hereof in the event remedies are exercised with respect to such newly created lien. The liens and easement granted pursuant to this provision shall be at no cost to MIRMA; provided that MIRMA shall seek a waiver of any and all recording and similar taxes pursuant to section 1146(c) of the Bankruptcy Code.

**Contribution of Mirant Potomac River and Mirant Peaker:**
Mirant Corporation shall cause Mirant Peaker and Mirant Potomac River to become wholly owned subsidiaries of Mirant Chalk Point instead of MIRMA as part of the Plan. It is expected that Mirant Peaker will merge into Mirant Chalk Point. Without limiting MIRMA's rights under the Operative Documents, MIRMA agrees to continue to observe all corporate formalities and take other appropriate action(s) to preserve the separate legal identities of it and its subsidiaries, including Mirant Potomac River.

**Contribution of MAI Series A Preferred Shares:**
The MAI Series A Preferred Shares to be issued by MAI – to provide credit support for the installation of control technology relating to SO2 emissions – and related put rights will be issued to MIRMA directly in connection with the consummation of the Plan. The terms of the MAI Series A Preferred Shares shall be consistent with the description thereof included in the Disclosure Statement.

**General And Tax Indemnities:**
The respective general and tax indemnities provided to the MIRMA/Owner Lessors and their affiliates shall be amended (to the extent necessary) to indemnify them in connection with any of the interpretations to the lease documentation contemplated hereby other than for those claims relating to the allocation of rent or the

treatment of or the application of rent payments to the Lessor Notes (as defined in the Participation Agreements). Without limiting the foregoing, such amendment would not expand or reduce the scope of the existing indemnities; provided, however, that the indemnities solely as they relate to the interpretations to the MIRMA Leases documentation contemplated hereby shall be based upon the law existing as at the date hereof.

**Restoration and Other Payments:** MIRMA agrees, subject to Bankruptcy Court approval as being reasonable and appropriate, to pay directly, to each of (i) the Lease Indenture Trustee for the collective benefit of the Pass Through Trust Certificate Holders provided that the Lease Indenture Trustee or the Pass Through Trustee do not oppose implementation of the treatment of the MIRMA transaction as set forth herein or confirmation of the Plan as modified hereby, and (ii) collectively the MIRMA/Owner Lessors an amount equal to $6.5 million for the MIRMA/Owner Lessors and $6.5 million to the Lease Indenture Trustee. Such monies payable to the Lease Indenture Trustee for the benefit of the Pass Through Trust Certificate Holders shall be paid to the Pass Through Trust Certificate Holders, net of interest and distribution costs, pro-rata by outstanding principal balance of such certificates as of December 30, 2005.

The MIRMA/Owner Lessors contend that the post-petition application of payment to the Lessor Notes of rent payments made by MIRMA under the MIRMA Leases has resulted in damages to them, including but not limited to, delays in receiving scheduled equity payments and/or the loss of other consideration due pursuant to the terms of the MIRMA Leases. To remedy this situation, MIRMA agrees, as part of the cure provided for the assumption of the MIRMA Leases and subject to Bankruptcy Court approval as being reasonable and appropriate, to pay to the MIRMA/Owner Lessors an amount not to exceed (provided that the MIRMA Leases are assumed on or before December 30, 2005) $4.9 million (the "Restoration Payment"), subject to the MIRMA/Owner Lessors providing adequate support. To the extent that the Leases are not assumed on or before December 30, 2005, the Restoration Payment may require adjustment.

**Reimbursement of Fees and Expenses:** MIRMA agrees, as part of its cure obligations in connection with the assumption of the MIRMA Leases, to pay, as Supplemental Lease Rent (as defined in the Participation Agreement), all reasonable and documented legal and consulting fees and related

|  |  |
|---|---|
|  | expenses incurred by the MIRMA/Owner Lessors and, provided that the Lease Indenture Trustee and the Pass Through Trustee do not oppose implementation of the treatment of the MIRMA transaction as set forth herein or confirmation of the Plan as modified hereby, the Lease Indenture Trustee and the Pass Through Trustee, in connection with the bankruptcy cases. As of October 31, 2005, such amounts for the MIRMA/Owner Lessors and the Pass Through Trust Certificate Holders are estimated to be approximately $10 million and $11 million, respectively. In addition, provided neither the Lease Indenture Trustee nor the Pass Through Trustee opposes implementation of the treatment of the MIRMA transactions set forth herein or confirmation of the Plan, MIRMA agrees to pay, subject to Bankruptcy Court approval, the reasonable and documented professional fees of the Ad Hoc Committee not to exceed $250,000. The fees of the Lease Indenture Trustee and the Pass Through Trustee referenced in this paragraph shall include a reserve of $250,000 to be paid to the Lease Indenture Trustee and used for its fees and expenses (including those of its agents), including but not limited to, responding to and addressing inquiries or other communications (if any) from any Pass Through Trust Certificate holder regarding the MIRMA Treatment, from and after the Effective Date. Any amounts unused by the Lease Indenture Trustee or the Pass Through Trustee shall be returned to MIRMA on December 30, 2006. MIRMA shall also reimburse, during such period, any reasonable fees and expenses incurred by the Lease Indenture Trustee or the Pass Through Trustee in excess of the reserve. |
| **Treatment of Payments:** | All amounts paid by MIRMA with respect to Settlement Fees, Reimbursement of Fees or the Restoration Payment shall not be construed as Fixed Charges (as defined in the Participation Agreements) and shall not be considered as part of the definition of the Fixed Charge Coverage Ratio. |
| **Additional Information & Reporting Requirements:** | In addition to the financial information required to be delivered by MIRMA under the terms of Section 5.1 of the Participation Agreements, on a quarterly basis MIRMA shall provide the MIRMA/Owner Lessors with operating information specified in Exhibit Three. During the continuance of a Lease Indenture Event of Default (as defined in the Participation Agreements), MIRMA shall provide such operating information to the Lease Indenture Trustee concurrently with delivery to the MIRMA/Owner Lessors (subject to appropriate confidentiality). |

| | |
|---|---|
| **Existing Terms Remain Unchanged:** | Except as otherwise set forth herein and as described in <u>Exhibit One</u> attached hereto, upon assumption of the MIRMA Leases, all existing terms and conditions of the Operative Documents shall remain unchanged and enforceable and the existing provisions of Section 14.6 of the Plan shall be null and void except for Sections 14.6(a)(i) and 14.6(b)(i) and (ii), which shall remain. |
| **Cures:** | Subject to satisfaction of the conditions set forth in this Agreement and as otherwise set forth on the Cure Exhibit, which is annexed hereto as Exhibit Four, no other breach or default requiring cure or any other condition exists to the assumption of any of the Leases pursuant to section 365 of the Bankruptcy Code under any of the Operative Documents. As indicated on the Cure Exhibit, it is understood that certain items remain subject to final resolution by parties or the Bankruptcy Court. |
| **PTC Rating:** | MIRMA will use commercially reasonable efforts to seek to have the Certificates rated by S&P and Moody's at the same time the notes issued by New MAG Holdco are rated and shall thereafter use commercially reasonable efforts to seek to maintain such rating by S&P and Moody's at all times by taking appropriate measures, including paying the annual fees owed to such rating agencies. |
| **Additional Credit Support:** | Standby Letters of Credit pursuant to Section 5.13 of the Participation Agreements shall be maintained pursuant to such Section 5.13, and at any time the Certificates are rated below investment grade by either S&P or Moody's, such Standby Letters of Credit shall be increased to an amount of at least $75 million and shall be maintained at least at that level. |
| **Implementation:** | Implementation of the terms hereof (together with cure of defaults as set forth herein) shall constitute a settlement of all disputes between MIRMA and each of the MIRMA/Owner Lessors, the Pass Through Trustee and the Lease Indenture Trustee to the extent that each does not object to such implementation. |
| | Implementation of the terms hereof is subject to (i) the consent of the Owner Lessors, and (ii) an order of the Bankruptcy Court ordering and approving the terms hereof and the substantial consummation of a plan of reorganization for MIRMA that is materially consistent with the Plan as modified hereby. In the event that Bankruptcy Court approval is not obtained and the Plan |

is not substantially consummated, the provisions hereof shall be null and void and the parties shall be returned to their prior positions and nothing contained herein shall constitute an admission of any of the parties.

In the event that the Lease Indenture Trustee or Pass Through Trustee objects to any provision hereof, MIRMA reserves the right to seek to implement the terms hereof pursuant to MIRMA's plan of reorganization as set forth in the Plan and Disclosure Statement.

The Bankruptcy Court will hear the matters contained in this term sheet in connection with the assumption of the MIRMA Leases as contemplated by the Plan at the confirmation hearing on December 1, 2005. Without prejudice to any rights or defenses of the Debtors, the Bankruptcy Court will entertain an objection to approval of the provisions of this term sheet from a Pass Through Certificate Holder if such objection is filed after November 30, 2005, but before 12 noon Central Standard Time on December 8, 2005. If an objection is interposed, the Bankruptcy Court will hear such objection as early as is practicable on December 9, 2005. If no objection is filed timely, it is anticipated that the Bankruptcy Court will enter the confirmation order on December 8, 2005 and will order that the 10 day stay of the confirmation order provided by Rule 3020(e) of the Bankruptcy Rules will expire at 4:00 p.m. Central Standard Time on December 9, 2005.

The Confirmation Order as it relates to the MIRMA Leases and order approving the terms hereof shall be mutually agreeable to the parties hereto shall contain such findings of fact and conclusions of law as may be reasonably necessary to implement the terms hereof, including an order finding that (i) notice was sufficient, (ii) that existing section 365(b)(2)(A) ipso facto defaults are unenforceable, (iii) all other defaults have been cured, (iv) that rents were allocated and disbursed properly by the Lease Indenture Trustee during the chapter 11 cases, and (v) that the interpretations set forth on Exhibit One are correct constructions of the Operative Documents.

**Miscellaneous:** Subject to the implementation of this Agreement, the MIRMA/Owner Lessors, Owner Participants, the Lease Indenture Trustee and the Pass Through Trustee, to the extent each does not object to the implementation of the terms hereof, shall be added to the parties receiving exculpation under Section 17.4 of the Plan.