

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed June 23, 2006

United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MIRANT CORPORATION, et al., | § | CASE NO. 03-46590-DML-11 |
| | § | (Jointly Administered) |
| Debtors. | § | |

**MEMORANDUM ORDER**

Before the court is the New York Debtors' Motion Pursuant to Bankruptcy Code §§ 105, 361, 363, 364, and Rule 9019 of the Federal Rules of Bankruptcy Procedure for Order Approving Use of Property of the Estate, Adequate Protection, Financing and Settlement between Mirant Bowline, LLC, Mirant Lovett, LLC, Hudson Valley Gas Corporation, Mirant New York, Inc., The Town of Haverstraw, The Haverstraw-Stony Point Central School District, The Village of Haverstraw, The Village of West Haverstraw, The Town of Stony Point and The County of Rockland (the "Motion"), as supplemented, filed by the N.Y. Debtors in these cases.[1] The Motion was intended to resolve disputes respecting ad valorem taxes between the N.Y. Debtors and certain New York State taxing authorities: the Town of Haverstraw ("Haverstraw"),

---

[1] These cases previously involved 84 debtors. For all debtors except those concerned with the Motion, a plan was confirmed in this case on December 9, 2005. As used in this Memorandum Order, "N.Y. Debtors" refers to those Debtors whose chapter 11 cases have not resulted in a confirmed plan. "Debtors" refers to all the Debtors filing in these administratively consolidated proceedings.

Memorandum Opinion - Page 1
G:\ORD-Server\activePDF\Sign\InputFolder\dlynn\44032_320114.doc

the Haverstraw-Stony Point District (the "School District"), the Village of Haverstraw (the "Village"), the Village of West Haverstraw (the "West Village"), the Village of Stony Point ("Stony") and the County of Rockland (the "County" and, together with Haverstraw, the School District, the Village, the West Village and Stony, the "Taxing Authorities"). The tax disputes are the subject of (1) proceedings before the Supreme Court of the State of New York, Dickerson, J. (the State Court Proceedings), and (2) a motion filed by Debtors pursuant to section 505 of the Bankruptcy Code (the "Code")[2] seeking determination by the court of taxes owed (if any) or overpaid by the N.Y. Debtors to, *inter alia*,[3] the Taxing Authorities (the "505 Motion").

By order entered January 9, 2004, this court deferred proceedings on the 505 Motion to allow the parties an opportunity to resolve the N.Y. Debtors' liabilities to the Taxing Authorities in the State Court Proceedings. In accordance with this court's requirements, trial of the State Court Proceedings[4] was commenced by mid-2004. After months of evidentiary hearings, trial was completed but for filing of post-trial briefs. Before submission of all post-trial briefs, the parties asked Justice Dickerson to suspend the State Court Proceedings[5] in order to permit settlement discussions. This court was advised of these developments.

The settlement discussions led to the filing of the Motion. However, between the length of the settlement discussions and the approval process required for the Taxing Authorities, more

---

[2] 11 U.S.C. § 101 *et. seq*. With minor exceptions, the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") are not applicable in Debtors' chapter 11 cases. Thus references to the Code are as it is effective in these cases unless otherwise indicated.

[3] Other taxing authorities than the Taxing Authorities were involved in disputes with the N.Y. Debtors, but these other disputes have previously been resolved.

[4] The State Court Proceedings involve separate cases addressing generation plants of the N.Y. Debtors known as "Lovett" and "Bowline." It is unnecessary for purposes of this memorandum order to distinguish between Lovett and Bowline (except as specifically indicated below) or to describe the different State Court Proceedings respecting each.

[5] The court does not intend by use of this language to characterize, other than for convenience, the status of the State Court Proceedings.

than a year passed between suspension of the State Court Proceedings and the filing of the Motion. By the time of the filing of the Motion, the only remaining significant piece of these chapter 11 cases was the dispute between Debtors and the Taxing Authorities.

Prior to or since the filing of the Motion, all of the Taxing Authorities other than Stony approved the settlement described in the Motion. Stony, however, voted not to agree to the settlement. Moreover, although the County was prepared to proceed with the settlement,[6] all the other Taxing Authorities determined they would not go forward with the settlement contemplated by the Motion absent Stony's joinder. Thus, the Motion is effectively moot.

These chapter 11 cases have now been pending for almost three years. The issues raised in the State Court Proceedings and by the 505 Motion, in fact, predate these cases by many years. In short, the issue of the N.Y. Debtors' obligations to the Taxing Authorities has been around far too long.[7] In order for the N.Y. Debtors to emerge from bankruptcy, these issues must be decided, as settlement of them appears politically impossible.

It is the duty of bankruptcy courts to press reorganization cases under chapter 11 to a prompt conclusion. *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs, Ltd.),* 808 F.2d 363, 373-74 (5th Cir. 1987) (en banc), *aff'd,* 484 U.S. 365 (1988) ("[I]t is the role of the courts to effectuate those provisions of the Bankruptcy Code that congress has already enacted to protect creditors and to reduce delay."); *Public Serv. Co. v. State of New Hampshire (In re Public Serv. Co.)*, 108 B.R. 854, 891 (Bankr. D. N.H. 1989) (opining that Congress, like any experienced bankruptcy professional, recognizes

---

[6] The court has considerable sympathy for the County, which apparently is obligated under New York law to make good taxes not paid by the N.Y. Debtors. The court previously urged Debtors to ameliorate the County's predicament, but the parties were unable to find mutually agreeable means of doing so.

[7] Although Debtors other than N.Y. Debtors have emerged from chapter 11 pursuant to a confirmed plan, the N.Y. Debtors are an important part of Debtors' enterprise. *See In re* Mirant, 334 B.R. 800, 804-5 (Bankr. N.D. Tex. 2005). Thus the continued uncertainty from the pendency of the State Court Proceedings continues to affect Debtors' value and operations.

that "reasonable 'promptness' in resolving a corporate reorganization under chapter 11 is important"); *cf. In re Cassavaugh*, 44 B.R. 726 (Bankr. W.D. Mo. 1984) (dismissing a Chapter 11 petition under § 1112(b)(2) because the debtors had failed to present an acceptable plan within eight months of the petition).

Indeed, in BAPCPA, Congress eliminated the bankruptcy court's discretion to continue a debtor's exclusivity under Code § 1121 for filing a plan. Under the Code as amended by BAPCPA, a multidebtor enterprise may face dismemberment by parties in interest if a plan is not filed within, at the most, 18 months after case commencement. While BAPCPA is not applicable in these chapter 11 cases, the severe limitations it imposes on the length of reorganization cases reinforce the court's conclusion that much more delay in the rehabilitation (or other disposition) of the N.Y. Debtors should not be tolerated.

In the case at bar, the Taxing Authorities cannot confirm a plan without resolving the disputes addressed in the 505 Motion and the State Court Proceedings. Certainly the thrust of applicable case law such as *In re Timbers of Inwood Forest Assocs., Ltd.* and *In re Public Serv. Co.* is that this court should exercise its jurisdiction and authority to ensure the most prompt possible resolution of those disputes.

Because the tax dispute has not been adjudicated in the State Court Proceedings, this court may determine it pursuant to the 505 Motion. Code § 505(a)(2)(A); *see Texas Comptroller of Public Accounts v. Trans State Outdoor Advertising Co. (In re Trans State Outdoor Advertising Co.)*, 140 F.3d 618, 621-22 (5th Cir. 1998) ("[The debtor] could have filed for bankruptcy before the decision of the [state adjudicative body] became final and had his tax liability determined by the bankruptcy court."); *City Vending of Muskogee, Inc. v. Oklahoma Tax Commission*, 898 F.2d 122, 125 (10th Cir. 1990) ("[A] federal court . . . will have jurisdiction

under § 505 to consider state tax issues . . . where the debtor has challenged the assessment through state proceedings which are still pending at the time the bankruptcy petition is filed."); *In re Electronic Theatre Restaurants, Inc.*, 85 B.R. 45, 47 (Bankr. N.D. Ohio 1988); *Lipetzky v. Department of Revenue (In re Lipetzky)*, 64 B.R. 431, 433-34 (Bankr. D. Mont. 1986); *In re Swann Gasoline Co.*, 46 B.R. 640, 641-42 (Bankr. E.D. Pa. 1985). The court continues to prefer that the tax issues be determined in the courts of the State of New York. In the interests of comity, the court has deferred to New York courts in this matter so far. While recognizing that Justice Dickerson has done all possible to press the State Court Proceedings to judgment and that the unnecessary delay in reaching judgment is due solely to the parties (other than, perhaps, the County), and while continuing to hope trial of the 505 Motion (as opposed to the State Court Proceedings) can be avoided, the court concludes it has no option now but to act, regardless of cost or concerns for comity, to force a disposition of issues the parties are unwilling or unable to settle, which, if unresolved, constitute an insuperable bar to conclusion of the N.Y. Debtors' cases.

For these reasons, the court orders and directs as follows:

1. Subject to the further provisions of this memorandum order the 505 Motion will be heard by the court on August 21 and 22, 2006. Evidentiary presentations will be limited to five hours for the N.Y. Debtors (including cross-examination of the N.Y. Debtors' witnesses) and seven hours for the Taxing Authorities (including cross-examination of the Taxing Authorities' witnesses). Oral argument will be limited to one hour for the N.Y. Debtors and one hour for the Taxing Authorities. The Taxing Authorities shall be responsible for allocating their time among themselves.

2. The court adopts, for purposes of the 505 Motion, the evidentiary record of the State Court Proceedings, including all evidentiary rulings therein made by Justice Dickerson. The court will accept for consideration any briefs filed in the State Court Proceedings that address the merits of the 505 Motion. The parties (excluding the County, which shall bear no cost therefor) shall be jointly and severally responsible to provide two hard copies and one copy on compact disc of the entire record (including exhibits) of the State Court Proceedings to this court not later than August 1, 2006.

3. The parties may conduct discovery in preparation for hearing of the 505 Motion. Pursuant to this court's authority under FED. R. BANKR. P. 9006(b), any deadline or notice period pertaining to FED. R. BANKR. P. 7030, 7031, 7033, 7034 and 7036, shall be shortened to ten days and shall exclude allowance for weekends and legal holidays. For example, if, but for Rule 9006(a), responses to requests for admission would be due on July 4, the responses must be filed and served on or before July 4. Filing and service shall be accomplished electronically. FED. R. BANKR. P. 5005(a)(2) and L.B.R. 5005.4. Electronic service shall be supplemented by service by first class mail. Further, pursuant to Rule 9006(b), service shall be deemed (for purposes of calculating times) complete upon confirmation by the served party of receipt of an electronic transmission. Time limits shall not be extended for three days to account for mail service. Parties shall exchange e-mail addresses within three days of the entry of this memorandum order.

4. The parties may file post-trial briefs. All post-trial briefs shall be filed by September 4, 2006. The Taxing Authorities' briefs may not exceed, in the aggregate, 75 pages.

    Debtors' brief may not exceed 50 pages. The Taxing Authorities shall allocate their page limitation among themselves.

5. The 505 Motion will not be heard to the extent that:

    a. Justice Dickerson renders a decision in the State Court Proceedings with respect to the Lovett Case or the Bowline case or both; or

    b. This court approves, prior to August 21, 2006, a settlement between Debtors and any of the Taxing Authorities respecting issues raised in the Lovett Case or the Bowline Case or both.

The 505 Motion will be heard as scheduled, however, with respect to all issues and parties not otherwise dealt with pursuant to this paragraph.

6. In the event Justice Dickerson, prior to August 7, 2006, informs this court that he expects to issue a decision disposing of the Lovett Case or the Bowline Case or both prior to October 21, 2006, hearing of the 505 Motion will be continued as to such to a date after October 21, 2006, to be set by further order of this court.

7. Debtors are prohibited from discussing settlement of the 505 Motion after August 21, 2006, unless, upon Debtors' motion, the court otherwise directs.

    The court may issue from time to time such further orders and directions as it deems appropriate in these matters. The failure of the N.Y. Debtors or any of the Taxing Authorities or any professional retained by the N.Y. Debtors or any of the Taxing Authorities to comply with any part of this order will be regarded by the court as contempt of this court.

### END OF MEMORANDUM ORDER ###