

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed June 27, 2006                  United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MIRANT CORPORATION, et al., | § | CASE NO. 03-46590-DML-11 |
| | § | (Jointly Administered) |
| Debtors. | § | |

### MEMORANDUM ORDER ON JOSEPH T. POKALSKY'S MOTION FOR RECONSIDERATION

Before the court is Joseph T. Pokalsky's Motion for Reconsideration (the "Motion") filed by Joseph T. Pokalsky ("Pokalsky") with respect to this court's memorandum opinion dated May 18, 2006 (the "Memorandum Opinion"),[1] and the judgment thereon entered on June 20, 2006. For the reasons stated below the court DENIES the Motion.

For the most part, the arguments made by Pokalsky in the Motion are adequately dealt with by the Memorandum Opinion. Thus, the court has always appreciated that Pokalsky looked to his phantom equity as compensation for what he lost by reason of moving to Debtors' employ. That Pokalsky may have hoped or expected his phantom equity to provide a substantial return to him, however, does not mean the court should find him entitled to more than the applicable documents, by their plain meaning, provide for.

___

[1] The court also entered a prior opinion on Debtors' Motion for Summary Judgment in these matters on July 12, 2005.

Pokalsky does make one argument that merits comment. In the Motion he argues that he is entitled to a payment for phantom equity based on EBIT[2] generated by Southern Company Energy Marketing, L.P. ("SCEM") during 1997.[3] According to Pokalsky's exhibit 71 (SCEM's audited financial statements for 1997 and 1998), SCEM generated positive net income for 1997 of $11,775,000. Pokalsky contends that, since he was co-managing director of SCEM, this positive net income means the court was incorrect in its conclusion that "[i]n 1997, the year in which Pokalsky's [phantom equity] award would have to have accrued, the company's EBIT was zero . . . ." (Memorandum Opinion, p. 8).

When Pokalsky originally was employed by Debtors, the "company" for purposes of establishing EBIT to calculate phantom equity was Southern Energy Trading & Marketing, Inc. ("SETM"). In September of 1997, however, Southern Electric, Inc. ("Southern"), the parent of SETM, entered into a joint venture (SCEM) with Vastar Resoursces, Inc. ("VSI"). SCEM was to have contributed to it, *inter alia*, the assets of SETM. As of September 1, 1997, VRI contributed its gas business assets to SCEM, and SETM, at Southern's behest, contributed "all operating assets of [its] gas business to SCEM." Pokalsky Ex. 71, n. 3. Thereafter, on January 1, 1998, SETM contributed all its remaining assets to SCEM. *Id.*

Pokalsky testified he worked for both SETM and SCEM during 1997. Transcript, March 13, 2006, p. 316, l. 22. Booker's testimony reflects that, for 1997, SETM had a negative EBIT of $27,450,184. Transcript, February 28, 2006, p. 40, ll. 9-10.

Thus, assuming that Pokalsky was entitled to use SCEM's EBIT in calculating his entitlement to phantom equity, that positive number is more than offset by the negative EBIT

---

[2] The court here uses terms as defined in the Memorandum Opinion.

[3] Phantom equity accrued by Pokalsky was to be calculated based on ten times EBIT for the "company." *See* Memorandum Opinion at pp. 2, n. 4, and 5, n. 10.

generated by SETM. Since SETM continued in existence until the last of its assets were contributed to SCEM in January, 1998, the entities that benefited from Pokalsky's services to Debtors in 1997 overall generated a negative EBIT. The court sees no reason or rationale for permitting Pokalsky to calculate phantom equity solely on the basis of SCEM's 1997 results rather than by taking into account as well SETM's 1997 losses[4]—even if Pokalsky is, indeed, entitled to base a claim for phantom equity on SCEM's 1997 results, which were generated in part, at least, by assets owned by VRI prior to their contribution to SCEM.

The court thus concludes that it was correct in determining that the "company's" EBIT, for purposes of calculating Pokalsky's phantom equity, was zero and that, hence, his phantom equity was zero. The Motion is therefore DENIED.

# # # END OF ORDER # # #

---

[4] The Agreement suggests (as Pokalsky does in the Motion) that Pokalsky was employed by Southern to be in charge of *all* trading functions. The Plan refers to Southern Energy Marketing, a division of Southern, as the "company" whose EBIT was to be used in calculating phantom equity. The parties apparently agree that SETM was initially the "company" as defined in the Plan. While SCEM may have become the "company" after contribution of all of SETM's assets, certainly nothing in any document would support the inference that, as of SCEM's creation, Pokalsky became entitled to phantom equity based on SCEM's results without regard to those of SETM.