The Bankruptcy Code grants the Debtor the ability to seek to recover certain voidable transfers. This includes the recovery of preferences and transfers pursuant to Sections 547 and 550 of the Bankruptcy Code. This also includes recovery of fraudulent transfers pursuant to Sections 548 and 550 of the Bankruptcy Code. Pursuant to Section 544(b) of the Bankruptcy Code, the Debtor may also exercise the avoiding powers available to creditors under applicable state law. Under the Plan, all Avoidance Actions and other Causes of Action will be transferred to Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas).

All Causes of Action, including but not limited to Avoidance Actions, will be reviewed by Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas). Avoidance Actions, as defined in the Plan, include, without limitation, preference actions pursuant to Section 547 of the Bankruptcy Code, fraudulent transfer actions under Section 548 of the Bankruptcy Code, and the right to assert the strong-arm powers pursuant to Section 544 of the Bankruptcy Code. Without limiting the generality of the foregoing, the Debtor notes that the ORU Litigation will be transferred to Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas) pursuant to the Plan and that Mirant Americas intends to continue to pursue the ORU Litigation. Nothing in the Plan or this Disclosure Statement shall waive, release or impair any rights of the Debtor, Mirant Americas, or any of their Affiliates in connection with the ORU Litigation.

## VIII. ANALYSIS OF CLAIMS AGAINST THE DEBTOR

### A.    General

The Bar Dates for filing timely claims against all of the Mirant Debtors were December 16, 2003 (proofs of claim, except claims of governmental units) and January 12, 2004 (claims of governmental units).

All Administrative Expenses (except Fee Claims and DIP Secured Claims) and all Rejection Damages Claims against the Debtor must be filed with the Bankruptcy Court and served on the Debtor, its counsel, and the Office of the United States Trustee within thirty (30) days after service of the Notice of Confirmation. **Failure to timely file a Proof of Claim or Administrative Expense relating to any such Claim or Administrative Expense may bar the holder of a Claim or Administrative Expense from receiving payment.**

The claims filed against the Debtor can be categorized as follows:

| Claims | Approximate Amount |
|---|---|
| Administrative Expenses[2] (except DIP Secured Claims and Fee Claims) | $      0 |

---

[2] Certain Administrative Expenses were filed against and allocated to the Debtor after the effective date of the Mirant Plan (January 3, 2006). William and Patricia Croissant, and entities controlled by them, have asserted administrative expenses against the Debtor for $650,000 and other unliquidated damages (the "Croissant

| Claims | Approximate Amount |
|---|---|
| Unpaid Fee Claims | $    100,000 (or less) |
| Tax Claims | $         0 |
| Priority Claims (except Tax Claims) | $         0 |
| Secured Claims | |
|     Secured Tax Claims | $         0 |
|     DIP Facility | $16,500,000 |
|     Other Secured Claims | $         0 |
| General Unsecured Claims | |
|     Trade Claims | $    147,883 |
|     Affliates | $  4,792,740 |
|     Disputed Unsecured Claims[3] | $         0 |
| TOTAL | $21,440,623 |

**B.**   **Intercompany Claims**

As of the Petition Date, certain of the Debtor's Affiliates, including Mirant Services and Mirant Americas Generation, LLC, held unsecured claims of approximately $4,792,740 against the Debtor.

The Debtor anticipates that, as of the Confirmation Date, its liability to Mirant Americas, as the holder of the DIP Secured Claim, may be as much as $16.5 million.

---

Administrative Expenses"). The Debtor disputes the Croissant Administrative Expenses in their entirety. Additionally, the State of New York Department of Environmental Conservation has filed a Notice of Administrative Claim to ensure adequate funding is provided for certain environmental compliance obligations (the "NYDEC Administrative Expenses"). The Debtor contends it is in compliance with all such obligations and that the NYDEC Administrative Expenses will be estimated at $0.

[3] ORU has filed a Proof of Claim (the "ORU Claim") against certain of the Mirant Debtors in the amount of $962,037. Of that amount, $13,290 appears to be allocated against the Debtor. The Debtor disputes the ORU Claim, including the portion allocated to the Debtor, in its entirety. As discussed more fully herein, Southern Company ("Southern") has filed Proofs of Claim (the "Southern Claims") against all of the Mirant Debtors. The Debtor disputes the Southern Claims in their entirety.

**C. Tax Liabilities**

All employee-related taxes are accrued and paid by Mirant Services. *See* Mirant NY-Gen, November 2006 MOR, p. 5 (Status of Postpetition Taxes). Other federal, state, and local taxes are paid by Mirant New York. *See* Mirant NY-Gen, November 2006 MOR, p. 5 (Aging of Postpetition Taxes and Payables).

## IX. LITIGATION, SETTLEMENTS, AND CONSENT ORDERS

**A. Pending Actions: Post-Petition**

**1. Litigation**

(a) After the Petition Date, the Debtor filed the following litigation:

(i) *Mirant Corporation, Mirant Energy Trading, LLC, Mirant NY-Gen, LLC, Mirant Lovett, LLC, Mirant Bowline LLC vs. Consolidated Edison of New York, Inc. and Orange and Rockland Utilities, Inc.*, Adv. No. 06-4141 (the "ORU Litigation"), U.S. Bankruptcy Court, Northern District of Texas, Fort Worth Division, as amended. The ORU Litigation was commenced as a Tier IV objection to Proof of Claim No. 8036 filed by Consolidated Edison Company of New York, Inc. ("Con Ed") and Proof of Claim No. 5517, amended by Claim No. 8411, filed by ORU, and included counterclaims against both Con Ed and ORU. The lawsuit arises out of the 1998 acquisition by Mirant Bowline of the Bowline Plant Generating Station ("Bowline Station") located in Rockland County, New York and approximately 98 adjacent acres, the acquisition by Mirant Lovett of the Lovett Generating Station ("Lovett Station") located in Rockland County, New York and the acquisition by Mirant NY-Gen of the Hillburn Station, Shoemaker Station, Mongaup Station, Swinging Bridge Station, Rio Station and an interest in the Grahamsville Station ("Turbine and Generating Stations"). Old Mirant guaranteed the payment of these obligations by Mirant Bowline, Mirant Lovett and Mirant NY-Gen. At the closing of the transaction in 1999, Old Mirant transferred approximately $349.2 million to ORU and approximately $136.9 million to Con Ed.

In the ORU Litigation, the plaintiffs seek the disallowance of the claims filed by Con Ed and ORU. In addition, New Mirant, as the successor in interest to Old Mirant, asserts four separate counterclaims against Con Ed and ORU, including: (a) the First Counterclaim seeks avoidance pursuant to Section 544 of the Bankruptcy Code of Old Mirant's obligations pursuant to the guaranties of the obligations of the Debtor, Mirant Bowline and Mirant Lovett relating to the acquisition of the Bowline Station, the Lovett Station, and the Turbines and Generating Stations; (b) the Second Counterclaim seeks to avoid the transfers made by Old Mirant to ORU and Con Ed pursuant to Section 544 of the Bankruptcy Code as a part of the acquisition of the Bowline Station, the Lovett

Station, and the Turbines and Generating Stations; (c) the Third Counterclaim seeks to avoid certain other fraudulent transfers; and (d) the Fourth Counterclaim seeks recovery from ORU and Con Ed pursuant to Section 550 of the Bankruptcy Code based on the avoided transfers.

The Debtor, Mirant Bowline and Mirant Lovett assert their counterclaims against Con Ed and ORU as follows: (a) the Fifth Counterclaim seeks damages from Con Ed and ORU for breach of contract in relation to the respective purchase agreement relating to the acquisition of the Bowline Station, the Lovett Station, and the Turbine and Generating Stations; (b) the Sixth Counterclaim seeks declaratory judgment pursuant to 28 U.S.C. § 2201 regarding the obligations of ORU and Con Ed pursuant to the purchase agreements relating to the Bowline Station and the Lovett Station; and (c) the Seventh Counterclaim asserts additional claims against Con Ed and ORU for breach of contract.

ORU and Con Ed filed a motion to withdraw the reference as to counterclaims Five through Seven asserted by the Debtor, Mirant Bowline and Mirant Lovett. The District Court ultimately granted this motion pursuant to a Memorandum Opinion and Order dated January 3, 2007. The Fifth, Sixth and Seventh Counterclaims (collectively the "Withdrawn Claims") were severed from the others and the reference as to such counterclaims withdrawn to the District Court.

ORU and Con Ed then filed a motion to transfer the Withdrawn Claims to the U.S. District Court for the Southern District of New York. This motion was unopposed and the Motion was granted pursuant to the Order Granting Unopposed Motion to Transfer Venue entered on January 25, 2007. The Withdrawn Claims are now pending before the U.S. District Court for the Southern District of New York as Cause No. 1:07-cv-00803-pkc.

(ii)      Southern filed proofs of claim (Nos. 6398, 6442, 8159, 8313) against the Debtor totaling approximately $48.9 million. Southern filed identical proofs of claim against Old Mirant and each of its eighty-two (82) affiliated Mirant Debtors based upon prepetition indemnification and related agreements between Southern and Old Mirant. On June 16, 2005, Old Mirant and the Official Committee of Unsecured Creditors of Mirant Corporation jointly filed a complaint styled *Mirant Corporation and the Official Committee of Unsecured Creditors of Mirant Corporation, et al v. The Southern Company* (the "Southern Complaint"), Adv. No. 05-04099 (the "Southern Adversary Proceeding") in the Bankruptcy Court. In the Southern Complaint and by separate pleadings, as amended, the Mirant Debtors objected to all of Southern's proofs of claim, as amended.

On February 15, 2006, the U.S. District Court for the Northern District of Texas, Fort Worth Division, transferred the Southern Adversary Proceeding to the U.S. District Court for the Northern District of Georgia, Atlanta Division, and the

Southern Adversary Proceeding remains pending in that court.

(b)     After the Petition Date, the following litigation was brought against the Debtor:

*Robert Barrett and June Barrett v. Woodstone Lakes Development, LLC, Woodstone Toronto Development, LLC, Woodstone Crestwood Development, LLC, Mirant NY-Gen, LLC, and Dubrovsky* (the "Barrett Suit"), New York Supreme Court, Sullivan County, Index No. 948/06 (Summons and Verified Complaint dated March 24, 2006 and March 27, 2006, respectively). In the Barrett Suit, the plaintiffs allege, among other things, that they have been denied access to public recreation facilities constructed and maintained by the Debtor near the Toronto Dam, due to the construction by one or more other defendants of a gated housing development. On or about March 1, 2006, FERC notified the Debtor in writing that it is not in compliance with its FERC license as a result of the Woodstone Companies having physically blocked certain public access to the reservoir. On or about June 20, 2006, the Debtor filed a cross-claim against Woodstone Lakes Development, LLC, Woodstone Toronto Development, LLC, Woodstone Crestwood Development, LLC seeking injunctive and declaratory relief. The complaint and cross-claim concern public ingress and egress to certain recreational facilities at the Toronto Reservoir. The Woodstone Companies answered the Debtor's cross-claims on September 27, 2006. On or about August 24, 2006, Dr. Goldfarb and Ms. Burke, private citizens, sought to intervene into the Barrett Suit (as additional plaintiffs), by filing an Order to Show Cause. The Woodstone Companies opposed the Order to Show Cause and cross-moved to dismiss the proposed complaint of Dr. Goldfarb and Ms. Burke. To protect its rights and set forth its position with respect to the Barrett Suit, the Debtor filed responsive pleadings to the Woodstone Companies' cross-motion. On October 26, 2006, a hearing on the Order to Show Cause was conducted in Monticello, New York and a decision is pending.

## 2.     Selected Regulatory Actions, Consent Orders with Governmental Agencies, and Settlements

(a)     Swinging Bridge Dam. On June 29, 2006, the Bankruptcy Court entered an order authorizing the Debtor to enter into a Final Remediation Plan, approved by FERC by letter dated June 14, 2006, and authorizing the use of property of the estate in accordance with the terms of the Final Remediation Plan in connection with the remediation and repair of the Swinging Bridge Dam.

(b)     Towns of Bethel, Forestburgh, and Lumberland Settlements. Settlement Agreement dated July 28, 2004 for the resolution of tax matters between the Debtor and the Towns of Bethel, Forestburgh, and Lumberland.

(c)     Town of Wawayanda Settlement. Settlement Agreement dated August 25, 2004 between the Debtor and the Town of Wawayanda.

(d)     Town of Ramapo Settlement. Settlement Agreement dated July 7, 2004

between Mirant New York and the Town of Ramapo, the Ramapo Central School District, and Rockland County.

(e)     Village of Hillburn Settlement. Settlement Agreement dated October 14, 2004 between Mirant New York and the Village of Hillburn, the Ramapo Central School District, and Rockland County.

(f)     Hillburn Station Consent Order. Consent Order with NYDEC dated July 22, 2005 regarding remediation at Hillburn.

(g)     Consent Order. The Bankruptcy Court approved a settlement (by order signed February 28, 2006) with NYDEC with respect to dissolved oxygen.

(h)     Grahamsville Settlement. The Debtor and Central Hudson Gas Corporation entered into a settlement agreement dated July 2006 in connection with certain property relating to the Grahamsville Plant. As previously stated, the sublease expired on October 31, 2006, after which the Grahamsville Station reverted from the Debtor to ORU and then from ORU to the City of New York.

(i)     Easement Rights to Toronto Dam Boat Launch. On March 1, 2006, FERC issued a letter denying the Debtor's request for an extension of time to provide FERC with documentation that the Debtor has rights to provide public access to the Toronto Dam boat launch on the Toronto Reservoir via a newly-constructed bypass road. FERC found that the Debtor is "in non-compliance with [Mirant NY-Gen's] license and will continue to be in non-compliance until such time that [Mirant NY-Gen] demonstrate[s] the area is available to the public." As described above, the Debtor subsequently filed a cross-complaint in *Barrett v. Woodstone, et al.*, to secure its easement rights to the Toronto Dam boat launch and the cross-complaint is currently pending in the New York State Supreme Court.

3.     **Assertion of Administrative Expenses**

(a)     Croissant Administrative Expenses. On January 24, 2006, William Croissant, Patricia Croissant, Swinging Bridge, Inc. and Old Mongaup Corporation (the "Croissant Claimants") filed a *Notice of Reservation of Administrative Claims* against the Mirant Debtors, and additionally filed various proofs of claim, to assert an administrative expense claim against one or more of the Mirant Debtors, including the Debtor. The Croissant Claimants contend that certain of the Mirant Debtors operated the Swinging Bridge Dam in a negligent manner. On April 25, 2006, the Excluded Debtors filed an Objection to Croissant Administrative Expenses (the "Croissant Objection"), and on April 28, 2006, the New Mirant Entities filed a motion to disallow the Croissant Administrative Expenses. Pursuant to a joint stipulation entered September 5, 2006, the New Mirant Entities and the Croissant Claimants agreed to disallow the Croissant Administrative Expenses against all of the New Mirant Entities, and to allow the Croissant Claimants to proceed separately against the Debtor for allowance of the Croissant Administrative Expenses. The Debtor has filed a *Motion for Summary*

*Judgment* seeking disallowance of the Croissant Administrative Expenses, and such motion is set for consideration on February 27, 2007. If summary judgment is denied, the hearing on the merits of the Croissant Administrative Expenses against the Debtor is expected to go forward during March 2007.

(b) <u>NYDEC Administrative Expenses</u>. On January 24, 2006, NYDEC filed its *State of New York's Notice of Administrative Claims* in which NYDEC asserts administrative expense claims against the New Mirant Entities and the Excluded Debtors to ensure that the Excluded Debtors provide sufficient funding to meet certain environmental compliance obligations. The NYDEC Administrative Expenses asserted against the Debtor relate to the following three facilities: (1) Mongaup Station; (2) Hillburn Station (Consent Order); and (3) Swinging Bridge Dam (Final Remediation Plan). On February 23, 2006, the Bankruptcy Court entered a *Stipulated Order Regarding the Administrative Claims Asserted by the State of New York and the New York State Department of Environmental Conservation,* which stays all proceedings and discovery relating to the NYDEC Administrative Expenses until further order of the Bankruptcy Court. The Debtor contends that it is in compliance with all applicable environmental obligations and agreements with NYDEC, and that accordingly, the NYDEC Administrative Claims will be estimated at $0.

**B.**     **Transfer of Third Party Claims to Mirant Americas**

Pursuant to the Plan and the Purchase and Sale Agreement, all affirmative third party claims and Causes of Action held by the Debtor against any party, including against parties to pending litigation, will be assigned to Mirant Americas. Any and all Claims existing as of the Effective Date asserted by other parties to the litigation described herein against the Debtor will be subject to treatment under the Plan and will be discharged to the fullest extent provided by the Bankruptcy Code.

**X. THE CHAPTER 11 PLAN AND
MEANS OF IMPLEMENTATION OF THE PLAN**

**A.**     **General Description of the Plan**

**1.**     **Sale of Mirant New York's Membership Interest.** Contemporaneously with the occurrence of the Effective Date, Mirant New York shall close the sale of the Membership Interest to the Purchaser or the Prevailing Bidder. Among other things, the sale of the Membership Interest shall be free and clear of all Claims, Liens and interests to the fullest extent permitted by Sections 363(f) and 1141(c) of the Bankruptcy Code and as more particularly set forth in the Sale Order.

**2.**     **Certain Intercompany Transactions.** On the Effective Date, each of the following intercompany transactions shall occur and be implemented pursuant to Section 1123(a)(5) of the Bankruptcy Code:

(a)     Transfer of Sales Proceeds.  The Disbursing Agent shall establish the Sale Proceeds Account.  Mirant New York shall, in exchange for the releases set forth in Section 7.9 of the Plan, transfer the Sale Proceeds, net of the Breakup Fee, if any, into the Sale Proceeds Account.  Subject to the Plan Carve-Out and any amount necessary to pay unpaid Fee Claims, such proceeds shall be subject to a valid, perfected, non-avoidable, and fully enforceable Lien in favor of Mirant Americas pursuant to the DIP Facility.  The Disbursing Agent shall use the Sale Proceeds that are subject to the Plan Carve-Out to make distributions to holders of certain Allowed Claims, as provided by Articles IV (Treatment of Unclassified Claims) and V of the Plan (Treatment of Claims and the Equity Interest) and shall pay unpaid Fee Claims.  Any portion of the Sale Proceeds not used to pay Allowed Claims as provided in the Plan, will be paid to Mirant Americas (or an Affiliate to be designated by Mirant Americas) in respect of the DIP Facility.

(b)     Assignment of Assigned Assets.  Subject to the terms and conditions set forth in Section 4.3(a) of the Plan, the Debtor shall assign the Assigned Assets to Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas).  The Assigned Assets include, but are not limited to, the Debtor's affirmative claims and Causes of Action against any third parties for actions or inactions arising prior to the Sale Closing Date (including, but not limited to, claims filed against ORU and Consolidated Edison Company of New York, Inc. and/or any of their respective Affiliates), all of the Debtor's pending insurance claims for losses with respect to the Swinging Bridge Station and the Hillburn Station (which may include, but  shall not be limited to, property, business interruption, and environmental losses), the Intercompany Claims, and, under section 7.29 of the Purchase and Sale Agreement, certain purchase orders.

(c)     Implementation of the Plan.  The Debtor shall make such transfers or assignments to Mirant Americas (or an Affiliate to be designated by Mirant Americas) necessary to implement confirmation of the Plan.

3.     **Estimation of Claims.**

(a)     Estimation of Unsecured Creditor Amount and Other Amount for Plan Carve-Out.  On or before the Effective Date, pursuant to Section 502(c) of the Bankruptcy Code, the Bankruptcy Court shall estimate the amount of Cash needed in order for (i) the Unsecured Creditor Amount to satisfy all General Unsecured Claims as required by Section 5.4 of the Plan, and (ii) the Other Amount to satisfy all Other Amount categories as required by Sections 4.2, 4.4, 5.1, 5.2 and 5.3 of the Plan, as applicable.  The Bankruptcy Court shall allocate the Cash constituting the Other Amount by category of expenses or Claims (*i.e.*, a sum certain of the Other Amount shall be reserved for payment of each of (1) Administrative Expenses (other than the DIP Secured Claim and the Fee Claims), (2) Tax Claims, (3) Priority Claims (other than Tax Claims), (4) Secured Tax Claims, and (5) Other Secured Claims).   The estimation of the Unsecured Creditor Amount and each category of the Other Amount by the Bankruptcy Court shall be conclusive and none of the Debtor, the Reorganized Debtor, Mirant New York, Mirant Americas, the Purchaser, the Prevailing Bidder, any Affiliate of the foregoing, the Sale Proceeds, or the Assets shall be liable for Allowed Claims exceeding

the estimated amounts for the Unsecured Creditor Amount or any Other Amount category.

(b)    Distribution of Plan Carve-Out. The Disbursing Agent shall reserve Sale Proceeds in the Sale Proceeds Account in the amount of the Unsecured Creditor Amount and the Other Amount, and such reserve shall constitute the Plan Carve-Out. Funds located in the Sale Proceeds Account that are not subject to the Plan Carve-Out shall be used to fund Allowed Fee Claims, and, thereafter, paid to Mirant Americas. Distribution of the Plan Carve-Out shall be made in accordance with Articles IV or V in the Plan, but subject in all respects to the terms of Section 7.3 of the Plan.

With respect to each Class or Other Amount category to receive distributions from the Plan Carve-Out, if on the Effective Date:

(i)    all Claims within such Class or category have been Allowed or Disallowed, each holder of an Allowed Claim in such Class or category will receive, on the Distribution Date, the lesser of (A) the Allowed amount of such Claim, and (B) the Pro Rata Share of such Claim;

(ii)    there exists a Contested Claim within such Class or category, and if the aggregate amount of all Allowed Claims and estimated Contested Claims is less than the amount reserved in the Plan Carve-Out for such Class or category, then each Allowed Claim shall be paid in full on the Distribution Date, and Contested Claims, if later Allowed, shall be paid on the Subsequent Distribution Date the lesser of (A) the Allowed amount of such Claim, and (B) the Pro Rata Share of such Claim; and

(iii)    there exists a Contested Claim within such Class or category, and if the aggregate amount of all Allowed Claims and estimated Contested Claims is greater than the amount reserved in the Plan Carve-Out for such Class or category, then each Allowed Claim and each Contested Claim, if later Allowed, shall be paid on the Subsequent Distribution Date, the lesser of (A) the Allowed amount of such Claim, and (B) the Pro Rata Share of such Claim.

After all Plan Distributions have been made with respect to the Unsecured Creditor Amount or any Other Amount category, any funds reserved and remaining in the Sale Proceeds Account for such Unsecured Creditor Amount or Other Amount category shall be paid to Mirant Americas (or to an Affiliate of Mirant Americas to be designated by Mirant Americas).

4.    The Disbursing Agent.

(a)    Appointment of Mirant as Disbursing Agent. On the Effective Date, Mirant shall be appointed to serve as the Disbursing Agent, and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

(b)    Powers and Duties. Pursuant to the terms and provisions of the Plan, the

Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims; (b) comply with the Plan and the obligations thereunder; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in the Plan and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim as provided in the Plan; (f) make annual and other periodic reports regarding the status of distributions under the Plan to the holders of Allowed Claims that are outstanding at such time; such reports to be made available upon request to the holder of any Contested Claim; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

(c)     <u>Plan Distributions</u>.  Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan on the relevant Distribution Date.

**(d)     <u>Exculpation</u>.  Except as otherwise provided in Section 7.4 of the Plan, the Disbursing Agent and its officers, directors, employees, agents, and representatives are exculpated pursuant to the Plan by all Persons, holders of Claims and the Equity Interest, and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence.  No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained in Section 7.4(d) of the Plan shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Debtor to compel the making of Plan Distributions contemplated by the Plan on account of such Claim.**

5.     **Corporate Actions**.     The entry of the Confirmation Order shall constitute authorization for the Reorganized Debtor, the Debtor, and its Affiliates, including Mirant New York, as sole member of the Debtor, and the Disbursing Agent, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule, or regulation, including without limitation, any action required by the sole member of the Debtor, the stockholders or directors of the Debtor's Affiliates, including, among other things, (a) all transfers of Assets and all transfers to the Debtor's Affiliates that are to occur pursuant to the Plan, (b) the incurrence of all obligations contemplated by the Plan and the making of all Plan Distributions, (c) the formation

of the Sale Proceeds Account, (d) the implementation of all settlements and compromises as set forth in or contemplated by the Plan, (e) the assumption of contracts, leases, and other agreements under the terms of the Purchase and Sale Agreement and the Plan, and (f) the cancellation of all agreements involving the corporate structure of the Debtor. The officers of the Debtor are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of, and on behalf of the Debtor. All obligations of the Debtor to indemnify and hold harmless its current and former directors, officers and employees, who served in any such capacity at any time on or after April 2, 2001, whether arising under the Debtor's constituent documents, contract, law or equity, shall be assumed by the Debtor upon the occurrence of the Effective Date with the same effect as though such obligations constituted executory contracts that are assumed (or assumed and assigned, as applicable) under Section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on their terms from and after the Effective Date. The prosecution of any so-indemnified Cause of Action shall, upon the occurrence of the Effective Date, be enjoined and prohibited, except solely for the purpose of obtaining a recovery from the issuer of any available insurance policy proceeds.

## B.    Provisions Governing Distributions

**1.    Plan Distributions.** Subject to the terms of the Plan, the Disbursing Agent shall make all Plan Distributions under the Plan from the Sale Proceeds located in the Sale Proceeds Account. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. For federal income tax purposes, except to the extent that a Plan Distribution is made in connection with reinstatement of an obligation pursuant to Section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**2.    Timing of Plan Distributions.** Each Plan Distribution shall be made on the relevant Distribution Date and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**3.    Address for Delivery of Plan Distributions/Unclaimed Distributions.** Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder, as set forth (i) in the Schedules, (ii) on the proof of Claim filed by such holder, (iii) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), and (iv) in any notice served by such holder giving details of a change of address, in each case as such address is reflected on the Register as of the Distribution Date or Subsequent Distribution Date, regardless of subsequently-filed notices of claim transfer or the fact that the objection period has not expired as of the Distribution Date or Subsequent Distribution Date with respect to a filed notice of claim transfer. If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such

holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to Mirant Americas (or to an Affiliate designated by Mirant Americas).

      **4.**    **De Minimis Distributions**. No Plan Distribution of less than fifty ($50.00) dollars shall be made by the Disbursing Agent to the holder of any Claim unless a request therefor is made in writing to the Disbursing Agent. If no request is made as provided in the preceding sentence within ninety (90) days of the Effective Date, all such Plan Distributions shall revert to Mirant Americas (or to an Affiliate designated by Mirant Americas).

      **5.**    **Time Bar to Cash Payments**. Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within one hundred and eighty (180) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any claims in respect of such void check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to Mirant Americas (or to an Affiliate designated by Mirant Americas).

      **6.**    **Manner of Payment Under the Plan**. Unless the Person or entity receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank.

      **7.**    **Fractional Plan Distributions**. Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractions of dollars will be made. Fractions of dollars shall be rounded to the nearest whole unit (with any amount equal to or less than one-half dollar to be rounded down).

      **8.**    **Surrender and Cancellation of Certificates, Instruments, Notes, or Other Agreements**. As a condition to receiving any Plan Distribution, on or before the Distribution Date or Subsequent Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument, note, or other agreement, other than any such certificate, instrument, note, or other agreement that is being left unimpaired under the Plan, shall (i) surrender such certificate, instrument, note, or other agreement representing such Claim, and (ii) execute and deliver such other documents as may be necessary to effectuate the Plan. Such certificate, instrument, note, or other agreement shall thereafter be cancelled and extinguished. The Disbursing Agent shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (1) such certificates, instruments, notes, or other agreements are surrendered, or (2) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form. Any such holder who fails to surrender such certificates, instruments, notes, or other agreements or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution.

**9.     No Interest Unless Otherwise Provided**.  No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.     Prepayment**.  The Disbursing Agent shall have the right, in its sole discretion, to prepay, in full or in part, any obligation created pursuant to the Plan, and no interest shall accrue with respect to the prepaid portion of such obligation from and after the date of such prepayment.

**C.     Procedures for Resolving and Treating Contested Claims**

**1.     Objection Deadline**.  As soon as practicable, but in no event later than ninety (90) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of the Debtor or the Disbursing Agent without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

**2.     Prosecution of Contested Claims**.  Except as provided in the Plan, the Disbursing Agent may object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 9.3 of the Plan.

**3.     Claims Settlement**.  Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, other than the settlement or compromise of a Claim where the amount proposed to be Allowed under the settlement is in excess of $100,000, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action without further review by or approval of the Bankruptcy Court.

**4.     Entitlement to Plan Distributions Upon Allowance**.  Notwithstanding any other provision of the Plan, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the setoff rights as provided in Section 13.16 of the Plan.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim, subject to Section 7.3 of the Plan, shall become entitled to receive the Plan Distribution, on the Distribution Date or Subsequent Distribution Date, in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

**5.     Estimation of Contested Claims**.  Without limiting anything set forth in Section 7.3 of the Plan, the Disbursing Agent may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Disbursing Agent or the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised,

settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**D.  Conditions Precedent to Confirmation of the Plan and to the Occurrence of the Effective Date**

   **1.    Conditions Precedent to Confirmation**.  The following are conditions precedent to confirmation of the Plan:

   (a)    The Clerk of the Bankruptcy Court shall have entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to Section 1125 of the Bankruptcy Code, (ii) finding that no further disclosure is necessary with respect to the Plan, (iii) authorizing the solicitation of votes with respect to the Plan, (iv) determining that each vote is binding and has been properly tabulated as an acceptance or rejection of the Plan, (v) confirming and giving effect to the terms and provisions of the Plan, (vi) determining that all applicable tests, standards, and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan, and (vii) authorizing the Debtor to implement and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfers of Assets contemplated by the Plan;

   (b)    The Confirmation Order and the Plan are each in a form satisfactory to the Debtor;

   (c)    The Plan Carve-Out shall be in an amount satisfactory to Mirant Americas; and

   (d)    The Confirmation Order, in accordance with the terms of the Purchase and Sale Agreement, is in a form satisfactory to the Purchaser.

   **2.    Conditions Precedent to the Occurrence of the Effective Date**.  The following are conditions precedent to the occurrence of the Effective Date or shall occur substantially contemporaneously therewith:

   (a)    The Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect, and not be subject to any stay or injunction;

   (b)    All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, including, without limitation, satisfaction, or waiver of all conditions to the obligations of the Debtor under the Plan and the Plan Documents;

   (c)    The Bankruptcy Court shall have approved the Sale Procedures Order and the Sale Order;

   (d)    The Sale Closing Date shall have occurred or shall occur simultaneously with the occurrence of the Effective Date; and

(e)     Mirant New York shall have transferred the Sale Proceeds, net of the Breakup Fee, if any, to the Sale Proceeds Account for distribution to holders of Allowed Claims against the Debtor.

**3.     Waiver of Conditions.** To the extent not inconsistent with the Purchase and Sale Agreement, the Debtor may waive the conditions set forth in Section 10.2(b) of the Plan in a writing executed by the Debtor without notice or order of the Bankruptcy Court and without notice to any parties in interest.

**4.     Effect of Non-Occurrence of the Effective Date.** If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims against or the Equity Interest in the Debtor; (b) prejudice in any manner the rights of the Debtor, including without limitation, the right to seek a further extension of the exclusivity periods under Section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtor.

## E.     Executory Contracts and Unexpired Leases

**1.     Assumption of Executory Contracts and Unexpired Leases.** The Plan shall constitute the Debtor's motion to assume the executory contracts and unexpired leases as set forth on Disclosure Statement Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases."  Schedule 11.1(a) shall be consistent with the list of Assumed Contracts as agreed to by the Purchaser and Mirant New York in accordance with the terms of the Purchase and Sale Agreement.  Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to Sections 365(a), (b), and (f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that the requirements of Section 365(f) of the Bankruptcy Code have been satisfied.  The Debtor reserves the right, with approval of the Purchaser, to amend Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases" at any time prior to the entry of the Confirmation Order. Each executory contract and unexpired lease to be assumed shall include modifications, amendments, supplements, restatements, or other similar agreements made directly or indirectly by any agreement, instrument, or other document that affects such executory contract, unexpired lease, or other agreement without regard to whether such agreement, instrument, or other document is listed on Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases."

**2.     Rejection of Executory Contracts and Unexpired Leases.** The Plan shall constitute the Debtor's motion to reject the executory contracts and unexpired leases as set forth in Disclosure Statement Schedule 11.1(b) or the "Schedule of Rejected Executory Contracts and Unexpired Leases." Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejection pursuant to Sections 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract, or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and its estate.

To the extent that an executory contract, unexpired lease, or other agreement is not designated on Schedule 11.1(a) as an assumed executory contract, unexpired lease, or other agreement or on Schedule 11.1(b) as a rejected executory contract, unexpired lease, or other agreement, the executory contract, unexpired lease, or other agreement is deemed assumed.

The inclusion of a contract, lease, or other agreement on Disclosure Statement Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases" or on Disclosure Statement Schedule 11.1(b) or the "Schedule of Rejected Executory Contracts and Unexpired Leases" shall not constitute an admission by the Debtor as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease, or other agreement are time-barred from asserting Claims against the Debtor. The Debtor reserves all rights with respect to the characterization of any such agreements.

3. **Cure**. At the election of the Debtor or the Disbursing Agent, any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to Section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Distribution Date or Subsequent Distribution Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding: (i) the amount of any cure payments; (ii) the ability of the Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption by the Debtor of an executory contract or unexpired lease, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable. Disclosure Statement Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases" sets forth the Debtor's cure obligations under each agreement for which a cure obligation must be satisfied as a condition to the assumption of such agreement. Any counterparty to an agreement listed on the Disclosure Statement Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases" who disputes the scheduled cure obligation must file with the Bankruptcy Court, and serve upon the Debtor, a written objection to the cure obligation, which objection shall set forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption of the relevant agreement by no later than ten (10) Business Days prior to the Confirmation Hearing. If a counterparty fails to file and serve an objection which complies with the foregoing, the cure obligation set forth on the Disclosure Statement Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases" shall be binding on the counterparty, and the counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement as proposed by the Debtor.

4. **Rejection Damages Claims**. Rejection Damages Claims created by the rejection of executory contracts and unexpired leases prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtor, its counsel, and the Office of the United States Trustee, in accordance with the Rejection Damages Claim Bar Date, within thirty (30) days after service of the Notice of Confirmation. Any such Rejection Damages Claims for which a proof of claim is not filed and served within such time will be forever barred from assertion and shall

not be enforceable against the Debtor, an Affiliate, the Reorganized Debtor, their successors or assigns, the Debtor's Estate, or the Assets. Unless otherwise ordered by the Bankruptcy Court, each such Claim that is timely filed as provided herein shall be treated as a Class 4 - General Unsecured Claim under the Plan subject to objection by the Debtor or the Disbursing Agent. All rights of the Debtor or the Disbursing Agent to object to such Claims are reserved.

> **5.** **Application of Section 365 of the Bankruptcy Code.** Section 365 of the Bankruptcy Code shall apply to any motion to reject, assume, or assume and assign any executory contracts and unexpired leases that are subject to Article XI of the Plan.

### F. Means of Implementation of the Plan

> **1.** **Vesting of Assets.** Upon the occurrence of the Effective Date, title to all of the Estate Assets (but not to the Assigned Assets) shall vest in the Reorganized Debtor free and clear of all Liens, Claims, Causes of Action, interests, security interests, and other encumbrances to the fullest extent permitted by Sections 363(f) and 1141(c) of the Bankruptcy Code without further order of the Bankruptcy Court.

> **2.** **Charter and Bylaws.** On the Effective Date, the charter, bylaws, and other appropriate corporate documents of the Reorganized Debtor shall be amended or created as necessary to satisfy the provisions of the Plan, including, but not limited to, the transactions, as applicable to the Debtor, in accordance with the Purchase and Sale Agreement. After the Effective Date, the Reorganized Debtor shall be permitted to amend or modify its corporate documents as permitted by applicable law without approval of the Bankruptcy Court.

> **3.** **Sources of Cash for Plan Distributions.** All Cash necessary for the Disbursing Agent to make payments under the Plan and Plan Distributions shall be obtained from the Sale Proceeds located in the Sale Proceeds Account and from no other source.

> **4.** **Releases by the Debtor. As of the Effective Date, the Debtor shall forever release, waive, and discharge all Causes of Action (other than Causes of Action to enforce the terms of the Plan and the Plan Documents), then existing or thereafter arising, that are based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Intercompany Claims, the relationship between the Debtor and the other Mirant Debtors, the DIP Facility, the Plan, the Disclosure Statement, or related transactions and that could have been asserted by the Debtor against any of its Affiliates, including, without limitation, Mirant Americas, Mirant New York or any other Excluded Debtor, and any Protected Persons identified in Schedule 7.9 to the Disclosure Statement, including, without limitation, such Causes of Action that have been or could be asserted derivatively on behalf of the Debtor by another Person; provided that Intercompany Claims that are actually assigned on the Effective Date pursuant to Section 4.3 of the Plan to Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas) shall not be released under the Plan.**

5.     **Appointment of the Disbursing Agent**.  Upon the occurrence of the Effective Date, Mirant shall be appointed to serve as Disbursing Agent for the Reorganized Debtor, and shall have all powers, rights, duties, and protections afforded the Disbursing Agent under the Plan.

## G.     Other Material Provisions of the Plan

1.     **Payment of Statutory Fees**.  All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.

2.     **Satisfaction of Claims**.  The rights afforded in the Plan and the treatment of all Claims and the Equity Interest herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and the Equity Interest of any nature whatsoever against the Debtor, the Debtor's Estate, Assets, properties, or interests in property.  Except as otherwise provided herein, on the Effective Date, all Claims against and the Equity Interest in the Debtor shall be satisfied, discharged, and released in full.  The Debtor, the Reorganized Debtor, and any Affiliates shall not be responsible for any pre-Effective Date obligations of the Debtor, except as otherwise provided herein.  All Persons and Entities shall be precluded and forever barred from asserting against the Debtor, the Reorganized Debtor, their successors or assigns, the Debtor's Estate, the Assets, properties, or interests in property, any event, occurrence, condition, thing, or other or further Claims, or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

3.     **Third Party Agreements; Subordination**.  The Plan Distributions to the various classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise.  All of such rights and any agreements relating thereto shall remain in full force and effect, except as compromised and settled pursuant to the Plan.  Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan. The right of the Debtor to seek subordination of any Claim pursuant to Section 510 of the Bankruptcy Code is fully reserved and the treatment afforded any Claim that becomes a Subordinated Claim at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a Subordinated Claim.

4.     **Exculpation.  The Debtor, its Affiliates, or any Protected Person shall not be liable for any Cause of Action arising in connection with or out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.  The Confirmation Order shall enjoin all holders of Claims and the Equity Interest from asserting or prosecuting any Claim or Cause of Action against any Protected Person as to which such Protected Person has been exculpated from liability pursuant to the**

proceeding sentence.

5. **Discharge of the Debtor.** Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtor, the Reorganized Debtor, their successors and assigns, the Debtor's Estate, and the Assets shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, its Estate, and all successors thereto. As provided in Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor, the Reorganized Debtor, their successors or assigns, or the Debtor's Estate at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor, Reorganized Debtor, their successors and assigns, the Debtor's Estate, and the Assets to the extent it relates to a discharged Claim.

6. **Discharge of Liabilities**. Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtor shall be discharged from all Claims and Causes of Action to the fullest extent permitted by Section 1141 of the Bankruptcy Code, and all holders of Claims and the Equity Interest shall be precluded from asserting against the Debtor, the Reorganized Debtor, their successors or assigns, the Assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE DEBTOR, THE REORGANIZED DEBTOR OR ANY OTHER SUCCESSOR-IN-INTEREST TO THE DEBTOR SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE, OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION, THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE, OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN (INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTOR) AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO THE DEBTOR, THE REORGANIZED DEBTOR OR ANY OTHER SUCCESSOR-IN-INTEREST TO THE DEBTOR.**

7. **Injunctions. On the Effective Date and except as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or the Equity Interest in the Debtor shall be permanently enjoined from taking any of the following actions against or affecting the Reorganized Debtor, the Debtor, Protected Persons, the Debtor's**

Estate, the Assets, Affiliates, or the Disbursing Agent, or any of their current or former respective members, directors, managers, officers, employees, agents, professionals, successors or assigns, or their respective assets and property with respect to such Claims or the Equity Interest (other than actions brought to enforce any rights or obligations under the Plan):

  (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

  (b) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order;

  (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

  (d) asserting any setoff, right of subrogation, or recoupment of any kind; provided, that any defenses, offsets, or counterclaims which the Debtor may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 13.16 of the Plan.

  **8.** **Notice of Confirmation.** Promptly upon entry of the Confirmation Order, the Debtor shall publish the Notice of Confirmation as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and the Equity Interest such Notice, which includes the notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing Administrative Expenses (Section 4.2 of the Plan) and the deadline for filing Rejection Damage Claims (Section 11.3 of the Plan).

  **9.** **Notices.** Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Mirant NY-Gen, LLC
Attention: Sonnet Edmonds
Corporate Headquarters
1155 Perimeter Center West
Atlanta, Georgia 30338
Telephone: (678) 579-5000
Telecopier: (678) 579-5981

Mirant NY-Gen, LLC
Attention: Jay Wilson
Corporate Headquarters
1155 Perimeter Center West
Atlanta, Georgia 30338
Telephone: (678) 579-5000
Telecopier: (678) 579-5981

Forshey & Prostok LLP
Attention: Jeff P. Prostok
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Telecopier: (817) 877-4151

**10. Headings.** The headings used in the Plan are inserted for convenience only and constitute neither a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**11. Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such agreements, documents, or instruments.

**12. Exemption from Transfer Taxes.** Pursuant to Section 1146(c) of the Bankruptcy Code, any transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax or a sales, use, transfer, duty, value added, or any other similar tax, including without limitation, any bulk sales tax under New York law. Additionally, the sale of the Membership Interest by Mirant New York, as the sole member of the Debtor, shall not be subject to any stamp tax or a sales, use, transfer, duty, value added, or any other similar tax, including without limitation, any bulk sales tax under New York law.

**13. Retiree Benefits.** Section 1129(a)(13) of the Bankruptcy Code is not applicable to the Debtor.

**14. Attorneys' Fees.** No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the Plan or as ordered by the Bankruptcy Court.

**15. Modification of the Plan.** As provided in Section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtor at any time before confirmation, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code. The Debtor may modify the Plan at any time after confirmation and before Substantial Consummation, provided that the Plan, as modified, meets the requirements of

Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under Section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan, as modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such holder.

**16.** **Setoff Rights**. In the event that the Debtor has a Claim of any nature whatsoever against the holder of a Claim against the Debtor, then the Debtor may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) the Debtor's Claim against such holder, subject to the provisions of Sections 553, 556, and 560 of the Bankruptcy Code. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor may have against the holder of any Claim.

**17.** **Compliance with Tax Requirements**. In connection with the Plan, the Debtor and the Disbursing Agent, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding, and other tax obligations, on account of such Plan Distribution. The Disbursing Agent has the right, but not the obligation, to withhold a Plan Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

**18.** **Rates**. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

**19.** **Binding Effect**. The Plan shall be binding upon the Reorganized Debtor, the Debtor, the holders of all Claims and the Equity Interest, parties in interest, Persons and Entities, and their respective successors and assigns. To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**20.** **Severability**. IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE DEBTOR MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 13.15 OF THE PLAN SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR EQUITY INTEREST OR TRANSACTION. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

**21.** **No Admissions**. AS TO ADVERSARY PROCEEDINGS, CONTESTED

MATTERS, AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THE PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THE PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND THE EQUITY INTEREST IN, MIRANT NY-GEN, AS DEBTOR AND DEBTOR-IN-POSSESSION IN THIS CHAPTER 11 CASE, OR ANY OF ITS AFFILIATES.

**22. Bankruptcy Restrictions**. From and after the Effective Date, the Debtor and the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., Sections 363 and 364 or Rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines. No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agent shall provide the Office of the United States Trustee such financial reports as the United States Trustee may reasonably request until the entry of a final decree.

**23. Plan Controls**. Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

## XI. RISK FACTORS

The following is intended as a summary of certain risks associated with the Plan, but it is not exhaustive and must be supplemented by the analysis and evaluation of the Plan and this Disclosure Statement made by each holder of a Claim or Equity Interest as a whole with such holder's own advisors.

A.     <u>Risk Factors</u>

The Plan provides that all Allowed Claims will be fully paid in Cash, with the exception of certain Affiliate Claims, from funds generated from the sale of the Debtor's Membership Interest. However, there exists certain risks to Creditors that the Plan will not be confirmed or the sale of the Membership Interest will not occur.

B.     <u>Bankruptcy Risks</u>

1.     **Insufficient Acceptances**

For the Plan to be confirmed, each impaired Class of Claims is given the opportunity to

vote to accept or reject the Plan. With regard to such impaired voting Classes, the Plan will be deemed accepted by a Class of impaired Claims if the Plan is accepted by claimants of such Class actually voting on the Plan who hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the total Allowed Claims of the Class voted. Only those members of a Class who vote to accept or reject the Plan will be counted for voting purposes. The Debtor reserves the right to request confirmation pursuant to the cramdown provisions in Section 1129(b) of the Bankruptcy Code, which will allow confirmation of the Plan regardless of the fact that a particular Class of Claims has not accepted the Plan. However, there can be no assurance that any impaired Class of Claims under the Plan will accept the Plan or that the Debtor would be able to use the cramdown provisions of the Bankruptcy Code for confirmation of the Plan.

### 2. Confirmation Risks

The following specific risks exist with respect to confirmation of the Plan:

(a) Any objection to the Plan filed by a member of a Class of Claims can either prevent confirmation of the Plan or delay such confirmation for a significant period of time.

(b) If the Debtor seeks approval of the Plan over the rejection of one or more impaired Classes of Claims, the cramdown process could delay confirmation.

### 3. Sale of the Membership Interest in the Debtor Held by Mirant New York

The Purchase and Sale Agreement provides that an order confirming the Debtor's Plan is a condition precedent to the closing of the sale of the Membership Interest.

### 4. Conditions Precedent

Confirmation of the Plan and occurrence of the Effective Date are subject to certain conditions precedent that may never occur. For example, the Purchase and Sale Agreement requires the Debtor's parent, Mirant New York, and the Purchaser to obtain consents and approvals of, among others, the Bankruptcy Court, governmental authorities, and certain third parties.

## XII. ALTERNATIVES TO CONFIRMATION OF THE PROPOSED PLAN

The Bankruptcy Code requires as a condition to confirmation that creditors receive on account of their claims at least as much as they would receive if the case were a case under Chapter 7. If this case were converted from Chapter 11 to Chapter 7, a Chapter 7 Trustee would be appointed by the United States Trustee, the Debtor would cease all business operations and the Chapter 7 Trustee would take control of the Debtor's assets. The Chapter 7 Trustee would be required to liquidate the assets and distribute the proceeds to creditors in the order of their priorities.

Under a Chapter 7 shut-down of the business and complete liquidation, it is unlikely that any creditors other than the secured lender for the DIP Facility would receive any payment. If

the case were converted to a Chapter 7, the Debtor would cease operating. Allowed unpaid attorneys' fees, accountant fees, and other professional fees incurred on behalf of the Debtor during the Chapter 11 proceedings also would be administrative expenses. In addition, the Chapter 7 Trustee would be entitled to reasonable compensation as a priority expense as well as any additional costs and expenses of the Chapter 7 estate. These would likely include any attorneys retained by the Trustee as well as any accountants required to prepare final tax returns or other financial records. Chapter 7 administrative expenses would have priority over the Chapter 11 administrative expenses.

While there are limited general unsecured claims held against the Debtor, the Debtor believes that the Sale Proceeds from the Membership Interest Sale provide the greatest value to all holders of Allowed Claims against the Debtor. Based upon the potential Chapter 11 administrative expenses and the DIP Secured Claims, the Debtor estimates that in a Chapter 7 shut-down of the business and complete liquidation, there would be no chance that unsecured creditors would receive any distributions.

Given the alternative under a Chapter 7 scenario, the Debtor's proposed Chapter 11 Plan, which provides for payment in full to unsecured creditors, provides a superior alternative for unsecured creditors.

## XIII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion is a summary of certain federal income tax aspects of the Plan for general information only. It should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Interest. This discussion does not purport to be a complete analysis or listing of all potential tax factors.

The following discussion is based upon existing provisions of the Internal Revenue Code ("IRC"), existing regulations thereunder, and current administrative rulings and court decisions. No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section. Moreover, the tax consequences to holders of the Claims and Interests may vary based upon the individual tax circumstances of each such holder. Nothing herein purports to describe any state, local, or foreign tax consequences.

No ruling has been sought or obtained from the Internal Revenue Service (the "IRS") with respect to any of the tax aspects of the Plan and no opinion of counsel has been obtained by the Debtor with respect thereto. No representations or assurances are being made with respect to the federal income tax consequences as described herein. Certain types of claimants and interest holders may be subject to special rules not addressed in this summary of federal income tax consequences. There may also be state or local tax considerations applicable to a holder of a claim or interest which are not addressed herein. Each holder of a claim or interest affected by the Plan must consult, and reply upon, his or her own tax advisor regarding the specific tax consequences of the Plan with respect to that holder's claim or interest.

## A.    **Tax Consequences To The Debtor**

The Debtor does not believe that the tax consequences to the Debtor are material to the Plan.

## B.     Tax Consequences to Creditors

A Creditor who receives Cash in satisfaction of any Claim may recognize ordinary income. The impact of such ordinary income, as well as the tax year for which the income will be recognized, will depend upon the individual circumstances of each Claimant, including the nature and manner of organization of the Claimant, the applicable tax bracket for the Claimant, and the taxable year of the Claimant. Each creditor is urged to consult with its tax advisor regarding the tax implications of any payments or distributions under the Plan.

The foregoing is intended to be a summary only and not a substitute for careful tax planning or consultation with a tax advisor. The federal, state, and local tax consequences of the Plan may vary based upon the individual circumstances of each holder of a Claim or Interest. Accordingly, each holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state, and local tax consequences of the Plan.

## XIV.  VOTING PROCEDURES AND REQUIREMENTS

## A.     Ballot

A Ballot to be used for voting to accept or reject the Plan together with a return envelope are enclosed with all copies of the Disclosure Statement. BEFORE COMPLETING YOUR BALLOT, PLEASE CAREFULLY READ THE VOTING INSTRUCTIONS THAT ACCOMPANY THE BALLOT.

If you have a Claim in more than one Class, you should submit a separate Ballot for each Class of Claims in which you believe you are a participant. To have a Ballot count, you must complete and return by the Voting Deadline the correct Ballot for each class in which you have voted.

## B.     Voting Deadlines

The Bankruptcy Court has directed that, in order to be counted for voting purposes, Ballots for the acceptance or rejection of the Plan must be received by 4:00 p.m., Prevailing Central Time, on _____, 2007. Please return your Ballots to:

> Forshey & Prostok LLP
> 777 Main Street, Suite 1290
> Fort Worth, Texas 76102
> Fax: (817) 877-4151
> Attention: Linda Breedlove

If you have any questions about the procedure for voting, or if you did not receive a

Ballot, received a damaged Ballot or lost your Ballot, please contact the Debtor's attorneys at the above-listed contact.

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED BY THE ABOVE VOTING DEADLINE. ANY EXECUTED BALLOT WHICH DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.**

It is important that all Creditors exercise their right to vote to accept or reject the Plan. Even if you reject the Plan, you may be bound by the Plan, if it is accepted by the requisite holders of Claims. In addition, you may be bound by the Plan, even if you do not vote in favor of it, if you are the holder of an unimpaired Claim.

The amount and number of votes required for confirmation of the Plan are computed on the basis of the total amount of Claims actually voting for or against the Plan. Ballots returned without any vote indicated or without the amount of your claim indicated will not be counted.

C. **Parties in Interest Entitled to Vote**

A holder of a Claim against the Debtor whose Claim is impaired under the Plan is entitled to vote to accept or reject the Plan if either (i) its Claim has been scheduled by the Debtor and such Claim is not scheduled as disputed, contingent, or unliquidated or (ii) it has filed a proof of claim on or before the applicable Bar Date set by the Bankruptcy Court for such filings or any extension of such date approved by the Bankruptcy Court.

The Debtor reserves the right to object to any Claim for voting purposes, and nothing contained herein should be construed as a waiver of any such right. A Ballot may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such Ballot was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Any references in the Plan or Disclosure Statement to any Claims shall not constitute an admission of the existence, nature, extent or allowance thereof.

D. **Definition of Impairment**

As set forth in Section 1124 of the Bankruptcy Code, a class of claims is impaired under a plan of reorganization unless, with respect to each claim of such class, the plan:

(a)     leaves unaltered the legal, equitable, and contractual rights of the holder of such claim; or

(b)     notwithstanding any contractual provision or applicable law that entitles the holder of a claim to demand or receive accelerated payment of such claim after the occurrence of a default:

i.     cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a

kind specified in Section 365(b)(2) of the Bankruptcy Code;

      ii.    reinstates the maturity of such claim or interest as it existed before such default;

      iii.    compensates the holder of such claim for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

      iv.    does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

## E.    Classes Impaired Under the Plan

Class 1 (Priority Claims, except Tax Claims) and Class 6 (Membership Interest) are not Impaired under the Plan. Classes 1 and 6 are deemed to have accepted the Plan. All other Classes of Claims are Impaired under the Plan. Therefore, each holder of a Claim in Classes 2, 3, 4, and 5 is entitled to vote to accept or reject the Plan. Any dispute over the Impaired status of any Class will be determined by the Bankruptcy Court.

## F.    Vote Required for Class Acceptance

For the Plan to be accepted by a class of creditors, the holders of at least two-thirds in amount and a majority in number of creditors in the class actually casting ballots must accept the Plan.

## XV.  CONFIRMATION OF THE PLAN

## A.    Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a Plan. By order of the Bankruptcy Court, the Confirmation Hearing has been scheduled for ___ __.m., Prevailing Central Time, on _____, 2007, in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. The Confirmation Hearing will be held in the bankruptcy courtroom located on the first floor, U.S. Courthouse & Federal Building, 501 W. 10th Street, Fort Worth, Texas 76102. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the confirmation hearing or any adjournment thereof.

## B.    Deadline for Objections

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court by 4:00 p.m., Prevailing Central Time, on _____, 2007, and concurrently served upon the following parties:

Counsel for the Debtor
Jeff Prostok
Forshey & Prostok LLP
777 Main Street, Suite 1290
Fort Worth, Texas 76102

U.S. Trustee:
Office of the U.S. Trustee
1100 Commerce Street
Room 9C60
Dallas, Texas 75242

Objections to confirmation of the Plan are governed by Rule 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, THE BANKRUPTCY COURT MAY NOT CONSIDER IT. THE DEBTOR ANTICIPATES THAT IT WILL OBJECT TO ANY LATE-FILED OBJECTION AS UNTIMELY.

## C.    Requirements for Confirmation of the Plan

At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. At the Confirmation Hearing, the Bankruptcy Court must determine whether the Debtor has complied with the applicable requirements of the Bankruptcy Code.

## D.    Cramdown

In the event that any impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if (i) at least one Class of Claims that is impaired under the Plan votes to accept the Plan (determined without considering any accepting votes of insiders) and (ii) as to each impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that Class. A plan of reorganization "does not discriminate unfairly" within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity interests.

The Debtor believes that its Plan may be crammed down on any dissenting class of Creditors.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in Section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

1.    With respect to a class of *secured* claims, the plan provides:

(a)(i)   that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; *and* (ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)   for the sale, subject to Section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (c) of this subparagraph; or

(c)   for the realization by such holders of the indubitable equivalent of such claims.

2.   With respect to a class of *unsecured* claims, the plan provides:

(a)   that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)   the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

3.   With respect to a class of *equity interests*, the plan provides:

(a)   that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)   that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired Class of Claims. For the reasons set forth above, the Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired Class of Claims.

## XVI. CONCLUSION

The Debtor urges holders of impaired Claims to vote to accept the Plan and to evidence

such acceptance by returning their ballots to the Debtor at the address set forth below so that the ballots will be received on or before 4:00 P.M., Prevailing Central Time, on _____, 2007:

Plan Ballot for Mirant NY-Gen, LLC
c/o Linda Breedlove
Forshey & Prostok LLP
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Fax: (817) 877-4151


[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK]

Dated: February 22 , 2007.

Respectfully submitted,

MIRANT NY-GEN, LLC

By: _____
    Name:  Jeffrey Perry
    Title:   President

APPROVED:

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
FORSHEY & PROSTOK LLP
777 Main Street, Suite 1290
Fort Worth, Texas 76102
(817) 877- 8855   (817) 877-4151 FAX

ATTORNEYS FOR THE DEBTOR

## EXHIBIT A

### CHAPTER 11 PLAN OF REORGANIZATION
### PROPOSED BY MIRANT NY-GEN, LLC

# ATTACHED

**EXHIBIT B**

**MONTHLY OPERATING REPORT**
**MIRANT NY-GEN, LLC**

**PERIOD ENDING NOVEMBER 30, 2006**

# TO BE PROVIDED
# AT A LATER DATE

EXHIBIT C

MONTHLY OPERATING REPORT
MIRANT NEW YORK, INC.

PERIOD ENDING NOVEMBER 30, 2006

# TO BE PROVIDED
# AT A LATER DATE

**EXHIBIT D**

**MIRANT NY-GEN, LLC**

**FINANCIAL INFORMATION THROUGH SEPTEMBER 30, 2006**

# TO BE PROVIDED AT A LATER DATE

# TO BE PROVIDED AT A LATER DATE

ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

# TO BE PROVIDED
# AT A LATER DATE

**REJECTED EXCECUTORY CONTRACTS AND
UNEXPIRED LEASES**

# TO BE PROVIDED
# AT A LATER DATE