UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN RE:                          §
                                §
MIRANT NY-GEN, LLC,             §        CASE NO. 03-46642-DML-11
                                §
        DEBTOR.                 §
                                §

## CHAPTER 11 PLAN OF REORGANIZATION
## PROPOSED BY MIRANT NY-GEN, LLC

Jeff P. Prostok
State Bar No. 16352500
FORSHEY & PROSTOK LLP
777 Main Street, Suite 1290
Fort Worth, Texas 76102
(817) 877-8855
(817) 877-4151 FAX

Attorneys for the Debtor

Dated: February 15, 2007.

## TABLE OF CONTENTS

ARTICLE I.  DEFINITIONS ..........................................................................................1
 A. Defined Terms .......................................................................................1
 B. Interpretation ........................................................................................13
 C. Other Terms ..........................................................................................13
 D. Exhibits .................................................................................................14
 E. Integration Clause.................................................................................14
 F. Plan Documents....................................................................................14

ARTICLE II.  CLASSIFICATION OF CLAIMS AND THE EQUITY INTEREST ...........14
 2.1 Designation of Classes of Claims .......................................................14
 2.2 Claims and the Equity Interest.............................................................14

ARTICLE III.  IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND
 THE EQUITY INTEREST ........................................................................15
 3.1 Unimpaired Classes of Claims and the Equity Interest ....................15
 3.2 Impaired Classes of Claims..................................................................15
 3.3 Impairment Controversies ...................................................................15

ARTICLE V.  TREATMENT OF UNCLASSIFIED CLAIMS ............................................15
 4.1 Unclassified Claims..............................................................................15
 4.2 Administrative Expenses.......................................................................15
 4.3 Treatment of DIP Secured Claims .......................................................16
 4.4 Treatment of Tax Claims ......................................................................18

ARTICLE V.  TREATMENT OF CLAIMS AND THE EQUITY INTEREST....................18
 5.1 Class 1 – Priority Claims (except the Tax Claims).............................18
 5.2 Class 2 – Secured Tax Claims ..............................................................18
 5.3 Class 3 – Other Secured Claims ...........................................................19
 5.4 Class 4 – General Unsecured Claims....................................................19
 5.5 Class 5 – Affiliates Unsecured Claims.................................................19
 5.6 Class 6 – Membership Interest .............................................................19

ARTICLE VI.  ACCEPTANCE OR REJECTION OF THE PLAN .....................................19
 6.1 Classes Entitled to Vote........................................................................19
 6.2 Class Acceptance Requirement.............................................................20
 6.3 Cramdown ..............................................................................................20

ARTICLE VII.  MEANS OF IMPLEMENTATION AND GENERAL DESCRIPTION
 OF THE PLAN.........................................................................................20

| 7.1 | Sale of Mirant New York's Membership Interest | 20 |
| 7.2 | Certain Intercompany Transactions | 20 |
| 7.3 | Estimation of Claims | 21 |
| 7.4 | The Disbursing Agent | 22 |
| 7.5 | Corporate Actions | 23 |
| 7.6 | Vesting of Assets | 23 |
| 7.7 | Charter and Bylaws | 24 |
| 7.8 | Sources of Cash for Plan Distributions | 24 |
| 7.9 | Releases by the Debtor | 24 |

ARTICLE VIII. PROVISIONS REGARDING DISTRIBUTIONS ...........................24
| 8.1 | Plan Distributions | 24 |
| 8.2 | Timing of Plan Distributions | 25 |
| 8.3 | Address for Delivery of Plan Distributions/Unclaimed Distributions | 25 |
| 8.4 | De Minimis Distributions | 25 |
| 8.5 | Time Bar to Cash Payments | 25 |
| 8.6 | Manner of Payment Under the Plan | 25 |
| 8.7 | Fractional Plan Distributions | 25 |
| 8.8 | Surrender and Cancellation of Certificates, Instruments, Notes, or Other Agreements | 26 |
| 8.9 | No Interest Unless Otherwise Provided | 26 |
| 8.10 | Prepayment | 26 |

ARTICLE IX. PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS...........................26
| 9.1 | Objection Deadline | 26 |
| 9.2 | Prosecution of Contested Claims | 26 |
| 9.3 | Claims Settlement | 27 |
| 9.4 | Entitlement to Plan Distributions Upon Allowance | 27 |
| 9.5 | Estimation of Contested Claims | 27 |

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND TO THE OCCURRENCE OF THE EFFECTIVE DATE ...............27
| 10.1 | Conditions Precedent to Confirmation | 27 |
| 10.2 | Conditions Precedent to the Occurrence of the Effective Date | 28 |
| 10.3 | Waiver of Conditions | 28 |
| 10.4 | Effect of Non-Occurrence of the Effective Date | 28 |

ARTICLE XI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............29
| 11.1 | Treatment of Executory Contracts and Unexpired Leases | 29 |
| 11.2 | Cure | 30 |

11.3    Rejection Damages Claims ................................................................................30
11.4    Application of Section 365 of the Bankruptcy Code........................................31

ARTICLE XII.  RETENTION OF JURISDICTION................................................................31

ARTICLE XIII.  MISCELLANEOUS PROVISIONS.............................................................33
13.1    Payment of Statutory Fees ..............................................................................33
13.2    Satisfaction of Claims .....................................................................................33
13.3    Third Party Agreements; Subordination..........................................................33
13.4    Exculpation .....................................................................................................33
13.5    Discharge of Debtor ........................................................................................34
13.6    Discharge of Liabilities ...................................................................................34
13.7    Injunctions ......................................................................................................35
13.8    Notice of Confirmation ...................................................................................35
13.9    Notices ............................................................................................................35
13.10   Headings .........................................................................................................36
13.11   Governing Law................................................................................................36
13.12   Exemption from Transfer Taxes ......................................................................36
13.13   Retiree Benefits ..............................................................................................36
13.14   Attorneys' Fees...............................................................................................36
13.15   Modification of the Plan ..................................................................................37
13.16   Setoff Rights ...................................................................................................37
13.17   Compliance with Tax Requirements ................................................................37
13.18   Rates ...............................................................................................................37
13.19   Binding Effect.................................................................................................37
13.20   Severability .....................................................................................................38
13.21   No Admissions ................................................................................................38
13.22   Bankruptcy Restrictions...................................................................................38

The Debtor, Mirant NY-Gen, LLC, hereby proposes the following Plan of Reorganization pursuant to section 1121(c) of the Bankruptcy Code.

## ARTICLE I.
## DEFINITIONS

**A.** **Defined Terms**. In addition to such other terms as are defined in other sections of this Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.1. "Administrative Expense" means a Claim incurred by the Debtor or its chapter 11 estate on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 Case allowed under subsection 503(b) and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930 of title 28 of the United States Code.

1.2. "Administrative Expense Bar Date" means the deadline, within thirty (30) days after service of the Notice of Confirmation, by which the holder of an Administrative Expense, as described in Section 4.2, must file an Administrative Expense with the Bankruptcy Court, and serve its Administrative Expense on the Debtor, its counsel, and the Office of the United States Trustee.

1.3. "Affiliate" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code.

1.4. "Affiliates Unsecured Claim" means a Claim other than a DIP Secured Claim held by any Affiliate against the Debtor that occurred or came into existence prior to the Petition Date.

1.5. "Alliance Energy" means Alliance Energy Renewables, LLC, the proposed Purchaser of Mirant New York's Membership Interest in Mirant NY-Gen in accordance with the terms of the Purchase and Sale Agreement.

1.6. "Allowed," when used with respect to a Claim means (a) a Claim to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which

case such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, allowed by a Final Order. "Allowed," when used with respect to an Administrative Expense of a Professional, shall mean an Administrative Expense approved by application to the Bankruptcy Court and entry of a Final Order approving such Administrative Expense.

1.7. "Assets" includes all right, title, and interest, whether legal or equitable, in and to property of every type or nature owned or claimed by the Debtor as of the Petition Date, together with all property subsequently acquired by the Debtor through the Effective Date, or at any time thereafter, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to property as defined in section 541 of the Bankruptcy Code. This shall also include all proceeds arising from the sale, exchange, or lease of any of the Assets.

1.8. "Assigned Assets" means the Assets of the Debtor to be assigned under the terms of the Purchase and Sale Agreement to Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas), including, but not limited to, the Debtor's affirmative claims and Causes of Action against any third parties for actions or inactions arising prior to the Sale Closing Date (including, but not limited to, claims filed against Orange and Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc. and/or any of their respective Affiliates), all of the Debtor's pending insurance claims for losses with respect to the Swinging Bridge Station and the Hillburn Station (which may include, but shall not be limited to, property, business interruption, and environmental losses), the Intercompany Claims, and, under section 7.29 of the Purchase and Sale Agreement, certain purchase orders.

1.9. "Assumed Contracts" means the executory contracts, unexpired leases, and other agreements assumed under section 365 of the Bankruptcy Code by the Debtor as described by Section 11.1 of the Plan, which agreements shall be listed on Disclosure Statement Schedule 11.1(a) or "Schedule of Assumed Executory Contracts and Unexpired Leases" and, in accordance with the Purchase and Sale Agreement, which Schedule 11.1(a) will be mutually agreed by the Debtor and the Purchaser.

1.10. "Auction" means, because the sale of Mirant New York's Membership Interest in the Debtor is subject to Bankruptcy Court approval and to higher and better counteroffers, the Membership Interest will be sold to the highest and best bidder at an auction to be conducted under the Sale Procedures in connection with the hearing on the Sale Motion.

1.11. "Avoidance Action" means a Cause of Action assertable under chapter 5 of

the Bankruptcy Code or any comparable state law affecting creditors rights generally.

1.12. "Ballot" means the form of ballot provided to holders of Claims or the Equity Interest pursuant to Bankruptcy Rule 3017(d), by which each holder may accept or reject the Plan.

1.13. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978 codified at title 11 of the United States Code, as applicable to the Chapter 11 Case.

1.14. "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or such other court having jurisdiction over all or any part of the Chapter 11 Case.

1.15. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, including applicable local rules of the Bankruptcy Court.

1.16. "Bar Date" means a date by which a Claim must be filed.

1.17. "Bar Date Notice" means a notice of a Bar Date, as approved by an order of the Bankruptcy Court.

1.18. "Breakup Fee" means, under the circumstances and in accordance with the terms of the Purchase and Sale Agreement, the payment of $250,000.00 to the Purchaser.

1.19. "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in New York are authorized or obligated by law or executive order to close.

1.20. "Cash" means the legal tender of the United States of America.

1.21. "Causes of Action" means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity, or otherwise.

1.22. "Chapter 11 Case" means the case entitled Mirant NY-Gen, LLC, commenced under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, styled as Case No. 03-46642-DML.

1.23. "Claim" means (a) a right against the Debtor to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured

(including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured, or unsecured or (b) a right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured, or unsecured.

1.24. "Claimant" means the holder of a Claim.

1.25. "Class" means a category or group of holders of Claims or the Equity Interest as designated in Article II of the Plan.

1.26. "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against the Debtor.

1.27. "Confirmation Date" means the date that the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.28. "Confirmation Hearing" means the hearing, as it may be continued from time to time, conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan.

1.29. "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

1.30. "Contested," when used with respect to a Claim, means a Claim that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; that is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; that is not listed in the Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; any Claim as to which an objection has been or may be timely filed and which Claim has not been Allowed by a Final Order.

1.31. "Creditor" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.32. "Debtor in Possession" or the "Debtor" refers to Mirant NY-Gen, in its capacity as a debtor-in-possession under section 1101(1) of the Bankruptcy Code.

1.33. "DIP Facility" means a secured superpriority credit facility entered into between Mirant Americas and the Debtor dated February 28, 2006, as amended, which serves to provide revolving loans to the Debtor.

1.34.   "DIP Secured Claim" means a Claim held by Mirant Americas against the Debtor that is secured by a Lien on the Debtor's Assets under the DIP Facility.

1.35.   "Disallowed," when used with respect to all or any part of a Claim, means that portion of a Claim to which an objection or motion to disallow has been sustained by a Final Order.

1.36.   "Disbursing Agent" means the agent acting on behalf of the Reorganized Debtor in (a) making the Plan Distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order, and (b) performing any other act or task that is or may be delegated to the Disbursing Agent under the Plan.

1.37.   "Disclosure Statement" means the written statement, as amended, supplemented, or modified from time to time, describing the Plan that is prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

1.38.   "Disclosure Statement Order" means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code, and (b) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

1.39.   "Distribution Date" means the Effective Date or a date that is as soon as reasonably practicable after the Effective Date.

1.40.   "Effective Date" means the later to occur of (a) eleven (11) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least eleven (11) days after the Confirmation Date and (b) the first Business Day that each of the conditions precedent set forth in Section 10.2 have been satisfied or waived.

1.41.   "Emerging New York Entities" means the three Excluded Debtors, Mirant New York, Mirant Bowline, and Hudson Valley, that filed their Supplemental Plan on January 26, 2007, with the Bankruptcy Court.

1.42.   "Equity Interest" means the Membership Interest.

1.43.   "Estate" means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.44.   "Estate Assets" means all of the Assets other than the Assigned Assets owned by Mirant NY-Gen.

1.45.  "Executory Contract" means any executory contract or contracts as such term is used within section 365 of the Bankruptcy Code to which the Debtor was a party as of the Effective Date.

1.46.  "Excluded Debtors" means Mirant NY-Gen, Mirant New York, Mirant Bowline, Mirant Lovett, and Hudson Valley. The Bankruptcy Court adjourned the Mirant Confirmation Hearing as to the Excluded Debtors.

1.47.  "Fee Application" means any application for allowance and payment of a Fee Claim (including Claims for "substantial contribution" pursuant to section 503(b) of the Bankruptcy Code).

1.48.  "Fee Claim" means a Claim of a Professional Person.

1.49.  "Final Order" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 may be filed with respect to such order.

1.50.  "Final Remediation Plan" means the final remediation plan approved by the Federal Energy Regulatory Commission on June 14, 2006 and by the Bankruptcy Court on June 29, 2006.

1.51.  "Gas Turbine Stations" means the gas turbine generating facilities that are owned and/or operated by the Debtor, including the Hillburn Station and the Shoemaker Station, and located in southeastern New York.

1.52.  "General Unsecured Claim" means any Claim other than an Administrative Expense, a Tax Claim, a Priority Claim, a Secured Tax Claim, a DIP Secured Claim, an Other Secured Claim, or an Affiliates Unsecured Claim.

1.53.  "Hillburn Station" means the Hillburn facility that is owned by the Debtor and located in southeastern New York.

1.54.  "Hudson Valley" means Hudson Valley Gas Corporation, an Excluded

Debtor.

1.55. "Hydroelectric Stations" means the hydroelectric generating facilities that are owned by the Debtor, including the Mongaup Station, the Rio Station, and the Swinging Bridge Station, and located in southeastern New York.

1.56. "Impaired," when used in reference to a Class, means that the Claims in such Class will not be repaid in full or that the legal rights are altered under the Plan, as described in section 1124 of the Bankruptcy Code.

1.57. "Insider" means an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

1.58. "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

1.59. "Intercompany Claims" means all claims and causes of action existing as of the Sale Closing Date that the Debtor has or could assert against any of its Affiliates, including without limitation: (i) all "claims," as defined in Section 101(5) of the Bankruptcy Code and all causes of action arising under sections 542, 544, 545, 547, 548, 549, 550, 552(b) and 553 of the Bankruptcy Code or any comparable state law affecting creditors rights generally, and which constitute property of the Debtor's chapter 11 estate and (ii) any claims arising with respect to any accounts receivable due to the Debtor from any of its Affiliates, as further described in Sections 2.03(a)(i) and 2.03(f) of the Purchase and Sale Agreement.

1.60. "IRS" means the United States Internal Revenue Service.

1.61. "Lease" means any unexpired lease to which the Debtor was a party as of the Effective Date.

1.62. "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor or the Reorganized Debtor, including any right of offset asserted against any debt owed to the Debtor or the Reorganized Debtor.

1.63. "MAG" means Mirant Americas Generation, LLC, one of the Mirant Debtors.

1.64. "MAG Debtors" means MAG and the direct and indirect subsidiaries of MAG that were debtors in the Mirant Reorganization Cases, as identified on *Exhibit B* to the Mirant Plan. The Excluded Debtors were listed as MAG Debtors.

1.65. "Master Service List" means that service list created pursuant to the "Complex Case Rules" of the Court for the Mirant Reorganization Cases and used in this Chapter 11 Case.

1.66. "Membership Interest" means 100% of the ownership interest held by Mirant New York in the Debtor and constitutes all of the equity interest in the Debtor.

1.67. "Membership Interest Sale" means the sale to Purchaser or Prevailing Bidder of the Membership Interest in accordance with the terms of the Purchase and Sale Agreement.

1.68. "Mirant" or "Mirant Corporation" means the indirect parent of the Debtor.

1.69. "Mirant Americas" means Mirant Americas, Inc., an Affiliate of the Debtor, and holder of a DIP Secured Claim against the Debtor.

1.70. "Mirant Bowline" means Mirant Bowline, LLC, an Excluded Debtor.

1.71. "Mirant Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of the Mirant Plan, which was adjourned with respect to the Excluded Debtors.

1.72. "Mirant Debtors" means MC 2005, LLC (f/k/a Mirant Corporation prior to January 3, 2006) and certain of its direct and indirect subsidiaries that were debtors in possession under the jointly administered case no. 03-46590-DML-11, as identified on *Exhibit C* to the Mirant Plan, together with the MAG Debtors.

1.73. "Mirant Lovett" means Mirant Lovett, LLC, an Excluded Debtor.

1.74. "Mirant New York" means Mirant New York, Inc., an Excluded Debtor, and the holder of the Membership Interest in Mirant NY-Gen.

1.75. "Mirant NY-Gen" means Mirant NY-Gen, LLC, debtor and debtor in possession in this Chapter 11 Case, an Excluded Debtor.

1.76. "Mirant Confirmation Order" means the order dated December 9, 2005, confirming the *Debtors' Amended and Restated Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and its Affiliated Debtors Dated December 9, 2005* with respect to all of the Mirant Debtors, except the Excluded Debtors.

1.77. "Mirant Plan" means the *Debtors' Amended and Restated Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and its Affiliated Debtors Dated December 9, 2005* confirmed by the Bankruptcy Court with respect to all of the Mirant

Debtors, except the Excluded Debtors.

1.78. "Mirant Reorganization Cases" means the cases commenced on and after July 14, 2003 under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to each of the Mirant Debtors, styled as *In re Mirant Corporation, et al.,* Chapter 11 Case No. 03-46590-DML (Jointly Administered).

1.79. "Mongaup Station" means the Mongaup facility that is owned by the Debtor and located in southeastern New York.

1.80. "Notice of Confirmation" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed to the holders of Claims against and the Equity Interest in the Debtor.

1.81. "Objection" means an objection to the allowance of a Claim or Equity Interest interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court.

1.82. "Objection Deadline" means the deadline for filing an Objection to a Claim as set forth in Section 9.1 of the Plan.

1.83. "ORU Litigation" means the Debtor's interest in that certain complaint styled *Mirant Corporation, Mirant Energy Trading, LLC, Mirant NY-Gen, LLC, Mirant Lovett, LLC, Mirant Bowline, LLC vs. Consolidated Edison of New York, Inc. and Orange and Rockland Utilities, Inc., Adv. No. 06-4141,* dated May 1, 2006, as amended, and based upon claims for, among other things, breach of contract and certain Avoidance Actions.

1.84. "Other Amount" means an amount of Cash equal to the Bankruptcy Court's estimate of the total amount of Allowed (a) Administrative Expenses (except Fee Claims and DIP Secured Claims), (b) Tax Claims, (c) Priority Claims (except Tax Claims), (d) Secured Tax Claims and (e) Other Secured Claims, in each case asserted or to be asserted against the Debtor.

1.85. "Other Secured Claim" means a Secured Claim other than a Secured Tax Claim and a DIP Secured Claim.

1.86. "Person" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.87. "Petition Date" means July 14, 2003, the date on which the Debtor filed its petition under chapter 11 of the Bankruptcy Code, along with the other Mirant Debtors.

1.88. "Plan" means this chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, supplemented, or modified from time to time and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes effective.

1.89. "Plan Carve-Out" shall have the meaning in Section 4.3(b) of the Plan.

1.90. "Plan Distribution" means the payment or distribution under the Plan of Cash evidencing an obligation under the Plan to the holder of an Allowed Claim.

1.91. "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified herein or attached as exhibits or schedules hereto, which shall be substantially in the respective forms filed by the Debtor with the Bankruptcy Court prior to the conclusion of the Confirmation Hearing.

1.92. "Prevailing Bidder" means a purchaser of the Membership Interest other than the Purchaser who has submitted the highest or otherwise best bid pursuant to the procedures set forth in the Sale Procedures.

1.93. "Priority Claim" means a Claim of the kind specified in section 507(a) of the Bankruptcy Code, including but not limited to a Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

1.94. "Pro Rata Share" means the proportion that the amount an Allowed Claim (not yet paid) bears to the aggregate amount of all Allowed Claims (not yet paid), relative to the remaining portion of the Unsecured Creditor Amount or the Other Amount category, as the case may be, calculated on the Distribution Date or Subsequent Distribution Date, as applicable.

1.95. "Professional" or "Professional Person" means any Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Case.

1.96. "Protected Persons" means the persons as defined in the "Order Restricting Pursuit of Certain Persons" (Docket No. 357) and the "Order Extending Order Restricting Pursuit of Certain Persons" (Docket No. 1006) issued by the Bankruptcy Court on August 5, 2003, and September 29, 2003, respectively, in the Mirant Reorganization Cases. Under such order, the Protected Persons include (a) all professionals, officers, directors and managers of the Mirant Debtors, (b) the members of Committees and their professionals, (c) William Snyder in his capacity as the examiner in the Mirant Reorganization Cases and his professionals, and (d) Dean Nancy Rapoport, in her capacity as fee examiner in the Mirant

Reorganization Cases.

1.97. "<u>Purchase and Sale Agreement</u>" means that certain Membership Interest Purchase and Sale Agreement, dated January 31, 2007, by and between Mirant New York, Seller, and Alliance Energy, Purchaser, providing, among other things, that the sale of the Membership Interest is free and clear of all liens, claims, encumbrances, and interests (attached as *Exhibit A* to the Plan).

1.98. "<u>Purchaser</u>" means Alliance Energy, the proposed purchaser of Mirant New York's Membership Interest in Mirant NY-Gen under the terms of the Purchase and Sale Agreement and related documents.

1.99. "<u>Register</u>" means the claims register maintained in the Chapter 11 Case.

1.100. "<u>Reorganized Debtor</u>" refers to Mirant NY-Gen after the Effective Date.

1.101. "<u>Rejection Damages Claim</u>" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any executory contract or unexpired lease.

1.102. "<u>Rejection Damages Claim Bar Date</u>" means the deadline, thirty (30) days after service of the Notice of Confirmation, by which the holder of a Rejection Damages Claim, as described in Section 11.3, must file a Rejection Damages Claim with the Bankruptcy Court and serve its Rejection Damages Claim on the Debtor, its counsel, and the Office of the United States Trustee.

1.103. "<u>Rio Station</u>" means the Rio facility that is owned by the Debtor and located in southeastern New York.

1.104. "<u>Sale Closing Date</u>" means the date on which the Purchase and Sale Agreement, in accordance with Section 3.01 of the Purchase and Sale Agreement, is closed.

1.105. "<u>Sale Motion</u>" means the *Motion of Excluded Debtors for Entry of an Order (I) Authorizing and Approving the Sale of all Membership Interests in Mirant NY-Gen, LLC, by Mirant New York, Inc. to Alliance Energy Renewables, LLC, or Alternatively to Prevailing Overbidder, Free and Clear of all Liens, Claims, Encumbrances, and Interests, (II) Approving the Membership Interest Purchase and Sale Agreement Between Mirant New York, Inc., as Seller, and Alliance Energy Renewables, LLC, as Proposed Purchaser, and Authorizing the Debtors to Perform the Terms Thereof, and (III) Authorizing Certain Excluded Debtors to Enter Into, Modify, or Terminate Contracts and Leases Pursuant to the Membership Interest Purchase and Sale Agreement.*

1.106. "<u>Sale Order</u>" means the order approving the Sale Motion and authorizing

Mirant New York to sell, transfer, and assign its Membership Interest in Mirant NY-Gen to the Purchaser in accordance with the terms and conditions of the Purchase and Sale Agreement (attached to the Plan as *Exhibit A*).

1.107. "<u>Sale Procedures</u>" means the sale procedures to be implemented in connection with the Membership Interest Sale approved by the Bankruptcy Court in the Sale Procedures Order obtained by Mirant New York on February 7, 2007.

1.108. "<u>Sale Procedures Order</u>" means that certain *Order (A) Approving the Sale Procedures in Connection with the Proposed Sale of Mirant New York, Inc.'s Membership Interest in Mirant NY-Gen, LLC; (B) Approving Payment of a Breakup Fee in Accordance with the Terms of the Membership Interest Purchase and Sale Agreement; (C) Scheduling a Sale Hearing and an Auction; and (D) Approving the Form and Manner of Notice of the Sale Procedures and Sale Hearing.*

1.109. "<u>Sale Proceeds</u>" means the proceeds paid to Mirant New York on the Sale Closing Date by the Purchaser or the Prevailing Bidder, net of the Breakup Fee, as applicable, from the Membership Interest Sale.

1.110. "<u>Sale Proceeds Account</u>" means an account established by the Disbursing Agent into which Mirant New York shall deposit the Sale Proceeds on the Effective Date.

1.111. "<u>Schedules</u>" means, collectively, the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and the List of Equity Security Holders filed by Mirant NY-Gen, pursuant to section 521 of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended.

1.112. "<u>Secured Claim</u>" means (a) a Claim secured by a Lien on an Asset, which Lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, but only to the extent of the value of such Asset; (b) a Secured Tax Claim; (c) a DIP Secured Claim; and (d) any right of offset asserted against the Debtor.

1.113. "<u>Secured Creditor</u>" means the owner or holder of a Secured Tax Claim, a DIP Secured Claim, or Other Secured Claim.

1.114. "<u>Secured Tax Claim</u>" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date against the Debtor, irrespective of the date on which such Claim is assessed or due.

1.115. "<u>Seller</u>" means Mirant New York as Seller of the Membership Interest under the terms of the Purchase and Sale Agreement.

1.116. "Shoemaker Station" means the Shoemaker facility operated by the Debtor and located in southeastern New York.

1.117. "Subsequent Distribution Date" means a date as reasonably practicable after all Claims within a Class or Other Amount category that are Contested Claims as of the Effective Date become Allowed or Disallowed.

1.118. "Substantial Consummation" means the day on which a Creditor first receives a distribution of any kind under the terms and provisions of this Plan.

1.119. "Supplemental Plan" means that certain Supplemental Joint Chapter 11 Plan of Reorganization of the Emerging New York Entities dated January 26, 2007, as the same may be amended from time to time.

1.120. "Swinging Bridge Station" means the Swinging Bridge facility that is owned by the Debtor and located in southeastern New York.

1.121. "Tax Claim" means a Claim that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

1.122. "Unclaimed Property" means any Plan Distribution that is unclaimed or undeliverable as described in Article VIII and such unclaimed or undeliverable Plan Distribution shall revert or be returned to Mirant Americas (or to an Affiliate designated by Mirant Americas).

1.123. "Unsecured Creditor Amount" means an amount of Cash equal to the Bankruptcy Court's estimate of the total amount of Allowed General Unsecured Claims.

1.124. "Valuation Motion" means a motion filed by the Debtor or a Creditor seeking to obtain a determination by the Bankruptcy Court of the value of Collateral.

1.125. "Voting Deadline" means the date set by the Bankruptcy Court by which Ballots for accepting or rejecting the Plan must be received by the Balloting Agent.

**B.** **Interpretation**. Unless otherwise specified in the Plan, all section, article and exhibit references in this Plan are to the respective section in, article of, or exhibit to the Plan as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of interpretation set forth in section 102 of the Bankruptcy Code shall apply to the Plan.

**C.** **Other Terms**. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used in the Plan that is not defined in the Plan shall have the meaning

ascribed to that term, if any, in the Bankruptcy Code.

    **D.**    **Exhibits**. All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

    **E.**    **Integration Clause**. The Plan is a complete, whole and integrated statement of the binding agreement between the Debtor, creditors, the holder of the Membership Interest, and the parties-in-interest upon the matters herein.

    **F.**    **Plan Documents**. The Plan Documents, including Exhibits and Schedules, are incorporated into and are made a part of the Plan as if set forth in full herein, whether submitted herewith or subsequently filed with the Bankruptcy Court prior to the conclusion of the Confirmation Hearing.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND THE EQUITY INTEREST

    **2.1.**    **Designation of Classes of Claims**. The following is a designation of the classes of Claims under this Plan. Administrative Expenses, Tax Claims, and the DIP Secured Claims have not been classified and are excluded from the following classes in accordance with section 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

    **2.2.**    **Claims and the Equity Interest**. The Claims and the Equity Interest are classified under this Plan as follows:

        (a)    Class 1 - Priority Claims (except Tax Claims)

        (b)    Class 2 - Secured Tax Claims

        (c)    Class 3 - Other Secured Claims

        (d)    Class 4 - General Unsecured Claims

        (e)    Class 5 - Affiliates Unsecured Claims

        (f)    Class 6 - Membership Interest

## ARTICLE III.
## IDENTIFICATION OF IMPAIRED CLASSES
## OF CLAIMS AND THE EQUITY INTEREST

**3.1.** **Unimpaired Classes of Claims and the Equity Interest.** Classes 1 and 6 are not Impaired under the Plan.

**3.2.** **Impaired Classes of Claims.** Except as provided in Section 3.1, all classes of Claims are Impaired under the Plan.

**3.3.** **Impairment Controversies.** If a controversy arises as to whether any Class of Claims is impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE IV.
## TREATMENT OF UNCLASSIFIED CLAIMS

**4.1.** **Unclassified Claims.** Administrative Expenses and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively. In accordance with section 1123(a)(1) of the Bankruptcy Code, such Claims and any DIP Secured Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126, or 1129 of the Bankruptcy Code.

**4.2.** **Administrative Expenses.** All Administrative Expenses (other the Claims arising from the DIP Facility) against the Debtor shall be treated as follows:

(a) <u>Time for Filing Administrative Expenses.</u> The holder of any Administrative Expense, other than (i) a Fee Claim, (ii) a Claim arising under the DIP Facility, or (iii) an Administrative Expense that has been Allowed on or before the Effective Date, must file within thirty (30) days after service of the Notice of Confirmation an Administrative Expense with the Bankruptcy Court, and serve a copy of such Administrative Expense on the Debtor, its counsel, and the Office of the United States Trustee.

**Failure to timely file an Administrative Expense may bar the holder from receiving payment.**

(b) <u>Time for Filing Fee Claims.</u> Each Professional who holds or asserts a Fee Claim for compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice, a Fee Application within sixty (60) days after the Effective Date. **Failure to file timely and serve a Fee Application as required under this section 4.2(b) of the Plan shall result in the Fee Claim being forever barred and**

**discharged.** To the extent necessary, entry of the Confirmation Order shall amend and supersede any previously entered Order of the Bankruptcy Court regarding procedures for the payment of Fee Claims.

(c) <u>Objection Deadline for Administrative Expense/Fee Claims</u>. An Administrative Expense which has been properly filed pursuant to section 4.2(a) of the Plan, shall become an Allowed Administrative Expense if no objection is filed within sixty (60) days after its filing and service or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such sixty (60) day period (or any extension thereof), the Administrative Expense shall become an Allowed Administrative Expense only to the extent Allowed by Final Order. An Administrative Expense that is a Fee Claim, and with respect to which a Fee Application has been properly filed pursuant to section 4.2(b) of the Plan, shall become an Allowed Administrative Expense only to the extent allowed by Final Order of the Court.

(d) <u>Payment of Allowed Administrative Expenses</u>. On the Distribution Date or the Subsequent Distribution Date, subject to Section 7.3 of the Plan, each holder of an Allowed Administrative Expense, other than a Fee Claim or DIP Secured Claim, shall receive from the Plan Carve-Out (i) the amount of such holder's Allowed Administrative Expense, or (ii) such other treatment as may be agreed upon in writing by the Debtor and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Expense.

**4.3.** <u>**Treatment of DIP Secured Claims**</u>.

(a) <u>Liquidation of Collateral</u>.

(i) On the Effective Date, all of the Debtor's right, title and interest in and to the Assigned Assets shall be assigned to and vested in Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas) free and clear of all Claims, Liens and interests. Upon such assignment, Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas) shall be entitled (in its sole discretion) to liquidate the Assigned Assets without further order of the Bankruptcy Court and to retain any proceeds generated therefrom for its own account.

(ii) Without limiting the generality of the foregoing, upon the occurrence of the Effective Date, Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas) shall have full standing and be fully empowered pursuant to section 1123(b)(3)(B) to pursue all Avoidance Actions and other Causes of Action, including, without limitation, the ORU Litigation, without further order of

the Bankruptcy Court. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas) will not pursue any and all available Causes of Action against them. Mirant Americas expressly reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise provided in the Plan.** Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, Mirant Americas expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.

(b)     The Sale Proceeds. On the Effective Date, the Lien of Mirant Americas granted under the DIP Facility upon substantially all of the Debtor's Assets shall attach to the Sale Proceeds and such Sale Proceeds shall be deposited in the Sale Proceeds Account as set forth in Section 7.2(a) of the Plan. The Debtor hereby agrees (i) that such Lien shall be valid, perfected, non-avoidable, and fully enforceable and (ii) that all amounts due and owing under the DIP Facility are not subject to any setoffs, counterclaims or defenses of any kind or nature whatsoever. In exchange for the foregoing, and in consideration for the treatment received by Mirant Americas in Section 4.3(a) and Section 7.9 of the Plan, Mirant Americas shall release its Lien upon the Estate Assets and shall agree that its Lien upon the Sale Proceeds shall be subject to a carve-out (the "Plan Carve-Out") in (x) the Unsecured Creditor Amount and (y) the Other Amount. The Plan Carve-Out shall replace the carve-out set forth in the DIP Facility in its entirety. The Unsecured Creditor Amount shall be used solely for the purpose of paying holders of General Unsecured Claims under the Plan and the Other Amount shall be used solely for the purpose of paying holders of Administrative Expenses (other than the DIP Secured Claim and Fee Claims), Tax Claims, Priority Claims, Secured Tax Claims, and Other Secured Claims under the Plan; provided, that any portion of the Unsecured Creditor Amount not needed to pay General Unsecured Claims and any portion of the Other Amount not required to pay the allocated category of Administrative Expenses (other than the DIP Secured Claim and Fee Claims), Tax Claims, Priority Claims (except Tax Claims), Secured Tax Claims, and Other Secured Claims shall revert to Mirant Americas. Except to the extent of the Plan Carve-Out (a) no Administrative Expenses (other than the DIP Secured Claim and Fee Claims) of the Chapter 11 Case or any future proceeding or case which may result therefrom, including liquidation in bankruptcy or any other proceedings under the Bankruptcy Code, shall be charged pursuant to section 506(c) of the Bankruptcy Code or otherwise against the Debtor, the Reorganized Debtor, Mirant Americas (or any of its Affiliates, including without limitation, Mirant New York) or the Sale Proceeds or Assigned Assets in each case without the prior written consent of Mirant Americas and (b) neither the Debtor, the Reorganized Debtor, Mirant Americas (or any of its Affiliates,

including without limitation, Mirant New York) nor the Sale Proceeds or Assigned Assets shall be liable for the payment of any other Claims of any kind against the Debtor.

**4.4    Treatment of Tax Claims**.  At the election of the Debtor, subject to Section 7.3 of the Plan, each holder of an Allowed Tax Claim shall receive from the Plan Carve-Out:

(a)    the amount of such holder's Allowed Claim in one Cash payment on the Distribution Date or Subsequent Distribution Date, as applicable;

(b)    the amount of such holder's Allowed Claim, in equal annual Cash payments on each anniversary of the Distribution Date or Subsequent Distribution Date, as applicable, with interest thereon at the non-default statutory rate applicable to the tax in question, without penalties, until the last anniversary of the Distribution Date or Subsequent Distribution Date that precedes the sixth (6th) anniversary of the date of assessment of such Allowed Claim; or

(c)    such other treatment as may be agreed to in writing by the Debtor and the holder of such Allowed Tax Claim; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Tax Claim. The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or proceeding against any responsible person, officer, or director of the Debtor that otherwise would be liable to such holder for payment of a Tax Claim as long as the Debtor is in compliance with Section 4.4.

### ARTICLE V.
### TREATMENT OF CLAIMS AND THE EQUITY INTEREST

**5.1.    Class 1 - Priority Claims (except the Tax Claims)**.  Each holder of an Allowed Priority Claim against the Debtor shall be unimpaired under the Plan, and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable, and contractual rights to which such Claim entitles such holder in respect of such Claim shall be fully reinstated and retained, and, subject to Section 7.3 of the Plan, such Allowed Priority Claim (including any amounts to which such holder is entitled pursuant to section 1124(2) of the Bankruptcy Code) shall be paid in full from the Plan Carve-Out in accordance with such reinstated rights on the Distribution Date.

Class 1 is not Impaired.

**5.2.    Class 2 –Secured Tax Claims**.  Subject to Section 7.3 of the Plan, the holder of an Allowed Class 2 – Secured Tax Claim shall receive from the Plan Carve-Out on the Distribution Date or Subsequent Distribution Date, (a) the amount of such holder's Allowed Class 2 – Secured Tax Claim plus, to the extent such holder is entitled to interest pursuant to section 506(b) of the Bankruptcy Code, post-petition interest in an amount to be determined by the parties or by a Final Order of the Bankruptcy Court in one Cash payment, or (b) such other treatment as may be agreed

upon in writing by the Debtor and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Class 2 – Secured Tax Claim.

Class 2 is Impaired.

**5.3.** __Class 3 – Other Secured Claims__. Subject to Section 7.3 of the Plan, the holder of an Allowed Class 3 – Other Secured Claim shall receive from the Plan Carve-Out on the Distribution Date or Subsequent Distribution Date (a) the amount of such holder's Allowed Class 3 – Other Secured Claim plus, to the extent such holder is entitled to interest pursuant to section 506(b) of the Bankruptcy Code, post-petition interest in an amount to be determined by the parties or by a Final Order of the Bankruptcy Code in one Cash payment, or (b) such other treatment as may be agreed upon in writing by the Debtor and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Class 3 – Other Secured Claim.

Class 3 is Impaired.

**5.4.** __Class 4 – General Unsecured Claims__. Subject to Section 7.3 of the Plan, each holder of an Allowed Class 4 - General Unsecured Claim shall be paid from the Plan Carve-Out on the Distribution Date or the Subsequent Distribution Date an amount in Cash equal to the principal amount of such Allowed Class 4 – General Unsecured Claim.

Class 4 is Impaired.

**5.5.** __Class 5 – Affiliates Unsecured Claims__. Each holder of an Allowed Class 5 – Affiliates Unsecured Claim shall receive the releases set forth in Section 7.9 of the Plan in full and complete satisfaction of its Allowed Class 5 – Affiliates Unsecured Claim.

Class 5 is Impaired.

**5.7.** __Class 6 – Membership Interest__. The sole holder of the Membership Interest shall retain its interest in the Membership Interest.

Class 6 is not Impaired.

### ARTICLE VI.
### ACCEPTANCE OR REJECTION OF THE PLAN

**6.1.** __Classes Entitled to Vote__. Classes 2, 3, 4 and 5 are Impaired under the Plan and each holder of a Claim in any such Class is entitled to vote to accept or reject the Plan. Classes 1 and 6

are deemed to have accepted the Plan.

**6.2.** **Class Acceptance Requirement**. A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

**6.3.** **Cramdown**. The Debtor believes that all subsections of section 1129(a) of the Bankruptcy Code have been met. This section shall constitute the Debtor's request, pursuant to section 1129(b), that the Bankruptcy Court confirm the Plan in the event that the requirements of section 1129(a)(8) have not been met.

**ARTICLE VII.**
**MEANS OF IMPLEMENTATION AND**
**GENERAL DESCRIPTION OF THE PLAN**

**7.1.** **Sale of Mirant New York's Membership Interest**. Simultaneously with the occurrence of the Effective Date, Mirant New York shall close the sale of the Membership Interest to the Purchaser or the Prevailing Bidder. Among other things, the sale of the Membership Interest shall be free and clear of all Claims, Liens and interests to the fullest extent permitted by sections 363(f) and 1141(c) of the Bankruptcy Code and as more particularly set forth in the Sale Order.

**7.2** **Certain Intercompany Transactions**. On the Effective Date, each of the following intercompany transactions shall occur and be implemented pursuant to section 1123(a)(5) of the Bankruptcy Code:

(a) Transfer of Sales Proceeds. The Disbursing Agent shall establish the Sale Proceeds Account. Mirant New York shall, in exchange for the releases set forth in Section 7.9 of the Plan, transfer the Sale Proceeds into the Sale Proceeds Account. Subject to the Plan Carve-Out, such proceeds shall be subject to a valid, perfected, non-avoidable, and fully enforceable Lien in favor of Mirant Americas pursuant to the DIP Facility. On and after the Effective Date, the Disbursing Agent shall use the Sale Proceeds that are subject to the Plan Carve-Out to make distributions to holders of certain Allowed Claims, as provided by Article V of the Plan (Treatment of Claims and the Equity Interest) and shall pay any remaining amounts to Mirant Americas (or an Affiliate to be designated by Mirant Americas) in respect of the DIP Facility.

(b) Assignment of Assigned Assets. Subject to the terms and conditions set forth in Section 4.3(a) of the Plan, the Debtor shall assign the Assigned Assets to Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas).

(c) Implementation of the Plan. The Debtor shall make such transfers or assignments to Mirant Americas (or an Affiliate to be designated by Mirant Americas)

necessary to implement confirmation of the Plan.

### 7.3. <u>Estimation of Claims</u>.

(a) <u>Estimation of Unsecured Creditor Amount and Other Amount for Plan Carve-Out</u>. On or before the Effective Date, pursuant to section 502(c) of the Bankruptcy Code, the Bankruptcy Court shall estimate the amount of Cash needed in order for (i) the Unsecured Creditor Amount to satisfy all General Unsecured Claims as required by section 5.4 of the Plan, and (ii) the Other Amount to satisfy all Other Amount categories as required by sections 4.2, 4.4, 5.1, 5.2 and 5.3 of the Plan, as applicable. The Bankruptcy Court shall allocate the Cash constituting the Other Amount by category of expenses or Claims (*i.e.*, a sum certain of the Other Amount shall be reserved for payment of (1) Administrative Expenses (other than the DIP Secured Claim and the Fee Claims), (2) Tax Claims, (3) Priority Claims (other than Tax Claims), (4) Secured Tax Claims, and (5) Other Secured Claims). The estimation of the Unsecured Creditor Amount and each category of the Other Amount by the Bankruptcy Court shall be conclusive and none of the Debtor, the Reorganized Debtor, Mirant New York, Mirant Americas, the Purchaser, the Prevailing Bidder, any Affiliate of the foregoing, the Sale Proceeds, or the Assets shall be liable for Allowed Claims exceeding the estimated amounts for the Unsecured Creditor Amount or any Other Amount category.

(b) <u>Distribution of Plan Carve-Out</u>. The Disbursing Agent shall reserve Sale Proceeds in the Sale Proceeds Account in the amount of the Unsecured Creditor Amount and the Other Amount, and such reserve shall constitute the Plan Carve-Out. Funds located in the Sale Proceeds Account that are not subject to the Plan Carve-Out shall be used to fund Allowed Fee Claims, and, thereafter, paid to Mirant Americas. Distribution of the Plan Carve-Out shall be made in accordance with Articles IV or V hereof, but subject in all respects to the terms of this section 7.3.

With respect to each Class or Other Amount category to receive distributions from the Plan Carve-Out, if on the Effective Date:

(i) all Claims within such Class or category have been Allowed or Disallowed, each holder of an Allowed Claim in such Class or category will receive, on the Distribution Date, the lesser of (A) the Allowed amount of such Claim, and (B) the Pro Rata Share of such Claim;

(ii) there exists a Contested Claim within such Class or category, and if the aggregate amount of all Allowed Claims and estimated Contested Claims is less than the amount reserved in the Plan Carve-Out for such Class or category, then each Allowed Claim shall be paid in full on the Distribution Date, and Contested Claims, if later Allowed, shall be paid on the Subsequent Distribution

Date the lesser of (A) the Allowed amount of such Claim, and (B) the Pro Rata Share of such Claim; and

(iii)     there exists a Contested Claim within such Class or category, and if the aggregate amount of all Allowed Claims and estimated Contested Claims is greater than the amount reserved in the Plan Carve-Out for such Class or category, then each Allowed Claim and each Contested Claim, if later Allowed, shall be paid on the Subsequent Distribution Date, the lesser of (A) the Allowed amount of such Claim, and (B) the Pro Rata Share of such Claim.

After all Plan Distributions have been made with respect to the Unsecured Creditor Amount or any Other Amount category, any funds reserved and remaining in the Sale Proceeds Account for such Unsecured Creditor Amount or Other Amount category shall be paid to Mirant Americas (or to an Affiliate of Mirant Americas to be designated by Mirant Americas).

7.4.     **The Disbursing Agent.**

(a)     <u>Appointment of Mirant as Disbursing Agent</u>. On the Effective Date, Mirant shall be appointed to serve as the Disbursing Agent, and shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

(b)     <u>Powers and Duties</u>. Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims; (b) comply with the Plan and the obligations thereunder; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in the Plan and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim as provided in the Plan; (f) make annual and other periodic reports regarding the status of distributions under the Plan to the holders of Allowed Claims that are outstanding at such time; such reports to be made available upon request to the holder of any Contested Claim; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

(c)     <u>Plan Distributions</u>. Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan on the relevant Distribution Date therefor.

(d)     **<u>Exculpation</u>.     Except as otherwise provided in this Section, the Disbursing Agent together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and the Equity Interest, and all other parties in interest, from any and all Causes of**

Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan, or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan. Nothing contained in this Section shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Debtor to compel the making of Plan Distributions contemplated by the Plan on account of such Claim.

7.5    **Corporate Actions.**    The entry of the Confirmation Order shall constitute authorization for the Reorganized Debtor, the Debtor, and its Affiliates, including Mirant New York, as sole member of the Debtor, and the Disbursing Agent, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule, or regulation, including without limitation, any action required by the sole member of the Debtor, the stockholders or directors of the Debtor's Affiliates, including, among other things, (a) all transfers of Assets and all transfers to the Debtor's Affiliates that are to occur pursuant to the Plan, (b) the incurrence of all obligations contemplated by the Plan and the making of all Plan Distributions, (c) the formation of the Sale Proceeds Account, (d) the implementation of all settlements and compromises as set forth in or contemplated by the Plan, (e) the assumption of contracts, leases, and other agreements under the terms of the Purchase and Sale Agreement and the Plan, and (f) the cancellation of all agreements involving the corporate structure of the Debtor. The officers of the Debtor are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and to take all necessary action required in connection therewith, in the name of, and on behalf of the Debtor. All obligations of the Debtor to indemnify and hold harmless its current and former directors, officers and.employees, who served in any such capacity at any time on or after April 2, 2001, whether arising under the Debtor's constituent documents, contract, law or equity, shall be assumed by the Debtor upon the occurrence of the Effective Date with the same effect as though such obligations constituted executory contracts that are assumed (or assumed and assigned, as applicable) under section 365 of the Bankruptcy Code, and all such obligations shall be fully enforceable on their terms from and after the Effective Date. The prosecution of any so-indemnified Cause of Action shall, upon the occurrence of the Effective Date, be enjoined and prohibited, except solely for the purpose of obtaining a recovery from the issuer of any available insurance policy proceeds.

7.6.    **Vesting of Assets.** Upon the occurrence of the Effective Date, title to all of the Estate

Assets (but not to the Assigned Assets) shall vest in the Reorganized Debtor free and clear of all Liens, Claims, Causes of Action, interests, security interests, and other encumbrances to the fullest extent permitted by sections 363(f) and 1141(c) of the Bankruptcy Code without further order of the Bankruptcy Court.

7.7. **Charter and Bylaws**. On the Effective Date, the charter, bylaws, and other appropriate corporate documents of the Reorganized Debtor shall be amended or created as necessary to satisfy the provisions of the Plan, including, but not limited to, the transactions, as applicable to the Debtor, in accordance with the Purchase and Sale Agreement. After the Effective Date, the Reorganized Debtor shall be permitted to amend or modify its corporate documents as permitted by applicable law without approval of the Bankruptcy Court.

7.8. **Sources of Cash for Plan Distributions**. All Cash necessary for the Disbursing Agent to make payments under the Plan and Plan Distributions shall be obtained from the Sale Proceeds located in the Sale Proceeds Account and from no other source.

7.9. **Releases by the Debtor. As of the Effective Date, the Debtor shall forever release, waive, and discharge all Causes of Action (other than Causes of Action to enforce the terms of the Plan and the Plan Documents), then existing or thereafter arising, that are based in whole or in part on any act, omission, transaction, event, other occurrence or thing occurring or in existence on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Intercompany Claims, the relationship between the Debtor and the other Mirant Debtors, the DIP Facility, the Plan, the Disclosure Statement, or related transactions and that could have been asserted by the Debtor against any of its Affiliates, including, without limitation, Mirant Americas, Mirant New York or any other Excluded Debtor, and any Protected Persons identified in Schedule 7.9 to the Disclosure Statement, including, without limitation, such Causes of Action that have been or could be asserted derivatively on behalf of the Debtor by another Person; provided that Intercompany Claims that are actually assigned on the Effective Date pursuant to Section 4.3 of the Plan to Mirant Americas (or an Affiliate of Mirant Americas to be designated by Mirant Americas) shall not be released hereunder.**

### ARTICLE VIII.
### PROVISIONS REGARDING DISTRIBUTIONS

8.1. **Plan Distributions**. Subject to the terms of the Plan, the Disbursing Agent shall make all Plan Distributions under the Plan from the Sale Proceeds located in the Sale Proceeds Account. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. For federal income tax purposes, except to the extent that a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal

amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, if any, to the portion of the Claim representing accrued but unpaid interest.

**8.2.** **Timing of Plan Distributions**. Each Plan Distribution shall be made on the relevant Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**8.3.** **Address for Delivery of Plan Distributions/Unclaimed Distributions**. Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder, as set forth (i) in the Schedules, (ii) on the proof of Claim filed by such holder, (iii) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), and (iv) in any notice served by such holder giving details of a change of address, in each case as such address is reflected on the Register as of the Distribution Date or Subsequent Distribution Date, regardless of subsequently-filed notices of claim transfer or the fact that the objection period has not expired as of the Distribution Date or Subsequent Distribution Date with respect to a filed notice of claim transfer. If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to Mirant Americas (or to an Affiliate designated by Mirant Americas).

**8.4.** **De Minimis Distributions**. No Plan Distribution of less than fifty ($50.00) dollars shall be made by the Disbursing Agent to the holder of any Claim unless a request therefor is made in writing to the Disbursing Agent. If no request is made as provided in the preceding sentence within ninety (90) days of the Effective Date, all such Plan Distributions shall revert to Mirant Americas (or to an Affiliate designated by Mirant Americas).

**8.5.** **Time Bar to Cash Payments**. Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within one hundred and eighty (180) days after the date of issuance of such check. If no request is made as provided in the preceding sentence, any claims in respect of such void check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to Mirant Americas (or to an Affiliate designated by Mirant Americas).

**8.6.** **Manner of Payment Under the Plan**. Unless the Person or entity receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank.

**8.7.** **Fractional Plan Distributions**. Notwithstanding anything to the contrary contained

herein, no Plan Distributions of fractions of dollars will be made. Fractions of dollars shall be rounded to the nearest whole unit (with any amount equal to or less than one-half dollar to be rounded down).

**8.8.** **Surrender and Cancellation of Certificates, Instruments, Notes, or Other Agreements**. As a condition to receiving any Plan Distribution, on or before the Distribution Date or Subsequent Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument, note, or other agreement, other than any such certificate, instrument, note, or other agreement that is being left unimpaired under the Plan, shall (i) surrender such certificate, instrument, note, or other agreement representing such Claim, and (ii) execute and deliver such other documents as may be necessary to effectuate the Plan. Such certificate, instrument, note, or other agreement shall thereafter be cancelled and extinguished. The Disbursing Agent shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (1) such certificates, instruments, notes, or other agreements are surrendered, or (2) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form. Any such holder who fails to surrender such certificates, instruments, notes, or other agreements or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution.

**8.9.** **No Interest Unless Otherwise Provided**. No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**8.10.** **Prepayment**. The Disbursing Agent shall have the right, in its sole discretion, to prepay, in full or in part, any obligation created pursuant to the Plan, and no interest shall accrue with respect to the prepaid portion of such obligation from and after the date of such prepayment.

**ARTICLE IX.**
**PROCEDURES FOR RESOLVING AND TREATING**
**CONTESTED CLAIMS**

**9.1.** **Objection Deadline**. As soon as practicable, but in no event later than ninety (90) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of the Debtor or the Disbursing Agent without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

**9.2.** **Prosecution of Contested Claims**. Except as provided in this Plan, the Disbursing Agent may object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 9.3.

**9.3.** **Claims Settlement**. Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, other than the settlement or compromise of a Claim where the amount proposed to be Allowed under the settlement is in excess of $100,000, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

**9.4.** **Entitlement to Plan Distributions Upon Allowance**. Notwithstanding any other provision of the Plan, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the setoff rights as provided in Section 13.16. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim, subject to Section 7.3 hereof, shall become entitled to receive the Plan Distribution, on the Distribution Date or Subsequent Distribution Date, in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

**9.5.** **Estimation of Contested Claims**. Without limiting anything set forth in Section 7.3 of the Plan, the Disbursing Agent may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Disbursing Agent or the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**ARTICLE X.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**OF THE PLAN AND TO THE OCCURRENCE OF THE EFFECTIVE DATE**

**10.1.** **Conditions Precedent to Confirmation**. The following are conditions precedent to confirmation of the Plan:

    (a)    The Clerk of the Bankruptcy Court shall have entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (ii) finding that no further disclosure is necessary with respect to the Plan, (iii) authorizing the solicitation of votes with respect to the Plan, (iv) determining that each vote is binding and has been properly tabulated as an acceptance or rejection of the Plan, (v) confirming and giving effect to the terms and provisions of the Plan, (vi) determining that all applicable tests, standards, and burdens in connection with the Plan have

been duly satisfied and met by the Debtor and the Plan, and (vii) authorizing the Debtor to implement and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfers of Assets contemplated by the Plan;

(b)     The Confirmation Order and the Plan are each in a form satisfactory to the Debtor;

(c)     The Plan Carve-Out shall be in an amount satisfactory to Mirant Americas; and

(d)     The Confirmation Order, in accordance with the terms of the Purchase and Sale Agreement, is in a form satisfactory to the Purchaser.

**10.2    Conditions Precedent to the Occurrence of the Effective Date**. The following are conditions precedent to the occurrence of the Effective Date or shall occur substantially contemporaneously therewith:

(a)     The Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect, and not be subject to any stay or injunction;

(b)     All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, including, without limitation, satisfaction, or waiver of all conditions to the obligations of the Debtor under the Plan and the Plan Documents;

(c)     The Bankruptcy Court shall have approved the Sale Procedures Order and the Sale Order;

(d)     The Sale Closing Date shall have occurred or shall occur simultaneously with the occurrence of the Effective Date; and

(e)     Mirant New York shall have transferred the Sale Proceeds to the Sale Proceeds Account for distribution to holders of Allowed Claims against the Debtor.

**10.3.    Waiver of Conditions**. To the extent not inconsistent with the Purchase and Sale Agreement, the Debtor may waive the conditions set forth in Section 10.2(b) in a writing executed by the Debtor without notice or order of the Bankruptcy Court and without notice to any parties in interest.

**10.4.    Effect of Non-Occurrence of the Effective Date**. If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or the Equity Interest in the Debtor; (b) prejudice in any manner the rights of the Debtor, including without limitation, the right to seek a further extension of the

exclusivity periods under section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtor.

## ARTICLE XI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 11.1. Treatment of Executory Contracts and Unexpired Leases.

(a)     The Plan shall constitute the Debtor's motion to assume the executory contracts and unexpired leases as set forth on Disclosure Statement Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases." Schedule 11.1(a) shall be consistent with the list of Assumed Contracts as agreed to by the Purchaser and Mirant New York in accordance with the terms of the Purchase and Sale Agreement. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption pursuant to sections 365(a), (b), and (f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that the requirements of section 365(f) of the Bankruptcy Code have been satisfied. The Debtor reserves the right, with approval of the Purchaser, to amend Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases" at any time prior to the entry of the Confirmation Order. Each executory contract and unexpired lease to be assumed shall include modifications, amendments, supplements, restatements, or other similar agreements made directly or indirectly by any agreement, instrument, or other document that affects such executory contract, unexpired lease, or other agreement without regard to whether such agreement, instrument, or other document is listed on Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases."

(b)     The Plan shall constitute the Debtor's motion to reject the executory contracts and unexpired leases as set forth in Disclosure Statement Schedule 11.1(b) or the "Schedule of Rejected Executory Contracts and Unexpired Leases." Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract, or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and its estate.

(c)     To the extent that an executory contract, unexpired lease, or other agreement is not designated on Schedule 11.1(a) as an assumed executory contract, unexpired lease, or other agreement or on Schedule 11.1(b) as a rejected executory contract, unexpired lease, or other agreement, the executory contract, unexpired lease, or other agreement is deemed assumed.

(d)     The inclusion of a contract, lease, or other agreement on Disclosure Statement Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases"

or on Disclosure Statement Schedule 11.1(b) or the "Schedule of Rejected Executory Contracts and Unexpired Leases" shall not constitute an admission by the Debtor as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease, or other agreement are time-barred from asserting Claims against the Debtor. The Debtor reserves all rights with respect to the characterization of any such agreements.

**11.2.** **Cure**. At the election of the Debtor, any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Distribution Date or Subsequent Distribution Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding: (i) the amount of any cure payments; (ii) the ability of the Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption by the Debtor of an executory contract or unexpired lease, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable. Disclosure Statement Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases" set forth the Debtor's cure obligations under each agreement for which a cure obligation must be satisfied as a condition to the assumption of such agreement. Any counterparty to an agreement listed on the Disclosure Statement Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases" who disputes the scheduled cure obligation must file with the Bankruptcy Court, and serve upon the Debtor, a written objection to the cure obligation, which objection shall set forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption of the relevant agreement by no later than ten (10) Business Days prior to the Confirmation Hearing. If a counterparty fails to file and serve an objection which complies with the foregoing, the cure obligation set forth on the Disclosure Statement Schedule 11.1(a) or the "Schedule of Assumed Executory Contracts and Unexpired Leases" shall be binding on the counterparty, and the counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement as proposed by the Debtor.

**11.3.** **Rejection Damages Claims**. Rejection Damages Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtor, its counsel, and the Office of the United States Trustee, in accordance with the Rejection Damages Claim Bar Date, within thirty (30) days after service of the Notice of Confirmation. Any such Rejection Damages Claims for which a proof of claim is not filed and served within such time will be forever barred from assertion and shall not be enforceable against the Debtor, an Affiliate, the Reorganized Debtor, their successors or assigns, the Debtor's Estate, or the Assets. Unless otherwise ordered by the Bankruptcy Court, each such Claim that is timely filed as provided herein shall be treated as a Class 4 - General Unsecured Claim under the Plan subject to objection by the Debtor or the Disbursing Agent. All rights of the Debtor or the Disbursing Agent to

object to such Claims are reserved. Any order entered postconfirmation by the Bankruptcy Court based upon a timely filed Rejection Damages Claim, after notice and a hearing, authorizing the rejection of an executory contract and unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered preconfirmation.

**11.4   Application of Section 365 of the Bankruptcy Code.**   Section 365 of the Bankruptcy Code shall apply to any motion to reject, assume, or assume and assign any executory contracts and unexpired leases that are subject to Article XI of the Plan.

### ARTICLE XII.
### RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Case or the Plan, or (c) that relates to the following:

(i)   To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination, or liquidation of any executory contract or unexpired lease);

(ii)   To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Disbursing Agent or Mirant Americas (or an Affiliate to be designated by Mirant Americas), as applicable, after the Effective Date;

(iii)   To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow, or estimate any Contested Claim in whole or in part;

(iv)   To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)   To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the

Confirmation Order;

> (vi)    To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

> (vii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan, the Plan Documents, or their interpretation, implementation, enforcement, or consummation;

> (viii)    To hear and determine all controversies, suits, and disputes that may relate to, or impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

> (ix)    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estate;

> (x)    To determine such other matters that may be set forth in the Plan or the Confirmation Order or that may arise in connection with the Plan or the Confirmation Order;

> (xi)    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor, the Debtor-in-Possession, its Affiliates, the Reorganized Debtor, or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

> (xii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtor or any Person under the Plan;

> (xiii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Sale Order and the related transactions thereunder as such order affects the Debtor in connection with the Plan;

> (xiv)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action of the Debtor (including Avoidance Actions) commenced by the Disbursing Agent, the Debtor, Mirant Americas, an Affiliate, or any third parties, as applicable, before and after the Effective Date;

> (xv)    To enter an order or final decree closing the Chapter 11 Case;

> (xvi)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with

consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xvii)  To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

**13.1.  Payment of Statutory Fees.**  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.

**13.2.  Satisfaction of Claims.**  The rights afforded in the Plan and the treatment of all Claims and the Equity Interest herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and the Equity Interest of any nature whatsoever against the Debtor, the Debtor's Estate, Assets, properties, or interests in property.  Except as otherwise provided herein, on the Effective Date, all Claims against and the Equity Interest in the Debtor shall be satisfied, discharged, and released in full.  The Debtor, the Reorganized Debtor, and any Affiliates shall not be responsible for any pre-Effective Date obligations of the Debtor, except as otherwise provided herein.  All Persons and Entities shall be precluded and forever barred from asserting against the Debtor, the Reorganized Debtor, their successors or assigns, the Debtor's Estate, the Assets, properties, or interests in property, any event, occurrence, condition, thing, or other or further Claims, or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

**13.3.  Third Party Agreements; Subordination.**  The Plan Distributions to the various classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise.  All of such rights and any agreements relating thereto shall remain in full force and effect, except as compromised and settled pursuant to the Plan.  Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan. The right of the Debtor to seek subordination of any Claim pursuant to section 510 of the Bankruptcy Code is fully reserved and the treatment afforded any Claim that becomes a Subordinated Claim at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a Subordinated Claim.

**13.4.  Exculpation.  The Debtor, its Affiliates, or any Protected Person shall not be liable for any Cause of Action arising in connection with or out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, or the property to be distributed under the Plan, except for gross**

negligence or willful misconduct as determined by Final Order of the Bankruptcy Court. The Confirmation Order shall enjoin all holders of Claims and the Equity Interest from asserting or prosecuting any Claim or Cause of Action against any Protected Person as to which such Protected Person has been exculpated from liability pursuant to the proceeding sentence.

**13.5.** **Discharge of Debtor**. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtor, the Reorganized Debtor, their successors and assigns, the Debtor's Estate, and the Assets, and shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, its Estate, and all successors thereto. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor, the Reorganized Debtor, their successors or assigns, or the Debtor's Estate at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor, Reorganized Debtor, the Assets, or the Debtor's Estate to the extent it relates to a discharged Claim.

**13.6.** **Discharge of Liabilities**. Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtor shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all holders of Claims and the Equity Interest shall be precluded from asserting against the Debtor, the Reorganized Debtor, their successors or assigns, Assets, or any property dealt with under the Plan, any further or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE REORGANIZED DEBTOR OR ANY OTHER SUCCESSOR-IN-INTEREST TO THE DEBTOR SHALL NOT HAVE, AND SHALL NOT BE CONSTRUED TO HAVE OR MAINTAIN ANY LIABILITY, CLAIM, OR OBLIGATION, THAT IS BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OTHER OCCURRENCE, OR THING OCCURRING OR IN EXISTENCE ON OR PRIOR TO THE EFFECTIVE DATE OF THE PLAN (INCLUDING, WITHOUT LIMITATION, ANY LIABILITY OR CLAIMS ARISING UNDER APPLICABLE NON-BANKRUPTCY LAW AS A SUCCESSOR TO THE DEBTOR) AND NO SUCH LIABILITIES, CLAIMS, OR OBLIGATIONS FOR ANY ACTS SHALL ATTACH TO THE REORGANIZED DEBTOR OR ANY OTHER SUCCESSOR-IN-INTEREST TO THE DEBTOR.

**13.7.** **Injunctions.** On the Effective Date and except as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or the Equity Interest in the Debtor shall be permanently enjoined from taking any of the following actions against or affecting the Reorganized Debtor, the Debtor, Protected Persons, the Debtor's Estate, the Assets, Affiliates, or the Disbursing Agent, or any of their current or former respective members, directors, managers, officers, employees, agents, professionals, their successors or assigns, or their respective assets and property with respect to such Claims or the Equity Interest (other than actions brought to enforce any rights or obligations under the Plan):

(a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

(b) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order;

(c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

(d) asserting any setoff, right of subrogation, or recoupment of any kind; provided, that any defenses, offsets, or counterclaims which the Debtor may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 13.16.

**13.8.** **Notice of Confirmation.** Promptly upon entry of the Confirmation Order, the Debtor shall publish the Notice of Confirmation as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and the Equity Interest such Notice, which includes the notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing Administrative Expenses (Section 4.2) and the deadline for filing Rejection Damage Claims (Section 11.3).

**13.9.** **Notices.** Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Mirant NY-Gen, LLC
Attention: Sonnet Edmonds
Corporate Headquarters
1155 Perimeter Center West

Atlanta, Georgia 30338
Telephone: (678) 579-5000
Telecopier: (678) 579-5981

Mirant NY-Gen, LLC
Attention: Jay Wilson
Corporate Headquarters
1155 Perimeter Center West
Atlanta, Georgia 30338
Telephone: (678) 579-5000
Telecopier: (678) 579-5981

Forshey & Prostok LLP
Attention: Jeff P. Prostok
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Telecopier: (817) 877-4151

**13.10. Headings.** The headings used in the Plan are inserted for convenience only and constitute neither a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**13.11. Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan, any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such agreements, documents, or instruments.

**13.12. Exemption from Transfer Taxes.** Pursuant to section 1146(c) of the Bankruptcy Code, any transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp tax or a sales, use, transfer, duty, value added, or any other similar tax, including without limitation, any bulk sales tax under New York law. Additionally, the sale of the Membership Interest by Mirant New York, as the sole member of the Debtor, shall not be subject to any stamp tax or a sales, use, transfer, duty, value added, or any other similar tax, including without limitation, any bulk sales tax under New York law.

**13.13. Retiree Benefits.** Section 1129(a)(13) of the Bankruptcy Code is not applicable to the Debtor.

**13.14. Attorneys' Fees.** No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the

Plan or as ordered by the Bankruptcy Court.

**13.15. Modification of the Plan.** As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtor at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Debtor may modify the Plan at any time after confirmation and before Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan, as modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such holder.

**13.16. Setoff Rights.** In the event that the Debtor has a Claim of any nature whatsoever against the holder of a Claim against the Debtor, then the Debtor may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) the Debtor's Claim against such holder, subject to the provisions of sections 553, 556, and 560 of the Bankruptcy Code. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor may have against the holder of any Claim.

**13.17. Compliance with Tax Requirements.** In connection with the Plan, the Debtor and the Disbursing Agent, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding, and other tax obligations, on account of such Plan Distribution. The Disbursing Agent has the right, but not the obligation, to withhold a Plan Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

**13.18. Rates.** The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

**13.19. Binding Effect.** The Plan shall be binding upon the Reorganized Debtor, the Debtor, the holders of all Claims and the Equity Interest, parties in interest, Persons and Entities, and their respective successors and assigns. To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**13.20. Severability.** IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE DEBTOR MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 13.15 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR EQUITY INTEREST OR TRANSACTION. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

**13.21. No Admissions.** AS TO ADVERSARY PROCEEDINGS, CONTESTED MATTERS, AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND THE EQUITY INTEREST IN, MIRANT NY-GEN, AS DEBTOR AND DEBTOR-IN-POSSESSION IN THIS CHAPTER 11 CASE, OR ANY OF ITS AFFILIATES.

**13.22. Bankruptcy Restrictions.** From and after the Effective Date, the Debtor and the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., sections 363 and 364 or Rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines. No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agent shall provide the Office of the United States Trustee such financial reports as the United States Trustee may reasonably request until the entry of a final decree.

[REMAINDER OF THE PAGE
INTENTIONALLY LEFT BLANK]

Dated: February 1 5 , 2007.

Respectfully submitted,

MIRANT NY-GEN, LLC

By: _____
Name: Jeffrey Perry
Title: President

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
FORSHEY & PROSTOK LLP
777 Main Street, Suite 1290
Fort Worth, Texas 76102
(817) 877- 8855
(817) 877-4151 FAX

Attorneys for the Debtor,
MIRANT NY-GEN, LLC

# EXHIBIT A

## MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT