# SCHEDULES

ALL CAPITALIZED TERMS USED IN THESE DISCLOSURE SCHEDULES HAVE
THE MEANINGS SET FORTH IN THE MEMBERSHIP INTEREST PURCHASE AND
SALE AGREEMENT (THE "AGREEMENT"). THE DISCLOSURES MADE IN THESE
DISCLOSURE SCHEDULES RELATE TO ANY AND ALL OF THE
REPRESENTATIONS AND WARRANTIES MADE BY SELLER IN THIS
AGREEMENT. SCHEDULE REFERENCES IN THESE DISCLOSURE SCHEDULES
ARE FOR CONVENIENCE ONLY, AND THE DISCLOSURE OF ANY FACT OR ITEM
IN ANY DISCLOSURE SCHEDULE REFERENCED BY A PARTICULAR SECTION
OF THE AGREEMENT SHALL BE DEEMED TO HAVE BEEN DISCLOSED WITH
RESPECT TO EVERY OTHER SECTION OF THE AGREEMENT.

MATTERS REFLECTED IN THESE DISCLOSURE SCHEDULES ARE NOT
NECESSARILY LIMITED TO MATTERS REQUIRED BY THE AGREEMENT TO BE
REFLECTED IN THE DISCLOSURE SCHEDULES. SUCH ADDITIONAL MATTERS
ARE SET FORTH FOR INFORMATIONAL PURPOSES AND DO NOT NECESSARILY
INCLUDE OTHER MATTERS OF A SIMILAR NATURE. IN NO EVENT SHALL THE
INCLUSION OF ANY SUCH MATTER IN THESE DISCLOSURE SCHEDULES BE
DEEMED OR INTERPRETED TO BROADEN SELLER'S REPRESENTATIONS,
WARRANTIES, COVENANTS OR AGREEMENTS CONTAINED IN THE
AGREEMENT. THE INCLUSION OF AN ITEM IN THE DISCLOSURE SCHEDULES
SHALL NOT BE DEEMED AN ADMISSION THAT SUCH ITEM REPRESENTS A
MATERIAL EXCEPTION OR FACT, EVENT OR CIRCUMSTANCE OR THAT SUCH
ITEM IS REASONABLY LIKELY TO RESULT IN A MATERIAL ADVERSE EFFECT.
CAPITALIZED TERMS USED IN THESE DISCLOSURE SCHEDULES AND NOT
DEFINED HEREIN SHALL HAVE THE MEANING SET FORTH IN THE
AGREEMENT.

## Schedule 1.1

### Seller's Representatives

Amin M. Lakhani, Project Director, Sale of NY-Gen
Robert Dowd, Project Director, Swinging Bridge Remediation
Kevin McLeod, Plant Manager, NY-Gen

## Schedule 1.2

## Purchaser's Representatives

Samuel J. Nappi, Chairman and President, Alliance Energy, Inc.
Joseph Klimaszewski, Regional Director, Alliance Energy, Inc.

## Schedule 1.41

## Form of Escrow Agreement

**THIS ESCROW AGREEMENT**, dated as of _____, 2007, by and between MIRANT NEW YORK, INC., a Delaware corporation having its principal place of business at 1155 Perimeter Center West, Atlanta, GA 30338 (**"Seller"**), ALLIANCE ENERGY RENEWABLES, LLC, a New York limited liability company having its principal place of business at 6941 Kassonta Drive, Jamesville, NY 13078 (**"Purchaser"**), and HISCOCK & BARCLAY, LLP (**"Escrow Agent"**). Each of Seller, Purchaser and Escrow Agent shall hereafter be referred to as a **"Party"**, together, the **"Parties"**.

**WHEREAS**, Purchaser and Seller have entered into that certain Membership Interest Purchase and Sale Agreement dated as of January ___, 2007 (the "**Agreement**"), which provides for the sale by Seller to Purchaser of one hundred percent (100%) of a Membership Interest held by Seller in Mirant NY-Gen, LLC. Capitalized terms used herein and not otherwise defined having the meanings assigned to them in the Agreement, and

**WHEREAS**, pursuant to Section 2.02 of the Agreement, Three Hundred Thousand Dollars ($300,000.00), comprising ten percent (10%) of the Purchase Price, is to be paid by Purchaser to Escrow Agent as a Down Payment and held in escrow by Escrow Agent in accordance with the terms hereof.

Accordingly, the Parties hereby agree as follows:

1.     Appointment and Acceptance of Escrow Agent.

Seller appoints Hiscock & Barclay, LLP as Escrow Agent, and Hiscock & Barclay, LLP accepts such appointment and agrees to hold and dispose of the Escrow Amount (as defined in Section 2 below) in accordance with the terms of this Escrow Agreement. Purchaser consents to such appointment with knowledge that Escrow Agent is acting as counsel for Seller in connection with the transactions described in the Agreement. The duties and obligations of Escrow Agent are those specifically provided in this Escrow Agreement and no other, and Escrow Agent shall have no liability under, or duty to inquire into, the terms and provisions of any other agreement or instrument.

2.     Funds to be Received by Escrow Agent.

The Escrow Agent hereby accepts the following funds from Purchaser on behalf of Seller:

**Three Hundred Thousand Dollars ($300,000.00)**

Upon being transferred to Escrow Agent, such funds shall be deposited in an interest bearing account in the name of Escrow Agent, as escrow agent, under the Employer

Identification Number of Purchaser. Such funds, together with all interest accrued thereon, shall be referred to herein as the **"Escrow Amount"**.

3. <u>Release of Escrow Amount</u>.

The Escrow Agent shall deliver the Escrow Amount as follows:

(a) Under Section 7.15(g) of the Agreement, Purchaser has acknowledged that the sale of the Membership Interest is subject to Bankruptcy Court approval and to higher and better counteroffers and that the Membership Interest will be sold to the highest and best bidder at an Auction, as therein described. Subject to the provisions contained in the final sentence of this clause (a), upon receipt of (i) written certification from Seller indicating that the Bankruptcy Court has entered a Sale Order authorizing a sale of the Membership Interest to such Prevailing Bidder in the circumstances described in Section 7.15(g) <u>or</u>, where Purchaser has been a back-up bidder, that the sale to the Prevailing Bidder has closed, together with (ii) a written payment instruction (a **"Payment Instruction"**) signed by Seller, Escrow Agent shall return the Escrow Amount to Purchaser no later than the third Business Day after Escrow Agent's receipt of said written certification and accompanying Payment Instruction. A copy of such written certification and Payment Instruction shall be delivered by Seller to Purchaser contemporaneously with delivery of the same to Escrow Agent. If Purchaser should exercise its right to terminate this Agreement as further described in clauses (b), (d) and (e) hereof and such right is exercised prior to the closing of the sale to the Prevailing Bidder, as referenced herein, then Escrow Agent shall return the Escrow Amount to Purchaser upon receipt from Purchaser of the written certifications and accompanying Payment Instructions referenced in such clauses.

(b) If the Agreement is terminated by Purchaser because of a material misrepresentation by Seller or a material default or breach by Seller with respect to Seller's representations and warranties in the Agreement or any Related Agreement or the failure by Seller to perform in a due and timely manner prior to the Closing of any of Seller's covenants and agreements contained in the Agreement or any Related Agreement, which misrepresentation, default or breach is not cured by the earlier of the Closing Date or the date thirty (30) days after receipt by Seller of written notice describing such misrepresentation, default or breach then, upon receipt of (i) written certification from Purchaser stating (A) the basis for the termination and describing the facts underlying same, and (B) that, to the best of Purchaser's Knowledge, Seller is not entitled to terminate the Agreement due to any misrepresentation, default or breach by Purchaser, as described in Section 12.01(a)(i) of the Agreement, together with (ii) a Payment Instruction signed by Purchaser, Escrow Agent shall return the Escrow Amount to Purchaser no later than the third Business Day after Escrow Agent's receipt of said written certification and accompanying Payment Instruction. A copy of such written certification and Payment Instruction shall be delivered by Purchaser to Seller contemporaneously with delivery of the same to Escrow Agent.

(c) If the Agreement is terminated by Seller because of a material misrepresentation by Purchaser or a material default or breach by Purchaser with respect to Purchaser's representations and warranties in the Agreement or any Related Agreement or the failure by Purchaser to perform in a due and timely manner prior to the Closing of any of

Purchaser's covenants and agreements contained in the Agreement or any Related Agreement, which misrepresentation, default or breach is not cured by the earlier of the Closing Date or the date thirty (30) days after receipt by Purchaser of written notice describing such misrepresentation, default or breach then, upon receipt of (i) written certification from Seller stating (A) the basis for the termination and describing the facts underlying same, and (B) that, to the best of Seller's Knowledge, Purchaser is not entitled to terminate the Agreement due to any material default by Seller, together with (ii) a Payment Instruction signed by Seller, Escrow Agent shall release the Escrow Amount to Seller no later than the third Business Day after Escrow Agent's receipt of said written certification and accompanying Payment Instruction. A copy of such written certification and Payment Instruction shall be delivered by Seller to Purchaser contemporaneously with delivery of the same to Escrow Agent.

(d)     If the Agreement is terminated by Purchaser because Seller has elected not to repair or replace damage to the Station after a Major Loss then, no later than the third Business Day after Escrow Agent's receipt of written certification of such event signed by Purchaser, together with a Payment Instruction signed by Purchaser, Escrow Agent shall return the Escrow Amount to Purchaser. A copy of such written certification and Payment Instruction shall be delivered by Purchaser to Seller contemporaneously with delivery of the same to Escrow Agent.

(e)     If the Agreement is terminated by either Purchaser or Seller because: (i) all of the orders referenced in clause (ii) below have become Final Orders but the Closing has not occurred on or before the earlier of September 1, 2007, or the date which is thirty (30) days after the date upon which the last of all regulatory approvals has been received (which time has not been extended by agreement between the Parties), or (ii) any of the Sale Procedures Order, Sale Order, Disclosure Statement Order and Confirmation Order has not been entered or become final in a sequence such that each of the same shall be a Final Order at or prior to the Closing Date, as the same may have been extended as described in (i) aforementioned, or (iii) there is in effect a preliminary or permanent injunction enjoining consummation of the transactions contemplated under the Agreement at the time the written notice of termination is given then, no later than the third Business Day after Escrow Agent's receipt of written certification from either Purchaser or Seller, as the case may be, of any such event, together with a Payment Instruction signed by the certifying Party, Escrow Agent shall release the Escrow Amount to the other Party. A copy of such written certification and Payment Instruction shall be delivered by the certifying Party to the other Party contemporaneously with delivery of the same to Escrow Agent.

(f)     If, prior to making payment in accordance with this Escrow Agreement, Escrow Agent receives an objection to payment from either Purchaser or Seller, as the case may be, Escrow Agent shall not release any of the Escrow Amount pending receipt of either (i) a Payment Instruction signed by both Purchaser and Seller (a **"Joint Payment Instruction"**) specifying the agreement of the Parties as to the action to be taken by Escrow Agent in respect of payment of the entire Escrow Amount or (ii) a notice from either Purchaser or Seller stating that the dispute over payment of the Escrow Amount has been submitted to the American Arbitration Association for resolution through the dispute resolution procedure set forth in Section 13.10(c) of the Agreement, and that a final decision of the arbitration in such proceeding has been rendered (the "**Arbitration Decision**"), a copy of which is attached to such notice. No later than the third Business Day after Escrow Agent's receipt of such Payment Instruction or Arbitration Decision, as applicable, Escrow Agent shall release the Escrow Amount in accordance therewith. A copy of the notice and

Arbitration Decision referenced in clause (ii) aforementioned shall be delivered to the other Party by the Party issuing such notice contemporaneously with delivery of the same to Escrow Agent.

(g)     If at any time, Escrow Agent shall receive a Joint Payment Instruction (including but not limited to, in the circumstances described in clause (f) above) then Escrow Agent shall release the Escrow Amount in accordance with such Joint Payment Instruction no later than the third Business Day after Escrow Agent's receipt of such Joint Payment Instruction.

(h)     If Escrow Agent receives written certification from Seller that the Closing under the Agreement has occurred, together with a Payment Instruction signed by Seller, Escrow Agent shall release the Escrow Amount to Seller no later than the third Business Day after Escrow Agent's receipt of such written certification and Payment Instruction. A copy of such written certification and Payment Instruction shall be delivered by Seller to Purchaser contemporaneously with delivery of the same to Escrow Agent.

Upon any delivery of the Escrow Amount as provided in this Section 3, this Escrow Agreement shall terminate, and Escrow Agent shall be released and discharged from any further responsibility or obligation and from all liability under this Escrow Agreement.

4.     Concerning Escrow Agent.

(a)     Escrow Agent shall not have any liability to any Party or to any third party arising out of its services as Escrow Agent under this Escrow Agreement, except for damages directly resulting from Escrow Agent's gross negligence or willful misconduct.

(b)     Escrow Agent may consult with, and obtain advice from legal counsel in the event of any dispute or question as to the construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected in acting in good faith in accordance with the advice of such counsel.

(c)     Escrow Agent shall not be bound by any modification of this Escrow Agreement unless it shall have specifically consented thereto in writing.

(d)     Seller shall indemnify Escrow Agent and hold it harmless against any loss, liability, damage or expense (including reasonable attorneys' fees) or any tax, additions to tax, interest and penalties (including for failing to file proper tax returns or information reporting returns) that Escrow Agent may incur as a result of acting as escrow agent under this Escrow Agreement, except for any loss, liability, damage or expense arising from Escrow Agent's own gross negligence or willful misconduct. For this purpose, if Escrow Agent is an attorney or firm of attorneys, the term "attorneys' fees" means fees payable to any independent counsel retained by Escrow Agent in connection with its services under this Escrow Agreement.

(e)     Escrow Agent shall be entitled to rely upon any judgment, notice, instrument or other writing delivered to it under this Escrow Agreement without being required to determine the authenticity of, or the correctness of any fact stated in, that writing. Escrow Agent may act in reliance upon any instrument or signature believed by it to be genuine and may assume that any

person purporting to give any notice or receipt of advice or make any statement or execute any document in connection with this Escrow Agreement has been duly authorized to do so.

(f)     All of Escrow Agent's rights of indemnification provided for in this Escrow Agreement shall survive the resignation of Escrow Agent, its replacement by a successor Escrow Agent, its delivery of the Escrow Amount in accordance with this Escrow Agreement, the termination of this Escrow Agreement and the escrow, and any other event that occurs after this date.

(g)     Escrow Agent shall have no responsibility with respect to the sufficiency of the arrangements contemplated by this Escrow Agreement to accomplish the intentions of the Parties.

5.     Representations.

Each of the Parties hereto represents and warrants to the other Parties hereto that it has full power and authority to enter into and perform this Escrow Agreement; that the execution and delivery of this Escrow Agreement by it was duly authorized by all necessary corporate or other action, as applicable; and that this Escrow Agreement is enforceable against it in accordance with its terms.

6.     Resignation; Successor Escrow Agent.

Escrow Agent (and any successor escrow agent) may at any time resign as such upon fifteen (15) days' prior written notice to Purchaser and Seller.  Upon receipt of a notice of resignation, Seller shall select a successor escrow agent within twenty (20) days, but if within that twenty-day period Escrow Agent has not received a notice signed by Seller appointing a successor escrow agent and setting forth its name and address, Escrow Agent may (but shall not be obligated to) select on behalf of Seller a successor escrow agent.  Seller shall be solely responsible for the fees and charges of Escrow Agent and any successor escrow agent.  A successor escrow agent selected by the resigning Escrow Agent may become Escrow Agent by confirming in writing its acceptance of the position.  Seller shall sign such other documents as the successor escrow agent reasonably requests in connection with its appointment. Escrow Agent shall deliver the Escrow Amount then held by it to the successor escrow agent selected pursuant to this provision and, upon such delivery, the successor escrow agent shall become Escrow Agent for all purposes under this Escrow Agreement and shall have all of the rights and obligations of Escrow Agent under this Escrow Agreement, and the resigning Escrow Agent shall have no further responsibilities or obligations and shall be released from all liability under this Escrow Agreement.  Notwithstanding the foregoing, if no successor escrow agent has been designated within the twenty (20) day period referred to above, (a) Escrow Agent shall have the right to deposit or cause to be deposited the Escrow Amount with a court of competent jurisdiction, and the parties shall be required to accept a successor agent appointed by such court and; (b) all obligations of Escrow Agent hereunder shall thereupon cease and terminate.

7.    Notices.

All notices, demands, instructions, objections or other communications under this Escrow Agreement shall be in writing and shall be deemed given when sent by United States certified mail, return receipt requested, or by nationally recognized overnight courier service (such as FedEx) to the respective Parties at the following addresses (or at such other address as a Party may specify by notice given in accordance with this Section 7):

If to Seller:

Mirant New York, Inc.
c/o Mirant Corporation
1155 Perimeter Center West
Atlanta, GA 30338-5416
Attention: Jeffrey Perry, President
Fax: (678) 579-3824
Email: jeffrey.perry@mirant.com

With a copy to:

Hiscock & Barclay, LLP
Financial Plaza
221 South Warren Street
Post Office Box 4878
Syracuse, NY 13221-4878
Attention: George S. Deptula, Esq.
Fax: (315) 425-8545
Email: gdeptula@hiscockbarclay.com

If to Purchaser:

Alliance Energy Renewables, LLC
6941 Kassonta Drive
Jamesville, NY 13078
Attn: Samuel G. Nappi, President
Fax: 315-682-7089
Email: snappi@allianceenergy.us

With a copy to:

Troutman Sanders LLP
405 Lexington Avenue
New York, NY 10174
Attention: Howard L. Margulis, Esq.
Fax: 212-704-8330
Email:
howard.margulis@troutmansanders.commmailto:howard.margulis@troutmansanders.com

If to Escrow Agent:

Hiscock & Barclay, LLP
Financial Plaza
221 South Warren Street
Post Office Box 4878
Syracuse, NY 13221-4878
Attention: George S. Deptula, Esq.
Fax: (315) 425-8545
Email: gdeptula@hiscockbarclay.com

8.    Miscellaneous.

(a)    Escrow Agent shall be reimbursed solely by Seller upon its request for all reasonable expenses, disbursements and advances incurred or made by it in accordance with the provisions of this Agreement (including the reasonable compensation and the expenses and disbursements of its agents and counsel). Escrow Agent shall receive a fee for its services hereunder in an amount agreed to in writing by Escrow Agent and Seller.

(b)    If any provision of this Escrow Agreement is determined by any court of competent jurisdiction to be invalid or unenforceable in any jurisdiction, the remaining provisions of this Escrow Agreement shall not be affected thereby, and the invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable that provision in any other jurisdiction. It is understood, however, that the parties intend each provision of this Escrow Agreement to be valid and enforceable and each of them waives all rights to object to any provision of this Escrow Agreement.

(c)    This Escrow Agreement shall be binding upon and inure solely to the benefit of the Parties and their respective successors and permitted assigns. Except as expressly provided in Section 6 hereof, no Party may assign its rights or obligations under this Escrow Agreement or any interest in the Escrow Amount without the written consent of the other Parties, and any other purported assignment shall be void.

(d)    This Escrow Agreement shall be governed by and construed in accordance with the law of the State of New York without regard to its conflicts-of-law rules or principles.

(e)    The Parties hereby consent and agree that the Supreme Court of the State of New York for New York County, and the United States District Court for the Southern District of New York (Manhattan) each shall have personal jurisdiction and proper venue with respect to any dispute between the Parties; provided that that the foregoing consent shall not deprive any Party of the right in its discretion to voluntarily commence or participate in any other forum having jurisdiction and venue or deprive any Party of the right to appeal the decision of any such court to a proper appellate court located elsewhere. Each Party will not raise, and each Party hereby absolutely, unconditionally, irrevocably and expressly waives forever, any objection or defense in any such dispute to any such jurisdiction as an inconvenient forum.

(f)     This Escrow Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, supersedes all other prior agreements and undertakings, both written and oral, between the Parties with respect to the subject matter hereof, and cannot be changed or terminated orally. Any waiver of any provision of this Escrow Agreement must be in writing.

(g)     This Escrow Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

(h)     The provisions of this Escrow Agreement shall be deemed to be for the exclusive benefit of Seller, Purchaser and Escrow Agent, and shall not be deemed to be for the benefit of, or enforceable by, any third party.

(i)     Seller, Purchaser and Escrow Agent each acknowledge that this Escrow Agreement has been mutually drafted by the Parties and has been the subject of negotiation among the Parties.

[The remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, the Parties have executed this Escrow Agreement as of the date first above written.

**PURCHASER**

ALLIANCE ENERGY RENEWABLES, LLC

_____

By:    Samuel G. Nappi
        Chairman and President of Alliance Energy, Inc.,
        Sole and Managing Member of Alliance Energy
        Renewables, LLC

**SELLER**

MIRANT NEW YORK, INC.

_____

By:
Title:

**ESCROW AGENT**

HISCOCK & BARCLAY, LLP

By:_____
    George S. Deptula, Esq.

9

## Schedule 1.45

## Hydroelectric and Gas Turbine Generating Stations

1.  Hillburn Gas Turbine Generating Station is the approximately 40 MW natural gas and jet fuel fired electric generating station located at Six 4th Street, Hillburn, New York.

2.  Shoemaker Gas Turbine Generating Station is the approximately 40 MW natural gas and jet fuel fired electric generating station located at 71 Poison Avenue, Middletown, New York.

3.  Mongaup Hydroelectric Generating Station is the approximately 4 MW hydroelectric electric generating station located at 613 Plank Road, Forestburgh, New York. (Units 1, 2, and 3 are on outage on the Effective Date).

4.  Rio Hydroelectric Generating Station is the approximately 10 MW hydroelectric electric generating station located at 72 Power House Road, Glen Spey, New York.

5.  Swinging Bridge Hydroelectric Generating Station is the approximately 12 MW hydroelectric electric generating station located at 458 County Route 43, Forestburgh, New York. (Unit 1 is on outage on the Effective Date).

*All of the above references to capacity are nameplate. Actual capacity may differ depending on operating conditions.

**Pre-Approved Capital Expenditures**

None.

ASSIGNMENT OF MEMBERSHIP INTEREST

This Assignment of Membership Interest (the "Assignment") is made and entered into as of _____, 2007, by and between MIRANT NEW YORK, INC., a Delaware corporation ("Assignor"), and ALLIANCE ENERGY RENEWABLES, LLC, a New York limited liability company ("Assignee").

WHEREAS, Assignor and Assignee are parties to that certain Membership Interest Purchase and Sale Agreement dated as of January 31, 2007 (the "Purchase Agreement"), pursuant to which Assignee has agreed to purchase from Assignor and Assignor has agreed to sell to Assignee the 100% membership interest of Assignor in Mirant NY-Gen, LLC, a Delaware limited liability company (the "Membership Interest"); and

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.　　Capitalized Terms.  Capitalized terms used but not defined herein shall have the meanings for such terms that are set forth in the Purchase Agreement.

2.　　Assignment of Membership Interest.  Effective as of the date of this Assignment, Assignor hereby assigns, sells, transfers and sets over to Assignee all of Assignor's right, title, benefits, privileges and interest in and to the Membership Interest, including without limitation all rights arising from said Membership Interest.

3.　　Terms of the Purchase Agreement.  This Assignment is made pursuant and subject to the terms of the Purchase Agreement. Assignor and Assignee agree that such terms shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

[The remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date first above written.

ASSIGNOR                                    ASSIGNEE

MIRANT NEW YORK, INC.          _____

By:_____           By:_____

Name:_____           Name:_____

Its:_____            Its:_____

## Schedule 3.02(d-1)

### Form of Assignment of Insurance Claims

This Assignment of Insurance Claims (the **"Assignment"**) is made and entered into as of _____, 2007, by and between MIRANT NY-GEN, LLC, a Delaware limited liability company (**"Assignor"**), and MIRANT NEW YORK, INC., a Delaware corporation (**"Assignee"**). Capitalized terms used herein and not otherwise defined having the meanings assigned to them in that certain Membership Interest Purchase and Sale Agreement dated as of _____, 2007 (the **"Agreement"**), between Assignee and Alliance Energy Renewables, LLC, a New York limited liability company (**"Alliance"**).

WHEREAS, pursuant to the Agreement, Alliance has agreed to purchase from Assignee and Assignee has agreed to sell to Alliance, one hundred percent (100%) of a Membership Interest in Assignor held by Assignee; and

WHEREAS, Section 2.03(f) of the Agreement provides that, prior to the Closing Date, Assignor shall assign to Assignee all rights pertaining to insurance claims filed in respect of losses, damages, and expenses relating to the occurrences giving rise to the Consent Order for the Hillburn Facility and the Swinging Bridge Remediation Plan.

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, Assignor and Assignee do hereby agree as follows:

1.      Assignment.  Effective as of the date of this Assignment, Assignor hereby assigns, sells, and transfers over to Assignee all of Assignor's right, title, benefits, privileges and interest in and to insurance claims filed prior to the date hereof by or on behalf of Assignor based upon incidents and occurrences giving rise to the Remediation Expenditures at the Hillburn Facility and the Swinging Bridge Facility including, without limitation, claims in respect of property, business interruption, and environmental losses, damages, and expenses (collectively, the "Claims").  Without limiting the scope of the foregoing assignment, Claims shall include payments made by insurers with respect to the Claims and the right to receive such payments.

2.      Covenants.  To the extent an insurance carrier pays amounts related to the Claims to Assignor, Assignor shall hold such amounts in trust for Assignee and shall pay Assignee such amounts within five (5) Business Days of receipt.  If requested by Assignee, Assignor shall cooperate with Assignee in the prosecution of the Claims, including making personnel, records, and access to the Assets available as needed by Assignee.

3.    Application of Agreement Terms.  This Assignment is made pursuant and subject to the terms of the Agreement. To the extent this Assignment is silent as to any provision in the Agreement that is relevant to this Assignment, Assignor and Assignee agree that each such corresponding provision applies to this Assignment. In the event of any conflict or inconsistency between the terms of the Agreement and the terms hereof, the terms of the Agreement shall prevail; such terms in the Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the date first above written.

**ASSIGNOR**                                              **ASSIGNEE**

MIRANT NY-GEN, LLC                           MIRANT NEW YORK, INC.

By:_____              By:_____

Name:_____              Name:_____

Its:_____              Its:_____

## Schedule 3.02 (d-2)

## Assignment of Claims Against Third Parties

This Assignment of Claims Against Third Parties (the **"Assignment"**) is made and entered into as of _____, 2007, by and between MIRANT NY-GEN, LLC, a Delaware limited liability company (**"Assignor"**), and MIRANT NEW YORK, INC., a Delaware corporation (**"Assignee"**). Capitalized terms used herein and not otherwise defined having the meanings assigned to them in that certain Membership Interest Purchase and Sale Agreement dated as of January 31, 2007 (the **"Agreement"**), between Assignee and Alliance Energy Renewables, LLC, a New York limited liability company (**"Alliance"**).

WHEREAS, pursuant to the Agreement, Alliance has agreed to purchase from Assignee and Assignee has agreed to sell to Alliance, one hundred percent (100%) of a Membership Interest in Assignor held by Assignee; and

WHEREAS, Section 2.03(f) of the Agreement provides that, prior to the Closing Date, Assignor shall assign to Assignee: (i) all rights pertaining to pending filed claims against O&R and ConEd and/or any of their respective Affiliates, and (ii) all Intercompany Claims.

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, Assignor and Assignee do hereby agree as follows:

1.    Assignment. Effective as of the date of this Assignment, Assignor hereby assigns, sells, and transfers over to Assignee all of Assignor's right, title, benefits, privileges and interest in and to: (a) Assignor's rights and claims against O&R and ConEd and/or any of their respective Affiliates that are the subject of Adversary Case No. 06-04141 commenced in The United States Bankruptcy Court for the Northern District of Texas Fort Worth Division in Chapter 11 Case No. 03-46590 (DML) (the "Action"), including without limitation the right to pursue the Action as the assignee of Company, and (b) the Intercompany Claims.

2.    Covenants. To the extent that: (a) O&R, ConEd and/or any of their respective Affiliates pay amounts related to the Action to Assignor, or (b) Assignee received payment of any amounts with respect to the Intercompany Claims, Assignor shall hold such amounts in trust for Assignee and shall pay Assignee such amounts within five (5) Business Days of receipt. If requested by Assignee, Assignor shall cooperate with Assignee in the prosecution of the Action and the Intercompany Claims, including making personnel, records, and access to the Assets available as needed by Assignee.

3. <u>Application of Agreement Terms</u>. This Assignment is made pursuant and subject to the terms of the Agreement. To the extent this Assignment is silent as to any provision in the Agreement that is relevant to this Assignment, Assignor and Assignee agree that each such corresponding provision applies to this Assignment. In the event of any conflict or inconsistency between the terms of the Agreement and the terms hereof, the terms of the Agreement shall prevail; such terms in the Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the date first above written.

**ASSIGNOR**

MIRANT NY-GEN, LLC

By:_____

Name:_____

Its:_____

**ASSIGNEE**

MIRANT NEW YORK, INC.

By:_____

Name:_____

Its:_____

## Schedule 3.03(a)

## Wire Transfer Instructions

Mirant New York, Inc
Acct # 3752102211
Bank of America
ABA # 0260009593

## Schedule 4.03
## Governmental Authority Approvals

Governmental Authority Approvals:

1.  New York Public Service Commission approval of transfer

2.  Federal Energy Regulatory Commission Section 203 filing

3.  Notification to Federal Energy Regulatory Commission regarding change of ownership of Company.

4.  New York State Department of Environmental Conservation ("NYSDEC") filing related to the modification to the Air Permits regarding the $NO_x$ Bubble.

5.  The items listed on Schedules 4.05 (Section B) and all items listed on Schedule 4.17.

Section A (Licenses and Permits for Operation of Company's Business):

1.  Federal Energy Regulatory Commission Operating License dated April 14, 1992 for Project No. 10481 (Mongaup).

2.  Federal Energy Regulatory Commission Operating License dated April 14, 1992 for Project No. 9690 (Rio).

3.  Federal Energy Regulatory Commission Operating License dated April 14, 1992 for Project No. 10482 (Swinging Bridge), as amended. (additional amendment may be required by law for the Unit 1 Fill-In)

4.  NYSDEC Petroleum Bulk Storage Certificate PBS Number 3-412694 issued on November 29, 2005 (Mongaup).

5.  NYSDEC Petroleum Bulk Storage Certificate PBS Number 3-412643 issued on November 29, 2005 (Shoemaker).

6.  NYSDEC Petroleum Bulk Storage Registration Certificate No. 3-990437 issued on January 6, 2006 (Hillburn).

7.  Application for NYSDEC SPDES Permit for Discharge, No. NY-026 5055 (Swinging Bridge Station #1); application submitted on March 8, 2002.

8.  Application for NYSDEC SPDES Permit for Discharge, No. NY-026 5063 (Swinging Bridge Station #2); application submitted on March 8, 2002.

9.  Application for NYSDEC SPDES Permit for Discharge, No. NY-026 5047 (Rio); application submitted on January 9, 2003.

10. NYSDEC Air Permit ID 3-3926-00039/00003 (Hillburn)

11. NYSDEC Air Permit ID3-3309-00040/00004 (Shoemaker)

12. Section 401 Water Quality Certification - Swinging Bridge Project - FERC No. 10482 issued by NYSDEC on September 11, 1989.

13. Section 401 Water Quality Certification - Mongaup Falls Project - FERC 10481

    issued by NYSDEC on September 11, 1989.

14. Section 401 Water Quality Certification - Rio Project – FERC 9690 issued by NYSDEC on September 11, 1989.

Section B (Licenses and Permits requiring Governmental Approval to Transfer):

1.     Approval by NYSDEC of transfer of Petroleum Bulk Storage Certificates.

2.     Notification to NYSDEC regarding change of ownership of Company for SPDES
       Permits, Air Permits and Section 401 Water Quality Certifications.

3.     Notification to Delaware River Basin Commission regarding change of ownership of
       Company.

4.     Notification to NYSDEC regarding change in notice provisions and contact information
       under the Consent Orders listed under Section C of this Schedule 4.05.

5.     An order of the Federal Energy Regulatory Commission issued under Section 203 of the
       Federal Power Act (16 U.S.C. 824b as amended) authorizing Purchaser's acquisition of
       the Membership Interest.

Section C (Consent Orders and Agreements with Governmental Authorities):

1.     Consent Order (as defined in the Agreement)

2.     Consent Order dated (DEC Index No. CO3-20050519-8-A, dated  September 15, 2005
       between the Company and the NYSDEC (Reimbursement and Environmental Audit).

3.     Dissolved Oxygen Consent Order (as defined in Schedule 4.15)

## Schedule 4.07

## Certain Liabilities

None.

## Schedule 4.08
## Certain Changes

Transfer of the Grahamsville Hydroelectric Generating Facility on October 31, 2006 to Orange & Rockland Utilities, Inc.

**Real Property Leases, Easements and Licenses**

1. Easement for electric transmission lines and distribution system dated April 30, 1941 and recorded May 19, 1946 in Liber 347 cp 23.

2. Grant of Easement dated March 11, 1982 and recorded March 12, 1982 in Liber 1034 cp 84.

3. Grant of Easement dated July 22, 1986 and recorded July 25, 1986 in Liber 1231 cp 230.

4. Grant of Easement dated July 22, 1986 and recorded July 25, 1986 in Liber 1231 cp 242.

5. Grant of Easement dated October 19, 1990 and recorded October 24, 1990 in Liber 1490 cp 117.

6. Grant of Easement dated September 14, 1990 and recorded December 3, 1990 in Liber 1497 cp 111.

7. Access and Patrol Easement and Restrictions dated October 31, 1990 and recorded December 3, 1990 in Liber 1497 cp 120.

8. Access and Patrol Easement and Restrictions dated September 14, 1990 and recorded December 3, 1990 in Liber 1497 cp 140.

9. Access and Patrol Easement and Restrictions dated October 4, 1990 and recorded April 5, 1991 in Liber 1515 cp 609.

10. Access and Patrol Easement and Restrictions dated October 4, 1990 and recorded April 5, 1991 in Liber 1515 cp 629.

11. Agreement recorded in Liber 1851 cp 25.

12. Easement dated April 30, 1941 and recorded May 19, 1946 in Liber 347 cp 23.

13. Agreement dated April 10, 1951 and recorded April 30, 1951 in Liber 450 cp 293.

14. Easement dated December 17, 1971 and recorded December 21, 1971 in Liber 761 cp 847 as assigned by Assignment of Easements dated June 30, 1994 and recorded in Liber 1757 cp 668.

15. Easement granted to People of State of New York dated October 24, 1990 and recorded October 24, 1990 in Liber 1490 cp 469.

16. Grant of Right of Way dated February 4, 1999 and recorded February 4, 1999 in Liber 2083 cp 514.

17. Indenture dated December 31, 1971 and recorded in Liber 765 cp 114 and Liber 1902 cp 106 (Orange County).

18. Easements in the Deed dated October 24, 1990 and recorded October 24, 1990 in Liber 1490 cp 398 and rights reserved in Deed at cp 404 and 405.

19. Right of Way recorded February 22, 1881 in Liber 80 cp 239, in Liber 80 cp 290 and November 18, 1889 in Liber 97 cp 326.

20. Unrecorded Easement as disclosed by Town of Forestburgh, Sullivan County Tax Map Section No. 37 dated September 23, 1965 last revised September 1, 1994.

21. Easement dated April 30, 1941 and recorded May 19, 1946 in Liber 347 cp 23.

22. Easement dated October 19, 1990 and recorded October 24, 1990 in Liber 3364 cp 118 Orange County.

23. Easement dated October 24, 1990 and recorded October 24, 1990 in Liber 1490 cp 597.

24. Easement recorded in Liber 3365 cp 1, Orange County.

25. Easement dated October 19, 1990 and recorded October 24, 1990 in Liber 3364 235, Orange County.

26. Easement recorded in Liber 1624 cp 035, Liber 1667 cp 001 and Liber 1801 cp 152.

27. Deed dated February 16, 1999 and recorded March 24, 1999 in Liber 2093 cp 370.

28. License recorded April 21, 1999 in Liber 2100 cp 536 as assigned by Assignment dated June 30, 1999 recorded July 1, 1999 in Liber 2117 cp 448 Sullivan County.

29. Right of Way dated February 4, 1999 and recorded February 11, 1999 in Liber 2083 cp 514.

30. Recreational Area Option Agreement dated October 24, 1990 in Liber 1490 cp 644.

31. Provisions in the unrecorded (1) FERC Hydro License issued April 14, 1992 for Swinging Bridge Reservoir (License No. 10482); (2) Memorandum of Understanding between Orange and Rockland Utilities, Inc. and the New York State Department of Environmental Conservation transmitted by cover letter dated July 16, 1990; and (3) Section 401 Water Quality Certification for Swinging Bridge Reservoir dated September 11, 1989.

32. Deed in Liber 765 cp 114.

33. Easement in Liber 1490 cp 81.

34. Easement in Liber 1490 cp 99.

35. Easement dated October 2, 1990 recorded in Liber 1490 cp 539 as amended in Liber 1851 cp 420 and confirmed in Liber 2216 cp 435.

36. Easements in Liber 1490 cp 398.

37. Right of ways in Deed in Liber 765 cp 114.

38. Mines and mineral rights reserved in deeds of record to Orange and Rockland Utilities, Inc.

39. Deeds recorded in Liber 239 cp 278, Liber 240 cp 21, Liber 240 cp 23, Liber 240 cp 145, Liber 240 cp 146, Liber 241 cp 330, and Liber 243 cp 641.

40. Easement recorded in Liber 250 cp 534.

41. Recreational rights recorded in Liber 240 cp 210 and Court Order recorded in Liber 2489 cp 46.

42. Deed recorded in Liber 765 cp 114.

43. Easement as more particularly shown on Sheet 13 of Map of Lands Reserved by Orange and Rockland Utilities, Inc. which Maps are attached to Deed dated December 31, 1971,

recorded April 12, 1972 at Book 765 of Deeds, Page 114 of the Sullivan County Clerk's Office.

44. Easements dated June 30, 1999 recorded in Liber 2117, cp 498, Sullivan County.

45. Assignment and Assumption of Lease dated as of June 30, 1999 and recorded July 1, 1999 in Liber 2117 cp 453 (Sullivan County).

46. Unrecorded rights, if any, in favor of any electric light or telephone company to maintain guy wires extending from the described premises to poles located on the roads on which the described premises abut.

47. Underground encroachments and easements, if any, including pipes and drains, and such rights as may exist for entry upon said premises to maintain and repair the same.

48. License Agreement between Mirant New York-Gen, LLC and Russ A. Heyman dated March 23, 2005.

49. License Agreement between Mirant New York-Gen, LLC and Sylvia and Charles Broffman dated February 18, 2005.

50. License Agreement between Mirant New York-Gen, LLC and Allen K. Glass and Judy Glass dated March 23, 2005.

51. License Agreement between Mirant New York-Gen, LLC and Harvey Elgart dated March 23, 2005.

52. License Agreement between Mirant New York-Gen, LLC and R. Scott Clouston dated March 23, 2005.

53. License Agreement between Mirant New York-Gen, LLC and John Williams d/b/a Poppa John's Weiner Wagon dated June 6, 2006.

54. License Agreement dated June 30, 1999 between Southern Energy NY-GEN, L.L.C. and Orange and Rockland Utilities, Inc.

55. Assignment and Assumption of License dated June 30, 1999, and recorded in Book 2117 at page 448.

56. License dated April 8, 1999 and recorded in Book 2100 at page 536.

57. License Agreements between Mirant New York-Gen, LLC and Woodstone Toronto Development, LLC dated October, 2003.

58. Right of Entry and Agreement of Indemnity dated May 12, 2005, by and between the Company and United Water New York, Inc., as extended by letter dated April 19, 2006.

59. Right of Entry and Agreement of Indemnity dated June 29, 2005, by and between the Company and the Village of Hillburn, New York, as extended by letter dated May 22, 2006.

60. License Agreement between the Company and Thomas Damiani dated November 13, 2006.

61. License Agreement between the Company and Julie Racenstein dated October 13, 2006.

62. License Agreement between the Company and Ernest F. Thiesing dated October 30, 2006.

63. License Agreement between the Company and Terry M. Geller dated October 13, 2006.

64. Various license agreements between the Company and landowners authorizing the erection of temporary structures on the Swinging Bridge Reservoir.

4

## Schedule 4.10

## Litigation

1. Barrett v. Watkins, Allen, Woodstone Lakes Development, LLC, Woodstone Toronto Development, LLC, Woodstone Crestwood Development, LLC, Mirant NY-Gen, LLC, and Dubrovsky, Case No. 948-06, Sullivan County Supreme Court. The Company's FERC license requires the Company to provide certain public access to the Toronto reservoir. On or about March 1, 2006, FERC notified the Company in writing that the Company is not in compliance with its FERC license as a result of the Woodstone Companies having physically blocked certain public access to the reservoir. On or about March 31, 2006, Robert and June Barrett filed suit in the New York Supreme Court for Sullivan County relating to disputes arising out the Woodstone Companies' efforts to restrict access to the Toronto reservoir behind the Swinging Bridge hydro-electric facility across a road, Pine Grove Road, over which the Company holds an easement for the purpose of allowing public access to the reservoir. On or about June 20, 2006, the Company cross-claimed against Woodstone Lakes Development, LLC, Woodstone Toronto Development, LLC, and Woodstone Crestwood Development, LLC seeking injunctive and declaratory relief. The Woodstone Companies answered the cross-claims of Company on September 27, 2006. On or about August 24, 2006, Dr. Goldfarb and Ms. Burke, private citizens, sought to intervene into the Barrett Suit (as additional plaintiffs), by filling an order to show cause. The Woodstone Companies opposed the order to show cause and cross-moved to dismiss the proposed complaint of Dr. Goldfarb and Ms. Burke. Company filed papers in response to the Woodstone Companies' cross-motion in order to protect its rights and set forth its position with respect to this case. On October 26, 2006, a hearing for order to show cause to intervene was held in Monticello, New York, before Justice Sackett. Company participated in the hearing. Justice Sackett entertained arguments from all parties about the merits of the case. A decision from the judge on the merits of the motion to intervene is pending.

2. Proofs of claim filed by The Southern Company in the Bankruptcy Case.

3. Various pre-petition claims and administrative claims filed against the Company as part of the Chapter 11 bankruptcy case will be addressed in the Company's plan of reorganization.

## Schedule 4.12

## Taxes

1.   Nothing to disclose for the Company.

2.   Seller is currently under a New York State Income Tax audit, for income Tax purposes, for years 2002, 2003 & 2004. Seller is the taxpayer and is the legal entity responsible for income Taxes. The Company is disregarded for income Tax purposes, and is therefore not obligated for Tax liabilities under the audit.

## Schedule 4.14

## Bank Accounts

1. Mirant NY Gen, LLC
   Acct # 3752102224
   Bank of America – Dallas
   Authorized Signers:  J. William Holden, III; Greg Weber

2. Mirant NY Gen, LLC
   Acct # 4572828
   Federal Investors, Money Market Fund Account
   Authorized Traders:  Greg Weber; Mark Crompton; Rex Croff

## Schedule 4.15

## Compliance With Law

1.  FERC

    On March 1, 2006, FERC issued a letter denying the Company's request for an extension of time to provide FERC with documentation that the Company has rights to provide public access to the Toronto Dam boat launch on the Toronto Reservoir via a newly constructed bypass road. FERC found that the Company is "in non-compliance with [the Company's] license and will continue to be in non-compliance until such time that [the Company] demonstrate[s] the area is available to the public." The Company subsequently filed a cross-complaint in Barrett v. Woodstone *et al.*, (see description in Schedule 4.10), in order to secure its easement rights to the Toronto Dam boat launch. The cross-complaint is currently pending in New York State Supreme Court.

2.  Environmental

    (a)  Dissolved Oxygen:

        (i)  The hydroelectric generating units have not had sufficient levels of dissolved oxygen.

        (ii)  On March 7, 2006, the Company entered into a Consent Order with the NYSDEC with respect to dissolved oxygen at the hydroelectric facilities (the "Dissolved Oxygen Consent Order.") The Company committed to install certain turbine venting equipment at the hydroelectric generating units to improve dissolved oxygen conditions. The equipment has been installed at the units at Rio and Mongaup, but it has not been installed at Swinging Bridge Units 1 or 2. By the terms of the Dissolved Oxygen Consent Order, the equipment at Unit 2 should have been installed within thirty days of the effective date of such order. It has not been installed at Unit 2 because the equipment is not feasible for installation at the facility. The Dissolved Oxygen Consent Order does not require equipment to be installed at Unit 1 unless and until the unit again becomes operational.

        (iii)  The NYSDEC has orally alleged that there may be a violation of the water quality standards related to temperature levels at the reservoirs for the hydroelectric facilities.

    (b)  Kerosene Spill:

        A kerosene spill occurred at the Hillburn generating facility. The spill is the subject of the Consent Order.

    (c)  Swinging Bridge Remediation:

1

A sinkhole occurred at the Swinging Bridge dam. Repairs related to the sinkhole occurrence are the subject of the Swinging Bridge Remediation Plan.

3.    License Amendment and Notification

An amendment to the Federal Energy Regulatory Commission Operating License and a notification to the New York State Public Service Commission may be required by law to reflect the penstock remediation on Swinging Bridge Unit #1.

1. Continuing Site/Interconnection Agreement between the Company and Orange and Rockland Utilities, Inc. dated November 24, 1998, as amended (the "Interconnection Agreement").

2. Settlement Agreement between the Company, Mirant Lovett, LLC, Mirant Bowline, LLC, Hudson Valley Gas Corporation, and Orange and Rockland Utilities, Inc. dated August 15, 2001 (may be terminated as to Company or, in the alternative, may be subject to the Cross Indemnity Agreement, as provided in Section 7.25).

3. Power Sale, Fuel Supply and Services Agreement dated January 3, 2006 by and among the Company, Mirant Energy Trading, LLC ("MET") (as transferee of Mirant Americas Energy Marketing, LP) and others (to be terminated on or before Closing).

4. Administrative Services Agreement dated January 3, 2006 by and between the Company and Mirant Services, LLC (to be terminated on or before Closing).

5. Environmental Services Agreement dated December 20, 2006, by and between the Company and Lightship Engineering, LLC ("Lightship"), and Purchase Order No. NY-18884 between the Company and Lightship.

6. Gas Transportation and Balancing Services Agreement for the Mirant Generating Facilities dated December 9, 2002 (the "Gas Transportation and Balancing Agreement") (Company to be removed as a party on or before Closing).

7. Purchase Order No. NY-6106 between Company and Advance Construction Techniques, Ltd. (may be supplemented by or replaced with the Unit 1 Fill-In Contract as provided in Section 2.03(d)(ii)).

8. Purchase Order Nos. NY-7557, NY-8089, NY-6478 between Company and Devine Tarbell and Associates, Inc.

9. Purchase Order No. NY-6867 between Company and Mead and Hunt, Inc. (To be assigned pursuant to Section 7.29).

10. Purchase Order Nos. NY-8904, NY-7138 and NY-7139 between Company and Megrant Properties, Inc.

11. Purchase Order No. NY-20204 between Company and Baker Technical Land Services.

12. Purchase Order No. NY-5677 between Company and All Bright Electric.

13. Purchase Order No. NY-8296 between Company and Burns and Roe Enterprises, Inc. (To be assigned pursuant to Section 7.29).

14. Purchase Order No. NY-6467 between Company and Conetec, Inc.

15. Purchase Order No. 8320 between Company and Devine Tarbell and Associates, Inc.

16. Purchase Order No. 5530 between Company and Miller Environmental Group, Inc.

17. Purchase Order No. 7806 between Company and Dominion Engineering, Inc.

18. Purchase Order No. 7810 between Company and OCS Industries, Inc.

19. Purchase Order No. 7552 between Company and Deerpark Oil and Heat Company.

20. Purchase Order No. 6490 between Company and All Bright Electric.

21. Purchase Order No. 7697 between Company and Henningson Durham and Richardson.

22. Purchase Order No. 20266 with Geosystems, LP (to be assigned to Company on or before Closing).

23. Purchase Order No. 20272 with Paul C. Rizzo Associates, Inc. (to be assigned to Company on or before Closing).

## Schedule 4.17
### Consents

1.   The consent required under the Interconnection Agreement.

2.   The consent required to remove the Company from the Gas Transportation and Balancing Agreement.

## Schedule 4.18
## Title to Assets

None.