## Schedule 5.04

## Consents and Approvals of Governmental Authorities

1.      An order of the Federal Energy Regulatory Commission issued under Section 203 of the Federal Power Act (16 U.S.C. 824b as amended) authorizing Purchaser's acquisition of the Membership Interest.

2.      New York Public Service Commission approval of transfer.

## Schedule 5.05
### Litigation

None, other than the Bankruptcy Case, insofar as applicable to the Membership Interest.

**Schedule 7.15(b)**

**Sale Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| | ) | |
| MIRANT CORPORATION, et al., | ) | Case No. 03-46590 (DML) |
| | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**ORDER (A) APPROVING THE SALE PROCEDURES IN CONNECTION WITH
THE PROPOSED SALE OF MIRANT NEW YORK, INC.'S MEMBERSHIP
INTEREST IN MIRANT NY-GEN, LLC; (B) APPROVING PAYMENT OF A
BREAKUP FEE IN ACCORDANCE WITH THE TERMS OF THE
MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT;
(C) SCHEDULING A SALE HEARING AND AN AUCTION; AND
(D) APPROVING THE FORM AND MANNER OF NOTICE OF
THE SALE PROCEDURES AND THE SALE HEARING**

Upon the motion, dated February 1, 2007 (the "Sale Procedures Motion"), of

Mirant New York, Inc. ("Mirant New York" or the "Seller"), as debtor and debtor in

possession, for an order (the "Sale Procedures Order") (a) approving the Sale Procedures[1]

in connection with the proposed sale, pursuant to sections 105(a), 363(b), (f), (m), and

(n), and 1146(c) of title 11 of the United States Code (the "Bankruptcy Code"), of the

Seller's Membership Interest (the "Membership Interest Sale") in Mirant NY-Gen, LLC

("Mirant NY-Gen" and, collectively with Mirant New York, the "Debtors") to Alliance

---

[1] Unless otherwise defined in this Sale Procedures Order, capitalized terms used herein shall have the same meanings ascribed to such terms in the Sale Procedures Motion.

Energy Renewables, LLC ("Alliance Energy" or the "Purchaser") pursuant to that certain Membership Interest Purchase and Sale Agreement between Mirant New York and Alliance Energy, dated as of January 31, 2007 (the "Agreement"); (b) approving the payment of a Breakup Fee (defined below) in accordance with the terms of the Agreement; (c) scheduling a hearing (the "Sale Hearing") to consider approval of the Membership Interest Sale and an Auction (as defined below); and (d) approving the form and manner of notice of the Sale Procedures and the Sale Hearing; and no previous motion for similar relief having been made to this Court; and after due deliberation thereon; and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

1. This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2). Venue of this matter is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

3. Due and proper notice of the Sale Procedures Motion has been given and no further notice is required.

4. The Sale Procedures, in the form set forth in *Exhibit 1* annexed hereto, shall govern the Auction of the Membership Interest to obtain the highest and best offer for the Membership Interest.

5. The Sale Procedures and the Breakup Fee provided for in the Agreement are within the reasonable business judgment of Mirant New York, are in the best interests

of Mirant New York and its chapter 11 estate, and are fair, reasonable, and appropriate in the circumstances.

6.　　The Notice of Auction and Sale Hearing as set forth in *Exhibit 2* is reasonably calculated to provide adequate notice and opportunity for a hearing on any objections to the Sale Motion.

7.　　The terms and conditions of the payment to the Purchaser of the Breakup Fee as set forth in the Agreement are:

　　　　a.　　the product of arm's length, good faith negotiations, between the Seller and the Purchaser;

　　　　b.　　a material component of, inducement for, and condition to, the Purchaser's willingness to be a stalking horse bidder under the Agreement; and

　　　　c.　　within the reasonable business judgment of Mirant New York, is in the best interests of Mirant New York and its chapter 11 estate, and is fair, reasonable and appropriate in the circumstances to establish certainty on the existence and terms of a minimum bid subject to a reasonable competitive bidding process; and

　　　　d.　　not likely to adversely affect the Auction's competitive bidding process.

ACCORDINGLY, IT IS HEREBY

ORDERED that the Sale Procedures as set forth in *Exhibit 1* annexed hereto are hereby approved in all respects; and it is further

ORDERED that in the event of a competing bid for the Membership Interest, Alliance Energy will be entitled to credit bid the amount of $250,000.00 to any overbids in accordance with the terms of the Sale Procedures and the Sale Motion; and it is further

ORDERED that, in accordance with Section 7.15 of the Agreement, as a result of Seller entering into an agreement for a Third Party Sale pursuant to the Auction, Seller shall, upon entry of the Sale Order authorizing such Third Party Sale, return to Purchaser the Down Payment (as defined in the Agreement) with all interest accrued thereon and, within five (5) days of such Third Party Sale or any other sale of the Membership Interest, pay to the Purchaser the Breakup Fee of Two Hundred Fifty Thousand Dollars ($250,000.00) as an administrative expense of the Seller, from the first cash proceeds of any Third Party Sale or other sale of the Membership Interest.

ORDERED that Mirant New York shall serve within three (3) business days after entry of this Sale Procedures Order, the Notice of Auction and Sale Hearing upon (a) all parties entitled to receive notice as of the date hereof pursuant to the Order Clarifying Order Granting Complex Chapter 11 Bankruptcy Case Treatment, dated August 25, 2004, (b) all parties known to Mirant New York to have an interest in acquiring the Membership Interest and the Sale Assets, (c) all entities listed on the schedules of Mirant New York and Mirant NY-Gen, LLC as holding secured claims and all entities who recorded or filed proof(s) of claim as secured against Mirant NY-Gen or Mirant New York, (d) all entities who have recorded in the public record any lien, claim, encumbrance, or interest in or upon the Membership Interest or any of the assets of Mirant NY-Gen, (e) the Federal Energy Regulatory Commission, (f) the Delaware River Basin Commission, (g) the New York Public Service Commission, (h) the State of New

York Department of Environmental Conservation, (i) the New York City Department of Environmental Protection, (j) the Securities and Exchange Commission, (k) the United States Environmental Protection Agency, (l) the Office of the United States Attorney, (m) the United States Department of Justice, (n) the Internal Revenue Service, (o) all parties granting permits or licenses to Mirant NY-Gen, (p) the applicable state and local taxing authorities, and (q) all parties to Mirant NY-Gen's executory contracts and unexpired leases, and it is further

ORDERED that the Sale Hearing shall be held on _____, March ___, 2007 at ___ a.m. (Prevailing Central Time), or as soon thereafter as counsel may be heard, before the Honorable D. Michael Lynn, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Northern District of Texas, Eldon B. Mahon U.S. Courthouse, 501 West Tenth Street, Fort Worth, TX 76102-3643; and it is further

ORDERED that the Sale Hearing may be adjourned from time to time without further notice other than an announcement by Mirant New York in the Court of such adjournment on the date scheduled for the Sale Hearing; and it is further

ORDERED that such notice as set forth in the preceding decretal paragraphs to the Notice Parties shall constitute good and sufficient notice of the Sale Motion as it relates to Mirant New York's request for entry of the Sale Order, the Auction, and the Sale Hearing, and no other or further notice of the Sale Motion, the Auction, and the Sale Hearing shall be necessary or required; and it is further

ORDERED that responses or objections, if any, to the entry of the Sale Order granting the relief requested in the Sale Motion shall be filed with this Court and served, so as to be actually received no later than _____, February ___, 2007, at 4:00 p.m.

(Prevailing Central Time) on: (a) Hiscock & Barclay, LLP, One Park Place, Syracuse, New York 13215, Attn: George S. Deptula, Email: gdeptula@hiscockbarclay.com; (b) Forshey & Prostok LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102, Attn: Jeff P. Prostok, Email: jprostok@forsheyprostok.com; (c) Mirant New York, Inc., c/o Mirant Corporation, 1155 Perimeter Center West, Atlanta, Georgia 30338, Attn: Sonnet Edmonds, Vice President and Assistant General Counsel, Email: sonnet.edmonds@mirant.com; (d) Hill Gilstrap, P.C., 1400 West Abram Street, Arlington, TX 76013, Attn: Frank Hill, Email: fhill@hillgilstrap.com, (e) Troutman Sanders LLP, 405 Lexington Avenue, New York, NY 10174, Attn: Hollace T. Cohen, Email: Hollace.Cohen@troutmansanders.com.

ORDERED that the Seller is authorized and empowered to take such steps, incur and pay such costs and expenses, and take such action as may be reasonably necessary to implement this Sale Procedures Order; and it is further

ORDERED that any objections to the entry of this Sale Procedures Order that have not been withdrawn, waived or settled, and all reservations of rights regarding the same, shall be and hereby are OVERRULED on the merits; and it is further

ORDERED that this Court shall retain jurisdiction over any matter or dispute arising from or relating to the Sale Procedures and the implementation of this Sale Procedures Order.

Dated: _____, 2007            _____
                                     The Honorable D. Michael Lynn
                                     United States Bankruptcy Judge

## EXHIBIT "1"

## SALE PROCEDURES

The following procedures (the "**Sale Procedures**") shall govern the auction (the "**Auction**") of the Membership Interest held by Mirant New York, Inc. (the "**Seller**" or "**Mirant New York**"), as sole member of Mirant NY-Gen, LLC ("**Company**" or "**Mirant NY-Gen**" and, with Mirant New York, the "**Debtors**"). These Sale Procedures have been approved and authorized by order dated _____, 2007 (the "**Sale Procedures Order**") of the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**") in the chapter 11 case of Mirant New York (Case No. 03-46641-DML-11).

The Seller has taken all reasonable steps to obtain the highest and best price for the Membership Interest. However, under title 11 of the United States Code (the "**Bankruptcy Code**"), the Seller must demonstrate that it has obtained the highest and best price for the Membership Interest; such a showing may include giving notice thereof to the creditors of the Company and other interested parties, providing information about the Membership Interest to prospective bidders (subject to appropriate confidentiality agreements), entertaining higher and better offers from such prospective bidders, and, if necessary, conducting an Auction.

1.     Property to Be Sold. The Company's assets include three hydroelectric power stations and two gas turbine generating facilities located in southeastern New York and certain real property, easements, permits, and contracts relating thereto as identified in the Agreement (the "**Sale Assets**"). As provided in the Sale Procedures Order, the sale of the Membership Interest (the "**Membership Interest Sale**") is subject to a determination of which entity has submitted the highest or otherwise best bid pursuant to the procedures set forth herein (the "**Prevailing Bidder**") (as defined in Section 8 below). Alliance Energy Renewables, LLC (the "**Proposed Purchaser**") and Mirant New York have entered into the Membership Interest Purchase and Sale Agreement, dated as of January 31, 2007 (the "**Agreement**"). The Proposed Purchaser shall be treated as a Qualified Bidder (as defined in Section 3 below), and the executed Agreement shall be treated as a Qualified Bid (as defined in Section 5 below), for all purposes under the Sale Procedures.

2.     Due Diligence. Upon receipt by Hiscock & Barclay, LLP ("**Hiscock & Barclay**") or Forshey & Prostok LLP ("**Forshey & Prostok**") of (i) an executed confidentiality agreement in form and substance satisfactory to the Seller in its sole discretion and (ii) financial disclosure acceptable to, and as requested by, the Seller, in its sole discretion, which information shall demonstrate the financial ability of the potential bidder to consummate the purchase of the Membership Interest and its obligations to perform under the Agreement, including but not limited to immediately available cash, or a binding commitment for financing, adequate to pay a price that exceeds the amount in the Marked Agreement (as defined in Section 5(a) below) by at least $500,000 in cash, a potential bidder shall be provided with additional information regarding the Membership

Interest and related Sale Assets, and be afforded the opportunity to inspect the Sale Assets. In addition, all reasonable efforts will be made to provide a potential bidder, who has satisfied the conditions of this Section 2, with such information as such potential bidder may determine is necessary or relevant to the formulation of its bid.

**NEITHER HISCOCK & BARCLAY, FORSHEY & PROSTOK, NOR ANY OF THEIR RESPECTIVE PARTNERS, MEMBERS, COUNSEL, OR ATTORNEYS (COLLECTIVELY, THE "DEBTORS' ATTORNEYS") HAS PREPARED ANY OF THE INFORMATION REGARDING MIRANT NEW YORK OR MIRANT NY-GEN, OR ANY OF THEIR OPERATIONS, SCHEDULED ASSETS, OR FINANCIAL CONDITION TO BE PROVIDED TO A POTENTIAL BIDDER IN CONNECTION WITH THE SALE PROCEDURES SET FORTH HEREIN. CONSEQUENTLY, NO REPRESENTATION IS MADE BY ANY OF THE DEBTORS' ATTORNEYS REGARDING THE ACCURACY, RELIABILITY, VERACITY, ADEQUACY, OR COMPLETENESS OF ANY INFORMATION PROVIDED IN CONNECTION WITH THE SALE PROCEDURES, AND ALL POTENTIAL BIDDERS ARE ENCOURAGED TO CONSULT WITH THEIR OWN ADVISORS REGARDING ANY SUCH INFORMATION.**

3.    Qualified Bidders.

(a)    A potential bidder that satisfies the following requirements, and that the Seller determines, in its sole discretion, is reasonably likely to be able to consummate a purchase of the Membership Interest (including all Purchaser Required Consents set forth in Section 7.14 of the Agreement) shall be considered a "**Qualified Bidder.**" Within three (3) business days of each potential bidder's delivery of all of the material required in subsections (b)(i) through (b)(v) below, the Seller shall notify such potential bidder in writing as to whether such potential bidder shall be considered a Qualified Bidder.

(b)    Unless otherwise ordered by the Bankruptcy Court for cause shown, no bid for the Membership Interest will be considered unless prior to or in conjunction with making such bid, the bidder delivers the following items to: Hiscock & Barclay, LLP, 50 Beaver Street, Albany, New York 12207, Attn: George S. Deptula.

(i)    if the potential overbidder has not already entered into a confidentiality agreement with the Seller, an executed confidentiality agreement (to be provided upon request) in form and substance satisfactory to Mirant New York in its sole discretion;

(ii)    financial disclosure in writing acceptable to, and as requested by, Mirant New York, in its sole discretion, which information shall demonstrate that the potential bidder has the financial ability to consummate the purchase of the Membership Interest and its obligations to perform under the Membership Interest Purchase and Sale Agreement no later than ten (10) days

following the hearing on the Sale Order including, but not limited to, immediately available cash or a binding commitment for financing and the willingness and ability to cover all of the potential bidder's legal counsel fees and other costs associated with the sale of the Membership Interest;

(iii)     written evidence demonstrating that such potential bidder is not affiliated with the Proposed Purchaser or Mirant New York (and such potential bidder is not a creditor of Mirant New York or Mirant NY-Gen);

(iv)     written evidence that the potential bidder has the internal authorizations and approvals necessary to engage in the transaction without the consent of any entity that has not already been obtained and that the potential bidder is a bona fide purchaser; and

(v)     a cashier's check made payable to Mirant New York, or cash, or an irrevocable letter of credit for ten percent (10 %) (the "**Deposit**") of the amount of the Proposed Consideration (as defined in Section 5(b) below). If the bidder delivers a letter of credit to the Seller, such letter of credit must (1) have an expiration date of not earlier than October 1, 2007, or fifteen (15) days after such other date proposed in Section 12.01(vii) of the Marked Agreement, and (2) be drawable upon presentment of an officer's certificate from Mirant New York stating only that Mirant New York is entitled to draw on the letter of credit. The bidder shall forfeit the Deposit and, to the extent applicable, the Seller may draw on the letter of credit if (1) the bidder is determined to be a Qualified Bidder and withdraws or modifies its bid or any subsequent Increased Bid (as defined in Section 7 below), without the Seller's consent other than as provided herein before the selection of the Prevailing Bidder, and/or (2) the bidder is determined to be the Prevailing Bidder and (A) modifies or withdraws the bid or any subsequent Increased Bid without the Seller's consent before the consummation of the sale contemplated by the Marked Agreement (as defined in Section 5(a) below) or (B) breaches the Marked Agreement. The Deposit shall be returned to the bidder (1) if the bidder is determined not to be a Qualified Bidder or (2) under the circumstances contemplated by Section 12 hereof.

4.     Time for Submission of Bids.  Any Qualified Bidder that desires to participate in the Auction shall deliver a copy of its bid so it is received by Seller not later than 4:00 p.m. (Prevailing Central Time) on Wednesday, February 28, 2007 (the "**Initial Bid Deadline**"). Seller shall provide Purchaser with a copy of all Qualified Bids accompanied by notice of the Seller's determination of the Opening Bid (as defined below) no less than four (4) days prior to the Auction. If there are no Qualified Bids, the Purchaser shall be deemed to be the Prevailing Bidder at the Auction.

5.     Form and Contents of Bids.  To constitute a "**Qualified Bid**," a bid must satisfy the following requirements:

(a)     the bid must include an executed irrevocable Membership Interest purchase and sale agreement made upon the same terms and conditions as those contained in the Agreement (excepting the purchase price and terms and conditions related to the bankruptcy procedures and deadlines for satisfying conditions precedent to the closing of the transaction in Section 7.15(b) of the Agreement, and the reasonable extension of certain dates set forth in Sections 12.01(iii), (iv), and (vii) of the Agreement necessary or appropriate in light of such overbid which shall be no less favorable to the Seller than the terms of the Agreement, and shall set forth any amendments and modifications to the Agreement, including price, terms, and any change in the list of agreements to be assumed by Mirant NY-Gen, which such bidder would propose if it were selected as the Prevailing Bidder (the "Marked Agreement"). All modifications or amendments to the Agreement that are contained in the Marked Agreement must be "redlined" in order for the Seller to consider the Marked Agreement;

(b)     the Marked Agreement must provide for total net cash consideration to the Seller's chapter 11 estate of not less than $500,000.00 greater than the purchase price of the Agreement (the "Proposed Consideration");

(c)     the Marked Agreement must not be conditioned upon the ability of the bidder to obtain financing or the outcome of unperformed due diligence by the bidder. In the event that the Marked Agreement contains any additional conditions to the closing of the Membership Interest Sale (the "Closing"), none of such conditions shall be materially more burdensome or unfavorable to the Seller than those set forth in the Agreement;

(d)     the Marked Agreement must be accompanied by a letter affirmatively (i) setting forth the identity of the bidder and the contact information for such bidder, (ii) stating that the bidder offers to purchase the Membership Interest upon the terms and conditions set forth in the Marked Agreement, (iii) summarizing the Proposed Consideration the bidder proposes to pay under the Marked Agreement, (iv) identifying any change in the contracts that the bidder proposes Mirant NY-Gen assume and any additional cure amount therefor, (v) stating the aggregate value of the consideration the bidder proposes to pay under the Marked Agreement (which statement of value shall not be binding on the Seller, the Purchaser, or the Court), and (vi) stating the form of the Deposit (*i.e.,* letter of credit, cashier's check, or cash) made by the bidder; and

(e)     the foregoing materials must be received by Seller on or before Wednesday, February 28, 2007 at 4:00 p.m. (Prevailing Central Time) (the "Initial Bid Deadline"). The Purchaser will receive from the Seller a copy of all Qualified Bids accompanied by notice of the Seller's determination of the Opening Bid (as defined below) no less than four (4) days prior to the Auction.

6.     Notification of Opening Bid.  At the commencement of the Auction, the Seller will identify the opening bid (the "Opening Bid"), which will be the highest or otherwise best Qualified Bid, as determined by the Seller in its sole discretion.  If no

timely Qualified Bid is submitted as determined by the Seller, or if the Purchaser is the Prevailing Bidder (as defined herein), the Seller shall request at the Sale Hearing that the Bankruptcy Court approve the sale of the Membership Interest to the Purchaser.

7.    The Auction.

(a)    The Auction shall commence at _____ a.m. (Prevailing Central Time) on _____, _____, 2007 at the United States Bankruptcy Court, Eldon B. Mahon U.S. Courthouse, 501 West Tenth Street, Fort Worth, Texas 76102. Qualified Bidders must attend the Auction in person or through an authorized representative or agent with actual authority to participate in the Auction and bind such Qualified Bidder. During the Auction, any Qualified Bidder may increase its qualified Bid by another Qualified Bid that:

i.    provides for cash consideration that exceeds by not less than $250,000.00 the cash consideration to be paid pursuant to the then highest Qualified Bid or Increased Bid, if any;

ii.    identifies specifically any other changes made to the Qualified Bid; and

iii.    satisfies the requirements of Sections 3(b) and 5 above.

Any bid received from a Qualified Bidder during the Auction that satisfies the requirements set forth in subsections (a)(i) through (a)(iii) above, shall constitute an **"Increased Bid."** If the Proposed Purchaser submits the successful overbid, the Purchaser shall be entitled to credit the amount of $250,000.00 against such overbid.

(b)    The Seller shall adopt such rules for bidding at the Auction as it deems appropriate in its sole discretion that will better promote the goals of the bidding process, allow all Qualified Bidders reasonable notice and opportunity to submit Increased Bids, and are not otherwise inconsistent with any order of the Bankruptcy Court or the Agreement.

8.    Selection of Prevailing Bidder.    At the Auction, the Seller shall review and consider each, if any, of the Qualified Bids and the Increased Bids. Seller shall determine in its sole discretion which of the Qualified Bids or Increased Bids constitute the highest and otherwise best bid for the Membership Interest, provided however, that nothing contained herein shall prevent the Purchaser from contesting that the bid selected by the Seller of the Prevailing Bidder is the highest and best offer. The bidder making the bid that is selected as the highest or otherwise best bid by the Seller shall be considered the **"Prevailing Bidder."** At the conclusion of the Auction and after such review, the Seller shall inform each of the Qualified Bidders of the decision regarding who is the Prevailing Bidder and who made the second highest or otherwise best bid (the "Backup Bidder").

9.     Release of Down Payment.  Upon entry of the Sale Order authorizing a sale of the Membership Interest to a purchaser other than Purchaser, Seller shall direct Escrow Agent to return to Purchaser the Down Payment (as defined in the Agreement) with all accrued interest thereon; provided that, if Purchaser agrees to be the Backup Bidder, Seller shall direct the Escrow Agent to return the Down Payment (with all accrued interest thereon) to Purchaser upon the earlier of the closing of the Membership Interest Sale to the Prevailing Bidder or termination of the Agreement by Purchaser according to the terms of the Agreement.

10.    Failure to Consummate Purchase.  If for any reason the Prevailing Bidder fails to consummate the Membership Interest Sale, the Seller reserves the right to consummate the Membership Interest Sale with the Backup Bidder.  If such failure to consummate the purchase is the result of a breach of the Agreement by the Proposed Purchaser or the Marked Agreement by the Prevailing Bidder, the Down Payment (as defined in the Agreement) of the Proposed Purchaser or the Deposit of such Prevailing Bidder as the case may be shall be forfeited to the Seller.  The Seller specifically reserves the right to seek all available damages from the defaulting bidder; provided that in the case of the Proposed Purchaser, the damages shall be limited as provided in Section 12.04 of the Agreement.

11.    Bankruptcy Court Approval of the Prevailing Bidder.  An evidentiary hearing on all of the relief requested in the Seller's Motion (the "**Sale Motion**") to approve the Membership Interest Sale and to conduct the Auction (the "**Sale Hearing**") shall be held before the Bankruptcy Court on _____, _____, 2007 at __ __.m. (Prevailing Central Time).

12.    Return of Deposits.  Within five (5) business days after the closing of the Membership Interest Sale, the Deposit submitted by each Qualified Bidder shall be returned, except for those submitted by (a) the Prevailing Bidder and (b) any bidders that forfeited their Deposit under Section 3(b)(v) above.  Except as otherwise provided for herein, in the event the Seller cancels the proposed sale or withdraws its motion to approve the sale of the Membership Interest, the Deposit submitted by all of the Qualified Bidders shall be immediately returned.

13.    Business Judgment of the Seller.  The Seller reserves the right (a) to determine in its sole discretion whether the amendments and changes contained in each Marked Agreement are acceptable as terms and conditions to the sale; (b) to determine, in its sole discretion, which Qualified Bid, if any, is the highest or otherwise best offer for the Membership Interest; (c) to reject at any time prior to entry of an order of the Bankruptcy Court approving the sale to the Prevailing Bidder, any bid which the Seller, in its sole discretion, deems to be (i) inadequate or insufficient, or (ii) not in conformity with the requirements of the Bankruptcy Code or the Sale Procedures; and/or (d) to modify these Sale Procedures in any manner in its sole discretion which is not otherwise inconsistent with any order of the Bankruptcy Court or the Agreement.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re | ) Chapter 11 Case |
| | ) |
| MIRANT CORPORATION, et al., | ) Case No. 03-46590 (DML) |
| | ) Chapter 11 |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Hearing Set: _____ |

## NOTICE OF AUCTION AND SALE HEARING REGARDING MOTION OF EXCLUDED DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SALE OF ALL MEMBERSHIP INTERESTS IN MIRANT NY-GEN, LLC, BY MIRANT NEW YORK, INC. TO ALLIANCE ENERGY RENEWABLES, LLC, OR ALTERNATIVELY TO PREVAILING OVERBIDDER, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) APPROVING THE MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT BETWEEN MIRANT NEW YORK, INC., AS SELLER, AND ALLIANCE ENERGY RENEWABLES, LLC, AS PROPOSED PURCHASER, AND AUTHORIZING THE DEBTORS TO PERFORM THE TERMS THEREOF, AND (III) AUTHORIZING CERTAIN EXCLUDED DEBTORS TO ENTER INTO, MODIFY OR TERMINATE CONTRACTS AND LEASES PURSUANT TO THE MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on February 1, 2007, Mirant New York, Inc. ("Seller" or "Mirant New York"), Mirant NY-Gen, LLC ("NY-Gen"), Mirant Bowline, LLC, Mirant Lovett, LLC, and Hudson Valley Gas Corporation (collectively, the "Excluded Debtors"), as debtors and debtors in possession, filed a motion (the "Sale Motion") with the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court"), requesting entry of an order (the "Sale Order"), pursuant to sections 105(a), 363, and 1146(c) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9006, 9007, 9008, 9013, 9014, and 9036 (a) authorizing and approving the sale by Mirant New York of the Membership Interest[1] to Alliance Energy Renewables, LLC ("Alliance Energy" or the "Purchaser"), or alternatively to

---

[1] Except as otherwise defined herein, all capitalized terms shall have the same meanings ascribed to such terms in the Sale Motion.

prevailing overbidder, free and clear of all liens, claims, encumbrances and interests pursuant to the terms of the Agreement; (b) authorizing and approving the Membership Interest Purchase and Sale Agreement (including all related instruments, documents, exhibits, schedules, lists, and agreements thereto) between Seller and Purchaser dated January 31, 2007 (the "Agreement"), which provides for the (i) sale, conveyance, assignment, transfer, and delivery of the Membership Interest in Mirant NY-Gen to the Purchaser free and clear of all liens, claims, encumbrances, and interests, and (ii) performance of related transactions as set forth in the Agreement; and (c) authorizing the Excluded Debtors to enter into, terminate or modify certain contracts and leases in connection with the performance and closing of the Agreement. Concurrently, a motion for approval of certain sale procedures ("Sales Procedures Motion") was filed with the Sale Motion.

### PLEASE TAKE FURTHER NOTICE:

A.       Pursuant to an order, dated _____, 2007, granting certain of the relief related to, among other things, the Sale Procedures requested in the Sale Procedures Motion (the "Sale Procedures Order"), Mirant New York will conduct an auction (the "Auction") before the Honorable D. Michael Lynn in the United States Bankruptcy Court for the Northern District of Texas, Eldon B. Mahon U.S. Courthouse, 501 West Tenth Street, Fort Worth, Texas 76102-3643 on _____, 2007 at ____ (Prevailing Central Time), for the sale of the Membership Interest. Parties wishing to participate in the Auction must become a Qualified Bidder and submit a "Qualified Bid" so it is received by Seller not later than 4:00 p.m. (Prevailing Central Time) on Wednesday, February 28, 2007 (the "Initial Bid Deadline"), to the party specified in the Sale Procedures Order and provide for total consideration to Mirant New York of not less than $500,000 in cash in excess of the Purchase Price. The Sale Procedures Order also sets forth, among other things, the specific requirements for a bidder to be a Qualified Bidder and a bid to be a Qualified Bid.

B.       A hearing (the "Sale Hearing") will be held on _____, 2007, at ____ __.m. (Prevailing Central Time), or as soon thereafter as counsel can be heard, before the Honorable D. Michael Lynn in the United States Bankruptcy Court for the Northern District of Texas, Eldon B. Mahon U.S. Courthouse, 501 West Tenth Street, Fort Worth, Texas 76102-3643, at which time Mirant New York will seek entry of an order granting the remaining relief requested in the Sale Motion in accordance with the Sale Procedures Order and the Agreement.

C.       Mirant New York has selected Alliance Energy as the stalking horse bidder pursuant to the terms of the Agreement, which Agreement provides, among other things, for the sale of the Membership Interest to Alliance Energy free and clear of liens, claims, encumbrances, and interests.

D.       Any entity that wishes to submit a bid for the purchase of the Membership Interest must comply in all respects with the terms and conditions established by the Sale Procedures Order. Copies of the Sale Motion, the Sale Procedures Order, and the

Agreement are available upon request by contacting George S. Deptula, Hiscock & Barclay, LLP, One Park Place, 300 South State Street, Syracuse, New York 13202 or Jeff P. Prostok, Forshey & Prostok LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to entry of an order granting the remaining relief requested in the Sale Motion, must be made in writing, filed with the Bankruptcy Court, and served in accordance with the terms and conditions established by the Sale Procedures Order so as to be actually received by the parties specified in the Sale Procedures Order by **4:00 p.m. (Prevailing Eastern Time) on _____, 2007.**

**PLEASE TAKE FURTHER NOTICE** that in the absence of any timely objection, Mirant New York will submit to the Bankruptcy Court a form of order setting forth, among other things, that (i) the notice procedures of the Sale Motion have been satisfied, (ii) no objection to the Sale Motion was timely made or such objection has been resolved, and (iii) Mirant New York may proceed with the remaining relief requested in the Sale Motion. The form of order will also provide that to the extent any person or entity has any lien, claim, encumbrance, or other interest ("Interest") in the Membership Interest, pursuant to the Sale Motion, such Interest will attach to the proceeds derived by Mirant New York from the sale of the Membership Interest in order of their priority and with the same validity, force, and effect that such Interest has now against the Membership Interest, if any, subject to all rights and defenses that Mirant New York may have.

**IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE BANKRUPTCY COURT MAY GRANT THE REMAINING RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER NOTICE TO YOU OR THE OPPORTUNITY TO OBJECT.**

Dated: Fort Worth Texas
      February __, 2007

| | |
|---|---|
| Jeff P. Prostok | George S. Deptula |
| J. Robert Forshey | Hiscock & Barclay, LLP |
| Forshey & Prostok LLP | One Park Place |
| 777 Main Street, Suite 1290 | 300 South State Street |
| Fort Worth, Texas 76102 | Syracuse, New York 13202 |
| Telephone:    817/877-8855 | Telephone:    315/425-2725 |
| Facsimile:    817/877-4151 | Facsimile:    315/425-8545 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| | ) | |
| MIRANT CORPORATION, et al., | ) | Case No. 03-46590 (DML) |
| | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

**ORDER (I) AUTHORIZING AND APPROVING SALE OF MEMBERSHIP INTEREST IN MIRANT NY-GEN, LLC, BY MIRANT NEW YORK, INC. TO ALLIANCE ENERGY RENEWABLES, LLC, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (II) AUTHORIZING AND APPROVING MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT AND THE PERFORMANCE BY THE DEBTORS OF THE TERMS THEREOF, AND (III) AUTHORIZING DEBTORS TO ENTER INTO, MODIFY OR TERMINATE CONTRACTS AND LEASES PURSUANT TO THE MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Upon the motion dated February 1, 2007 (the "Sale Motion")[3] of Mirant New York, Inc.

("Mirant New York" or the "Seller"), Mirant NY-Gen, LLC ("NY-Gen" or "Company"), Mirant

Bowline, LLC ("Mirant Bowline"), Mirant Lovett, LLC ("Mirant Lovett"), and Hudson Valley

Gas Corporation ("Hudson Valley") (collectively, the "Excluded Debtors" or "Debtors"), as

debtors and debtors in possession, for entry of an order pursuant to sections 105(a), 363, and

1146(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004,

9006, 9007, 9008, 9013, 9014, and 9036 of the Federal Rules of Bankruptcy Procedure (the

---

[3] Terms used herein and not otherwise defined shall have the meanings ascribed to them in the Sale Motion or the Membership Interest Purchase and Sale Agreement between Mirant New York, Inc. and Alliance Energy Renewables, LLC, dated January 31, 2007 (the "Agreement").

"Bankruptcy Rules") (a) authorizing and approving the sale by Mirant New York of the Membership Interest in Mirant NY-Gen to Alliance Energy Renewables, LLC ("Alliance Energy" or the "Purchaser"), or alternatively to prevailing overbidder, free and clear of all liens, claims, encumbrances and interests pursuant to the terms of the Agreement; (b) authorizing and approving the Agreement (including all related instruments, documents, exhibits, schedules, lists, and agreements thereto) which provides for the (i) sale, conveyance, assignment, transfer, and delivery of the Membership Interest in Mirant NY-Gen to the Purchaser free and clear of all liens, claims, encumbrances, and interests, and (ii) performance of related Transactions as set forth in the Agreement; and (c) authorizing the Excluded Debtors to enter into, terminate or modify certain contracts and leases in connection with the performance and Closing of the Agreement; and adequate and sufficient notice of the Sale Motion, the Auction, the hearing on the Sale Motion (the "Sale Hearing"), all Transactions contemplated thereunder, and this Order having been given; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the matters raised by the Sale Motion and relief related thereto; and the Court having reviewed and considered (i) the Sale Motion and any objections thereto (the "Objections"), and (ii) the arguments of counsel, and the evidence proffered or adduced at the Sale Hearing; and it appearing from the affidavits of service heretofore filed with the Court that due and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, and the relief sought in connection therewith have been provided to all parties in interest; and it further appearing that no other or further notice hereof is required; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their chapter 11 estates, their creditors, and other parties in interest; and upon the record of the Sale Hearing, including the decision of the Court to approve the Sale Motion as reflected on the record thereof; and after due deliberation and good

and sufficient cause appearing therefore, this Court hereby makes the following Findings of Fact and Conclusions of Law:[4]

## FINDINGS OF FACT

IT IS HEREBY FOUND AND DETERMINED THAT:

### Jurisdiction, Final Order, and Statutory Predicates

A.     The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested therein, pursuant to 28 U.S.C. §§ 157(b) and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (K), (N), and (O).  Venue of the chapter 11 cases and the Sale Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409(a).

B.     This Court entered the Sale Procedures Order on _____, 2007, under which, among other things, this Court approved certain Sale Procedures.  The Sale Procedures Order has become a final and non-appealable order and remains in full force and effect.

C.     This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

D.     The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f), (m), and (n), and 1146(c) of the Bankruptcy Code, as complemented by Bankruptcy Rules 2002(a)(2), (c)(1), (g), (j), (k), (l), (m), and (n), 6004(a), (b), (c), (e), (f), and (g), 9006, 9007, 9008, 9013, 9014, and 9036.

### The Mirant Plan and the Excluded Debtors

---

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.  Any statements of the Court at the hearing on the Sale Motion shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Order.

E.     In an order dated December 9, 2005, the Bankruptcy Court confirmed the *Debtors' Amended and Restated Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and its Affiliated Debtors Dated December 9, 2005* (the "Mirant Plan") with respect to all of the Mirant Debtors (collectively, the "New Mirant Entities"), except the Excluded Debtors.

F.     On January 3, 2006, the New Mirant Entities emerged from Chapter 11. The Excluded Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### Retention of Jurisdiction

G.     It is necessary and appropriate for the Court to retain jurisdiction as provided in the Agreement to, among other things, interpret and enforce the terms and provisions of this Order and the Agreement, and to adjudicate, if necessary, any and all disputes involving the Debtors concerning or relating in any way to, or affecting, the Membership Interest Sale including, but not limited to, the Sale Motion, the Auction, and the Sale Hearing.

### Corporate Authority; Consents and Approvals

H.     The Seller has full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby and to consummate the Membership Interest Sale. The Membership Interest Sale has been duly and validly authorized by all necessary corporate actions of the Seller. No additional consents or approvals other than the authorization and approval of this Court and certain Governmental Approvals (as defined in the Agreement) are required for the Seller to consummate the Membership Interest Sale. Each of the Excluded Debtors has full corporate power and authority to execute and deliver all documents and agreements to which they are a party required or contemplated by the Agreement.

## Notice of the Sale Motion

I.     As evidenced by the affidavits of service previously filed with this Court (the "Notice Affidavits") and based upon representations of counsel at the Sale Hearing: (i) due, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing has been provided in accordance with sections 105, 363, and 1146 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9006, 9007, 9008, 9013, 9014, and 9036, and in compliance with the Sale Procedures Order, (ii) such notice was good and sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Sale Motion, the Auction, the Sale Hearing, or the relief sought with respect thereto shall be required.

J.     A reasonable opportunity to object or to be heard with respect to the Sale Motion, the Auction, and the Sale Hearing has been afforded to all interested persons and entities, including: (a) all parties entitled to receive notice as of the date hereof pursuant to the Order Clarifying Order Granting Complex Chapter 11 Bankruptcy Case Treatment, dated August 25, 2004, (b) all parties known to Mirant New York to have an interest in acquiring the Membership Interest and the Sale Assets, (c) all entities listed on the schedules of Mirant New York and Mirant NY-Gen, LLC as holding secured claims and all entities who recorded or filed proof(s) of claim as secured against Mirant NY-Gen or Mirant New York, (d) all entities who have recorded in the public record any lien, claim, encumbrance, or interest in or upon the Membership Interest or any of the assets of Mirant NY-Gen, (e) the Federal Energy Regulatory Commission, (f) the Delaware River Basin Commission, (g) the New York Public Service Commission, (h) the State of New York Department of Environmental Conservation, (i) the New York City Department of Environmental Protection, (j) the Securities and Exchange Commission, (k) the United States Environmental Protection Agency, (l) the Office of the United States Attorney, (m) the United

States Department of Justice, (n) the Internal Revenue Service, (o) all parties granting permits or licenses to Mirant NY-Gen, (p) the applicable state and local taxing authorities, and (q) all parties to Mirant NY-Gen's executory contracts and unexpired leases.

### Sound Business Purpose for the Sale of the Membership Interest

K.      Good and sufficient reasons for approval of the Agreement and the Membership Interest Sale have been articulated. The relief requested in the Sale Motion is within the reasonable business judgment of the Seller and is in the best interests of the Debtors, their respective chapter 11 estates and their creditors, and other parties in interest.

L.      The Seller has demonstrated both (i) good, sufficient, and sound business purpose and justification and (ii) sufficient circumstances for the entry into the Agreement and the consummation of the Membership Interest Sale pursuant to section 363(b) of the Bankruptcy Code, in that, among other things, the consummation of the Membership Interest Sale to the Purchaser is necessary and appropriate to maximize the value to the estates of Mirant New York and Mirant NY-Gen and the Membership Interest Sale will facilitate confirmation of Mirant NY-Gen's Plan.

### Auction

M.      On _____, 2007, in connection with the Sale Hearing, the Bankruptcy Court conducted an Auction, in accordance with the Sale Procedures Order entered by the Court. At the conclusion of the Auction, the Seller determined that the Purchaser was the Prevailing Bidder (as defined in the Agreement) for the Membership Interest pursuant to the terms of the Agreement. The Court approved the results of the Auction at the Sale Hearing on _____, 2007.

## Good Faith of the Purchaser

N.       The terms and conditions set forth in the Agreement are fair and reasonable.  The

Seller and the Purchaser extensively negotiated the terms and conditions of the Agreement in

good faith and at arm's length, and the Purchaser is entering into the Agreement in good faith

and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and

is therefore entitled to the protections afforded thereby.

O.       The Purchaser is not an "insider" (as that term is defined in section 101 of the

Bankruptcy Code) of Mirant New York or Mirant NY-Gen.  Mirant New York and the Purchaser

have not engaged in any conduct that would cause or permit the Agreement to be avoided under

section 363(n) of the Bankruptcy Code.

## Highest and Best Offer

P.       The Agreement constitutes the highest and best offer for the Membership Interest.

Q.       The Seller's determination that the Agreement constitutes the highest and best

offer for the Membership Interest constitutes a valid and sound exercise of the Seller's business

judgment.  The Agreement represents a fair and reasonable offer to purchase the Membership

Interest.  No other entity has submitted a qualified bid providing greater economic value for the

Membership Interest than the Purchaser.

## Validity of the Transfer of the Membership Interest

R.       The transfer of the Membership Interest to the Purchaser pursuant to the

Agreement is a legal, valid, and effective transfer of good and marketable title of the

Membership Interest and vests or will vest the Purchaser with all of the Seller's rights, title, and

interest in the Membership Interest as of the Closing Date free and clear of all liens, claims,

encumbrances, and interests against the Membership Interest, and pursuant to section 363(f) of

the Bankruptcy Code.

S.     The Purchaser is purchasing Mirant New York's Membership Interest and is not purchasing any of Mirant New York's other assets. Additionally, the Agreement provides that prior to the Closing Date, Mirant NY-Gen will assign to Mirant New York (or such Affiliate of Mirant New York as Mirant New York may direct pursuant to the Mirant NY-Gen Plan) all of Mirant NY-Gen's pending insurance claims for losses with respect to the Swinging Bridge Facility and the Hillburn Facility (which may include, but shall not be limited to, property, business interruption, and environmental losses), intercompany receivables and intercompany claims as of the Closing Date, claims against third parties for actions or inactions arising prior to the Closing Date (including, but not limited to, claims filed against Orange & Rockland Utilities, Inc. and Consolidated Edison, Inc. and/or any of their respective Affiliates), and certain purchase orders, which such assignments are hereby specifically authorized.

### Section 363(f) of the Bankruptcy Code is Satisfied

T.     The transfer of the Membership Interest pursuant to the Agreement is authorized pursuant to one or more of the standards set forth in section 363(f)(1) through (f)(5) of the Bankruptcy Code and, accordingly, the Seller may sell the Membership Interest to Purchaser free and clear of all liens, claims, encumbrances, and interests against the Membership Interest, Mirant New York, and its chapter 11 estate. The holders of such liens, claims, encumbrances, and interests against Mirant New York, its chapter 11 estate, or the Membership Interest, and non-Debtor parties to any related agreements who did not object, or who withdrew their Objections, to the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Holders of liens, claims, encumbrances, or interests and who asserted an Objection at the Sale Hearing, if any, fall within one or more of the other subsections of section

363(f) and are adequately protected by having their liens, claims, encumbrances, and interests, if any, against Mirant New York, its chapter 11 estate, or the Membership Interest, attach to the cash proceeds to be received by the Seller under the Agreement, subject to the same priority and validity (and defenses and objections of the Seller and other parties in interest, if any, with respect thereto) as are presently existing against the Membership Interest in which they allege such a lien, claim, encumbrance, or interest.

## Transfer Taxes

U.      The transfer of the Membership Interest by Mirant New York to the Purchaser, and to the extent that the Membership Interest Sale is considered a transfer of the Sale Assets by Mirant NY-Gen, is and shall constitute a transfer pursuant to section 1146(c) of the Bankruptcy Code and, accordingly, shall not be taxed under any law imposing a stamp tax or a sales, use, transfer, duty, value added, or any other similar tax, including without limitation, any bulk sales tax under New York law.

## Assignment of the Membership Interest

V.      The Seller has demonstrated that assignment of the Membership Interest in connection with the Membership Interest Sale is an exercise of its sound business judgment, and that such assignment is in the best interests of the chapter 11 estates of Mirant New York and Mirant NY-Gen.

## Authorization to Enter Into, Modify or Terminate Ancillary Contracts and Leases

W.      The Debtors have demonstrated that the execution, modification or termination of certain Ancillary Agreements pursuant to the terms of the Agreement are in the best interest of their respective bankruptcy estates and should be authorized, as applicable, pursuant to Section 363 of the Bankruptcy Code.

X.    To the extent any Findings of Fact set forth above constitute a Conclusion of Law, the Court so concludes.

## CONCLUSIONS OF LAW

Based upon the foregoing Findings of Fact, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.    To the extent any Conclusion of Law set forth below herein constitutes a Finding of Fact, this Court so finds.

### General Provisions

2.    Except to the extent that relief was previously granted in the Sale Procedures Order, the relief requested in the Sale Motion is granted and approved in all respects. The sale of the Membership Interest to Purchaser on the terms and conditions set forth in the Agreement is approved.

3.    For the reasons set forth on the record at the Sale Hearing, any Objections to the Sale Motion, and the relief requested therein that have not been withdrawn, waived, or settled, (a) are denied and overruled on the merits with prejudice or (b) the interests of such parties filing Objections have otherwise been satisfied or adequately provided for under the terms of this Order.

4.    The terms and provisions of this Order shall be binding in all respects upon, to the extent applicable, the Debtors, their chapter 11 estates, creditors, members, managers, shareholders, officers, and directors, and upon all interested parties, and their respective successors and assigns, including, but not limited to, all non-Debtor parties asserting any liens, claims, encumbrances and/or interests in the Membership Interest.

## Approval of the Agreement

5.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code and the Agreement, the Debtors are authorized and empowered to (i) take any and all actions necessary or appropriate to effect, consummate, and close (a) the assignment, transfer, and conveyance of the Membership Interest to the Purchaser, (b) the Membership Interest Sale, and (c) this Order, and (ii) execute and deliver, perform under, consummate, implement, and close fully the Agreement and the Ancillary Agreements (as defined in the Sale Motion), together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Membership Interest Sale.

6.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code and on the terms set forth in the Agreement, upon the Closing provided in the Agreement, the Membership Interest shall be and hereby is deemed transferred and assigned to the Purchaser effective as of 11:59 p.m. (Prevailing Central Time) on the Closing Date, free and clear of all liens, claims, encumbrances, and interests arising or relating to the period prior to the Closing.

7.      All persons and entities holding liens, claims, encumbrances, and interests of any kind and nature accruing, arising or relating to a period on or prior to the Closing Date with respect to the Membership Interest will be barred, estopped, and permanently enjoined as of Closing from asserting such liens, claims, encumbrances, and interests against the Membership Interest or against the Purchaser and any of its affiliates, stockholders, members, managers, partners, parent entities, successors, assigns, officers, directors or employees, agents, representatives, and attorneys, and the Purchaser shall have no liability or responsibility for any lien, claim, encumbrance, or interest arising, accruing, or relating to the Membership Interest for a period on or prior to Closing.

8. The transfer of the Membership Interest to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Membership Interest, and vests or will vest the Purchaser with all right, title, and interest in and to the Membership Interest, free and clear of all liens, claims, encumbrances, and interests. Each non-Debtor party to any agreements with Mirant NY-Gen that are not assumed by Mirant NY-Gen pursuant to the Mirant NY-Gen Plan will, as of Closing, be barred, estopped, and permanently enjoined from asserting against the Purchaser or Mirant NY-Gen any default, claim, or liability existing, accrued, arising, or relating to any such agreements.

9. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Membership Interest or a bill of sale that transferred good and marketable title of the Membership Interest to the Purchaser. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments presented by the Seller or Purchaser which are necessary or appropriate to consummate the Membership Interest Sale.

10. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, and on the terms set forth in the Agreement, the Debtors are authorized to enter into, modify or terminate the Ancillary Agreements.

## Additional Provisions

11. This Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, and all other persons and entities who may

be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Membership Interest. All liens, claims, encumbrances, and interests against the Membership Interest as of the date of this Order shall forthwith, upon the occurrence of the Closing on the Closing Date with respect to the Membership Interest, be removed and stricken as against such Membership Interest, without further order of the Court or act of any party. All liens, claims, encumbrances, and interests against the Membership Interest as of the date of this Order shall attach solely to the proceeds of the sale with the same validity (and subject to the same defenses), priority, force and effect that such liens, claims, encumbrances and interests had in and to the Membership Interest immediately prior to Closing. Upon the Closing Date, the entities listed above in this paragraph are authorized and specifically directed to strike all such recorded liens or claims against the Membership Interest as provided for herein from their records, official and otherwise (including those asserted by a secured lender).

12.     Each and every federal, state, and local governmental agency, unit or department is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Membership Interest and such agency or department may rely upon this Order in connection with the Membership Interest Sale.

13.     After the Closing Date, no person or entity, including without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against the Membership Interest on account of, or (b) collect or attempt to collect from the Purchaser or any of its affiliates, any tax or other amount alleged to be owing by Mirant New York on behalf of Mirant NY-Gen or Mirant Services, LLC on behalf of Mirant NY-Gen (i) for any period

commencing before and concluding prior to or after the Closing, or (ii) assessed prior to and payable after the Closing Date, except as otherwise specifically provided in the Agreement.

14.     The Purchaser is not a successor to Mirant New York or otherwise liable for any of the liens, claims, encumbrances, interests, or other liabilities against Mirant New York and all persons and entities are permanently enjoined from commencing, continuing, or otherwise pursuing or enforcing any remedy, claim, cause of action, lien, or encumbrance against Purchaser, the Membership Interest, or Mirant New York.

15.     The transfer of the Membership Interest by Mirant New York to the Purchaser, and to the extent that the Membership Interest Sale is considered a transfer by Mirant NY-Gen of the Sale Assets, is a transfer pursuant to section 1146(c) of the Bankruptcy Code and, accordingly, shall not be taxed under any law imposing a stamp tax or a sales, use, transfer, duty, value added, or any other similar tax, including without limitation any bulk sales tax under the state law of New York or other applicable laws.

16.     This Court retains jurisdiction to, among other things:

i.      interpret, implement, and enforce the terms and provisions of this Order and the terms of the Agreement and any Ancillary Agreements, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith;

ii.     enter orders in aid or furtherance of the Membership Interest Sale;

iii.    resolve any disputes arising under or related to the Agreement or the Membership Interest Sale and to ensure peaceful use and enjoyment of the Membership Interest;

iv.     adjudicate any and all issues and/or disputes, if any, relating to the Purchaser's or the Seller's right, title, or interest in, to and under the Agreement and related agreements, and the Purchaser's or other Debtors' right, title or interest in, to and under the Ancillary Agreements to which they are a party;

v.      adjudicate all issues concerning prorations under the Agreement (including taxes) consistent with the terms of the Agreement;

vi.     hear and resolve any application (or disputes or issues relating thereto) to construe the Agreement;

vii.    adjudicate any and all issues and/or disputes relating to the Seller's right, title, or interest in the Membership Interest and the proceeds thereof, the Sale Motion and/or the Agreement;

viii.   adjudicate any and all issues and/or disputes relating to the enforcement of this Sale Order including those terms, without limitation, which compel delivery of the Membership Interest to Purchaser and provide that any liens, claims, encumbrances, and interests shall attach solely to the proceeds of the Membership Interest Sale; and

ix.     re-open the Debtors' chapter 11 cases to enforce the provisions of this Order.

17.    The consideration provided by the Purchaser for the Membership Interest under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code. Each and every person or entity is hereby barred, estopped, and permanently enjoined from commencing or continuing an action seeking relief under section 363(n) of the Bankruptcy Code.

18.     The Seller has undertaken the Membership Interest Sale in good faith (as that term is used in section 363(m) of the Bankruptcy Code), and the Purchaser is and shall continue to be in good faith (as that term is used in section 363(m) of the Bankruptcy Code) by proceeding to close the Membership Interest Sale.  Accordingly, the reversal or modification on appeal of the authorization to consummate the Membership Interest Sale approved hereby shall not affect the validity and enforceability of such Membership Interest Sale, unless such authorization is duly stayed pending such appeal.  The Purchaser is a good faith purchaser of the Membership Interest and entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

19.     The sale of the Membership Interest to Purchaser under the Agreement will constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of all applicable jurisdictions.

20.     The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the Agreement and each and every provision, term, and condition thereof be authorized and approved in its entirety.

21.     Notwithstanding Bankruptcy Rules 6004(g) and 7062, to the extent applicable, the Seller and the Purchaser may consummate the Agreement at any time after entry of the Order by waiving any and all closing conditions set forth in the Agreement that have not been satisfied and by proceeding to close the Membership Interest Sale without any notice to the Court, any prepetition or postpetition creditor of Mirant New York or Mirant NY-Gen, and/or any other party in interest.

22.     The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties

in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement is not material.

23.     The provisions of this Order are non-severable and mutually dependent.

Dated: Fort Worth, Texas
_____, 2007

_____
The Honorable D. Michael Lynn
United States Bankruptcy Judge

## CROSS-INDEMNIFICATION AGREEMENT

**THIS CROSS-INDEMNIFICATION AGREEMENT** (the **"Agreement"**), is entered into this ___ day of _____, 2007, is by and among **MIRANT BOWLINE, LLC** (**"Bowline"**), **MIRANT NY-GEN, LLC** (**"N.Y. Gen"**), **MIRANT LOVETT, LLC** (**"Lovett"**) (Bowline, N.Y. Gen and Lovett each a **"Party"** and collectively, the **"Parties"**).

**WHEREAS,** the Parties are signatories to a certain settlement agreement dated August 31, 2001, with Orange and Rockland Utilities, Inc. (**"O&R"**) (the **"O&R Settlement Agreement"**);

**WHEREAS,** each Party or all of the Parties may face liability under the O&R Settlement Agreement; and

**WHEREAS,** the Parties wish to enter into an agreement providing that any liability under the O&R Settlement Agreement will be borne solely by the Party or Parties whose failure to perform its or their obligations under the O&R Settlement Agreement gave rise to the liability (each such responsible Party being hereafter referred to as an **"Indemnitor"**, collectively, the **"Indemnitors"**).

**NOW, THEREFORE,** the Parties agree as follows:

1.    <u>Definitions</u>. As used in this Agreement, capitalized terms and non-capitalized words and phrases shall have the meanings respectively assigned to them in <u>Schedule I</u> hereto.

2.    <u>Exculpation and Indemnification</u>.

      (a)    Each Indemnitor agrees (i) to perform its obligations under this Agreement and the O&R Settlement Agreement (subject to the right of any Party to reject the O&R Settlement Agreement under the United States Bankruptcy Code); and (ii) to indemnify the other Parties in accordance with the provisions of this Agreement for any Losses that the other Parties may incur due to the Indemnitor's failure to perform its obligations as described in clause (i) aforementioned; provided, however, that the Indemnitor's indemnification obligations as herein described shall only apply to the extent that the Losses incurred by the Party who makes a indemnification claim against the Indemnitor are disproportionate to those for which such Party would otherwise be liable under the terms of the O&R Settlement Agreement.

      (b)    Subject to the provisions of Section 2(a) hereof, each Party, its Affiliates and each of their respective Representatives who incurs any liability for any acts or omissions of an Indemnitor which constitute a failure by such Indemnitor to comply with its obligation under Section 2(a) hereof (each such Party being

individually referred to as an **"Indemnitee"**, collectively, the **"Indemnitees"**) shall be indemnified, reimbursed and held harmless by each Indemnitor (on a joint and several basis if there is more than one Indemnitor) upon demand, and defend at the expense of the Indemnitor (on a joint and several basis if there is more than one Indemnitor) with counsel selected by the Indemnitor, from and against any and all claims, liabilities, expenses (including, without limitation, the disbursements, expenses and reasonable attorneys' fees) and other Losses that may be imposed upon, incurred by or asserted against any Indemnitee resulting from, arising out of or directly or indirectly related to: (i) any Indemnity Obligation; (ii) any inaccuracy in or omission from any representation, warranty or other information contained in the O&R Settlement Agreement signed or accepted by any Indemnitee or any of its Representatives or in any certificate, report, statement, schedule or other document delivered by or on behalf of any Indemnitee pursuant to the O&R Settlement Agreement, (iii) any default (whether in whole or in part) in the due or timely observance, performance or satisfaction of any covenant or other term or provision of this Agreement or the O&R Settlement Agreement by the Indemnitor in each case whether or not disclosed or known to the Indemnitee and whether or not the Indemnitee relied thereon or had knowledge thereof; and each Indemnitor hereby absolutely, unconditionally, irrevocably and expressly waives and releases forever any and all related claims and actions against each such Indemnitee to the extent such claims or actions arise out of the acts or omissions of the Indemnitor.

(c)     The Parties understand and agree that this Section is not intended, and shall not be deemed or construed, to in any way (i) impose any Indemnity Obligation of any Indemnitor on any Indemnitee for any purpose whatsoever, (ii) entitle anyone other than an Indemnitee to any indemnity, reimbursement or other recovery or benefit under this Section or any other applicable provision of this Agreement or the O&R Settlement Agreement, or (iii) apply to any Losses arising under subsections (b)(ii) or (b)(iii) of this Section to the extent occasioned by any acts or omissions of any Indemnitee amounting to bad faith, gross negligence or willful misconduct as finally determined pursuant to Applicable Law by an Authority having jurisdiction. The preceding exception for bad faith, gross negligence or willful misconduct is limited to this Section and is not intended (and shall not be deemed or construed) to in any way qualify, condition, diminish, restrict, limit or otherwise affect any other exculpation, indemnification, release, waiver, consent, acknowledgment, authorization or other term or provision of this Agreement or the O&R Settlement Agreement.

(d)     Any payment due to an Indemnitor from any Indemnitee (including any payment from any escrow) shall be subject to offset and reduction for any such indemnification, reimbursement and/or defense and any related Loss owed to the Indemnitee (on behalf of itself and/or any of its Affiliates).

(e)     Each Indemnitee shall endeavor to give the Indemnitor prompt notice of any action, suit, proceeding or investigation against or involving either the Indemnitee or the Indemnitor or any of their respective assets or properties that would be

reasonably likely to give rise to such an indemnification, reimbursement or defense (each a "**Proceeding**"); provided, however, that the failure to give such notice shall not in any way diminish, reduce or otherwise affect the indemnification, defense or reimbursement obligations of any Indemnitee with respect thereto under this Agreement, the O&R Settlement Agreement, or Applicable Law. Each Indemnitee shall have the right to employ separate counsel of its choice in any Proceeding and to participate in the defense and settlement thereof. The Indemnitor shall not be required to pay the fees and expenses of counsel selected by any Indemnitee unless any of the following shall occur: (i) the Indemnitor has given written authorization permitting the Indemnitee to select and retain counsel to represent the Indemnitee and agreeing that the fees and expenses of such counsel will be paid by the Indemnitor; (ii) the named parties to any Proceeding (including impleaded parties) include or are reasonably likely to include the Indemnitee or any of its Affiliates or Representatives, and the Indemnitee notifies the Indemnitor that counsel to the Indemnitee (or counsel to any other Indemnitee) has advised that, in the professional judgment of such counsel, (x) one or more legal defenses or counterclaims may be available to such Indemnitee that may be inconsistent with, different from, or additional to those available to the Indemnitor or any other Indemnitee or (y) use of counsel selected by the Indemnitor could reasonably be expected to give rise to a conflict of interest; or (iii) within five (5) Business Days after any request therefor by the Indemnitee (which notice may be made with or at any time after the notice required in the first sentence of this subsection is given), the Indemnitor shall have failed to deliver to the Indemnitee (on behalf of such Indemnitee and each other Indemnitee) the written agreement of the Indemnitor to assume at its expense the defense of any Proceeding, specifying the counsel proposed to be retained. If the counsel so proposed by the Indemnitor is not acceptable to the Indemnitee in its reasonable discretion, then the Indemnitee shall so notify the Indemnitor within five (5) Business Days and, thereafter, the Indemnitee shall promptly propose other suitable counsel. When counsel acceptable to the Indemnitee has been selected, such counsel shall promptly deliver to the Indemnitee (on behalf of such Indemnitee and all other Indemnitees) written confirmation that it is representing the Indemnitee and each other Indemnitee and their interests in such defense, all at the expense of the Indemnitor, which confirmation shall disclose any other parties such counsel may represent in such defense or any related matter. In no event shall the Indemnitor be required under this Section (absent its consent) to pay the fees and expenses of more than one counsel separate from the counsel selected by the Indemnitor to represent all Indemnitees in any Proceeding.

(f)     Neither the Indemnitor nor any of its Representatives on its behalf may settle any Proceeding, or offer or agree to do so, without the prior written consent of the Indemnitee, which consent will not be unreasonably withheld. Likewise, neither the Indemnitee nor any of its Representatives on its behalf may settle any Proceeding, or offer or agree to do so, without the prior written consent of the Indemnitor, which consent will not be unreasonably withheld, in each case unless (i) such settlement is without any further cost, liability or obligation to the

Indemnitor, or (ii) the Indemnitor is then in default with respect to any of its obligations under this Agreement.

(g)     No Party referenced in clause (f) above shall, without the prior written consent of the other Party referenced therein: (i) settle or compromise any Proceeding or consent to the entry of any judgment or order that does not include (as an unconditional term thereof) the delivery by the plaintiff or other claimant to such other Party of a full and complete written release of such other Party (in form, scope and substance satisfactory to the other Party in its reasonable discretion) from any and all obligations and liabilities in respect of such Proceeding and a dismissal with prejudice of such Proceeding, or (ii) settle or compromise any Proceeding in any manner that may adversely affect such other Party or obligate such other Party to pay any sum or perform any obligation whatsoever, each as determined by such other Party in its reasonable discretion.

(h)     All Losses shall be immediately reimbursable to the Indemnitee(s) when and as incurred and, in the event of any Proceeding, without the requirement of awaiting the ultimate outcome of such Proceeding. The Indemnitor shall pay to the Indemnitee(s) any and all Losses within ten (10) days after written notice from the Indemnitee(s) itemizing the amounts thereof incurred to the date of such notice. In addition to any other remedy available for the failure of the Indemnitor to periodically pay such Losses, such Losses, if not paid within said ten (10) day period, shall bear interest at the annual rate of eighteen (18) percent per annum until paid in full.

3.     Further Assurances. Each Party agrees to do such further acts and things and to execute and deliver such statements, assignments, agreements, instruments and other documents as the other Party from time to time reasonably may request (a) in order to evidence or confirm the priorities, subordinations, reservations of right and other agreements made hereunder, or (b) in order to effectuate the purpose and the terms and provisions of this Agreement, each in such form and substance consistent with this Agreement as may be reasonably acceptable to the Parties and each at the sole cost and expense of the requesting Party.

4.     Agreement Absolute. Survival of Representations, Etc. Except as otherwise expressly provided in this Agreement, each of the covenants and other agreements and obligations of each Party contained in this Agreement: (a) are and shall be absolute, irrevocable and unconditional, and shall survive and remain and continue in full force and effect in accordance with their respective terms and provisions, in each case without regard to (among other things) any invalidity, illegality, non-binding effect or unenforceability (in whole or in part) for any reason whatsoever of any of the other terms and provisions of this Agreement or the O&R Settlement Agreement, including (without limitation) by reason of the absence (in whole or in part) of any required authentication, authority, capacity, consent, consideration, disclosure, equivalent value, filing, notice, recordation, signature, writing or other action, or the presence (in whole or in part) of any contractual conflict, defense, illegality, misconduct, misrepresentation, mistake, prohibition, restriction or right of reimbursement, recoupment or setoff; (b) are and shall be absolute,

irrevocable and unconditional with regard to, and shall survive and remain and continue in full force and effect in accordance with their respective terms and provisions following and without regard to, each of the following (among other things): (i) any extension, stay, moratorium or statute of limitations or similar time constraint under any Applicable Law, (ii) any sale, conveyance, assignment, participation or other transfer by any Party (in whole or in part) to any other Person of any one or more of this Agreement, the O&R Settlement Agreement, or any one or more of the rights, powers, privileges, remedies or interests of any Party herein or therein, other than as expressly prohibited by this Agreement, or (iii) any act or omission on the part of any Party or any other Person or any other event that otherwise might constitute a legal or equitable defense or counterclaim; in each case in such manner and order, upon such terms and provisions and subject to such conditions as any Party may deem necessary or desirable in its sole and absolute discretion, without notice to or further assent from any other Party (except for such notices and actions as may be expressly required under this Agreement or by Applicable Law), and without affecting any of the rights, powers, privileges, remedies and other interests of any Party under this Agreement, the O&R Settlement Agreement, and Applicable Law; (c) shall not be subject to any defense, counterclaim, set-off, right of recoupment, abatement, reduction or other claim or determination that any Party may have against any other Party or any other Person; (d) shall not be diminished or qualified by the dissolution, reorganization, insolvency, bankruptcy, custodianship or receivership of any other Party or the inability of any of them to pay their respective debts or perform or otherwise satisfy their respective obligations as they become due for any reason whatsoever; and (e) shall remain and continue in full force and effect without regard to any of the foregoing events until all obligations under this Agreement and the O&R Settlement Agreement, as the case may be, have been fully paid and satisfied.

5.     Termination. Notwithstanding the terms in Section 4 hereof or in any other provision in this Agreement, this Agreement shall terminate upon the termination of the O&R Settlement Agreement or the release of N.Y. Gen from its rights and obligations under the O&R Settlement Agreement, except as to matters arising prior to such termination or release.

6.     Waivers of Notice, Etc. Except for notices to a Party expressly required to be given by the other Party under this Agreement (and without in any way waiving or affecting any notice or other action described in this Section and required to or from any other Person under the O&R Settlement Agreement or Applicable Law), each Party hereby absolutely, unconditionally, irrevocably and expressly waives forever each and all of the following from the other Party: (a) acceptance and notice of any acceptance of this Agreement or the O&R Settlement Agreement; (b) notice of any action taken or omitted in reliance hereon; (c) presentment and notice of any presentment; (d) demand for payment and notice of any such demand; (e) dishonor and notice of any dishonor; (f) protest and notice of any protest; (h) notice of any material and adverse effect, whether individually or in the aggregate, or other information respecting (i) the assets, business, cash flow, expenses, income, liabilities, operations, properties, prospects, reputation or condition (financial or otherwise) of any Person, and (ii) the ability of any Person to pay or otherwise satisfy (as and when due) any of their respective obligations; and (g) any other proof, notice or demand of any kind whatsoever with respect to any or all of the

Indemnity Obligations. No act or omission of any kind in connection with any of the foregoing shall in any way impair or otherwise affect the legality, validity, binding effect or enforceability of any term or provision of this Agreement, the O&R Settlement Agreement, or any of the Indemnity Obligations.

7. <u>Enforcement, Etc.</u> Each Party, in its sole discretion, may proceed to exercise or enforce any right, power, privilege, remedy or interest that it may have under this Agreement, the O&R Settlement Agreement, or Applicable Law: (a) at law, in equity or in any other forum available under Applicable Law; (b) without notice except as otherwise expressly provided herein; (c) without pursuing, exhausting or otherwise exercising or enforcing any other right, power, privilege, remedy or interest that it may have against or in respect of any Person or thing; and (d) in such order and at such times as a Party may elect in its sole and absolute discretion.

8. <u>Consent to New York Jurisdiction and Venue, Etc.</u> The Parties hereby consent and agree that the Supreme Court of the State of New York for New York County, and the United States District Court for the Southern District of New York (Manhattan) each shall have personal jurisdiction and proper venue with respect to any dispute between the Parties; <u>provided that</u> that the foregoing consent shall not deprive any Party of the right in its discretion to voluntarily commence or participate in any other forum having jurisdiction and venue or deprive any Party of the right to appeal the decision of any such court to a proper appellate court located elsewhere. Each Party will not raise, and each Party hereby absolutely, unconditionally, irrevocably and expressly waives forever, any objection or defense in any such dispute to any such jurisdiction as an inconvenient forum. The preceding consents to jurisdiction and venue in New York State's Supreme Court have been made by the Parties in reliance (at least in part) on Section 5-1402 of the General Obligations Law of the State of New York, as amended (as and to the extent applicable), and other Applicable Law. Each Party acknowledges and agrees that a final judgment in any action, suit, or proceeding between the Parties shall be conclusive and binding upon the Parties and may be enforced against the applicable Party in any other appropriate jurisdiction by an action, suit or proceeding in such other jurisdiction. To the extent that a Party may be entitled to immunity (whether by reason of sovereignty or otherwise) from suit in any jurisdiction, from the jurisdiction of any court or from any other legal process, each Party hereby absolutely, unconditionally, irrevocably and expressly waives forever such immunity.

9. <u>No Fiduciary Relationship, Etc.</u> Each Party represents and warrants to and acknowledges and agrees with the other Party that: (a) the Parties' sole relationship with each other under this Agreement is that of arm's-length counter-party; (b) no term or provision of this Agreement is intended, nor deemed or construed, to (i) impose on any Party any trust (other than as expressly provided herein), fiduciary, franchise, agency, advisory or similar duty to or relationship with any other Party or any of its Representatives, or (ii) make any Party a partner, joint venturer, Affiliate, agent or other Representative of any other Party, and each such duty, relationship, status, benefit or right that would otherwise be imposed by Applicable Law with respect to this Agreement is hereby absolutely, irrevocably, unconditionally, expressly and forever waived by each Party except as otherwise expressly provided herein; and (c) each Party has received and independently

-6-

and fully reviewed and evaluated this Agreement, the obligations and transactions contemplated hereunder and the potential effects of such obligations and transactions on its own business attributes.

10.  Reliance. Each Party shall be entitled to rely upon any notice, consent, certificate, affidavit, statement, paper, document, writing or other communication (which to the extent permitted hereunder may be by telecopy or telephone) reasonably believed by such Party to be genuine and to have been signed, sent or made by the proper Person or Persons, and upon opinions and advice of legal counsel, independent public accountants and other experts selected by any Party.

11.  Notice. Any notice, request, demand or other communication permitted or required to be given to a Party under this Agreement or the O&R Settlement Agreement shall be in writing and shall be sent to the addressee at the address set forth in Schedule II attached hereto (or at such other address as shall be designated by notice to the other Party and Persons receiving copies), effective upon actual receipt (or refusal to accept delivery) by the addressee on any Business Day, or the first Business Day following receipt after the close of normal business hours or on any non-Business Day, by (a) FedEx (or other equivalent national or international overnight courier) or United States Express Mail, (b) certified, registered, priority or express United States mail, return receipt requested, (c) telecopy or (d) messenger, by hand or any other means of actual delivery.

12.  Expenses. Except as otherwise expressly provided in this Agreement or the O&R Settlement Agreement, all costs, fees and expenses incurred in connection with, or in anticipation, administration or enforcement of, this Agreement shall be paid by the Party incurring such expenses. However, this Section is not intended, and shall not be deemed or construed, to in any way modify or limit any obligation or liability of any other Person for any such costs, fees or expenses under any instrument, agreement or document in favor of any Indemnitee or Indemnitor.

13.  Interpretation, Severability, Etc. The Parties acknowledge and agree that the terms and provisions of this Agreement have been negotiated, shall be construed fairly as to all Parties hereto, and shall not be construed in favor of or against any Party. In the event that any term or provision of this Agreement shall be determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to Applicable Law by an Authority having jurisdiction and venue: (a) that determination shall not impair or otherwise affect the validity, legality or enforceability by or before that Authority of the remaining terms and provisions of this Agreement; (b) if that determination was due to the scope or duration of any such term or provision, the Parties agree that such Authority shall have the power (and is hereby requested by the Parties) to limit the scope or duration of such term or provision to the maximum permissible under Applicable Law so that said provision shall be enforceable in such limited form; and (c) this Agreement shall be enforced as if the unenforceable provision were so deleted or limited to the greatest extent permitted by Applicable Law; in each case except to the extent the deletion or limitation thereof could reasonably be expected to impair the practical realization of the principal rights and benefits hereunder of any Party. No such determination shall impair or otherwise affect the validity, legality or enforceability of any term or provision of this

Agreement by or before any other Authority.

14. Successors and Assigns; Assignment; Intended Beneficiaries. Whenever in this Agreement reference is made to any Person, such reference shall be deemed to include the successors, permitted assigns, heirs and legal representatives of such Person and, without limiting the generality of the foregoing, all representations, warranties, covenants and other agreements made by or on behalf of each Party in this Agreement shall inure to the benefit of the successors, permitted assigns (including, without limitation, participants and any Person for whom such Party may be acting as Agent, as applicable) and legal representatives of the other Party; provided, however, that nothing herein shall be deemed to authorize or permit any Party to assign any of its obligations under this Agreement, and no party shall make any such assignment. The terms and provisions of this Agreement are for the exclusive benefit of the Parties hereto, and no other Person (including, without limitation, creditors of any Party hereto) shall have any right or claim against any Party by reason of any of those terms and provisions or be entitled to enforce any of those terms and provisions against any Party.

15. No Waiver by Action, Cumulative Rights, Etc. Any waiver or consent respecting this Agreement shall be effective only if in writing and signed by each applicable Party against whom enforcement may be sought and then only in the specific instance and for the specific purpose for which given. No waiver or consent shall be deemed (regardless of frequency given) to be a further or continuing waiver or consent. The failure or delay (in whole or in part) of any Party to require performance of, or to exercise or otherwise enforce any of the rights or remedies of such Party with respect to, any term or provision of this Agreement shall in no way affect the right of any Party at a later time to exercise or otherwise enforce any such term or provision. No notice to or demand on any Party or other Person in any case shall entitle such Party or Person to any other or further notice or demand. All representations, warranties, covenants, agreements and obligations of each Party (whether individual, joint, several or otherwise) in this Agreement and all rights, powers, privileges, remedies and other interests of each Party under this Agreement or Applicable Law are cumulative and not alternatives.

16. Governing Law. This Agreement shall be governed by and construed in accordance with the applicable federal law of the United States of America, and to the extent not preempted by such federal law, by the applicable law of the State of New York (other than those conflict of law rules that would defer to the substantive laws of another jurisdiction). This governing law election has been made by the parties in reliance (at least in part) on Section 5-1401 of the General Obligations Law of the State of New York, as amended (as and to the extent applicable), and other applicable law.

17. Counterparts, Amendments, Etc. This Agreement or any supplement, modification, amendment, restatement or waiver respecting this Agreement may be executed in two (2) or more counterpart copies of the entire document or of signature pages to the document, each of which may have been executed by one or more of the signatories hereto or thereto and delivered by mail, courier, telecopy, pdf file or other electronic means, but all of which, when taken together, shall constitute a single instrument or agreement binding upon all of the signatories hereto or thereto, as the case may be. Each and every

supplement, modification or amendment to or restatement of this Agreement shall be in writing and signed by all of the Parties hereto, as applicable, and each and every waiver of, or consent to any departure from, any term or provision of this Agreement shall be in writing and signed by each Party against whom enforcement thereof may be sought.

**IN WITNESS WHEREOF**, the undersigned have signed this Agreement or caused it to be signed by their duly authorized signatories effective as of the date first written above.

**MIRANT BOWLINE, LLC**

By: _____
    Its: _____

**MIRANT NY-GEN, LLC**

By: _____
    Its: _____

**MIRANT LOVETT, LLC**

By: _____
    Its: _____

## SCHEDULE I

## Definitions and Interpretation

1.  Defined Terms.

"Affiliate" of a referenced Person shall mean (a) another Person controlling, controlled by or under common control with such referenced Person, (b) any other Person beneficially owning or controlling ten percent (10%) or more of the outstanding voting securities, rights or interests in the capital, distributions or profits of the referenced Person or (c) any officer or director of or partner in the referenced Person. The terms "control", "controlling", "controlled" and the like shall mean the direct or indirect possession of the power to direct or cause the direction of the management or policies of a Person or the disposition of its assets or properties, whether through ownership, by contract, arrangement or understanding, or otherwise. None of the Parties shall be deemed to be Affiliates of each other.

"Agreement" means the Cross-Indemnification Agreement among Mirant Bowline LLC, Mirant NY-Gen, LLC, and Mirant Lovett, LLC dated the __ day of _____, 2007.

"Applicable Law" shall mean any applicable law, including (without limitation) any applicable: (a) federal, state, provincial, territorial, county, municipal, local or other governmental or quasi-governmental law, statute, ordinance, rule, regulation, requirement, policy or use or disposal classification or restriction or interpretation thereof; (b) judicial, administrative or other governmental or quasi-governmental order, injunction, writ, judgment, decree, ruling, interpretation, guideline, finding or other directive; (c) common law or other legal or quasi-legal precedent; (d) arbitrator's, mediator's or referee's decision, finding, award or recommendation; or (e) charter, rule, regulation or other organizational or governance document of any national securities exchange or market or other self-regulatory or governing body or organization; in each case (i) whether domestic or foreign, (ii) whether at law, in equity or otherwise, and (iii) as the same may be adopted, supplemented, modified, amended, restated or replaced from time to time or any corresponding or succeeding provisions thereof.

"Authority" shall mean any governmental, quasi-governmental or industry authority, including (without limitation) any federal, state, provincial, territorial, county, municipal, local or other government or governmental or quasi-governmental agency, board, branch, bureau, commission, court, department or other instrumentality or political unit or subdivision, whether domestic or foreign, any national securities exchange or market, or any accreditation, self-regulatory or governing body, center, commission or similar organization.

"Business Day" means a day other than Saturday, Sunday or a day on which banks are legally required or permitted to be closed for business in the State of New York.

"Indemnitee(s)" has the meaning attributed thereto in Section 2(b) of the Agreement.

"Indemnitor(s)" has the meaning attributed thereto in the recitals to the Agreement.

"Indemnity Obligation(s)" shall mean an Indemnitor's obligations to indemnify and reimburse any Indemnitees for any and all of their respective Losses under this Agreement.

"Loss" shall mean any loss, damage, injury, harm, detriment, decline in value, lost opportunity, liability, exposure, claim, demand, action, suit, proceeding, arbitration, mediation, investigation, audit, review, payment, settlement, judgment, award, fine, penalty, tax, fee, charge, cost or expense (including, without limitation, any liability payment, any disbursement, expense or fee or other amount paid to any attorney or other professional advisor, and any costs of investigation or remediation).

"O&R" has the meaning attributed thereto in the recitals to the Agreement.

"O&R Settlement Agreement" has the meaning attributed thereto in the recitals to the Agreement.

"Party" and "Parties" shall have the meanings respectively assigned to them in the opening paragraph of the Agreement.

"Person" shall include (without limitation) any manner of association, business trust, company, corporation, estate, governmental or other Authority, group (including one under Section 13(d)(3) of the Securities Exchange Act), joint venture, limited liability company, natural person, partnership, syndicate, trust or other entity.

"Proceeding" has the meaning attributed thereto in Section 2(e) of the Agreement.

"Representative" of a referenced Person shall mean any subsidiary or other Affiliate of the referenced Person or any equity-holder, partner, equity holder, member, director, officer, manager, employee, subcontractor or consultant, agent, attorney, accountant, financial or other advisor or representative of the referenced Person or of any of its subsidiaries or other Affiliates.

2.    Rules of Interpretation.

In the Agreement, the meaning of each capitalized term or other word or phrase defined in singular form also shall apply to the plural form of such term, word or phrase, and vice versa; each singular pronoun shall be deemed to include the plural variation thereof, and vice versa; and each gender specific pronoun shall be deemed to include the neuter, masculine and feminine, in each case as the context may permit or required. Any table of contents or caption, section or other heading is for reference purposes only and shall not affect the meaning or interpretation of such document; and each reference to any Section, subsection, and the like shall mean those of or attached to such document unless otherwise expressly provided. The word "event" shall include (without limitation) any

event, occurrence, circumstance, condition or state of facts; the words "hereof", "herein" and "hereunder" and words of similar import shall refer to such document as a whole and not to any particular provision of such document; the words "include", "includes" and "including" shall be deemed to be followed by the phrase "(without limitation)", whether or not so stated, and in any event shall not in any way (i) limit the generality of the provision preceding such word, (ii) preclude any other applicable item encompassed by the provision preceding such word, or (iii) be deemed or construed to do so; and unless the context clearly requires otherwise, the word "or" shall have both the inclusive and alternative meaning represented by the phrase "and/or". Reference to any Applicable Law, whether generically or specifically, shall mean such Applicable Law as adopted, supplemented, modified, amended, restated, codified, replaced or reenacted, in whole or in part, and then in effect; and each reference to any instrument, Agreement or other document (including any defined term) in this agreement shall mean such instrument, lease, agreement or other document as the same may have been and hereafter may be executed, amended, restated, replaced, supplemented or otherwise modified.

# SCHEDULE II

## Addresses of the Parties