

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 14, 2014**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO.: 03-46590 |
| MIRANT CORPORATION, | § | |
| | § | CHAPTER: 11 |
| DEBTOR. | § | |

### MEMORANDUM OPINION

Before the court is the *First Amended Application of Virtus Capital, L.P. and Luqman Yacub for Reimbursement of Fees and Expenses Incurred in Making a Substantial Contribution to These Cases* (docket no.[1] 16,302, the "Application") filed by Virtus Capital, L.P. and Laqman Yacub (collectively, "Applicants"), by which Applicants seek reimbursement for fees and

---

[1] "Docket no." will hereinafter refer to the above-captioned bankruptcy case.

expenses incurred in connection with the *Motion to Vacate, Modify, or in the Alternative, Reconsider the Order Granting Motion for Order Allowing [MCAR] to File Under Seal Its Motion for Approval of Manager Fee Amount* (docket no. 16,261, the "Motion"). Mirant Corporation Asset Recovery, Inc. ("MCAR") filed the *Response of [MCAR] to [the Application]* (docket no. 16,304, the "Response"). Applicants then filed the *Reply to [the Response]* (docket no. 16,307, the "Reply") to which MCAR filed the *Supplemental Response of [MCAR] to [the Application]* (docket no. 16,308, the "Supplemental Response"). By agreement of the parties, the court has considered the Application based on pleadings and authorities filed by the parties.

This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334(a), 157(b)(2)(A). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 9014, 7052.

## I. BACKGROUND

In 2003, Mirant Corporation ("Mirant")[2] and a number of its subsidiaries filed in this court for relief under chapter 11 of the Bankruptcy Code.[3] In December 2005, the court confirmed Mirant's plan of reorganization (docket no. 11,596, the "Plan"), which became effective through substantial consummation shortly thereafter. *See* 11 U.S.C. § 1101(2).

Although the principal consideration transferred to impaired creditors and stockholders pursuant to the Plan was stock in the reorganized debtor, the Plan also provided for the formation of MCAR, a special litigation entity created to pursue litigation for the benefit of creditors and stockholders. Among the suits prosecuted by MCAR was one against Castex Energy, Inc.;

---

[2] Mirant has since, by merger, become GenOn Energy.
[3] 11 U.S.C. §§ 101 *et seq.* (the "Code").

2

Castex Energy 1995, L.P.; Castex Energy 1996, L.P.; and LaTerre Co., Ltd. (collectively, "Castex").[4]

On March 16, 2007, the U.S. District Court withdrew the reference of the Castex Adversary from the bankruptcy court.[5] Subsequently, the District Court approved a settlement of the Castex Litigation (the "Castex Settlement") and ordered the Castex Settlement sealed at Castex's request.

MCAR's litigation is overseen by the company's sole member, whose compensation is largely based on the amounts recovered. Because the compensation is a percentage of recoveries, an application to the court by the member for compensation resulting from a settlement would unavoidably reflect the total amount of the settlement. Hence, MCAR filed its application for compensation of the member based on the Castex Settlement under seal. The Motion followed.

The court convened two status conferences respecting the Motion at which it sought consensual resolution of the differences of the parties. As a result of the status conferences, at the court's instance, the parties negotiated regarding a confidentiality agreement that would allow Applicants and similarly situated entities to access the Castex Settlement. The court ultimately approved a form of confidentiality agreement submitted by MCAR.

## II. DISCUSSION

The Application presents the court, first, with the question of whether it may grant the relief sought at all and, second, if it may grant that relief whether it should grant the relief. Applicants urge that the court may award them fees and expenses pursuant to section 503(b)(4)

---

[4] *MCAR v. Castex*, Adv. No. 05-4139 (Bankr. N.D. Tex. 2005) (the "Castex Adversary").

[5] *MCAR v. Castex*, Civ. No. 4:07-cv-00076 (N.D. Tex. 2005) (the "Castex Litigation").

3

of the Code by reason of their making a substantial contribution in Mirant's chapter 11 case. Alternatively, Applicants assert that section 105(a) of the Code permits the court, through its equitable powers, to award them fees and expenses. MCAR argues that it is not (and never has been) a debtor under the Code and so may not be held liable under the Code for Applicants' fees and expenses.

### A. Applicants Do Not Fall Within Section 503(b)(3) and (4)

Section 503(b)(3)(D) (under which Applicants claim) and (4) state:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
. . .
(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
. . .
(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
. . .
(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

11 U.S.C. § 503(b)(3)(D), (4).

"Substantial contribution" is not defined by the Code. The Court of Appeals for the Fifth Circuit has held that a "substantial contribution" need not benefit the debtor's estate. *Smith v. Mirant Corp. (In re Mirant)*, 308 F. App'x 824, 827–28 (5th Cir. 2009). It must, however contribute to the debtor's reorganization. *Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1338 (11th Cir. 2000) ("substantial contribution is one that foster[s] and enhance[s], rather than retard[s] or interrupt[s] the progress of reorganization") (quoting *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.)*, 785 F.2d 1249, 1253 (5th

Cir. 1986)) (internal quotations removed); *In re Villa Luisa, L.L.C.*, 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006) ("Courts therefore, have looked at whether there has been a contribution that is considerable in amount, value and worth, which directly, demonstrably and materially contribute[s] to the debtor's reorganization."). Therefore, the thrust of this analysis is that the "substantial contribution" must further the purpose of the bankruptcy case.

The purpose of Mirant's chapter 11 case was the reorganization of the debtor. And that purpose was achieved more than seven years before that which Applicants would have this court deem a substantial contribution. While Mirant's chapter 11 case remains technically open, as a practical matter it is over for Mirant. All that remains is the role of MCAR as litigation vehicle. The court does not believe that Congress intended the reach of section 503(b)(3) and (4) to extend seven years after confirmation and consummation of a debtor's plan.

The court is not prepared to say that there can never be a "substantial contribution" in a case so remote in time from substantial consummation of a plan. But absent furthering the progress of the debtor's rehabilitation or enhancing recovery by creditors or shareholders, a contribution that satisfies the requirements of section 503(b)(3)(D) and (4) will be a rare bird indeed.

The court is fortified in its conclusion that section 503(b) does not provide a basis for fee shifting in the instant case by the fact that MCAR is not now and never has been a debtor under the Code. Section 503(b) deals with expenses of estate administration. An administrative expense is an expense incurred by or for the benefit of a debtor or its estate. Neither Mirant nor

5

its estate[6] incurred or was benefited by the services represented by the Application. Rather any "benefit" ran to the constituents of MCAR, a non-debtor.

If Applicants are entitled to payment of their fees and expenses as an administrative expense, the payment should come from Mirant, the entity whose chapter 11 case was affected. That seems hardly fair. Mirant derived no benefit from Applicants' efforts.

*B. The Application Does Not Evidence a Substantial Contribution*

Even assuming the reach of section 503(b)(3)(D) and (4) extends to fees and expenses incurred seven years after substantial consummation, the services for which Applicants seek reimbursement do not rise to the level of a substantial contribution. This court in Mirant's chapter 11 case listed the following factors to consider in assessing whether a party has made a substantial contribution: (1) Whether the applicant conferred a benefit; (2) Whether the services involved in the contribution were undertaken just for the applying creditor or interest-holder or for the benefit of all parties in the case; (3) Whether the applying party would have done the same thing absent the expectation of compensation from the bankruptcy estate; (4) Whether the benefit conferred exceeds the cost the party seeks to assess against the estate; (5) Whether the efforts of those seeking compensation are duplicative of those that were undertaken by statutory fiduciaries; (6) Whether the party profited from post-petition acquisition of claims; and (7) Whether the party engaged in improper conduct in the case. *See In re Mirant Corp.*, 354 B.R. 113, 132 (Bankr. N.D. Tex. 2006), *aff'd*, 308 F. App'x 824 (5th Cir. 2009).

Turning to the first of these factors, it does not favor Applicants. As the court has noted, the fees and expenses sought were not incurred in advancing Mirant's reorganization or in

---

[6] The estate of Mirant ceased to exist following confirmation of the Plan. *See* 11 U.S.C. § 1141(b); *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008); *In re Encompass Servs. Corp.*, 337 B.R. 864, 871 (Bankr. S.D. Tex. 2006) (noting that "[i]t is well established in the Fifth Circuit and many other circuits, that once the plan of reorganization has been confirmed, the estate ceases to exist") (citations omitted).

6

augmenting any recovery by stakeholders. Even assuming that an effort to obtain information could qualify as a substantial contribution, here, according to MCAR's uncontradicted statement, only one person, Applicant Yacub, has actually taken advantage of the opportunity to learn the terms of the Castex Settlement. Further, Yacub's examination of the terms did not lead to any revelations important to the case. Case law does not support finding a substantial contribution in Applicants' efforts. *See, e.g.*, *Hall Fin. Grp., Inc. v. DP Partners, L.P. (In re DP Partners, L.P.)*, 106 F.3d 667, 673 (5th Cir. 1997) ("This provision requires the bankruptcy judge to scrutinize claimed expenses . . . to ensure that expenses were indeed actual and necessary."); *In re Am. Plumbing & Mech., Inc.*, 327 B.R. 273, 283 (Bankr. W.D. Tex. 2005) ("The efforts and activities of [an] applicant . . . may be admirable, excellent, or done with professionalism, but that cannot elevate expected or routine activities to the level of substantial contribution.").

One court has even held that "[t]here is nothing extraordinarily beneficial to the debtors" about an applicant participating in settlement discussions. *See In re Alumni Hotel Corp.*, 203 B.R. 624, 632 (Bankr. E.D. Mich. 1996). In *Alumni Hotel*, a creditor made a substantial contribution claim for its "efforts toward settlement" of an adversary proceeding and "toward creating a plan distribution of proceeds." *Id*. In declining to allow a substantial contribution claim, the court held that "encouraging negotiation and proposing agreeable terms is a routine task, and often [a] professional obligation . . . ." *Id*. The court went on to reason that

> [a]s with any good settlement, this settlement provided some benefits to the parties and also required the parties to accept some concessions. Although the estates and certain creditors benefitted to some extent from the settlement, [applicant] cannot take credit for actually settling the case, because settlement is not a unilateral action. In order to reach a settlement, all the interested parties . . . [had to] reach[] an agreement.

*Id*.

7

In the case at bar, MCAR, Castex, Strategic Master Fund, Ltd., and the Applicants negotiated the Confidentiality Agreement.[7] While certain creditors may have benefitted to some extent from the Confidentiality Agreement, it was certainly not a unilateral action. Moreover, as mentioned above, Mirant's case was confirmed over seven years ago. As such, no real controversy with respect to its reorganization remains. Thus, the court cannot find that Applicants' efforts to contest the confidentiality of the Castex Settlement were extraordinarily beneficial to Mirant's estate.

The second factor also does not favor Applicants. Applicants came to the court seeking relief for themselves. It was at the court's instance that the relief was made available to all stakeholders in MCAR. Certainly there is no evidence that Applicants were concerned that other stakeholders have notice of how to access information about the Castex Settlement. Moreover, as it has turned out apparently Applicants' efforts benefits only Applicant Yacub.

As for Applicants' intimation that they were doing the court's bidding and so deserve reimbursement, this is a red herring. Applicants could have abandoned the Motion or even declined to negotiate with MCAR and Castex. That the court encouraged the parties to resolve a disclosure problem is no more than what courts do in similar discovery disputes.

The third factor, as noted in *In re Mirant*, 354 B.R. at 131–35, is of little moment, but it is clear that Applicants would have acted the same regardless of whether they expected reimbursement for the fees and expenses.

Whether the "benefit" conferred by Applicants' efforts exceeds the fees sought is difficult to quantify where the benefit is not monetary or of realizable value. However, given the lack of

---

[7] Application at 6. While the court notes that Strategic Master Fund, Ltd. withdrew its joinder and "is no longer participating in the negotiations regarding the terms of the [C]onfidentiality [A]greement," it does not affect the court's reasoning contained herein.

8

interest in learning about the Castex Settlement, the court would find that the cost exceeds the benefit. This factor thus does not favor Applicants.

Applicants' efforts did not duplicate those of a statutory fiduciary. The fifth factor therefore favors Applicants. The seventh factor also favors Applicants. There is no evidence that either Applicants or MCAR engaged in improper conduct. MCAR cannot be blamed for protecting the confidentiality of a settlement sealed by order of the District Court and Applicants did nothing wrong in seeking its disclosure.[8]

The sixth and final factor involves whether the applicant acquired its position as a creditor or shareholder after the commencement of the chapter case. In the case at bar, the record does not reflect when the Applicants acquired their Mirant stock and bonds. This factor is therefore neutral.

*C. Section 105(a) of the Code Does Not Authorize the Relief Sought in the Application*

Applicants argue, alternatively, that section 105(a) of the Code authorizes the court, through its equitable powers, to award the fees and expenses requested. Section 105(a) of the Code states:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

This provision is the general grant of the equitable power to the bankruptcy court. *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007) (holding that bankruptcy courts

---

[8] MCAR defined Applicant Virtus Capital, LP, as "Gidumal," an individual who owns all or part of Virtus. Gidumal has had numerous issues with MCAR's counsel and management. There is no evidence that Gidumal has acted improperly.

9

have "broad authority . . . to take any action that is necessary or appropriate to prevent an abuse of process described in § 105(a) of the Code") (internal quotations omitted); *see also United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986) (holding that Code section 105 "authorizes a bankruptcy court to fashion orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code").  However, section 105(a) of the Code does not constitute a grant of power to override or substitute for other sections of the Code.  *See Sutton*, 786 F.2d at 1308 ("[Section 105(a)] does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.").

In the case of fees and expenses, there are provisions of the Code that address that subject specifically.  *See* 11 U.S.C. §§ 326, 330–31.  Sections 503(b)(3) and (4) deal with the situation presented in the instant case: a claim by one who is not a statutory fiduciary that it is entitled to compensation for making a substantial contribution in a chapter 11 case.  Because "[i]t is a commonplace of statutory construction that the specific governs the general,"[9] the court concludes that section 503(b), not section 105, should control the outcome of the case at bar.

This conclusion is supported by the general rule, the American Rule, that a party is responsible for its own attorneys' fees.  *See Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2156–57 (2010) ("[Under] the bedrock principle known as the American Rule . . . [e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.") (citation omitted).  Where the responsibility for fees is shifted, the statutory authorization is specific.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260

---

[9] *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

10

Case 03-46590-rfn11 Doc 16312 Filed 01/14/14 Entered 01/14/14 11:36:49 Page 11 of 12

(1975) (holding that Congress has not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted," but made "specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights.").

However, the Court has recognized that in certain situations, unless forbidden by Congress, courts have the inherent power to assess fees. *Chambers*, 501 U.S. at 43–46; *Aleyska*, 421 U.S. at 258–59. It is true that section 105(a) is sometimes cited as the basis for an award of fees. *See In re Paige*, 365 B.R. 632, 637–40 (Bankr. N.D. Tex. 2007); *In re Brown*, 444 B.R. 691, 695 (Bankr. E.D. Tex. 2009); *In re Gorshtein*, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002). But these cases involve misconduct, such as contempt of court on the part of the entity upon which the fees are assessed. *In re Paige*, 365 B.R. at 638–39 (sanctioning a debtor for his intentional, deceitful, and unauthorized sale of estate property and for his subsequent concealment of the sale from the chapter 7 trustee); *In re Brown*, 444 B.R. at 695 (sanctioning parties for "reckless disregard of their duty to this Court by attempting to remedy their lapses in a careless fashion"); *In re Gorshtein*, 285 B.R. at 126–27 (sanctioning a secured creditor whose certification regarding debtor's post-petition payments "was just plain false"). There is no suggestion that MCAR (let alone Mirant) was guilty of any misconduct warranting imposition of fees on it. Thus, if Applicants are entitled to be reimbursed, that entitlement must be derived from section 503(b)(3)(D) and (4). Applicants' alternative reliance on section 105(a) is misplaced.

### III. CONCLUSION

Applicants have failed to carry their burden. The court, based on a review of the law discussed above concludes that they have not satisfied the requirements of section 503(b)(3)(D) and (4), even assuming those provisions apply, in that they have not made a substantial

11

contribution to Mirant's bankruptcy case. As section 105(a) does not expand the court's authority to shift fees, the Application must be denied.

It is so ORDERED.

### END OF MEMORANDUM OPINION ###